## IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF TEXAS
## SHERMAN DIVISION

| | |
|---|---|
| JOSEPH MICHAEL PHILLIPS, | |
| *Plaintiff,* | |
| v. | |
| COLLIN COMMUNITY COLLEGE DISTRICT, a political subdivision of the State of Texas; | |
| BOARD OF TRUSTEES OF COLLIN COMMUNITY COLLEGE, a political subdivision of the State of Texas; | Civil Action No.: 4:22-cv-184 |
| H. NEIL MATKIN, in his individual and official capacities as President of Collin College; | **JURY TRIAL DEMANDED** |
| ABE JOHNSON, in his individual and official capacities as Senior Vice President of Campus Operations of Collin College; | |
| MARY BARNES-TILLEY, in her individual and official capacities as Provost of Collin College; | |
| KRISTEN STREATER, in her individual and official capacities as Dean of Collin College; and | |
| CHAELLE O'QUIN, in her individual and official capacities as Associate Dean of Academic Affairs of Collin College. | |
| *Defendants.* | |

## COMPLAINT FOR CIVIL RIGHTS VIOLATIONS

GREG HAROLD GREUBEL*
PA Bar No. 321130; NJ Bar No. 171622015
KATLYN A. PATTON*
OH Bar No. 97911; PA Bar No. 328353
FOUNDATION FOR INDIVIDUAL RIGHTS
        IN EDUCATION
510 Walnut Street; Suite 1250
Philadelphia, PA 19106
Tel: (215) 717-3473
greg.greubel@thefire.org
katlyn.patton@thefire.org
*Pro Hac Vice Motions forthcoming

ROBERT W. SCHMIDT
TX Bar No. 17775429
CREWS LAW FIRM, P.C.
701 Brazos Street; Suite 900
Austin, TX 78701
Telephone: (512) 346-7077, Ext. 103
schmidt@crewsfirm.com

# TABLE OF CONTENTS

TABLE OF AUTHORITIES ....................................................................................... v

INTRODUCTION ...................................................................................................... 1

JURISDICTION AND VENUE ................................................................................. 2

THE PARTIES ........................................................................................................... 3

FACTUAL ALLEGATIONS ..................................................................................... 6

    Collin College Disciplines Phillips for Authoring an Open Letter
    Advocating for the Removal of Confederate Monuments in Dallas. ................... 6

    Collin College Disciplines Phillips for Speaking to the *Washington Post* as
    a Leading Expert on Racism in Texas. ................................................................. 7

    Phillips Criticizes Collin College's COVID-19 Response on His Personal
    Facebook Page. ..................................................................................................... 9

    Defendant Streater Issues Phillips a Negative Performance Appraisal
    Because of His Protected Speech. ....................................................................... 10

    Collin College Disciplines Phillips Again for Facebook Post About the
    College's COVID-19 Policy. .............................................................................. 12

    Based on Phillips's Protected Speech, Collin College Administrators Do
    Not Recommend Renewal of Phillips's Three-Year Contract. .......................... 14

    Collin College Punishes Phillips for Teaching About the History of
    Pandemics.......................................................................................................... 15

    Collin College Denies Phillips's Grievance and Application for a New
    Contract, Citing His Speech. .............................................................................. 16

    Defendants Have Adopted a Custom or Practice of Retaliating Against
    Professors Who Speak on Matters of Public Concern. ...................................... 18

    Collin College's Actions Have Deprived Phillips of His Constitutional
    Rights, and Caused Him Economic and Emotional Damage............................. 25

FIRST CAUSE OF ACTION
First Amendment Retaliation Under 42 U.S.C. § 1983 (Against All Individual-
Capacity Defendants) ............................................................................................. 26

SECOND CAUSE OF ACTION
First Amendment Retaliation Under 42 U.S.C. § 1983 (Against All Official-
Capacity Defendants) ............................................................................................. 27

THIRD CAUSE OF ACTION
Facial Vagueness Challenge to Code of Ethics (Against the College and the Board
of Trustees)............................................................................................................................. 28

FOURTH CAUSE OF ACTION
Facial Overbreadth Challenge to Code of Ethics (Against the College and the
Board of Trustees) ................................................................................................................ 31

FIFTH CAUSE OF ACTION
Facial Challenge to Prior Restraints on Faculty Speech (Against the College, the
Board of Trustees, and President Matkin in His Official Capacity) ............................. 33

SIXTH CAUSE OF ACTION
As-Applied Violation of Plaintiff's First Amendment Rights (Against the College
and the Individual-Capacity Defendants) ....................................................................... 35

SEVENTH CAUSE OF ACTION
*Monell* Claim Under 42 U.S.C. § 1983 (Against Defendant Collin Community
College District) .................................................................................................................... 37

PRAYER FOR RELIEF ................................................................................................................ 38

DEMAND FOR JURY TRIAL .................................................................................................... 40

# TABLE OF AUTHORITIES

**Page(s)**

**Cases:**

*Agency for Int'l Dev. v. All. for Open Soc'y Int'l, Inc.,*
    570 U.S. 205 (2013) .................................................................................................... 35

*Barrett v. Thomas,*
    649 F.2d 1193 (5th Cir. 1981) .......................................................................... 33, 34, 35

*Broadrick v. Oklahoma,*
    413 U.S. 601 (1973) .................................................................................................... 32

*Buchanan v. Alexander,*
    919 F.3d 847 (5th Cir. 2019) ............................................................................. 2, 27, 28

*Burleson v. Collin Cnty. Cmty. Coll. Dist.,*
    No. 4:17-CV-00749, 2019 WL 2266633 (E.D. Tex. Jan. 14, 2019) ............................ 4, 33, 37

*Connick v. Meyers,*
    461 U.S. 138(1983) ..................................................................................................... 26

*Elrod v. Burns,*
    427 U.S. 347 (1976) .................................................................................................... 31

*Gonzalez v. Ysleta Indep. Sch. Dist.,*
    996 F.2d 745 (5th Cir. 1993) ...................................................................................... 38

*Grayned v. City of Rockford,*
    408 U.S. 104 (1972) .................................................................................................... 30

*Monell v. Dep't of Soc. Servs.,*
    436 U.S. 658 (1978) ............................................................................... 4, 29, 33, 37

*Neb. Press Ass'n v. Stuart,*
    427 U.S. 539 (1976) .................................................................................................... 33

*Pembaur v. City of Cincinnati,*
    475 U.S. 469 (1986) .................................................................................................... 38

*People for the Ethical Treatment of Animals v. Hinckley,*
    526 F. Supp. 3d 218 (S.D. Tex. 2021) ......................................................................... 30

*Perry v. Sinderman,*
    408 U.S. 593 (1972) .................................................................................................... 26

*Pickering v. Bd. of Educ.*,
    391 U.S. 563 (1968) ...........................................................................................2, 27, 28

*Rodriguez v. Hous. Indep. Sch. Dist.*,
    710 Fed. Appx. 196 (5th Cir. 2018) ..........................................................................4

*Rosenberger v. Rector & Visitors of Univ. of Va.*,
    515 U.S. 819 (1995) ................................................................................................35

*United States v. Nat'l Treasury Emps. Union*,
    513 U.S. 454 (1995) ................................................................................................33

*United States v. Stevens*,
    559 U.S. 460 (2010) ................................................................................................32

**Statutes:**

28 U.S.C. § 1391(b)(1) .....................................................................................................3

28 U.S.C. § 1391(b)(2) .....................................................................................................3

28 U.S.C. § 1331 ..............................................................................................................3

28 U.S.C. § 1343 ..............................................................................................................3

42 U.S.C. § 1983 ..............................................................................................................2

42 U.S.C. § 1988 .........................................................................................................2, 40

Civil Rights Act of 1871 ..................................................................................................2

Tex. Educ. Code § 1.001(a) .......................................................................................4, 29

Tex. Educ. Code § 11.151(b) ...........................................................................................4

Tex. Educ. Code § 130.0011 ............................................................................................4

Tex. Educ. Code § 130.082(d) ...............................................................................4, 5, 29

Tex. Educ. Code § 130.084 .......................................................................................4, 29

**Other Authorities:**

Bill Zeeble, *Collin College First Amendment Fight Moves to the Ballot Box With Spring Board
    Election*, KERA News (Apr. 22, 2021)......................................................................21

Bill Zeeble, *Two Collin College Professors Say They're Being Dismissed After Criticizing
    COVID-19 Policies*, KERA News (Feb. 5, 2021)....................................................20

Collin College Board Policy Manual, BAA (Legal)-LJC, Board Legal Status, Powers, Duties, Responsibilities ................................................................................................................ 4, 29

Collin College Board Policy Manual, DGC(LOCAL)-X, Employee Rights and Privileges .... 7, 39

Collin College Board Policy Manual, DH(EXHIBIT), Employee Standards of Conduct ...... 10, 30

Collin College Board Policy Manual, DMAB (Legal), Term Contracts, Nonrenewal .......... 16, 21

*Investigations into Dismissals at Linfield University and Collin College*, Am. Ass'n of Univ. Professors (May 18, 2021) ......................................................................................... 24

Letter from James Grossman, Executive Director, American Historical Association, to Neil Matkin, President, Collin College (Feb. 7, 2022) .................................................... 24

Letter from Keith Whittington, Chair, Academic Committee, Academic Freedom Alliance, to Neil Matkin, President, Collin College (Feb. 2, 2022) .......................................... 24

Michael Vasquez, *'That Man Makes Me Crazy' How One President Shattered Norms, Played Down COVID-19, and Sent His Critics Packing*, Chronicle of Higher Education (Apr. 13, 2021) ..................................................................................................................... 22

*Reinstate Dr. Michael Phillips and Commit to Free Speech at Collin College*, Change.org ....... 25

Resolution of the Bd. of Directors, E. Tex. Historical Ass'n (Feb. 10, 2022) ............................ 25

Talia Richman & Anna Caplan, *Collin College Professors Say Admin Pushing Them Out Over COVID-19 Criticism*, Dallas Morning News (Feb. 1, 2021) ................................................. 20

Talia Richman, *'Fear Is Not a Core Value': Protesters Call on Collin College Board to Act After 3 Professors Pushed Out*, Dallas Morning News (Mar. 3, 2021) ..................................... 20, 21

*Third Professor at Texas Community College Effectively Fired After Criticizing School's Leadership*, PEN America (Mar. 2, 2021) .............................................................................. 23

Valeria Olivares & Talia Richman, *Faculty Dismissals at Collin College Under Review by National Professors Association*, Dallas Morning News (May 20, 2021) ............................... 23

## INTRODUCTION

1.      In October 2021, the East Texas Historical Association named Plaintiff Michael Phillips "Educator of the Year" for his work as a history professor at Collin Community College District ("Collin College" or "the College"). Instead of praising Phillips, Collin College fired him—for talking about history.

2.      Phillips now brings this First Amendment lawsuit because the College and its administrators are violating his constitutional rights by retaliating against him for speaking as a private citizen about public issues.

3.      In 2019, Collin College disciplined Phillips for granting an interview to a *Washington Post* reporter about his area of academic expertise: the history of racism in the Dallas area. In 2020, the College again disciplined Phillips for criticizing the College's response to the pandemic on his personal social media; and then 2021, for discussing the benefits of mask-wearing in a class covering the history of pandemics, citing his failure to bring his complaints through the "proper channels."

4.      As the basis for disciplining Phillips, Collin College officials relied on vague and overbroad policies that muzzle faculty criticism.

5.      Ultimately, Collin College terminated Phillips's employment because he spoke to the media, criticized the College's handling of COVID-19, and taught his students pedagogically relevant materials on the history of masking. Phillips is the fourth professor in the last two years that Collin College terminated because they criticized the college's response to the COVID-19 pandemic, the effects of which President Matkin downplayed as "blown utterly out of proportion across our nation[.]"

6.     Because Collin College does not have a tenure system for professors, Phillips and others had no protection from Collin College's custom or practice of terminating professors for speaking out on public issues, despite working at the College full time for well over a decade.

7.     Collin College's unlawful discipline of professors exercising their First Amendment rights has itself become a topic of public controversy, attracting national media coverage, resulting in hundreds of individuals protesting the terminations at Board of Trustees meetings, and drawing the attention of free speech and academic organizations across the country. Yet after all of this controversy, Collin College stood firm by its decision to terminate Phillips.

8.     It is well established that public employers violate the First Amendment rights of their employees by retaliating against them for speaking out on public issues as private citizens, and that is exactly what Collin College, its President Neil Matkin, and its administrators did to Phillips and other Collin College faculty. *See Pickering v. Bd. of Educ.*, 391 U.S. 563 (1968).

9.     By punishing Phillips for speaking as a private citizen on matters of public concern and maintaining and enforcing vague and overbroad policies, Defendants have violated his rights under the First and Fourteenth Amendments. *See Pickering*, 391 U.S. at 574; *Buchanan v. Alexander*, 919 F.3d 847, 852–53 (5th Cir. 2019).

## JURISDICTION AND VENUE

10.     This action arises under the First and Fourteenth Amendments to the United States Constitution; the Civil Rights Act of 1871, 42 U.S.C. §§ 1983 and 1988; and the Declaratory Judgment Act, 28 U.S.C. §§ 2201–02.

11.     Phillips seeks declaratory and injunctive relief, including reinstatement and an injunction against enforcement of the challenged provisions of the Code of Professional Ethics,

the Employee Expression Policy, and Defendant Matkin's directive restricting employee speech

on public issues. Further, Phillips seeks a ruling that Defendants violated Phillips's right to free

speech and engaged in a custom or practice of unconstitutionally retaliating against professors

for speaking on matters of public concern. Phillips also seeks economic, compensatory, and

punitive damages against Defendant Collin College and the individual-capacity Defendants for

violating his right to free speech.

12.     Accordingly, this Court has jurisdiction over these federal claims under 28

U.S.C. §§ 1331 and 1343.

13.     Venue is proper in this district under 28 U.S.C. § 1391(b)(1) because at least one

of the Defendants resides in this District and all Defendants are residents of the State of Texas.

14.     Venue is also proper in this judicial district under 28 U.S.C. § 1391(b)(2) because

a substantial part of the events giving rise to Phillips's claim occurred in Collin County, Texas,

which is located in the Sherman Division of the Eastern District of Texas.

## THE PARTIES

**Plaintiff**

15.     Plaintiff Joseph Michael Phillips is a citizen of the United States and a resident of

Collin County, Texas.

16.     Phillips has been a history professor at Collin College since 2007.

17.     Phillips earned a Bachelor's Degree in Journalism from the University of Texas at

Arlington, a Master's Degree in History from the University of California, Riverside, and a

Ph.D. in History from the University of Texas at Austin.

18.      Phillips specializes in the history of American race relations. His dissertation at

the University of Texas, "The Fire This Time: The Battle Over Racial, Regional, and Religious

Identities in Dallas, Texas, 1860–1990," won two awards for dissertation of the year and was published by the University of Texas Press as the book *White Metropolis: Race, Ethnicity, and Religion in Dallas*. *White Metropolis* was named "Best Book on Texas History" in 2007.

19.      At all times relevant to this Complaint, Phillips was employed by Collin College as a Professor of History at the College's Plano campus, formerly known as the Spring Creek campus.

20.      Phillips is suing in order to vindicate his constitutional rights.

**Defendants**

21.      Defendant Collin Community College District is an independent political subdivision of the State of Texas, organized under the laws of the State of Texas at Education Code § 130.0011 *et seq.* It is a municipal entity subject to liability under *Monell v. Department of Social Services*, 436 U.S. 658 (1978). *See Burleson v. Collin Cnty. Cmty. Coll. Dist.*, No. 4:17-CV-00749, 2019 WL 2266633 (E.D. Tex. Jan. 14, 2019).

22.      Defendant Board of Trustees of Collin Community College is a political entity with the "exclusive power and duty to govern and oversee the management of the public schools of the district," the power to hold real and personal property, and the power to sue and be sued. *See* Collin College Board Policy Manual, BAA (Legal)-LJC, Board Legal Status, Powers, Duties, Responsibilities (citing Tex. Educ. Code §§ 1.001(a), 130.082(d), 130.084). The Board of Trustees is subject to the general law governing Texas independent school districts in its establishment, management, and control of the College, which includes acting as the "final policymaking authority" for the College. *Rodriguez v. Hous. Indep. Sch. Dist.*, 710 Fed. Appx. 196, 198 (5th Cir. 2018); Tex. Educ. Code § 11.151(b). The Board is a municipal entity subject to liability under *Monell*, 436 U.S. 658.

4

23.     Defendant H. Neil Matkin has served as the President of Collin College since April 6, 2015. He is responsible for the operations of Collin College, and has been delegated the final decision-making authority to employ administrative personnel, faculty, and other full-time personnel for Board-approved budgeted positions. *See* Collin College Board Policy Manual, DD(LOCAL)-X, Personnel Positions; *see also* Tex. Educ. Code § 130.082(d) (empowering the Board to employ faculty and other employees "upon the president's recommendation"). President Matkin caused the College to deprive Phillips of his constitutional rights by terminating him for speaking as a private citizen on matters of public concern. He is sued in his official and individual capacities.

24.     Defendant Abe Johnson is currently the Senior Vice President of University Operations of Collin College. As Senior Vice President of University Operations, Johnson was responsible for evaluating Phillips's application to renew his three-year contract. Johnson was also responsible for reaffirming Phillips's termination. Johnson is sued in his official and individual capacities.

25.     Defendant Mary Barnes-Tilley is currently the Provost of Collin College and was previously a Dean of Collin College from June 2018 to January 2021. As Dean, Barnes-Tilley was involved in evaluating faculty contracts for renewal and was responsible for disciplining Phillips for his speech in June 2020. As Provost, Barnes-Tilley shared responsibility with Defendant Johnson to evaluate Phillips's application to renew his three-year contract. Barnes-Tilley is sued in her official and individual capacities.

26.     Defendant Kristen Streater is currently the Dean of Academic Affairs of Collin College, and was previously an Associate Dean of Academic Affairs of Collin College from Fall 2018 through January 2021. As an Associate Dean, Streater was responsible for completing

faculty evaluations, managing Performance Improvement Plans, and evaluating faculty contracts for renewal. As Dean of Academic Affairs, Streater remains involved in evaluating faculty contracts for renewal. She is sued in her official and individual capacities.

27.     Defendant Chaelle O'Quin is currently the Associate Dean of Academic Affairs of Collin College. She succeeded Dean Streater in the position in 2021. As an Associate Dean, O'Quin is responsible for completing faculty evaluations, managing Performance Improvement Plans, and evaluating faculty contracts for renewal. She is sued in her official and individual capacities.

28.     At all relevant times, all Defendants were acting under the color of state law.

## FACTUAL ALLEGATIONS

***Collin College Disciplines Phillips for Authoring an Open Letter Advocating for the Removal of Confederate Monuments in Dallas.***

29.     In August 2017, Phillips co-authored an open letter published in the *Dallas Morning News* on behalf of North Texans for Historical Justice that called for the removal of Confederate monuments in Dallas.

30.     The letter identified Phillips as "a history professor at Collin College and the author of 'White Metropolis: Race, Ethnicity, and Religion in Dallas, 1841-2001'" and listed his email address, mphillips@collin.edu.

31.     The open letter was signed by over thirty faculty members, each identifying their Dallas-area institutions.

32.     Speech on the history, maintenance, or removal of Confederate memorials is speech on matters of public concern.

33.     Phillips spoke as a private citizen in the 2017 *Dallas Morning News* open letter.

34.     On August 22, 2017, two Collin College administrators, Provost Mary McRae and former Dean Millie Black, summoned Phillips to a meeting and told him his open letter in the *Dallas Morning News* violated Collin College policy because it was "something that made the college look bad" and mentioned his institutional affiliation.

35.     Provost McRae and Dean Black referred Phillips to a Collin College policy that requires faculty and staff to "exercise appropriate restraint, exhibit tolerance for differing opinions, and indicate clearly that they are not an official spokesperson for the College District" when they speak or act as private citizens because "their actions will inevitably be judged by the public and reflect upon their profession and institution." Collin College Board Policy Manual, DGC(LOCAL)-X, Employee Rights and Privileges.

36.     During the course of their meeting, Provost McRae and Dean Black censured Phillips by issuing a "memorandum" explaining the College's policy and stated that Phillips should refrain from affiliating himself with the College or even using his College email address as a point of contact when discussing the removal of Confederate monuments due to the "potential adverse impact" for the College.

37.     Phillips did not purport to speak on behalf of Collin College in the 2017 open letter, which was signed by a number of other scholars, including other members of the Collin College faculty, each identifying their institutions.

38.     Phillips believed that President Matkin wanted to silence his opinion because it did not conform to Matkin's own views on the removal of Confederate monuments.

***Collin College Disciplines Phillips for Speaking to the* Washington Post *as a Leading Expert on Racism in Texas.***

39.     On August 3, 2019, a former Collin College student opened fire in a Walmart in El Paso, Texas, targeting Mexican patrons.

40.     Later that week, on August 6, Phillips granted an interview to a *Washington Post* reporter.

41.     The interview concerned his area of expertise—race relations in the Dallas area—to provide context for the story of the El Paso gunman.

42.     The gunman was not a student of Phillips's and Phillips had no confidential knowledge or other inside information relating to the gunman.

43.     Speech about a mass shooting is speech on a matter of public concern.

44.     Phillips spoke as a private citizen in his interview with the *Washington Post* reporter and did not purport to speak on behalf of Collin College.

45.     The *Washington Post* did not characterize Phillips as speaking on behalf of Collin College in his interview.

46.     On August 4, 2019, President Matkin emailed the Collin College community concerning the incident, as it involved a former student, and issued a directive to "[p]lease refer all press inquiries you may receive to Marisela Cadena-Smith," a member of the College's Public Relations department, or to President Matkin's office.

47.     Phillips granted an interview to the *Washington Post* after President Matkin issued his August 4 directive because Phillips did not think the directive applied to his speech as a private citizen about his area of expertise, race relations, and because Phillips was not speaking about the gunman as a Collin College student.

48.     The *Washington Post* article was published on August 9, 2019, and referred to Phillips as "a Collin College professor and historian of race relations in the Dallas-Fort Worth region."

49.     On August 14, 2019, Phillips was required to meet with Defendant and then-Associate Dean Kristen Streater to receive "constructive feedback" regarding his interview with the *Washington Post*.

50.     After this conversation, on September 3, 2019, Defendant Streater issued Phillips an "Employee Coaching Form" from the College.

51.     According to the College's website, an "Employee Coaching Form" is used to respond to "behavior or performance that has previously been discussed informally but is still not meeting expectations." The Employee Coaching Form makes clear that "failure to meet and sustain acceptable performance or behavior may result in formal disciplinary action."

52.     The September 3, 2019, "Employee Coaching Form" stated:

> On August 14, 2019, Associate Dean Kristen Streater talked with Professor Phillips about the Washington Post article, and he admitted to talking with the Post for the article. Although he tried to make it clear to the Post that he was only doing so as a subject matter expert, and not as a Collin College employee, Associate Dean Streater stated that despite his intentions, the Post was probably going to note that Professor Phillips was a member of the Collin faculty (which they did), and that this violated the President's directive.
>
> Expectations moving forward are to follow the President's directives when approached by the media.

53.     The "Employee Coaching Form" formalizing the College's disapproval of Phillips's speech on matters of public concern was meant to, and in fact did, punish Phillips and chill him from continuing to engage in such speech.

***Phillips Criticizes Collin College's COVID-19 Response on His Personal Facebook Page.***

54.     Collin College next censored Phillips during the COVID-19 emergency in 2020.

55.      In June 2020, Collin College announced plans to return to full-time, in-person learning for the Fall 2020 semester.

9

56.     Phillips disagreed with the decision, and posted on his personal Facebook page: "That feeling when your employer doesn't care about your health and safety."

57.     Phillips spoke as a private citizen concerned for community safety when he made this post about the danger of the pandemic, which is a matter of public concern.

58.     Defendant Streater and Defendant and then-Dean Mary Barnes-Tilley called Phillips to a Zoom meeting on June 19, 2020, where Defendant Barnes-Tilley asked, "Do you still want to work here?" and indicated that his Facebook post violated the College's "Core Values" of "dignity and respect," quoting the College's "Code of Professional Ethics." Collin College Board Policy Manual, DH(EXHIBIT), Employee Standards of Conduct.

59.     Phillips reasonably interpreted Defendant Barnes-Tilley's comment asking whether he "still want[ed] to work" at Collin College as a threat to terminate his employment if he continued to speak out. Defendants Barnes-Tilley and Streater meant to chill Phillips from continuing to engage in protected expression on matters of public concern, and their comments were part of Defendants' custom or practice of preventing faculty from speaking on matters of public concern.

### *Defendant Streater Issues Phillips a Negative Performance Appraisal Because of His Protected Speech.*

60.     Collin College faculty receive a "Faculty Performance Appraisal" each year. Phillips received his 2019–2020 FT Faculty Performance Appraisal on June 24, 2020.

61.     In his 2019–2020 FT Faculty Performance Appraisal, Phillips received a rating of "Improvement Needed" on "Performs duties and responsibilities in accordance with established policies, procedures and departmental expectations."

62.     Defendant Streater made the following comments concerning Phillips's performance, specifically citing his interview with the *Washington Post* concerning his area of expertise, and his Facebook post about the College's COVID-19 response:

> While it is clear that Dr. Phillips is respectful of his students and their ideas, he has struggled this year when it comes to respecting college directives and communicating accurate information in social media. As the fall semester began, he was interviewed by the Washington Post in spite of a directive by the college president's office to all Collin personnel to not speak to the press following the mass shooting in El Paso. As the COVID shut down occurred and the college's re-opening plans were being discussed, Dr. Phillips published inaccurate information on his public Facebook page. While he may not always agree with the directives or with the direction that the college leadership is moving, disregard for that or publication of untruths or misinformation does not adhere to Collin Core Values of Integrity, Dignity or Respect. There are appropriate avenues and processes in place within the college for Dr. Phillips to ask questions or raise concerns, including Faculty Council or the Associate Dean or Dean.

63.     Defendant Streater did not identify what information Phillips posted on his Facebook page that was "inaccurate" or amounted to "untruths or misinformation."

64.     None of Phillips's posts about the College's COVID-19 response on his personal Facebook page were untrue.

65.     Defendant Streater's only negative comments in Phillips's 2019–2020 Faculty Performance Appraisal concerned his speech on matters of public concern.

66.     Defendant Streater otherwise reviewed Phillips favorably. She wrote, "Dr. Phillips fulfills the daily responsibilities and duties of a faculty member at Collin College." She also commended Phillips for his courtesy, professionalism, and respectfulness in his interactions with students. She reported that one student "noted that he 'treated all students with fairness and respect, you can really tell he is very passionate about American history.' Additionally, 'I almost dropped all of my classes because I wasn't happy with Collin but I decided to stay in this one

and it's the best choice I ever made. Hes [sic] extremely respectful and has more knowledge about history than any professor or teacher I've had in my entire life.'"

67.     The 2019–2020 Performance Appraisal was the first negative performance review Phillips received from the College.

68.     Throughout his fourteen-year career at Collin College, Phillips received positive reviews and student evaluations.

69.     For example, in Phillips's 2018–2019 Faculty Performance Appraisal, Defendant Streater praised Phillips as "an engaged student supporter at Collin College" and said he "is able to point students to the resources they need on campus." She also said "students have remarked on his dedication to their learning, saying, 'He is polite and willing to answer any questions students may have. He is also willing to entertain students with differing viewpoints, responds quickly to questions outside of class, and is very willing to meet with students that have questions after class."

***Collin College Disciplines Phillips Again for Facebook Post About the College's COVID-19 Policy.***

70.     On August 11, 2021, Defendant O'Quin hosted a meeting with faculty about the fall 2021 semester during which she forbade faculty from requesting, requiring, or recommending masks on signs or in syllabi.

71.     Later that day, Phillips posted a photo of a slide from the meeting with Defendant O'Quin on his personal Facebook page and his personal Twitter account.

72.     Phillips's Facebook post and tweet of the image included the message, "Note what we were told about discussing masks and Covid with students at my college today."

73.     As he did in 2020, Phillips spoke as a private citizen when he made this post related to efforts to prevent the spread of COVID-19, which is a matter of public concern.

74.     During the meeting, Defendant O'Quin attempted to justify the College's direct censorship of professors on a matter of public concern by referring to an Executive Order from Texas Governor Greg Abbott.

75.     Defendant O'Quin was referring to Executive Order GA-38, which prohibited any governmental entity in Texas from mandating the use of face coverings.

76.     Phillips found Defendant O'Quin's invocation of the Executive Order to justify censorship nonsensical because Executive Order GA-38 encouraged individuals "to follow the safe practices they have already mastered, such as wearing face coverings . . . ."

77.     Contrary to the College's position, the text of Executive Order GA-38 did not ban public college professors (or any other state employee) from encouraging mask-wearing.

78.     On August 27, 2021, Defendant Streater issued Phillips a "Level 1 Warning" for his Facebook and Twitter posts.

79.     Defendant Streater identified Phillips's continued conduct in "not bringing his concerns in an appropriate manner" as the reason for the August 27 reprimand.

80.     Defendant Streater also cited Phillips's July 2019 interview with the *Washington Post* and June 2020 Facebook post as bases for punishing Phillips for failing to use "all internal communication channels" to address his concerns.

81.     The reprimand alleged Phillips's Facebook post constituted "insubordination" and that he had violated the Code of Professional Ethics.

82.     The "Level 1 Warning" yet again formalized the College's disapproval of Phillips's speech on matters of public concern and was meant to, and in fact did, punish Phillips and chill him from continuing to engage in such speech.

83.     Collin College issues Level 1 Warnings to faculty using an "Employee Discipline Form" that details "the employee's primary job responsibilities or behaviors that require attention."

84.     A Level 1 Warning is the first step on the College's Employee Discipline Form. The following steps are a "Level 2 Warning" and "Recommendation for Suspension."

***Based on Phillips's Protected Speech, Collin College Administrators Do Not Recommend Renewal of Phillips's Three-Year Contract.***

85.     Four days later, on August 31, 2021, Defendants Streater and O'Quin met with Phillips to discuss his contract. In that meeting, Defendants Streater and O'Quin notified Phillips that they were not recommending him for a three-year contract extension.

86.     Defendants Streater and O'Quin notified Phillips that, under College policy, he could appeal this decision through the grievance process, apply for a new contract, or both.

87.     Phillips filed a grievance challenging his non-renewal on September 14, 2021, on the grounds that the non-renewal constituted unlawful retaliation for speaking on matters of public concern.

88.     Phillips requested that Defendants Streater and O'Quin acknowledge his expressive and academic freedom rights by reversing their recommendation of non-renewal.

89.     Phillips also timely applied for a new contract through Collin College's "Council on Excellence."

90.     The Council on Excellence is a group of faculty members organized by the College to assist with evaluating other faculty who are applying for new contracts.

91.     The Council on Excellence evaluates faculty based on their record of teaching, professional development, student support, and college service.

92.     The Council on Excellence's recommendations concerning faculty contracts are non-binding, meaning that the College and President Matkin may ignore their recommendation.

***Collin College Punishes Phillips for Teaching About the History of Pandemics.***

93.     During the first session of one of his history courses for the fall 2021 semester, Phillips covered the history of pandemics and assigned a timely topic for his students: writing a paper on the history of pandemics and epidemics in North America from Columbus to COVID-19.

94.     In the course of his teaching, he reviewed anti-mask advocacy groups that sprang up during the influenza pandemic of 1918–19, and he explained that historians found such resistance seriously damaged efforts to bring the flu under control.

95.     In an effort to learn from history instead of being doomed to repeat it, Phillips suggested that students consider wearing masks.

96.     When Phillips made his comments, he disclosed to students his own annoyance with wearing masks but reiterated that past resistance to such policies had hindered societies attempting to combat the spread of a virus during pandemics.

97.     Phillips's in-class comments concerning masks were pedagogically relevant to his lecture and assignment on the history of pandemics.

98.     During the fall 2021 semester and after Defendants Streater and O'Quin notified Phillips that he was being non-renewed, Defendant O'Quin again disciplined him, this time for his speech related to COVID-19 in his history course.

99.     Defendant O'Quin met with Phillips on September 17, 2021, to notify him that "a couple" students had complained about his in-class comments concerning mask-wearing. In the meeting, Defendant O'Quin told Phillips that "in order to make sure no one mandates masks, it's best never to discuss them at all."

15

100.    Defendant O'Quin also placed Phillips on a "Performance Improvement Plan."

101.    On November 3, 2021, as part of Phillips's "Performance Improvement Plan," Defendant O'Quin observed his class.

102.    After observing Phillips's class, Defendant O'Quin reported that Phillips "treated his students with respect" and "presented enthusiastically and seemed passionate and knowledgeable about the topic." She also reported that he has "a good rapport with his students."

***Collin College Denies Phillips's Grievance and Application for a New Contract, Citing His Speech.***

103.    Ultimately, on December 16, 2021, the College denied Phillips's grievance challenging his non-renewal.

104.    The Council on Excellence, however, recommended that Phillips be granted a new contract.

105.    Under Collin College policy, College administrators are responsible for presenting the Council's recommendation to President Matkin. *See* Collin College Board Policy Manual, DCA(LOCAL), Employment Practices, Term Contracts.

106.    Upon information and belief, Defendants Johnson and Barnes-Tilley presented the Council on Excellence's recommendation to Matkin, but recommended that Matkin not grant Phillips a contract.

107.    Defendant Johnson met with Phillips on January 26, 2022, and informed him it was "highly likely" Matkin would follow his recommendation that Phillips not receive a new contract, and asked Phillips whether there was a way they could "create a narrative" that would allow Phillips to make a "graceful exit" from Collin College.

108.    On January 28, 2022, Phillips was called into a "notification" meeting with Collin College administrators about the status of his contract.

109.    At the meeting, Defendant Barnes-Tilley informed Phillips that the decision not to renew his contract had been approved by President Matkin.

110.    Defendant Barnes-Tilley also told Phillips that administrators could review factors outside those considered by the Council on Excellence, and that they decided to non-renew him because he had "repeatedly" gone outside administrative channels to "address [his] concerns," referring to Phillips's public criticism of the College.

111.    Later that day, Defendant Johnson informed Phillips in writing that he would not receive a new contract, rejecting the Council on Excellence's recommendation. Defendant Johnson reiterated that Phillips's grievance had been denied and, therefore, he would be terminated from his position at Collin College upon the expiration of his current contract in May 2022.

112.    Phillips's statements to the press regarding his area of expertise, criticism of the College's handling of the COVID-19 pandemic on his personal social media, or his in-class comments about the history of masking did not impair the functioning of Collin College or cause any disruption on campus.

113.    Collin College did not cancel any classes due to Phillips's statements to the press regarding his area of expertise, criticism of the College's handling of the COVID-19 pandemic on his personal social media, or in-class comments about the history of masking.

114.    Phillips's statements to the press regarding his area of expertise, criticism of the College's handling of the COVID-19 pandemic on his personal social media, and in-class comments about the history of masking did not impact his ability to teach his courses.

***Defendants Have Adopted a Custom or Practice of Retaliating Against Professors Who Speak on Matters of Public Concern.***

115.    Statements and actions by Defendants Collin College, President Matkin, and the Board of Trustees evince a custom or practice of terminating professors who speak out on matters of public concern.

116.    At a candidates' forum in 2015, then-Collin College Board of Trustees Chair Robert Collins said that academia's tenure system allows "ultra-liberal, anti-capitalism, socialistic professors" to become entrenched. Accordingly, Collins said that the lack of a tenure system at Collin College is "by design."

117.    Since the COVID-19 pandemic began, Defendants have used their lack-of-tenure "system" to implement an unconstitutional policy of terminating or disciplining professors who speak out on matters of public concern, including at least three other faculty members in addition to Phillips: Lora Burnett, Suzanne Jones, and Audra Heaslip.

118.    Professors Jones and Heaslip were both officers of the Texas Faculty Association (TFA) chapter at Collin College. TFA is the statewide affiliate of the Texas State Teachers Association and the National Education Association and works to protect the rights of higher education faculty.

119.    On September 22, 2021, Jones filed a lawsuit alleging, among other claims, violations of the First Amendment.

120.    Jones alleged that Collin College, President Neil Matkin, and Vice President Toni Jenkins retaliated against her by authorizing the non-renewal of Jones's teaching contract due to her expression regarding COVID-19 and her association with TFA.

18

121.     Jones also alleged that the Board of Trustees enacted a formal or informal policy of retaliation by its knowledge of Jones's protected speech and its failure to intervene and correct Jones's non-renewal because of that speech.

122.     Jones's case against the College remains pending.

123.     Heaslip also believed that she was terminated due to her protected expression regarding COVID-19 and her association with TFA, both matters of public concern.

124.     Upon information and belief, Heaslip entered into a settlement agreement with the College in lieu of filing a lawsuit challenging the College's decision.

125.     On October 26, 2021, Burnett, represented by undersigned counsel, filed a lawsuit also alleging violations of the First Amendment.

126.     Burnett alleged that Collin College and President Neil Matkin retaliated against her by authorizing the non-renewal of her teaching contract due to her expression regarding COVID-19 and a tweet concerning former Vice President Mike Pence, who was running for re-election at the time.

127.     On February 7, 2022, the Court entered judgment against the College in favor of Burnett.

128.     As a part of the judgment, the College agreed to pay Burnett $70,000 for damages as well as just over $38,000 for her attorneys' fees.

129.     Collin College's custom or practice of terminating professors who speak out on matters of public concern has garnered a significant amount of media attention and prompted demonstrations.

130.     *KERA News* reported that "[s]everal professors have told KERA they are afraid of losing their jobs if they speak critically of the school's leadership." That same story reported that

TFA President Pat Heintzelman has had more calls about Collin College than any other institution in Texas. Bill Zeeble, *Two Collin College Professors Say They're Being Dismissed After Criticizing COVID-19 Policies*, KERA News (Feb. 5, 2021), *available at* https://www.keranews.org/education/2021-02-01/two-collin-college-professors-say-theyre-being-dismissed-after-criticizing-covid-19-policies [https://perma.cc/NKW4-H8AG].

131.    One story from February 2021 quoted Jones as saying that the Collin College administration does not want "faculty getting together and having a collective voice." Talia Richman & Anna Caplan, *Collin College Professors Say Admin Pushing Them Out Over COVID-19 Criticism*, Dallas Morning News (Feb. 1, 2021), *available at* https://www.dallasnews.com/news/education/2021/02/01/collin-college-professors-say-admin-pushing-them-out-over-covid-19-criticism [https://perma.cc/C87R-W69W].

132.    At its March 2, 2021, board meeting, *KERA* reported that over 100 protesters attended to demand that Collin College reinstate the professors that it fired. Hady Mawajdeh & Bill Zeeble, *Collin College Professors' Fight For COVID-19 Protocols Shifts to A Fight Over Free Speech*, KERA News (Mar. 17, 2021), *available at* https://www.keranews.org/education/2021-03-17/collin-college-professors-fight-for-covid-19-protocols-shifts-to-a-fight-over-free-speech [https://perma.cc/9HEK-CBDG].

133.    In a story covering the protest against Collin College's "culture of fear and retaliation," at its March board meeting, *The Dallas Morning News* quoted a former teacher at Collin College who said, "Terminations and intimidation are driving away the excellent teachers responsible for so much of the student experience." Talia Richman, *'Fear Is Not a Core Value': Protesters Call on Collin College Board to Act After 3 Professors Pushed Out*, Dallas Morning News (Mar. 3, 2021), *available at* https://www.dallasnews.com/news/education/2021/03/03/fear-

is-not-a-core-value-protesters-call-on-collin-college-board-to-act-after-three-professors-pushed-out [https://perma.cc/96LT-NHG5].

134.    *The Dallas Morning News* also reported that several of the speakers told the Board of Trustees that Defendants' actions "marred the school's reputation and fostered fear among the faculty." Other speakers read statements on behalf of professors who wished to remain anonymous due to fear of retaliation. *Id.*

135.    Collin College's actions against its faculty also became a key issue in the May 1, 2021, election for three of the nine seats on the Collin College Board of Trustees. The then-challenger to board chair Bob Collins said during a candidate forum: "When a professor feels that she can't speak out against the policies when it comes to COVID-19 because of their fear or differences in beliefs from the president, then that's a problem." Bill Zeeble, *Collin College First Amendment Fight Moves to the Ballot Box With Spring Board Election*, KERA News (Apr. 22, 2021), *available at* https://www.keranews.org/politics/2021-04-22/collin-college-first-amendment-fight-moves-to-the-ballot-box-with-board-elections-may-1 [https://perma.cc/T849-J2TT].

136.    Based on the foregoing, it is clear that Defendants Collin College and the members of the Board of Trustees created an unconstitutional custom or practice of terminating instructors who commented on matters of public concern in ways with which the College disagrees.

137.    This unconstitutional custom or practice was facilitated by their "system" without tenure, designed to allow the termination of professors for "no reason at all." *See* Collin College Board Policy Manual, DMAB (Legal), Term Contracts, Nonrenewal ("The board of trustees may

decide by vote or inaction not to offer any employee further employment with the college district beyond the term of the contract for any reason or no reason.").

138.    Instead of addressing or attempting to halt this unconstitutional custom or practice, the Board of Trustees moved to violate the First Amendment rights of public speakers at a June 2021 Board meeting by distributing guidelines to speakers ahead of the public comment period stating that "[a]nger . . . [is] not acceptable behavior during the public comment period."

139.    Moreover, the Board of Trustees appears to have already tried to keep the concerns (and potential lawsuits) of terminated professors out of public view by utilizing non-disclosure agreements, as *The Chronicle of Higher Education* reported that "Ex-employees who spoke to The Chronicle on the condition of anonymity say they were coerced into signing legal nondisclosure agreements on their way out the door, in exchange for severance pay or a small financial settlement." Michael Vasquez, *'That Man Makes Me Crazy' How One President Shattered Norms, Played Down COVID-19, and Sent His Critics Packing*, Chronicle of Higher Education (Apr. 13, 2021), *available at* https://www.chronicle.com/article/that-man-makes-me-crazy [https://perma.cc/6Q5B-PZXG].

140.    Two days before Phillips was notified President Matkin had officially affirmed the decision that his contract would not be renewed, Senior Vice President Johnson encouraged Phillips to work with the College to "create a narrative . . . that we can live with" that would facilitate Phillips's "graceful" exit from the College.

141.    As demonstrated by Collin College's recent treatment of its professors, the corresponding media coverage, attempt to regulate the "anger" of public speakers, and use of nondisclosure agreements, Defendants have exhibited an attitude of deliberate indifference

toward the First Amendment rights of its professors, like Phillips, which is a feature, not a defect, of Defendants' lack-of-tenure "system" of engaging instructors and professors.

142.    Defendants' implementation of its unconstitutional custom or practice also earned Collin College a spot on the Foundation for Individual Rights in Education's *10 Worst Colleges for Free Speech* list two years in a row, and caught the attention of other free speech and academic organizations.

143.    For example, in a statement concerning the terminations of Burnett, Jones, and Heaslip, PEN America, a free speech advocacy group dedicated to the freedom to write, stated that "Collin College's leaders appear to need a lesson in the First Amendment . . . . It's hard to imagine a more alarming pattern of what appears to be blatant retaliation against faculty for protected speech." *Third Professor at Texas Community College Effectively Fired After Criticizing School's Leadership*, PEN America (Mar. 2, 2021), *available at* https://pen.org/press-release/third-professor-at-texas-community-college-effectively-fired-after-criticizing-schools-leadership [https://perma.cc/FQ8A-PM4H].

144.    The American Association of University Professors (AAUP) has also been publicly critical of Defendants' unconstitutional custom or practice.

145.    The Morning News reported in May that the AAUP had sent three letters to Collin College asking it to reinstate the three professors it terminated, and quoted Trustee Stacey Donald as saying "We're not acting consistently with our core values of dignity, respect and integrity right now," regarding the terminations. Valeria Olivares & Talia Richman, *Faculty Dismissals at Collin College Under Review by National Professors Association*, Dallas Morning News (May 20, 2021), *available at* https://www.dallasnews.com/news/education/2021/05/20

/faculty-dismissals-at-collin-college-under-review-by-national-professors-association
[https://perma.cc/9G43-F5WH].

146.   The AAUP also wrote that "actions by the Collin College administration suggest a
pattern of indifference toward academic freedom and norms of shared governance. The actions to
terminate the services of [Burnett and Jones] appear to have been taken in disregard of the
AAUP–AAC&U 1940 *Statement of Principles on Academic Freedom and Tenure*."
*Investigations into Dismissals at Linfield University and Collin College*, Am. Ass'n of Univ.
Professors (May 18, 2021), *available at* https://www.aaup.org/news/investigations-dismissals-
linfield-university-and-collin-college [https://perma.cc/5AU8-RTB5].

147.   Further, the Academic Freedom Alliance wrote a letter to Collin College on
February 2, 2022, after Phillips's non-renewal became public, raising concerns that the College
was unconstitutionally retaliating against Phillips for his speech. See Letter from Keith
Whittington, Chair, Academic Committee, Academic Freedom Alliance, to Neil Matkin,
President, Collin College (Feb. 2, 2022), *available at* https://academicfreedom.org/wp-
content/uploads/2022/02/AFA-Letter-to-Collin-College-regarding-Michael-Phillips.pdf
[https://perma.cc/5V26-M6R9].

148.   The American Historical Association wrote a letter to Collin College on February
7, 2022, after Phillips's non-renewal became public, raising concerns that the College was
unconstitutionally retaliating against Phillips for his speech. See Letter from James Grossman,
Executive Director, American Historical Association, to Neil Matkin, President, Collin College
(Feb. 7, 2022), *available at* https://www.historians.org/Documents/News%20and%20Advocacy
/2022/phillips-Collin%20Coll_final.pdf [https://perma.cc/THQ9-YS45].

149.     Finally, the East Texas Historical Association Board of Directors passed a resolution on February 10, 2022, emphasizing that "[f]reedom of speech and academic freedom are essential hallmarks of . . . the liberal tradition of this nation's higher education system" and condemning Collin College's "offenses against Dr. Phillips." Resolution of the Bd. of Directors, E. Tex. Historical Ass'n (Feb. 10, 2022), *available at* https://etha.wildapricot.org/ [https://perma.cc/GJ8B-GVQJ].

150.     The Collin College chapter of the TFA—the same organization Jones and Heaslip led before Collin College terminated them, citing their association with the organization—started a change.org petition calling on the College to reinstate Phillips and take other steps to protect faculty rights. The petition has 2,384 signatories at the time of this filing. *Reinstate Dr. Michael Phillips and Commit to Free Speech at Collin College*, Change.org, *available at* https://www.change.org/p/petition-collin-college-reinstate-dr-michael-phillips-and-commit-to-free-speech-at-collin-college.

151.     As demonstrated by the media coverage and statements from multiple free speech and academic organizations, Defendants' custom or practice of terminating professors who speak out on matters of public concern is well-known, ongoing, and at odds with both standard practice at public colleges and the First Amendment.

***Collin College's Actions Have Deprived Phillips of His Constitutional Rights, and Caused Him Economic and Emotional Damage.***

152.     As a direct and proximate result of Defendants' acts, Phillips has suffered irreparable injury, including being deprived of his constitutional right to free expression.

153.     Defendants' conduct has caused Plaintiff irreparable harm by violating his First Amendment right to free expression and precluding him from engaging in First Amendment-protected expression in connection with teaching at Collin College.

25

154.    Defendants' adoption and enforcement of overbroad policies and practices restricting faculty speech rights have caused Plaintiff and other Collin College faculty irreparable harm by chilling their right to engage in expression on matters of public concern.

155.    Phillips suffered an adverse employment action due to Defendants' non-renewal of his teaching contract. *See Perry v. Sinderman*, 408 U.S. 593, 598 (1972) (reaffirming that "the nonrenewal of a nontenured public school teacher's one-year contract may not be predicated on his exercise of First and Fourteenth Amendment rights.").

156.    Due to Collin College's non-renewal of Phillips's teaching contract, Phillips has been prevented from earning a salary which he otherwise would have expected to earn.

157.    Under his current contract, Phillips earned a salary of $72,251 per academic year. Phillips expected to earn a similar or slightly higher salary on his subsequent three-year contract.

158.    Defendants acted recklessly and with callous disregard for Phillips's First Amendment rights by retaliating against him for speaking on matters of public concern.

159.    Additionally, Phillips has experienced significant emotional distress and damages to his reputation as a result of Defendants' unconstitutional actions.

### FIRST CAUSE OF ACTION
### First Amendment Retaliation Under 42 U.S.C. § 1983
### (Against All Individual-Capacity Defendants)

160.    Plaintiff re-alleges and incorporates by reference each and every allegation set forth in the preceding paragraphs of this Complaint.

161.    It is clearly established that "A state cannot condition public employment on a basis that infringes the employee's constitutionally protected interest in freedom of expression." *Connick v. Meyers*, 461 U.S. 138, 142 (1983).

162.    As described above, Defendants Streater and O'Quin made the decision not to renew Phillips because of his statements to the press regarding his area of expertise and his

criticism of the College's handling of the COVID-19 pandemic on his personal social media. Despite (a) knowing that the First Amendment protected Phillips's speech and (b) having no justifiable interest in regulating or punishing Phillips's pedagogically relevant speech or speech on matters of public concern, Defendants Johnson, Barnes-Tilley, and Matkin ratified that decision and its unconstitutional basis. In doing so, Defendants unconstitutionally took a calculated adverse employment action against Phillips in retaliation for his protected speech. *See Pickering*, 391 U.S. 563; *Buchanan*, 919 F.3d at 852–53.

163.    Defendants, Matkin, Johnson, Barnes-Tilley, Streater, and O'Quin violated Phillips's clearly established First Amendment rights as a professor by disciplining him for speaking on matters of public concern.

164.    As a direct and proximate result of Defendants' actions as described above, Phillips was deprived of his constitutional rights. As a legal consequence of Defendants' violation of Phillips's First Amendment rights, Phillips is entitled to economic, compensatory, and punitive damages, and the reasonable costs of this lawsuit, including reasonable attorneys' fees.

### SECOND CAUSE OF ACTION
### First Amendment Retaliation Under 42 U.S.C. § 1983
### (Against All Official-Capacity Defendants)

165.    Plaintiff re-alleges and incorporates by reference each and every allegation set forth in the preceding paragraphs of this Complaint.

166.    As described above, Defendants Streater and O'Quin made the decision not to renew Phillips because of his statements to the press regarding his area of expertise and his criticism of the College's handling of the COVID-19 pandemic on his personal social media. Despite (a) knowing that the First Amendment protected Phillips's speech and (b) having no justifiable interest in regulating or punishing Phillips's pedagogically relevant speech or speech

on matters of public concern, Defendants Johnson, Barnes-Tilley, and Matkin ratified that decision and its unconstitutional basis. In doing so, Defendants unconstitutionally took a calculated adverse employment action against Phillips in retaliation for his protected speech. *See Pickering*, 391 U.S. 563; *Buchanan*, 919 F.3d at 852–53.

167.    As a direct and proximate result of Defendants' actions as described above, Phillips has suffered irreparable injury, including being deprived of his constitutional rights to free expression.

168.    Phillips has no adequate legal, administrative, or other remedy by which to prevent or minimize the continuing irreparable harm to his First Amendment rights.

169.    As a direct and proximate result of Defendants' actions as described above, Phillips was deprived of his constitutional rights. As a legal consequence of Defendants' violations of Phillips's First Amendment rights, which are irreparable injuries *per se*, Phillips is entitled to injunctive relief, including but not limited to, mandating that Defendants rescind the non-renewal of Phillips's contract and accept the Council on Excellence's recommendation that he receive a new contract. Phillips is also entitled to a declaration that the non-renewal of his contract was unlawful retaliation for his protected expression.

170.    Defendants' decision to terminate Phillips's employment by refusing to renew his contract presents an ongoing injury to Phillips because the termination creates a present and ongoing risk of tarnishing Phillips's professional reputation for the remainder of his career.

### THIRD CAUSE OF ACTION
### Facial Vagueness Challenge to Code of Professional Ethics
### (Against the College and the Board of Trustees)

171.    Phillips re-alleges and incorporates by reference each and every allegation set forth in the preceding paragraphs of this Complaint.

172.    Defendants Collin Community College District and the Board of Trustees are municipal entities subject to municipal liability under *Monell*, 436 U.S. 658.

173.    The Board of Trustees as a body have the "exclusive power and duty to govern and oversee the management of the public schools of the district," including approving policies of the College. *See* Collin College Board Policy Manual, BAA (Legal)-LJC, Board Legal Status, Powers, Duties, Responsibilities (citing Tex. Educ. Code §§ 1.001(a), 130.082(d), 130.084). The Board of Trustees is a final policy maker for the Collin Community College District.

174.    The Board of Trustees maintains and enforces policies, procedures, and practices that violate the constitutional rights of Phillips and all Collin College faculty, as described in this Complaint. The Board of Trustees and policymakers for the institution were aware or should have been aware of its policies, procedures, and practices, and these policies, procedures, and practices were the moving force leading to the deprivation of the constitutional rights of Phillips, as described below. Despite knowledge of its policies, procedures, and practices, the Board of Trustees was deliberately indifferent to the unconstitutionality of those policies, procedures, and practices as well as the constitutional rights of Phillips and all Collin College faculty.

175.    As described above, Defendants Collin Community College District and the Board of Trustees maintained and enforced policies that are void for vagueness in violation of the Fourteenth Amendment and chill faculty speech.

176.    Actual or constructive knowledge of these policies is attributable to the Board of Trustees, as the College's governing body and policymaker, and to the College itself. Defendants unlawfully restrict faculty speech consistent with its policies.

177.    A regulation violates the Due Process clause of the Fourteenth Amendment for vagueness if a person of ordinary intelligence cannot distinguish between permissible and

prohibited conduct, and when there are no explicit standards to prevent arbitrary and capricious application. *Grayned v. City of Rockford*, 408 U.S. 104, 108 (1972); *People for the Ethical Treatment of Animals v. Hinckley*, 526 F. Supp. 3d 218, 238 (S.D. Tex. 2021).

178.    Under Paragraph 9 of Board Policy DH(EXHIBIT), known as the "Code of Professional Ethics," faculty "shall support the goals and ideals of the College District and shall act in public affairs in such a manner as to bring credit to the College District."

179.    Two of the College's "goals and ideals" as outlined in Paragraph 1 of the Code of Professional Ethics are "dignity" and "respect." These are also included as two the College's "Core Values," which Collin administrators invoked in 2020 when they punished Phillips for speech critical of the College's COVID-19 response on his personal Facebook page because they were not representative of "all [the administration's] work" to manage the pandemic on campus.

180.    Neither the Code of Professional Ethics nor the Core Values define "dignity" or "respect."

181.    Based upon the enforcement of the Code of Professional Ethics as described above, Collin College's Code of Professional Ethics is unconstitutional on its face because it is so vague as to provide no basis for clear and consistent application.

182.    The provision contained in Paragraph 9 of the Code of Professional Ethics is unconstitutional on its face because it is so vague that it authorizes arbitrary and discriminatory application, and fails to provide people of ordinary intelligence a reasonable opportunity to understand what expression might not "bring credit to the College District."

183.    The Code of Professional Ethics is also susceptible to discrimination based on viewpoint because it suppresses speech critical of the College, while, presumably, permitting speech that "bring[s] credit" to the College.

184.   The denial of constitutional rights is an irreparable injury *per se*. *Elrod v. Burns*, 427 U.S. 347, 373 (1976).

185.   Phillips has no adequate legal, administrative, or other remedy by which to prevent or minimize the continuing irreparable harm to his rights under the First and Fourteenth Amendments.

186.   As a consequence of Defendants' violation of Phillips's First and Fourteenth Amendment rights, Phillips is entitled to declaratory and injunctive relief against Paragraph 9 of the Code of Professional Ethics.

### FOURTH CAUSE OF ACTION
### Facial Overbreadth Challenge to Code of Professional Ethics
### (Against the College and the Board of Trustees)

187.   Phillips re-alleges and incorporates by reference each and every allegation set forth in the preceding paragraphs of this Complaint.

188.   Defendants Collin Community College District and the Board of Trustees are municipal entities, and the Board is a final policymaker for the Community College District, for the reasons alleged in Phillips's Third Cause of Action.

189.   Defendants Collin Community College District and the Board of Trustees maintain and enforce policies that are overbroad in violation of the First Amendment and chill faculty speech.

190.   Actual or constructive knowledge of these policies is attributable to the Board of Trustees, as the College's governing body and policymaker, and to the College itself. Defendants unlawfully restrict faculty speech consistent with its policies.

191.   A regulation violates the First Amendment for overbreadth if "a substantial number of its applications are unconstitutional, judged in relation to the statute's plainly

31

legitimate sweep." *United States v. Stevens*, 559 U.S. 460, 473 (2010) (quotations and citations omitted).

192.     Under Paragraph 9 of the College's Code of Professional Ethics, all faculty must limit their expression to that which "support[s] the goals and ideals of the College District" and "bring[s] credit to the College District."

193.     The provision contained in the Code of Professional Ethics is unconstitutional on its face because it results in a substantial number of unconstitutional applications, allowing the College District and its officials to discipline faculty for speech on matters of public concern that is protected by the First Amendment, but critical of the College District itself or related to a topic the College wishes to suppress.

194.     For example, the College disciplined Phillips for speaking on matters of public concern within his area of expertise in relation to the El Paso shooting because the College wished to manage the public relations crisis that arose when it was made public that the shooter was a former Collin College student.

195.     As another example, the College disciplined Phillips for criticizing its COVID-19 response (a matter of public concern) on his personal social media.

196.     As a direct and proximate result of Defendants' policies, Phillips and all Collin College faculty have suffered irreparable injury, including being deprived of their constitutional rights to free expression. *Broadrick v. Oklahoma*, 413 U.S. 601, 611–12 (1973).

197.     Plaintiff has no adequate legal, administrative, or other remedy by which to prevent or minimize the continuing harm to his First Amendment rights.

198.    Without declaratory and injunctive relief from this Court, Defendants'
unconstitutional actions will continue, and Phillips and all other Collin College faculty will
suffer irreparable harm indefinitely.

199.    As a consequence of Defendants' violation of Phillips's and all Collin College
faculty's First Amendment rights, Phillips is entitled to declaratory and injunctive relief against
Paragraph 9 of the Code of Professional Ethics.

**FIFTH CAUSE OF ACTION**
**Facial Challenge to Prior Restraints on Faculty Speech**
**(Against the College, the Board of Trustees,**
**and President Matkin in His Official Capacity)**

200.    Phillips re-alleges and incorporates by reference each and every allegation set
forth in the preceding paragraphs of this Complaint.

201.    Defendant Collin Community College District is a municipal entity subject to
municipal liability under *Monell*, 436 U.S. 658. *See Burleson*, 2019 WL 2266633.

202.    As described above, Defendant Collin Community College District, the Board of
Trustees, and President Matkin adopted and enforced policies that were the driving force in a
pattern of persistent, widespread custom or practice of attempting to silence College faculty,
including Phillips.

203.    A blanket restriction on faculty speech as private citizens on matters of public
concern is unconstitutional. *United States v. Nat'l Treasury Emps. Union*, 513 U.S. 454 (1995);
*Barrett v. Thomas*, 649 F.2d 1193 (5th Cir. 1981).

204.    Prior restraints on speech are "the most serious and the least tolerable
infringement on" freedom of expression. *Neb. Press Ass'n v. Stuart*, 427 U.S. 539, 559 (1976).

205.    This policy of enforcing unlawful prior restraints on faculty speech is both
enshrined in written policy and was so common and well-settled a practice as to constitute a

custom or practice that fairly represents the policy of Collin Community College District. Actual or constructive knowledge of this policy is attributable to the Board of Trustees, as the College's governing body and final policymaker, and to President Matkin, who was aware of, approved, and implemented the policy. Consistent with this policy, Defendant Collin College unlawfully and unconstitutionally maintains a prior restraint on faculty speech.

206.   In the context of a prior restraint on speech, the regulation cannot survive unless it "furthers some vital government end by a means that is least restrictive" of free speech. *Barrett*, 649 F.2d at 1200 (quotations omitted).

207.   President Matkin's policy, as explained in his 2019 directive and enforced by Collin College administrators who disciplined Phillips for failing to bring his concerns through the "proper channels," prohibits Collin College faculty from speaking as private citizens on matters of public concern where the matters might draw criticism to the College, or where the faculty member themselves is criticizing the College.

208.   Collin College's policy, as approved by the Board, also restricts faculty before they have even spoken by requiring that they "exercise appropriate restraint, exhibit tolerance for differing opinions, and indicate clearly that they are not an official spokesperson for the College District" when they speak as private citizens.

209.   Collin College's policy, as approved by the Board, also restricts faculty before they have even spoken by requiring that statements made publicly "bring credit to the College District" when they speak as private citizens.

210.   Defendant Barnes-Tilley told Phillips that his contract was being non-renewed because he repeatedly failed to follow College policies and procedures concerning how to address his concerns. But a public employer cannot condition the receipt of a benefit or privilege

on a blanket surrender of First Amendment rights. *Agency for Int'l Dev. v. All. for Open Soc'y Int'l, Inc.,* 570 U.S. 205 (2013).

211.    Defendants can point to no vital government end that requires faculty to refrain from expression critical of the College or expression that isn't "appropria[tely] restrain[ed]." Collin College expects faculty to "toe the prescribed political line." *Barrett*, 649 F.2d at 1200.

212.    Plaintiff has no adequate legal, administrative, or other remedy by which to prevent or minimize the continuing harm to his First Amendment rights.

213.    Without declaratory and injunctive relief from this Court, Defendants' unconstitutional actions will continue, and Phillips and all other Collin College faculty will suffer irreparable harm indefinitely.

214.    As a consequence of Defendants' violation of Phillips's and all Collin College faculty's First Amendment rights, Phillips is entitled to declaratory and injunctive relief against the portion of Collin College's Employee Expression Policy that restricts faculty speech as private citizens, against Matkin's practice of requiring faculty to bring complaints through "appropriate channels" and refer media requests to his office or the College's PR office, and against Paragraph 9 of the Code of Professional Ethics.

**SIXTH CAUSE OF ACTION**
**As-Applied Violation of Plaintiff's First Amendment Rights**
**(Against the College and the Individual-Capacity Defendants)**

215.    Phillips re-alleges and incorporates by reference each and every allegation set forth in the preceding paragraphs of this Complaint.

216.    "Viewpoint discrimination is . . . an egregious form of content discrimination. The government must abstain from regulating speech when the specific motivating ideology or the opinion or perspective of the speaker is the rationale for the restriction." *Rosenberger v. Rector & Visitors of Univ. of Va.*, 515 U.S. 819, 829 (1995).

217.     Defendants discriminated on the basis of viewpoint by non-renewing Phillips's contract because he expressed opinions critical of the College District, and denied Phillips the ability to express his views as a private citizen on matters of public concern.

218.     Defendants engaged in this viewpoint discrimination against Phillips under the Code of Professional Ethics, the Employee Expression Policy, and President Matkin's 2019 directive, and pursuant to Collin College's custom and practice of retaliating against professors who speak on matters of public concern.

219.     Phillips spoke as a private citizen on matters of public concern, and his remarks did not interfere with his duties as a faculty member at Collin. In fact, the Council on Excellence reviewed his teaching, professional development, student support, and college service record and recommended he be awarded a new contract.

220.     As a direct and proximate result of Defendants' policies, custom, and practice Phillips has suffered irreparable injury, including being deprived of his constitutional right to free expression.

221.     Phillips has no adequate legal, administrative, or other remedy by which to prevent or minimize the continuing irreparable harm to his First Amendment rights.

222.     As a direct and proximate result of Defendants' actions, Phillips has suffered emotional distress, injury to his reputation, and loss of income.

223.     As a direct and proximate result of Defendants' actions as described above, Phillips was deprived of his constitutional rights. As a legal consequence of Defendants' violation of Phillips's First and Fourteenth Amendment rights, which are irreparable injuries *per se*, Phillips is entitled to declaratory and injunctive relief, damages, and the reasonable costs of

this lawsuit, including attorneys' fees. Phillips is seeking monetary damages against Defendants

Matkin, Johnson, Barnes-Tilley, Streater, and O'Quin in their individual capacities.

### SEVENTH CAUSE OF ACTION
### *Monell* Claim Under 42 U.S.C. § 1983
### (Against Defendant Collin Community College District)

224.     Phillips re-alleges and incorporates by reference each and every allegation set

forth in the preceding paragraphs of this Complaint.

225.     Defendant Collin Community College District is a municipal entity subject to

municipal liability under *Monell*, 436 U.S. 658. *See Burleson*, 2019 WL 2266633.

226.     As described above, Defendant Collin Community College District engaged in a

persistent, widespread custom or practice of Collin College officials, namely the Board of

Trustees and President Matkin, terminating College faculty, including Phillips, because of their

constitutionally protected speech on matters of public concern.

227.     Such discriminatory and unlawful termination was so common and well-settled a

practice as to constitute a custom or practice that fairly represents the policy of Collin

Community College District. Actual or constructive knowledge of this policy is attributable to

the Board of Trustees, as the College's governing body, and to President Matkin, who was aware

of, approved, and implemented the policy, and who serves as the final decision-maker on faculty

employment at the College. Consistent with this policy, Defendant Collin College unlawfully

and unconstitutionally terminated Phillips in violation of his First Amendment rights.

228.     Even a single decision or act by a final policymaker can give rise to liability under

Section 1983. "It is well established that a municipality may be held liable for 'course[s] of

action tailored to a specific situation and not intended to control decisions in later situations,'

provided that 'the decision to adopt that particular course of action is properly made by that

government's authorized decisionmakers.'" *Gonzalez v. Ysleta Indep. Sch. Dist.* 996 F.2d 745, 754 (5th Cir. 1993) (quoting *Pembaur v. City of Cincinnati*, 475 U.S. 469, 481 (1986)).

229.    As a legal consequence of Defendant Collin College's violation of Phillips's First Amendment rights, Phillips is entitled to economic and compensatory damages, and reasonable costs of this lawsuit, including reasonable attorneys' fees.

230.    As a legal consequence of Defendant Collin College's violation of Phillips's First Amendment rights, Phillips is also entitled to injunctive relief mandating that Defendant rescind its decision not to renew his employment and accept the Council on Excellence's recommendation that he be awarded a new contract. Phillips is also entitled to declaratory relief ruling that the College's custom or practice of retaliating against faculty for speaking on matters of public concern is unlawful.

## PRAYER FOR RELIEF

WHEREFORE, Phillips respectfully requests that this Court enter judgment against Defendants and issue the following forms of relief:

A.    A declaratory judgment against all Defendants declaring that Defendants' termination of Phillips violated his constitutional rights;

B.    A declaratory judgment against Collin College declaring that its custom or practice of retaliating against faculty for their speech on matters of public concern is unconstitutional;

C.    A declaratory judgment against Collin College declaring that the Code of Professional Ethics is unconstitutionally overbroad in violation of the First Amendment;

D.    A declaratory judgment against Collin College declaring that the Code of Professional Ethics is unconstitutionally vague in violation of the Fourteenth Amendment;

E.      A declaratory judgment against Collin College, the Board, and President Matkin declaring that Matkin's policy, as explained in his 2019 email, the challenged portion of the Faculty Expression Policy, and Paragraph 9 of the Code of Professional Ethics are unconstitutional prior restraints on faculty speech;

F.      A permanent injunction mandating that all Defendants commit to instituting protections that will prevent other faculty members from being terminated for their expression on matters of public concern or that criticizes Collin College, including but not limited to, requiring Defendants to undergo training concerning the First Amendment rights of faculty members;

G.      A permanent injunction mandating that Collin College and Matkin cease enforcement of Matkin's policy, as explained in his 2019 email, barring faculty from speaking to the press about public issues;

H.      A permanent injunction mandating that Collin College cease enforcement of the Code of Professional Ethics prior restraint requiring that faculty display "dignity" and "respect" and engage only in activity that "bring[s] credit" to Collin College;

I.      A permanent injunction mandating that Collin College cease enforcement of the prior restraint contained in Board Policy Manual, DGC(LOCAL)-X requiring that faculty "exercise appropriate restraint, exhibit tolerance for differing opinions, and indicate clearly that they are not an official spokesperson for the College District" when they speak as private citizens;

J.      An injunction against Collin College and the official-capacity Defendants rescinding the non-renewal of Phillips's contract and mandating they follow the Council on Excellence's recommendation that he receive a new contract;

K.      An award of monetary damages against Collin College, the Board, and the individual-capacity Defendants in an amount to be determined by the Court and Jury to compensate Phillips for Defendants' interference with Phillips's rights under the U.S. Constitution, their interference with his ability to earn an income, and other damages caused by their unconstitutional actions;

L.      An award of punitive damages against Defendants in their individual capacities for their reckless and callous disregard for Phillips's First Amendment rights;

M.      An award of attorneys' fees and costs under 42 U.S.C. § 1988 and other applicable law; and

N.      All other further legal and equitable relief as the Court may deem just and proper.

## DEMAND FOR JURY TRIAL

In compliance with Federal Rule of Civil Procedure 38, Plaintiff demands a trial by jury on all issues so triable.

DATED:      March 8, 2022

Respectfully submitted,

*/s/ Robert W. Schmidt*
Robert W. Schmidt
TX Bar No. 17775429
Crews Law Firm, P.C.
701 Brazos Street, Suite 900
Austin, TX 78701
Telephone: (512) 346-7077, Ext. 103
schmidt@crewsfirm.com

*/s/ Greg Harold Greubel*
Greg Harold Greubel*
PA Bar No. 321130; NJ Bar No. 171622015
Katlyn A. Patton*
OH Bar No. 97911; PA Bar No. 328353

FOUNDATION FOR INDIVIDUAL RIGHTS
 IN EDUCATION
510 Walnut Street; Suite 1250
Philadelphia, PA 19106
Tel: (215) 717-3473
greg.greubel@thefire.org
katlyn.patton@thefire.org
*Pro Hac Vice Motions forthcoming


*Counsel for Plaintiff Joseph Michael Phillips*