**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TEXAS
SHERMAN DIVISION**

| | |
|---|---|
| JOSEPH MICHAEL PHILLIPS, *Plaintiff,* v. COLLIN COMMUNITY COLLEGE DISTRICT *et al.*, *Defendants.* | Civil Action No.: 4:22-cv-184-ALM |

**PLAINTIFF'S OPPOSITION TO DEFENDANTS' MOTION FOR
JUDGMENT ON THE PLEADINGS AND/OR TO DISMISS**

GREG HAROLD GREUBEL*
PA Bar No. 321130; NJ Bar No. 171622015;
CA Bar. No. 343028
KATLYN A. PATTON*
OH Bar No. 97911; PA Bar No. 328353
FOUNDATION FOR INDIVIDUAL RIGHTS
    AND EXPRESSION**
510 Walnut Street; Suite 1250
Philadelphia, PA 19106
Tel: (215) 717-3473
greg.greubel@thefire.org
katlyn.patton@thefire.org

*Admitted *Pro Hac Vice*
**Formerly known as the Foundation for
Individual Rights in Education

ROBERT W. SCHMIDT
TX Bar No. 17775429
CREWS LAW FIRM, P.C.
701 Brazos Street; Suite 900
Austin, TX 78701
Tel: (512) 346-7077, Ext. 103
schmidt@crewsfirm.com

*Counsel for Plaintiff Joseph Michael Phillips*

## <u>TABLE OF CONTENTS</u>

**Page(s)**

TABLE OF AUTHORITIES .......................................................................................................... iii

INTRODUCTION ...........................................................................................................................1

STATEMENT OF FACTS ..............................................................................................................2

      I.      Collin College Maintains Policies That Restrain Faculty from Speaking on Public Issues and Enforced Those Policies to Punish Phillips. ..................................................................................................... 2

      II.     Collin College Punished Phillips for Violating a "Directive" By Speaking with the *Washington Post*. ...................................................... 4

LEGAL ARGUMENT......................................................................................................................6

      I.      Defendants Contradict the Facts Pled in the Complaint. ....................................... 7

      II.     Defendants' Policies Unconstitutionally Prohibit Employees from Speaking on Matters of Public Concern. ................................................. 8

            A.      Public employers must satisfy a high burden to justify broad restrictions on employee speech as private citizens......................... 9

            B.      Defendants cannot satisfy the *NTEU* test................................................... 12

CONCLUSION...............................................................................................................13

## <u>TABLE OF AUTHORITIES</u>

**Page(s)**

**Cases:**

*Alexander v. United States*,
    509 U.S. 544 (1993) ................................................................................................. 10, 11

*Amalgamated Transit Union Loc. 85 v. Port Auth. of Allegheny Cnty.*,
    513 F. Supp. 3d 593 (W.D. Pa. 2021) ............................................................................ 11

*Buchanan v. Alexander*,
    919 F.3d 847 (5th Cir. 2019) .................................................................................... 9, 12

*Cinemark Holdings, Inc. v. Factory Mut. Ins. Co.*,
    500 F. Supp. 3d 565 (E.D. Tex. 2021) .............................................................................. 6

*Crue v. Aiken*,
    370 F.3d 668 (7th Cir. 2004) ........................................................................................ 11

*Gibson v. Tex. Dep't of Ins.–Div. of Workers' Comp.*,
    700 F.3d 227 (5th Cir. 2012) .................................................................................. 10, 11

*Hoover v. Morales*,
    164 F.3d 221 (5th Cir. 1998) ........................................................................................ 10

*Jackson v. City of Hearne*,
    959 F.3d 194 (5th Cir. 2020) .......................................................................................... 6

*Janus v. Am Fed'n of State, Cnty., & Mun. Emps., Council 31*,
    138 S. Ct. 2448 (2018) .................................................................................................... 9

*Milwaukee Police Ass'n v. Jones*,
    192 F.3d 742 (7th Cir. 1999) ........................................................................................ 11

*Smith v. Acevedo*,
    No. A-09-CA-620-SS, 2010 WL 11512363 (W.D. Tex. Sept. 20, 2010) ................... 10, 11

*Smith v. Acevedo*,
    478 Fed. App'x 116 (5th Cir. 2012) ............................................................................. 10

*Pickering v. Bd. of Educ.*,
    391 U.S. 563 (1968) ...................................................................................................... 10

*Turner Broad. Sys., Inc. v. F.C.C.*,
    512 U.S. 622 (1994) ...................................................................................................... 10

*United States v. Nat'l Treasury Emps. Union*,
    513 U.S. 454 (1995) ...................................................................................... 9, 10, 11, 12

**Statutes:**

Fed. R. Civ. P. 12(b)(6)............................................................................................. 1, 6

Fed. R. Civ. P. 12(c), .............................................................................................. 1, 6

Local Rule CV-7 ........................................................................................................ 1

Pursuant to Fed. R. Civ. P. 12(b)(6) and 12(c), Local Rule CV-7, and this Court's June 1, 2022 Order (Dkt. #26, Order Granting Pl.'s Unopposed Mot. for an Extension of Time), Plaintiff Michael Phillips respectfully submits this opposition to Defendants Collin Community College District, the Board of Trustees of Collin Community College District, and President H. Neil Matkin's (the "Moving Defendants") Motion for Judgment on the Pleadings and/or to Dismiss for Failure to State a Claim (Dkt. #23, Defs.' Mot. to Dismiss).

## **INTRODUCTION**

In this First Amendment lawsuit, Phillips challenges Collin College's unconstitutional policies restraining faculty speech and its termination of him for protected speech. After answering the Complaint, Defendants now seek to dismiss just one claim—Phillips's Fifth Cause of Action challenging several Collin College policies as unconstitutional prior restraints on faculty speech. By solely moving to dismiss Phillips's prior restraint claim, Defendants implicitly concede the Complaint's remaining six causes of action sufficiently allege both that Phillips engaged in constitutionally protected speech and that the College's policies and actions challenged in those counts violate the Constitution. Moving Defendants' attempt to dismiss the Fifth Cause of Action fails for two independent reasons.

First, it contradicts facts pled in the Complaint, contrary to the standard Defendants acknowledge controls here. (Dkt. #23, Defs.' Mot. to Dismiss ¶ 3.4). Defendants frame their unconstitutional policies targeted in Phillips's Fifth Cause of Action as no more than a friendly suggestion to faculty to give the College a "heads up" before speaking out on public issues— broadly claiming that their policies "do not forbid faculty from engaging in any expressive activities." (*Id.* ¶ 3.8). But when Phillips did not follow the policies, Collin College punished him on multiple occasions and then fired him. Phillips has personally experienced and unequivocally pled that the policies at issue restrict faculty from speaking freely as private citizens on matters

of public concern. At this stage, Defendants cannot contradict Phillips's factual allegations and claim that the policies used to justify Phillips's unconstitutional termination are benign requests by the administration to be advised of their employees' protected expression.

Second, Moving Defendants ignore the proper legal standard for prior restraints *in the employment context*. Defendants rely upon case law outside of the employment context to support their argument that their unconstitutional policies do not meet a technical definition of "prior restraints." Defendants' policies, however, are prior restraints in the employment context because they prohibit a broad class of employees from speaking on matters of public concern. Simply stated, faculty do not need a permission slip to speak out on public issues as private citizens, but that is what Defendants require.

Because Moving Defendants' argument that their policies do not constitute prior restraints requires the Court to reject facts Phillips pled in the Complaint and relies upon case law outside of the employment context, the Court should deny their Motion.

<u>**STATEMENT OF FACTS**</u>

Phillips's prior restraint claim centers on two overarching points. First, Defendants' policies and practices direct faculty not to speak out as private citizens on matters of public concern. Second, these policies and practices act as prior restraints on faculty speech under threat of punishment, which is evident from the fact that Defendants punished and eventually terminated Phillips for violating the policies and practices at issue.

I.     **Collin College Maintains Policies That Restrain Faculty from Speaking on Public Issues and Enforced Those Policies to Punish Phillips.**

Collin College's Code of Professional Ethics requires faculty to "support the goals and ideals of the College District" and to "act in public affairs in such a manner as to bring credit to the College District." (Dkt. #1, Compl. ¶ 178). Collin College's Employee Expression Policy

further requires faculty, when speaking as private citizens, to "exercise appropriate restraint, exhibit tolerance for differing opinions, and indicate clearly that they are not an official spokesperson for the College District." (*Id.* ¶ 208). Together, these policies forbid faculty speech on public issues where that speech might draw criticism to the College, or where faculty themselves hold an opinion critical of the College. (*Id.* ¶ 207).

Collin College has enforced their policies to discipline Phillips on several occasions when he spoke on matters of public concern. In August 2017, Phillips co-authored an open letter in the *Dallas Morning News* on behalf of a local historians' association calling for the removal of Confederate monuments in Dallas. (*Id.* ¶ 29). Phillips spoke as a private citizen in the open letter, and the history, maintenance, and removal of Confederate memorials is a topic of public concern. (*Id.* ¶¶ 32–33). After the *Dallas Morning News* published the open letter, two Collin College administrators censured Phillips, asserting that his open letter violated the Employee Expression Policy and other College policies because it "made the [C]ollege look bad." (*Id.* ¶ 34–36).

In June 2020, amidst the COVID-19 pandemic, Phillips posted on his personal social media accounts to express his views on the College's COVID-19 response. (*Id.* ¶¶ 55–56). Phillips alleges that his social media posts about community safety amidst the COVID-19 pandemic were on a matter of public concern. (*Id.* ¶¶ 57, 73). After Phillips's post, Defendant Streater and Defendant and then-Dean Mary Barnes-Tilley called Phillips to a Zoom meeting on June 19, 2020, where Defendant Barnes-Tilley asked, "Do you still want to work here?" and indicated that his Facebook post violated the College's "Core Values" of "dignity and respect," quoting the College's "Code of Professional Ethics." (*Id.* ¶ 58). In August 2021, Phillips again posted about the College's handling of the COVID-19 pandemic, criticizing the College for

prohibiting faculty from discussing the use of masks with students. (*Id.* ¶ 72). Shortly thereafter, Defendant Streater issued Phillips a reprimand for his social media posts about COVID-19. (*Id.* ¶ 79). According to Streater, the June 2020 and August 2021 posts constituted "insubordination" in violation of the College's policies. (*Id.* ¶ 81).

## II.  Collin College Punished Phillips for Violating a "Directive" By Speaking with the *Washington Post*.

In addition to Collin College's broad policies as described above, Collin College President Neil Matkin has directly forbidden Collin College personnel, including faculty, from speaking on public issues with the press. Phillips's Fifth Cause of Action challenges one such prohibition as a prior restraint on speech. (*Id.* ¶¶ 200–14). The day after a former Collin College student opened fire in a Walmart in El Paso, Texas, targeting Mexican patrons, Defendant Matkin emailed the Collin College community and instructed recipients to "refer all press inquiries you may receive" to the College's Public Relations department, or Matkin's office. (*Id.* ¶¶ 39, 46). Defendant Streater characterized Defendant Matkin's email as a "directive" that must be followed by Phillips and all members of the Collin College community. (*Id.* ¶ 52).

As a recognized scholar and expert on the history of American race relations in Texas (*Id.* ¶¶ 18, 41), Phillips received a press inquiry from the *Washington Post* to provide context for a story about the El Paso shooting. (*Id.* ¶ 41). The *Washington Post* interview was limited to Phillips's expertise, and he spoke as a private citizen, not on behalf of Collin College. (*Id.* ¶¶ 41, 44). Phillips had no confidential information concerning the gunman, who was never one of his students. (*Id.* ¶ 42). Moreover, speech about a mass shooting is speech on a matter of public concern.  (*Id.* ¶ 43). The *Washington Post* article on the El Paso shooting referred to Phillips as "a Collin College professor and historian of race relations in the Dallas-Fort Worth region." (*Id.* ¶ 48).

Defendants punished Phillips for violating Matkin's directive, based on Phillips's speaking to the *Washington Post* about the El Paso shooting. (*Id.* ¶¶ 53, 43, 41). Just a month after the story was published, Defendant Streater issued Phillips an "Employee Coaching Form" because of the interview. (*Id.* ¶ 50). The Employee Coaching Form explicitly stated Phillips was expected "to follow the President's directives" when approached by the media moving forward. (*Id.* ¶ 52). Streater again referenced the interview in Phillips's 2019–2020 Faculty Performance Appraisal, stating Phillips "was interviewed by the Washington Post in spite of a directive by the college president's office to all Collin personnel not to speak to the press following the mass shooting in El Paso." (*Id.* ¶ 62). The Employee Coaching Form and negative performance review punished Phillips by formalizing the College's disapproval of his speech and threatening him with further discipline if he continued to speak on matters of public concern, (*Id.* ¶¶ 53, 61, 62), even though Defendants do not identify any disruption to the operations of Collin College caused by Phillips's interview with the *Washington Post*. Phillips alleges in his Complaint that his speech did not cause any disruption on campus, require Collin College to cancel any classes, or impair his ability to teach his courses. (*Id.* ¶¶ 112–14).

According to Defendant Streater, Phillips violated Matkin's email directive and the College's policies by not using "all internal communication channels" to address concerns, an assertion that referred to Phillips's 2019 *Washington Post* interview. (*Id.* ¶ 80). When Defendants terminated Phillips in January 2022, Defendant Barnes-Tilley again referenced Phillips's failure to raise concerns through appropriate administrative channels. (*Id.* ¶ 110). Defendants' comments make clear that Collin College required Phillips and other faculty to go through "channels" before speaking on matters of public concern and punished Phillips for engaging in protected speech in violation their unconstitutional policies.

## LEGAL ARGUMENT

Phillips sufficiently alleges a claim for prior restraint. As Defendants concede, the Court must accept Phillips's allegations as true and view all facts in the light most favorable to Phillips when ruling on a motion under Fed. R. Civ. P. 12(b)(6) or 12(c). (Dkt. #23, Defs.' Mot. to Dismiss ¶ 3.4)[1]. When the facts in the Complaint are taken as true and viewed in the light most favorable to Phillips, his Fifth Cause of Action states a claim for relief.

Below, Phillips responds to Defendants' arguments and then applies the facts of this case to the proper legal standard. First, Defendants' argument fails because it contradicts the facts in the Complaint, specifically ignoring that Phillips has pled that Defendants punished him under the policies in the Fifth Cause of Action for engaging in expressive activity. Indeed, Phillips specifically alleges that those policies apply when Defendants' employees are speaking as private citizens on matters of public concern. Next, Defendants' argument fails because it is based on cases outside the employment context and ignores cases analyzing "prior restraints" in that context. Phillips has alleged that the policies at issue in his Fifth Cause of Action broadly restrain *employees* from speaking on matters of public concern as private citizens. Finally, Defendants' argument fails because they cannot demonstrate that their interest in preventing employee expression on matters of public concern is so strong it warrants restricting the rights of

---

[1] "A district court may consider documents attached to a motion to dismiss only if the documents are referred to in the plaintiff's complaint and are central to the plaintiff's claims." *Cinemark Holdings, Inc. v. Factory Mut. Ins. Co.*, 500 F. Supp. 3d 565, 568 (E.D. Tex. 2021). However, a conclusory claim that a document supports an allegation in the complaint is insufficient to incorporate that document into the complaint by reference. *Jackson v. City of Hearne*, 959 F.3d 194, 205 (5th Cir. 2020). Plaintiff reserves the right to argue in future proceedings that Defendant Matkin's August 4, 2019, email is not "central" to the Complaint, but Plaintiff will analyze the email for the purposes of defeating this motion.

a broad range of current and future employees to speak, and the public to hear what those employees have to say.

In sum, Defendants' argument fails because it contradicts the facts pled in the Complaint and ignores controlling precedent regarding prior restraints *in the employment context*. For the reasons explained below, this Court should deny Defendants' motion.

## I.     Defendants Contradict the Facts Pled in the Complaint.

First, Defendants' claim that the policies mandating that faculty exercise "restraint," "exhibit tolerance for differing opinions," and "act in public affairs in such a manner as to bring credit to the College District" "do not forbid faculty from engaging in any expressive activities." (Dkt. #1, Compl. ¶¶ 178, 208–209; Dkt. #23, Defs.' Mot. to Dismiss ¶ 3.8). Defendants, however, already punished and terminated Phillips for violating their vague,[2] viewpoint discriminatory,[3] overly broad[4] policies—meaning the policies are clearly meant to prevent faculty like Phillips from publicly criticizing the College on matters of public concern under threat of punishment. (Dkt. #1, Compl. ¶¶ 178–83, 192–94). Defendants cannot ignore that Phillips has alleged that these policies restrict "faculty before they have even spoken by requiring that statements made publicly bring credit to the College District" when they speak as private citizens. (*Id.* ¶ 209).

Second, Defendants' claim that Matkin's email directing faculty to refer press inquiries concerning the El Paso shooter was a simple "head's up" that "does not forbid faculty from talking or expressing their views" contradicts the facts in the Complaint. As Phillips alleged, he

---

[2] Dkt. #1, Compl. ¶¶ 181–83.

[3] *Id.*

[4] *Id.* ¶¶ 192–94.

received an "Employee Coaching Form" based upon his interview with the *Washington Post* that stated Phillips violated the "directive" because he granted the interview and the reporter identified him as a Collin College employee. (Dkt. #1, Compl. ¶ 52). Defendant Streater again censured Phillips by giving him an "Improvement Needed" rating on his performance review because "he was interviewed by the Washington Post in spite of a directive by the college president's office to all Collin personnel to not speak to the press following the mass shooting in El Paso." (*Id.* ¶ 62). Defendant Streater plainly believed that Matkin's directive prohibited Phillips from "speak[ing] to the press" about the shooting. As Phillips has pled, he "spoke as a private citizen in his interview with the *Washington Post* reporter [about the public concern of mass shootings] and did not purport to speak on behalf of Collin College." (*Id.* ¶¶ 43–44). Contrary to Defendants' claim that the "directive" was a benign "heads up" that did not forbid employees from speaking on matters of public concern, Phillips has pled that Defendants enforced these policies to punish him for speaking on matters of public concern. At this stage, Defendants cannot simply set aside these allegations.

## II. Defendants' Policies Unconstitutionally Prohibit Employees from Speaking on Matters of Public Concern.

Where public employers restrict employee speech writ large, forbidding a broad range of employees from speaking as private citizens on matters of public concern, that restriction is unconstitutional unless the employer can demonstrate its interest in preventing the expression is so strong that it warrants restricting the rights of a broad range of current and future employees to speak, and the public to hear what those employees have to say. This is a high bar, and Defendants cannot meet it at this stage because the policies Phillips cites in his Fifth Cause of Action clearly restrict all employee, including faculty, speech, on matters of public concern under threat of punishment—and Defendants carried out that threat with respect to Phillips.

**A.      Public employers must satisfy a high burden to justify broad restrictions on
employee speech as private citizens.**

Generally, public employee First Amendment cases are analyzed under the *Pickering*
framework, which provides that employees' speech as private citizens on matters of public
concern is protected unless the government's interest in maintaining an efficient working
environment outweighs their expressive rights. *See Buchanan v. Alexander*, 919 F.3d 847, 852–
53 (5th Cir. 2019). However, the Supreme Court has modified this test in cases where a public
employer prohibits a broad class of employees from speaking on matters of public concern.
*United States v. Nat'l Treasury Emps. Union* (*NTEU*), 513 U.S. 454, 457 (1995).

In *NTEU,* the Court reviewed a law broadly prohibiting federal employees from
accepting honoraria for delivering speeches or writing articles, even if the employees' speech or
article did not relate to their job duties. *Id.* at 457. In reviewing the honoraria policy, the Court
distinguished between "a post hoc analysis of one employee's speech and its impact on that
employee's public responsibilities . . . [and an analysis of a] wholesale deterrent to a broad
category of expression by a massive number of potential speakers." *Id.* at 467. Although courts
apply *Pickering* to the former cases, the government bears a greater burden in the latter cases
involving broad prohibitions on employee speech. *Id.*

The Supreme Court recently reaffirmed the heightened burden on public employers under
the *NTEU* test for broad prohibitions curtailing employees' speech on matters of public concern.
In *Janus v. American Federation of State, County, & Municipal Employees, Council 31*, the
Court emphasized that while it has "sometimes looked to *Pickering* in considering general rules
that affect broad categories of employees, we have acknowledged that the standard *Pickering*
analysis requires modification . . . ." when a policy broadly impacts employees' speech. 138 S.
Ct. 2448, 2472 (2018) (citing *NTEU*, 513 U.S. at 466–68). The Fifth Circuit and its district courts

have also recognized that the heightened *NTEU* burden applies when a public employer prohibits its employees from speaking on matters of public concern. *Hoover v. Morales*, 164 F.3d 221, 226 (5th Cir. 1998); *Smith v. Acevedo*, No. A-09-CA-620-SS, 2010 WL 11512363, at *5 (W.D. Tex. Sept. 20, 2010), *aff'd*, 478 Fed. App'x 116 (5th Cir. 2012). As the Fifth Circuit explained, "[t]he State bears the burden of justifying these restrictions, and when it enacts a 'wholesale deterrent to a broad category of expression by a massive number of potential speakers', the burden of justification is indeed heavy." *Hoover*, 164 F.3d at 226 (quoting *NTEU*, 513 U.S. at 466–67).

A public employer must "show that the interests of both potential audiences and a vast group of present and future employees in a broad range of present and future expression are outweighed by that expression's 'necessary impact on the actual operation' of the Government." *NTEU*, 513 U.S. at 468 (quoting *Pickering v. Bd. of Educ.*, 391 U.S. 563, 571 (1968)). To meet this "heavy" burden, the government "must demonstrate that the recited harms are real, not merely conjectural, and that the regulation will in fact alleviate these harms in a direct and material way." *NTEU*, 513 U.S. at 475 (quoting *Turner Broad. Sys., Inc. v. F.C.C.*, 512 U.S. 622, 664 (1994)).

Defendants incorrectly rely upon a distinction between "prior restraints and subsequent punishments" to advance the argument that their policies are not prior restraints. (Dkt. #23, Defs.' Mot. to Dismiss ¶ 3.7.) Defendants cite to *Alexander v. United States*, 509 U.S. 544, 550 (1993) and *Gibson v. Texas Department of Insurance–Division of Workers' Compensation*, 700 F.3d 227, 234 (5th Cir. 2012) in support of this proposition. Neither *Alexander* nor *Gibson* are cases in the employment context, thus their usefulness to the instant case is not obvious. *See Alexander*, 509 U.S. at 550 (analyzing forfeiture order in Racketeer Influenced and Corrupt Organizations Act (RICO) case involving owner of an adult entertainment business found guilty

of selling obscene magazine and videotapes); *Gibson*, 700 F.3d at 234–35 (analyzing Texas statute regulating employee advertising under the commercial speech doctrine).

Courts in Texas and across the country have characterized broad policies restraining employee speech as "prior restraints" for over twenty years. *See, e.g.*, *Acevedo*, 2010 WL 11512363, at *5 ("Plaintiff correctly characterizes the General Policy as a prior restraint on free speech."); *Milwaukee Police Ass'n v. Jones*, 192 F.3d 742, 749–50 (7th Cir. 1999) ("The Court [in *NTEU*] recognized that a prior restraint, as opposed to a post hoc disciplinary decision, poses problems not present in *Pickering*."); *Crue v. Aiken*, 370 F.3d 668, 678 (7th Cir. 2004) ("The ban in *NTEU* was in the nature of a prior restraint on a large number of people on a multitude of issues."); *Amalgamated Transit Union Loc. 85 v. Port Auth. of Allegheny Cnty.*, 513 F. Supp. 3d 593, 611 n.7 (W.D. Pa. 2021) ("Thus, consistent with the First Amendment's broader disfavor of prior restraints, the key distinction drawn by *NTEU* was not between speech at work and speech outside of work, but between, on one hand, broad, prior restraints on employee speech related to matters of public concern, and, on the other hand, after-the-fact disciplinary proceedings against individual employees."). Like the prior restraints in all of these cases, Defendants' policies restrict the speech of all Collin College employees—including faculty—on a broad range of public issues, from mass shootings to public health measures to historical monuments. In fact, employee speech on *any* public issue could be deemed not to "bring credit" to the College, if Defendants do not like it.

As analyzed more fully below, *this case* involves a public employer, the College, that maintains and enforces policies that restrain its employees from speaking freely on matters of public concern as private citizens. Based upon the foregoing precedent, Phillips must allege the following to plead a cause of action under the *NTEU* test: (1) Collin College maintained a policy

11

that broadly restrained employees from speaking on matters of public concern as private citizens, and (2) the right of employees to engage in protected speech outweighs Collin College's interest in regulating that speech. *See Buchanan*, 919 F.3d at 853; *see also NTEU*, 513 U.S. at 475. Phillips has satisfied his burden at this stage of the litigation.

**B.    Defendants cannot satisfy the *NTEU* test.**

Phillips has pled facts that will establish that Collin College policies restrain faculty from freely speaking on matters of public concern as private citizens, and the right of faculty members to comment on matters of public concern are outweighed by any proffered basis for the restraints. Phillips's Fifth Cause of Action targets the following three Collin College policies. First, President Matkin's emailed directive to the Collin College community to "refer all press inquiries you may receive" to the College's Public Relations department, or to his office. (Dkt. #1, Compl. ¶ 46). Second, Collin College's Employee Expression Policy, as approved by the Board, requires faculty to "exercise appropriate restraint, exhibit tolerance for differing opinions, and indicate clearly that they are not an official spokesperson for the College District" when they speak as private citizens. (*Id.* ¶ 208). Third, Collin College's Code of Professional Ethics, as approved by the Board, which requires faculty to "support the goals and ideals of the College District" and to "act in public affairs in such a manner as to bring credit to the College District." (*Id.* ¶ 178). Each of these policies restrict faculty *when they speak as private citizens*. (*Id.* ¶ 207) (emphasis added).

As to the first element of the *NTEU* test, Phillips has alleged that each of these policies restrain Collin College employees, including faculty members, from speaking on matters of public concern. Indeed, Phillips has alleged that his speech on matters of public concern was restrained and punished under each of these policies. (*Id.* ¶¶ 35, 36, 53, 58, 62, 78–82, 207–09).

As to the second element, Phillips has alleged that his protected speech outweighs the College's interest in regulating speech because the enforcement of these restrictive policies did not impair the functioning of Collin College, cause any disruption on campus, require Collin College to cancel any classes, or impair his ability to teach his courses. (*Id.* ¶¶ 112–114). The College simply has no justification for broadly restraining his speech or the speech of other employees who wish to comment on matters of public concern as private citizens, and does not assert one in the instant motion.

When the Court considers these factual allegations as true and draws all reasonable inferences in favor of Phillips, it will find that he has pled that the College prohibits a broad class of employees from speaking on matters of public concern.

## <u>CONCLUSION</u>

For the foregoing reasons, this Court should deny the Moving Defendants' Motion for Judgment on the Pleadings and/or to Dismiss the Fifth Cause of Action.

Dated: June 16, 2022

Respectfully submitted,

<table>
<tr>
<td>

*/s/ Greg H. Greubel*
GREG HAROLD GREUBEL*
PA Bar No. 321130; NJ Bar No. 171622015;
CA Bar. No. 343028
KATLYN A. PATTON*
OH Bar No. 97911; PA Bar No. 328353
FOUNDATION FOR INDIVIDUAL RIGHTS
   AND EXPRESSION
510 Walnut Street; Suite 1250
Philadelphia, PA 19106
Tel: (215) 717-3473
greg.greubel@thefire.org
katlyn.patton@thefire.org

</td>
<td>

*/s/ Robert W. Schmidt*
ROBERT W. SCHMIDT
TX Bar No. 17775429
CREWS LAW FIRM, P.C.
701 Brazos Street; Suite 900
Austin, TX 78701
Tel: (512) 346-7077, Ext. 103
schmidt@crewsfirm.com

</td>
</tr>
</table>

 *Admitted *Pro Hac Vice*
*Counsel for Plaintiff Joseph Michael Phillip*

## CERTIFICATE OF SERVICE

Plaintiff's counsel confirms that a true and correct copy of the foregoing was served via the Court's electronic filing system on this day, June 16, 2022. Notice of this filing will be sent by operation of the Court's electronic filing system to all parties indicated below and parties may access this filing through the Court's electronic filing system.

Charles Joseph Crawford
ABERNATHY ROEDER BOYD & HULLETT, PC
1700 Redbud Blvd., Ste 300
McKinney, TX 75069
Tel: (214) 544-4000
ccrawford@abernathy-law.com

Richard Mercer Abernathy
ABERNATHY ROEDER BOYD & HULLETT, PC
1700 Redbud Blvd., Ste 300
McKinney, TX 75069
Tel: (214) 544-4040
rabernathy@abernathy-law.com

Lucas Christopher Henry
ABERNATHY ROEDER BOYD & HULLETT, PC
1700 Redbud Blvd., Ste 300
McKinney, TX 75069
Tel: (214) 544-4040
lhenry@abernathy-law.com

*Counsel for Defendants Collin Community College District, H. Neil Matkin, Abe Johnson, Mary Barnes-Tilley, Kristen Streater, and Chaelle O'Quin*

Robert Jacob Davis
MATTHEWS SHIELS KNOTT EDEN DAVIS & BEANLAND LLP - DALLAS
8131 LBJ Freeway, Ste. 700
Dallas, TX 75251
Tel: (972) 234-3400
bdavis@mssattorneys.com

Joseph Bailey McShane, IV
MATTHEWS SHIELS KNOTT EDEN DAVIS & BEANLAND LLP - DALLAS
8131 LBJ Freeway, Ste. 700
Dallas, TX 75251
Tel: (972) 234-3400
bmcshane@mssattorneys.com

*Counsel for Defendant Board of Trustees of Collin Community College District*

Greg H. Greubel
FOUNDATION FOR INDIVIDUAL RIGHTS AND EXPRESSION
510 Walnut Street, Suite 1250
Philadelphia, PA 19106
Tel: (215) 717-3473
greg.greubel@thefire.org

Robert W. Schmidt
CREWS LAW FIRM, PC
701 Brazos, Ste. 900
Austin, TX 78701
Tel: (512) 346-0007
schmidt@crewsfirm.com

Katlyn A. Patton
FOUNDATION FOR INDIVIDUAL RIGHTS AND
    EXPRESSION
510 Walnut Street, Suite 1250
Philadelphia, PA 19106
Tel: (215) 717-3473
katlyn.patton@thefire.org

*Counsel for Plaintiff Joseph Michael Phillips*

Dated: June 16, 2022

                                    */s/ Greg H. Greubel*
                                    Greg H. Greubel