# IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF TEXAS
### SHERMAN DIVISION

JOSEPH MICHAEL PHILLIPS,

　　　　*Plaintiff,*

　　v.

COLLIN COUNTY COMMUNITY
COLLEGE DISTRICT *et al.*,

　　　　*Defendants.*

Civil Action No.: 4:22-cv-184-ALM

---

## PLAINTIFF'S MOTION FOR PARTIAL SUMMARY JUDGMENT ON CAUSES OF ACTION THREE, FOUR, FIVE, SIX, AND SEVEN AND MEMORANDUM IN SUPPORT

---

GREG HAROLD GREUBEL*
PA Bar No. 321130; NJ Bar No.
171622015; CA Bar. No. 343028
JOSHUA T. BLEISCH*
IN Bar No. 35859-53
FOUNDATION FOR INDIVIDUAL RIGHTS
　AND EXPRESSION
510 Walnut Street; Suite 1250
Philadelphia, PA 19106
Tel: (215) 717-3473
greg.greubel@thefire.org
josh.bleisch@thefire.org

*Admitted *Pro Hac Vice*

JT MORRIS
TX Bar No. 24094444
FOUNDATION FOR INDIVIDUAL RIGHTS
　AND EXPRESSION
700 Pennsylvania Ave. SE, Suite 340
Washington, DC 20003
jt.morris@thefire.org

ROBERT W. SCHMIDT
TX Bar No. 17775429
CREWS LAW FIRM, P.C.
701 Brazos Street; Suite 900
Austin, TX 78701
Tel: (512) 346-7077, Ext. 103
schmidt@crewsfirm.com

*Counsel for Plaintiff Joseph Michael Phillips*

# **TABLE OF CONTENTS**

**Page:**

TABLE OF AUTHORITIES ........................................................ iv

INTRODUCTION ...................................................................1

STATEMENT OF ISSUES.........................................................3

STATEMENT OF UNDISPUTED MATERIAL FACTS............................4

    Collin College's Code of Ethics Requires Employees to Restrain Public
    Comments About the College and Is Overly Broad and Vague. .......................6

    Collin College's Employee Expression Policy Requires Employees to
    Exercise Appropriate Restraint When Speaking Publicly and Is Overly
    Broad and Vague. ............................................................8

    Applying These Policies, Defendants Discipline Dr. Phillips Five Times
    for Speaking on Matters of Public Concern. ...................................9

        Collin College disciplines Dr. Phillips by issuing him a
        memorandum for publicly calling for removal of Confederate
        monuments. ...........................................................9

        Dean Streater disciplines Dr. Phillips by issuing him an
        employee coaching form for speaking to the Washington Post as
        an expert on race relations. ..........................................10

        Collin College disciplines Dr. Phillips by calling him into a
        meeting for Facebook posts about COVID and the College. ................11

        Collin College disciplines Dr. Phillips by issuing him an
        employee discipline form for social media posts about the
        College's COVID policy. ..............................................12

        Collin College disciplines Dr. Phillips by issuing him an
        employee discipline form for his academic lecture about
        pandemic masking...................................................13

    Collin College Refuses to Renew Dr. Phillips's Employment Contract...........14

    Dr. Phillips's Speech Did Not Disrupt the Operations of Collin College. .......16

    Collin College Punishes Other Faculty for Protected Speech..........................16

    Dr. Phillips Files His Complaint and Defeats a Motion to Dismiss...............17

LEGAL ARGUMENT ....................................................................................18

I.    Plaintiff Has Standing to Challenge Collin College's Policies. ............19

II.   Dr. Phillips Is Entitled to Summary Judgment on his Fifth and
      Sixth Causes of Action Because the Challenged Policies Are
      Unconstitutional Prior Restraints........................................................20

      a.    Collin College's Code of Ethics restrain employees' speech. .....22

      b.    Collin College's employee expression policy restrains
            employees' speech. ......................................................................25

III.  Dr. Phillips Is Entitled to Summary Judgment on his Fourth and
      Sixth Causes of Action Because the Challenged Policies Are
      Overbroad. ...........................................................................................27

      a.    Collin College's code of ethics is overbroad because it
            punishes a slew of faculty speech on matters of public
            concern. ......................................................................................28

      b.    Collin College's employee expression policy is overbroad
            because it also prohibits speech on matters of public
            concern. ......................................................................................29

IV.   Dr. Phillips Is Entitled to Summary Judgment on his Third and
      Sixth Cause of Action Because the Challenged Policies are
      Unconstitutionally Vague. ....................................................................30

      a.    No reasonable employee could understand what speech is
            "disrespectful." ...........................................................................31

      b.    Collin College's employee expression policy doesn't define
            "Appropriate Restraint." .............................................................32

V.    Dr. Phillips Is Entitled to Summary Judgment on his Seventh
      Cause of Action Because Collin College's Unconstitutional
      Policies Were the Moving Force Behind President Matkin's
      Decision to Terminate Him....................................................................33

CONCLUSION..............................................................................................34

# <u>TABLE OF AUTHORITIES</u>

**Page(s):**

**Cases:**

*Asgerisson v. Abbott,*
    696 F.3d 454 (5th Cir. 2012)......................................................................27

*Bauer v. Sampson,*
    261 F.3d 775 (9th Cir. 2001).....................................................................29

*Bode v. Kenner City,*
    303 F. Supp. 3d 484 (E.D. La. 2018) .......................................................*Passim*

*Brady v. Tamburini,*
    518 F. Supp. 3d 570 (D.R.I. 2021) ....................................21, 23, 24, 26

*Buchanan v. Alexander,*
    284 F. Supp. 3d 792 (M.D. La. 2018)..............................................19

*Buchanan v. Alexander,*
    919 F.3d 847 (5th Cir. 2019) ..................................................................20

*City of Chicago v. Morales,*
    527 U.S. 41 (1999) .................................................................................32

*Doe v. Beaumont Indep. Sch. Dist.,*
    2022 WL 2783047 (E.D. Tex. July 14, 2022)...................................33

*Dorris v. City of McKinney,*
    214 F. Supp. 3d 552 (E.D. Tex. 2016)..............................................19

*Fairchild v. Liberty Indep. Sch. Dist.,*
    597 F.3d 747 (5th Cir. 2010) ...............................................................30

*Grayned v. City of Rockford,*
    408 U.S. 104 (1972) ..............................................................................31

*Hobbs v. Thompson,*
    448 F.2d 456 (5th Cir. 1971) ..............................................................27

*Vill. of Hoffman Estates v. The Flipside, Hoffman Estates, Inc.,*
    455 U.S. 489 (1982) ..............................................................................27

*James v. Harris Cnty.,*
    577 F.3d 612 (5th Cir. 2009) ...............................................................33

*Jones v. Matkin,*
    2022 WL 3686532 (E.D. Tex. Aug. 25, 2022) ........................................17, 19, 24

*Lane v. Franks,*
    573 U.S. 228 (2014) ..................................................................................24

*Liverman v. City of Petersburg,*
    844 F.3d 400 (4th Cir. 2016) ................................................................*Passim*

*Lujan v. Defenders of Wildlife,*
    504 U.S. 555 (1992) ..................................................................................19

*Mattix v. Hightower,*
    1998 WL 246671 (N.D. Tex. May 3, 1998) ..............................................34

*Monell v. Dep't of Soc. Servs. of N.Y.,*
    436 U.S. 658 (1978) ..............................................................................1, 33

*O'Laughlin v. Palm Beach County,*
    30 F.4th 1045 (11th Cir. 2022) ....................................................21, 27, 28, 29

*Peterson v. City of Fort Worth,*
    588 F.3d 838 (5th Cir. 2009) ....................................................................33

*Phillips v. Collin Cmty. Coll. Dist.,*
    2022 WL 4477698 (E.D. Tex. Sept. 26, 2022) ....................................20, 21

*Sanders v. Christwood,*
    970 F.3d 558 (5th Cir. 2020) ....................................................................18

*Smith v. Acevedo,*
    2010 WL 11512363 (W.D. Tex. Sept. 20, 2010) ..................................20, 21

*Smith v. Coll. of the Mainland,*
    63 F. Supp. 3d 712 (S.D. Tex. 2014) ........................................................27

*Swanson v. City of Plano,*
    2020 WL 6799173 (E.D. Tex. Nov. 19, 2020) ..........................................19

*Turner Broad. Sys., Inc. v. Fed. Commc'n Comm'n,*
    512 U.S. 622 (1994) ..................................................................................24

*United States v. Nat'l Treasury Emps. Union,*
    513 U.S. 454 (1995) ............................................................................20, 24

*Webb v. Town of Saint Joseph,*
    925 F.3d 209 (5th Cir. 2019) ....................................................................33

**Rules:**

Fed. R. Civ. P. 56.................................................................................................1, 18

Local Rule CV-7 ........................................................................................................1

Local Rule CV-56 ......................................................................................................1

Under Fed. R. Civ. P. 56 and Local Rules CV-7 and CV-56, Plaintiff Dr. Michael Phillips moves for partial summary judgment as follows:

1.  Dr. Phillips is entitled to summary judgment on his facial and as-applied claims against Collin College and the Board of Trustees because the College's Code of Professional Ethics and Employee Expression Policy are unconstitutional prior restraints (Causes of Action Five and Six);

2.  Dr. Phillips is entitled to summary judgment on his facial and as-applied claims against Collin College and the Board of Trustees because the College's Code of Professional Ethics and Employee Expression Policy are unconstitutionally overbroad (Causes of Action Four and Six);

3.  Dr. Phillips is entitled to summary judgment on his facial and as-applied claims against Defendants Collin College and the Board of Trustees because the College's Code of Professional Ethics and Employee Expression Policy are unconstitutionally vague (Causes of Action Three and Six);

4.  Dr. Phillips is entitled to summary judgment against Defendant Collin College because the College is liable to Dr. Phillips for violating his First Amendment rights under *Monell v. Department of Social Services of New York*, 436 U.S. 658 (1978) (Cause of Action Seven).

## **INTRODUCTION**

Like many college faculty, award-winning history professor Michael Phillips often shares his expertise with the public, commenting on how the history of race relations colors modern issues like mass shootings. And like most private citizens, Dr. Phillips has voiced his concerns about COVID-19. Yet Dr. Phillips's former

employer, Defendant Collin College, did not respect Dr. Phillips exercising his First Amendment right to speak out about those important matters. Instead, they fired him for it. But professors do not lose their ability to speak about public issues when they work for a public college.

The College, however, testified that it believes its policies trump the Constitution. Even though its officials acknowledge "the First Amendment offers … [faculty] the opportunity to speak," they insist "that speech to still be within the parameters of our policies"—in other words, that "the speech would bring credit to the college."[1] Worse yet, the "parameters" of the College's policies impose unconstitutional prior restraints on employees, while also being unconstitutionally overbroad and vague. There is no dispute that Collin College and its administrators enforced these policies to punish Dr. Phillips for his protected speech.

Thus, the Court should grant summary judgment for Dr. Phillips on his Third, Fourth, Fifth, Sixth, and Seventh Causes of Action. The undisputed facts establish that Collin College's policies: (1) impose a prior restraint on faculty expression about public issues, despite lacking any need to do so; (2) suppress substantially more protected speech than necessary to achieve their goals; (3) make it impossible for employees to know what speech might lead to discipline; and (4) were used by President Neil Matkin, a policy maker for faculty employment, to end Dr. Phillips's employment. No reasonable juror could find otherwise.

---

[1] (Dep. of Fed. R. Civ. Pro. 30(b)(6) Designee Floyd Nickerson (attached as Exhibit A, "Ex. A, Nickerson 30(b)(6) Dep.") 26:16-22.)

## STATEMENT OF ISSUES

1.      The First Amendment prohibits prior restraints on public employees who wish to speak about matters of public concern if the government cannot show the speech substantially impacts the efficient operation of the government. Collin College maintains a Code of Ethics and Employee Expression Policy forcing employees to bring any complaints about the College to administrators before sharing them publicly. Do those policies unconstitutionally restrain faculty speech?

2.      The First Amendment bars policies that reach substantially more protected speech than necessary to accomplish their aims. Collin College's Code of Ethics and Employee Expression Policy broadly regulate faculty speech on matters of public concern and are not necessary for the College to operate. Are those policies unconstitutionally overbroad?

3.      The Fourteenth Amendment bars vague policies that fail to inform an ordinary person about what the policy restricts. Even the College's administrators confess that the College's Code of Ethics and Employee Expression Policy are poorly defined as to key terms like "dignity," "respect," and "appropriate restraint," leaving them ripe for arbitrary enforcement. Are those policies unconstitutionally vague?

4.      Municipalities are liable under Section 1983 where an official policy was the moving force behind the violation of a constitutional right. Here, it is undisputed that the College's final policy maker on employment decisions enforced the College's policies to terminate Dr. Phillips. Were the College's unconstitutional policies the moving force behind Dr. Phillips's termination?

## STATEMENT OF UNDISPUTED MATERIAL FACTS

Dr. Phillips began working at Collin College in 2007 as a history professor. (Dep. of Michael Phillips (attached as Exhibit B, "Ex. B, Phillips Dep.") 9:21-22.) Dr. Phillips specializes in the history of American race relations. (Decl. of Michael Phillips (attached as Exhibit C, "Ex. C, Phillips Decl.") ¶ 3.) In October 2021, the East Texas Historical Association named Dr. Phillips "Educator of the Year" for his work as a history professor at Collin College. (*Id.*) The College's president, Neil Matkin, described Dr. Phillips as an "excellent teacher." (Dep. of Neil Matkin (attached as Exhibit D, "Ex. D, Matkin Dep.") 224:10-11.) On April 15, 2019, Dr. Phillips signed a three-year contract with Collin College running from August 2019 to May 2022. (Ex. B, Phillips Dep. 27:21-28:3.)

Defendant Collin College is an independent political entity organized under Chapter 130 of the Texas Education Code. (Dkt. #41, Defs.' First Am. Answer, ¶ 21.) Defendant the Board of Trustees of Collin County Community College District (the "Board") admits it is a body corporate that has the exclusive power to manage and govern Collin College. (*Id.* ¶ 22.) The Board of Trustees sets all Collin College policies. (Dep. of Fed. R. Civ. Pro. 30(b)(6) Designee Mary Barnes-Tilley (attached as Exhibit E, "Ex. E, Barnes-Tilley 30(b)(6) Dep.") 43:5-6.)

The College acknowledges "the First Amendment offers … individual[s] the opportunity to speak. But as a college …. we would expect that speech to still be within the parameters of our policies." (Ex. A, Nickerson 30(b)(6) Dep. 26:16-22.) If a Collin College employee is alleged to have violated a policy, the employee's immediate supervisor interprets and enforces the policies, occasionally with assistance from the

College's human resources and legal departments. (Ex. A, Nickerson 30(b)(6) Dep. 15:6-15.) Supervisors enforce the policies by issuing "coaching" or "disciplinary" forms to employees with the goal of ensuring compliance with policies in the future. (Ex. E, Barnes-Tilley 30(b)(6) Dep. 54:1-9.)

Leading the College's administration is Defendant Matkin, who has served as President of Collin College since 2015. (Ex. D, Matkin Dep. 13:1-3.) The Board has delegated Matkin the authority to make the final decision to hire or fire faculty members. (Ex. D, Matkin Dep. 86:16-87:9, Ex. 13; Ex. E, Barnes-Tilley 30(b)(6) Dep. 16:5-14.) Defendant Abe Johnson has worked as Senior Vice President of Campus Operations since late 2020. (Dep. of Abe Johnson (attached as Exhibit F, "Ex. F, Johnson Dep.") 9:19-22.) Johnson previously worked as a Campus Provost from 2015 to 2019, and he first met Dr. Phillips in 2018. (Ex. F, Johnson Dep. 9:1-17, 49:1-6.)

Defendant Mary Barnes-Tilley has worked as Campus Provost since approximately August 2021. (Dep. of Mary Barnes-Tilley (attached as Exhibit G, "Ex. G, Barnes-Tilley Dep.") 8:17-9:3.) Barnes-Tilley previously worked as Associate Dean of Academic Affairs then as Dean of Academic Affairs and directly supervised Dr. Phillips from July 2017 to June 2018. (Ex. G, Barnes-Tilley Dep. 20:24-21:9.) Defendant Kristen Streater has worked as Dean of Academic Affairs since January 2021. (Dep. of Kristen Streater (attached as Exhibit H, "Ex. H, Streater Dep.") 9:21-10:2.) Streater previously worked as Associate Dean of Academic Affairs and directly supervised Dr. Phillips from July 2018 to January 2021. (Ex. H, Streater Dep. 10:9-15, 13:13-25.)

Defendant Chaelle O'Quin has worked as Associate Dean of Academic Affairs since March 2021. (Dep. of Chaelle O'Quin (attached as Exhibit I, "Ex. I, O'Quin Dep.") 7:14-17.) O'Quin supervised Dr. Phillips in his final year at Collin College. (*Id.*; Ex. D, Matkin Dep. Ex. 51.) At that time, Associate Dean O'Quin reported to Dean Streater. (Ex. I, O'Quin Dep. 8:7-9, Ex. D, Matkin Dep. Ex. 51.) Dean Streater reported to Provost Barnes-Tilley. (Ex. D, Matkin Dep. Ex. 51.) And Provost Barnes-Tilley reported to Vice President Johnson, who reported to President Matkin. (Ex. D, Matkin Dep. 245:23-24, Ex. 51.)

**Collin College's Code of Ethics Requires Employees to Restrain Public Comments About the College and Is Overly Broad and Vague.**

Collin College maintains policy DH Local bearing the title Employee Standards of Conduct. (Ex. D, Matkin Dep. 32:14-23, Ex. 2.) Within the Employee Standards of Conduct, Collin College also maintains DH Exhibit, called Code of Professional Ethics ("Code of Ethics"). (Ex. E, Barnes-Tilley 30(b)(6) Dep. 27:8-16, Ex. 3.) The Code of Ethics requires that employees "observe the stated policies and procedures of the College District, reserving the right to seek revision in a judicious and appropriate manner." (Ex. E, Barnes-Tilley 30(b)(6) Dep. Ex. 3.) And it instructs employees to "support the goals and ideals of the College District and … act in public affairs in such a manner as to bring credit to the College District." (*Id.*) "According to [the Employee Standards of Conduct,] the employees are to abide by the Code of Professional Ethics and violating that could result in disciplinary action." (Ex. E, Barnes-Tilley 30(b)(6) Dep. 29:5-8, Ex. 3.)

Moreover, the College interprets the Code of Ethics to mean that "we don't want to do things that discredit the college ...." (Ex. A, Nickerson 30(b)(6) Dep. 21:24-22:4.) According to Dean Streater, the Code of Ethics requires employees to bring any concern or disagreement on a matter of public concern about the College to their supervisor or standing committee structure to see if it can be changed. (Ex. H, Streater Dep. 22:8-23:15.) And the College even asserts that "if the employee is posting information publicly on Facebook, then ... we would have to review the information that is presented to make a determination if we think the employee should have used proper channels to address their concerns." (Ex. E, Barnes-Tilley 30(b)(6) Dep. 31:2-10.)

The Code of Ethics also requires employees to "treat all persons with dignity and respect" (*Id.* Ex. 3), and the College lists "dignity" and "respect" as "Core Values" of the College. (Def. Collin Coll.'s Answer to Reqs. for Admis., No. 16, attached as Exhibit J.) Yet despite being grounds for discipline, neither the Code nor any other Collin College document defines the terms "dignity" or "respect." (Ex. J, Def. Collin Coll.'s Answer to Reqs. for Admis. No. 16; Ex. D, Matkin Dep. 68:19-23.) In its deposition, the College testified that "dignity" means "treating others with respect" while "respect" means "just honoring an individual." (Ex. E, Barnes-Tilley 30(b)(6) Dep. 67:16-20.) Dr. Phillips's direct supervisor, Associate Dean O'Quin, admitted that she doesn't "think there's a clear-cut definition that [she] would have given to [her] faculty for dignity and respect." (Ex. I, O'Quin Dep. 13:11-20.)

**Collin College's Employee Expression Policy Requires Employees to Exercise Appropriate Restraint When Speaking Publicly and Is Overly Broad and Vague.**

Collin College also maintains policy DGC Local, titled Employee Rights and Privileges, Employee Expression and Use of College Facilities ("Employee Expression Policy"). (Ex. D, Matkin Dep. 52:3-11, Ex. 5; Ex. A, Nickerson Dep. Ex. 6.) Although the policy claims to support faculty's academic freedom, the College testified "with that freedom comes certain responsibilities." (Ex. A, Nickerson 30(b)(6) Dep. 37:23-38:6.) The policy restricts employees' speech as private citizens on any subject by requiring that they "strive for accuracy, exercise appropriate restraint, exhibit tolerance for differing opinions, and indicate clearly that they are not an official spokesperson for the College District." (Ex. D, Matkin Dep. Ex. 5.) Moreover, the policy requires "faculty members who have differences of opinion with existing or proposed policies or procedures will express these views through the standing committee structure of the College District or their supervising administrators." (*Id.*)

President Matkin admitted "[t]here may be different interpretations" of what it means for faculty members to exercise appropriate restraint. (Ex. D, Matkin Dep. 59:3-11.) While Matkin does not think that the policy is vague, he "could see that someone else might." (*Id.* 59:17-19.)

The Employee Expression Policy requires "all employees to exercise restraint in how they talk to others." (Ex. A, Nickerson 30(b)(6) Dep. 50:11-12.) According to Associate Dean O'Quin, employees violate this policy by saying anything the College thinks is untrue. (Ex. I, O'Quin Dep. 24:16-24.) The policy even applies to employees' off-duty speech "when [the College] hear[s] of something that comes to [the College]

or however it comes to [the College], we will address that because it does impact the college." (Ex. A, Nickerson 30(b)(6) Dep. 51:16-18.)

**Applying These Policies, Defendants Discipline Dr. Phillips Five Times for Speaking on Matters of Public Concern.**

The College has disciplined Dr. Phillips for (1) calling for the removal of Confederate monuments, (2) speaking to a *Washington Post* reporter about race relations, (3) posting about COVID on his personal Facebook account, (4) commenting about the College's masking policy on his personal Twitter account, and (5) giving a lecture where he discussed masking and the history of pandemics. Ultimately, the College, acting through President Matkin, refused to give Dr. Phillips a new three-year contract.

### *Collin College disciplines Dr. Phillips by issuing him a memorandum for publicly calling for removal of Confederate monuments.*

On August 4, 2017, Dr. Phillips co-authored an open letter in the *Dallas Morning News* concerning the removal of Confederate monuments in the Dallas-Fort Worth area. (Ex. B, Phillips Dep. 71:8-14, Ex. 10.) Even though the College admits the removal of Confederate statues in Dallas is a matter of public concern, (Ex. J, Def. Collin Coll.'s Answer to Reqs. for Admis. No. 2), two Collin College administrators summoned Dr. Phillips to a meeting later that month and gave him a memorandum explaining that his open letter in the *Dallas Morning News* violated College policies. (Ex. C, Phillips Decl. ¶ 4; Ex. B, Phillips Dep. 73:13-17; Ex. E, Barnes-Tilley 30(b)(6) Dep. 75:7-13, Ex. 10.) According to the College, Dr. Phillips violated the Employee Expression Policy and a separate policy on the use of the College's resources by

9

identifying himself as Collin College faculty with the College and soliciting signatures using his College email address. (Ex. E, Barnes-Tilley 30(b)(6) Dep. 75:25-76:9.)

### *Dean Streater disciplines Dr. Phillips by issuing him an employee coaching form for speaking to the Washington Post as an expert on race relations.*

On August 3, 2019, a former Collin College student opened fire in a Walmart in El Paso, Texas, targeting Mexican patrons. (Ex. C, Phillips Decl. ¶ 5.) Following the tragedy, a *Washington Post* reporter contacted Dr. Phillips for an interview about his area of expertise—race relations in the Dallas area—to provide context for a story about the El Paso gunman. (*Id.* ¶ 6.) Race relations are a matter of public concern. (Ex. J, Def. Collin Coll.'s Answer to Reqs. for Admis. No. 1; Ex. H, Streater Dep. 18:11-21.) The gunman was not a student of Dr. Phillips, and Dr. Phillips had no confidential knowledge or other inside information relating to the gunman. (Ex. C, Phillips Decl. ¶ 8.) The *Washington Post* published the article on August 9, 2019, referring to Dr. Phillips as "a Collin College professor and historian of race relations in the Dallas-Fort Worth region." (*Id.* ¶ 9.)

Then-Associate Dean Streater approached Dr. Phillips about the interview, who told Streater that he asked the reporter not to identify him as a professor at the College. (Ex. H, Streater Dep. 19:6-17.) Although Streater believed Dr. Phillips, she issued him an Employee Coaching Form[2] for disobeying President Matkin's directive to "[p]lease refer all press inquiries you may receive to Marisela Cadena-Smith at []

---

[2] Supervisors enforce the policies by issuing "coaching" forms to employees with the goal of ensuring compliance with policies in the future. (Ex. E, Barnes-Tilley 30(b)(6) Dep. 54:1-9.)

or by phone to the president's office []." (Ex. C, Phillips Decl. ¶ 5; Ex. H, Streater Dep. 19:18-20, Ex. 2.) In response, Dr. Phillips emailed Streater reiterating that he "asked the reporter to not identify [him] as a member of the Collin faculty, but as an author and a scholar on race relations" and expressing his concern that President Matkin's directive and the College's response to his interview had a "chilling effect on the faculty's free speech." (Ex. H, Streater Dep. Ex. 3.)

### *Collin College disciplines Dr. Phillips by calling him into a meeting for Facebook posts about COVID and the College.*

In June 2020, College employees informed then-Dean Barnes-Tilley about Dr. Phillips's personal Facebook page post about COVID-19. (Ex. E, Barnes-Tilley 30(b)(6) Dep. 64:23-65:3.) Upon review, Barnes-Tilley identified some of Dr. Phillips's social media posts as objectionable, including (1) a post stating "[t]hat feeling when your employer is basically saying the loss of your life is an acceptable calculated risk," (2) a post stating "[i]t looks like we're opening in the fall … masks recommended … no discussion of capping classes," and (3) a post encouraging people to seek doctor's notes to work from home as a reasonable accommodation and describing a dream he had about being on campus. (*Id.* 62:23-63:10, Ex. 8.) Dr. Phillips posted these comments out of concern for the health of his colleagues, as the College had yet to provide instructions about requesting reasonable accommodations. (Ex. B, Phillips Dep. 43:13-45:1.) Streater was upset that Dr. Phillips "was raising these concerns in a public way but not bringing them to us … ." (Ex. H, Streater Dep. 33:12-18.) Barnes-Tilley was also concerned because she believed Dr. Phillips's posts were not accurate. (Ex. G, Barnes-Tilley Dep.79:18-23.)

Barnes-Tilley and Streater asked to meet with Dr. Phillips about the Facebook posts, and Barnes-Tilley created a document outlining the discussion. (Ex. E, Barnes-Tilley 30(b)(6) Dep. 62:23-63:10, Ex. 8; Ex. H, Streater Dep. 30:2-10.) Barnes-Tilley determined that Dr. Phillips's posts violated the Code of Ethics and Employee Expression Policy by not addressing his concerns in a judicious and appropriate manner with one of the College's committees or a supervisor. (Ex. G, Barnes-Tilley Dep. 83:6-19.) Barnes-Tilley also admonished Dr. Phillips during the meeting "not to use your public Facebook page to criticize your employer …." (Ex. E, Barnes-Tilley 30(b)(6) Ex. 8.)

### *Collin College disciplines Dr. Phillips by issuing him an employee discipline form for social media posts about the College's COVID policy.*

In August 2021, Associate Dean O'Quin held a faculty meeting and presented a PowerPoint slide about the College's masking policy. (Ex. E, Barnes-Tilley 30(b)(6) Dep. 55:15-21). Dr. Phillips posted a photo on Twitter of Associate Dean O'Quin's slide with the caption, "Note what we were told about discussing masks and Covid with students at my … college today." (Ex. I, O'Quin Dep. 62:11-20, Ex. 13.) Dr. Phillips did not mention O'Quin in the post. (*Id.* 78:7-17.) Dean Streater soon told Associate Dean O'Quin about Dr. Phillips's tweet, mentioning the College's past discipline against Dr. Phillips for his speech.  (*Id.* 56:8-10, 57:9-16.) O'Quin did not believe that Dr. Phillips's post was "completely accurate" because "it implies that we were told not to discuss masks." (*Id.* 62:22-63:5.)

Dr. Phillips shared the PowerPoint slide on his Twitter page because he felt that it involved a matter of public concern—something the College concedes. (Ex. B,

Phillips Dep. 87:3-4; Ex. E, Barnes-Tilley 30(b)(6) Dep. 62:7-10.) Yet later that August, Dean Streater and Associate Dean O'Quin issued an Employee Discipline Form to Dr. Phillips claiming he violated the Code of Ethics and Employee Expression Policy by sharing the slide on social media. (Ex. E, Barnes-Tilley 30(b)(6) Dep. 52:23-53:2, Ex. 7; Barnes-Tilley Resp. to Pl.'s Interrog. No. 7, attached as Exhibit K.) Provost Barnes-Tilley, Dean Streater, and Associate Dean O'Quin determined Dr. Phillips violated the Code of Ethics and Employee Expression Policy by not addressing his public health concerns in a "judicious and appropriate manner" with one of the College's committees or a supervisor. (Ex. E, Barnes-Tilley 30(b)(6) Dep. Ex. 7; Ex. K, Barnes-Tilley Resp. to Pl.'s Interrog. No. 7.) The discipline form also cited the 2019 coaching form reprimanding Dr. Phillips for giving an interview to the *Washington Post* and "informal coaching" in 2020 as examples of Dr. Phillips "not bring[ing] questions about a directive, about COVID protocols, about things related to college policy and procedure and directives he disagreed with." (Ex. H, Streater Dep. 67:17-68:13.)

### *Collin College disciplines Dr. Phillips by issuing him an employee discipline form for his academic lecture about pandemic masking.*

In August 2021, Dr. Phillips spoke during a lecture about anti-masking leagues created in the 1918-1919 influenza pandemic. (Ex. B, Phillips Dep. 61:19-25; Ex. I, O'Quin Dep. 83:15-20.) One student complained about Dr. Phillips's lecture to the Dean of Students who referred the student to Associate Dean O'Quin. (Ex. I, O'Quin Dep. 84:1-2, 88:12-14.) O'Quin spoke to the student and interviewed other students in Dr. Phillips's class. (*Id.* 84:20-85:7.) During the meeting, the student told O'Quin

13

that she was "uncomfortable with" Dr. Phillips's statements about masking, and O'Quin initially suggested the student not speak to Dr. Phillips about her concerns. (*Id.* 86:10-22.) Associate Dean O'Quin knew that Dr. Phillips made his comments during an academic lecture. (*Id.* 83:15-17.) And O'Quin had a "decent collegial discussion" with Dr. Phillips about the student's concerns. (*Id.* 91:12-19.)

Despite all that, Associate Dean O'Quin still determined Dr. Phillips's academic lecture violated Collin College's Core Values of "dignity" and "respect," and issued an Employee Discipline Form to Dr. Phillips. (*Id.* 83:15-17, 83:25-84:1, Ex. 17; Ex. E, Barnes-Tilley 30(b)(6) Dep. 109:24-25.)

**Collin College Refuses to Renew Dr. Phillips's Employment Contract.**

In 2021, Dr. Phillips was required to apply for a new multiyear contract because Dean Streater and Associate Dean O'Quin did not recommend an automatic extension. (Ex. E, Barnes-Tilley 30(b)(6) Dep. 111:7-13, Ex. 19.) "The Council on Excellence," a group of faculty members who recommend whether to give their peers new contracts, recommended Dr. Phillips for a new contract. (Ex. G, Barnes-Tilley Dep. 138:19-21, Ex. 20.) The Council on Excellence considered four areas: (1) teaching, (2) professional development, (3) college service, and (4) student support. (Ex. C, Barnes-Tilley 30(b)(6) Dep. 114:10-15.)

Despite this, Dean Streater, Provost Barnes-Tilley, and Senior Vice President Johnson, did not recommend Dr. Phillips for that new multiyear contract. (Ex. E, Barnes-Tilley 30(b)(6) Dep. 111:7-18, Ex. 19.) Dean Streater chose not to recommend Dr. Phillips because he posted about matters of public concern on social media without first raising the matters with her. (Ex. H, Streater Dep. 93:7-15, 96:4-97:8.)

14

Vice President Johnson did not recommend Dr. Phillips "solely based on Dr. Phillips not making the available opportunities to work with administration and other internal channels of communication to raise concerns and work with us to come toward a solution." (Ex. F, Johnson Dep. 73:25-74:4.) Provost Barnes-Tilley did not recommend Dr. Phillips because he "had repeatedly not followed board policies regarding bringing concerns to his supervisor or our faculty council using our shared governance structure, and he was asked a number of times." (Ex. G, Barnes-Tilley Dep. 136:15-20.)

Ultimately, President Matkin "is the one who makes decisions on employment of faculty." (Ex. E, Barnes-Tilley 30(b)(6) Dep. 112:12-14.) He could have overruled the recommendations of Streater, Barnes-Tilley, and Johnson. (Ex. D, Matkin Dep. 224:15-20.) But he did not. Instead, Matkin created a "Memo to File" to document his reasons for not giving Dr. Phillips a new contract, terminating his employment relationship. (*Id.* 231:22-232:12, Ex. 48.) In the memo, Matkin wrote that "Dr. Phillips has demonstrated to supervisors that he ignores their directives to follow institutional policies and processes and allow those processes to fully work to address his workplace concern." (*Id.* Ex. 48.) Matkin also wrote that "Dr. Phillips has not sought revision of … disagreements or concerns of procedures in a judicious and appropriate manner as expressly required by Board policy DH(LOCAL) and DH(EXHIBIT)." (*Id.*) Matkin was referring to Dr. Phillips's July 2019 discipline, June 2020 informal coaching, and August 2021 Employee Discipline Form in his Memo. (*Id.* 233:12-234:7.)

**Dr. Phillips's Speech Did Not Disrupt the Operations of Collin College.**

President Matkin is "not aware of major disruptions that Michael has caused at the College." (Ex. D, Matkin Dep. 216:24-25.) Collin College never had to shut down due to anything Dr. Phillips did or said. (Ex. E, Barnes-Tilley 30(b)(6) Dep. 110:7-10.) Nor did it have to cancel a class or retain extra security at the College due to anything Dr. Phillips did or said. (*Id.* 110:10-17.) And Collin College never lost money in the form of tax funding or private grants due to anything Dr. Phillips did or said. (Ex. D, Matkin Dep. 217:7-10.)

**Collin College Punishes Other Faculty for Protected Speech.**

On January 19, 2021, Collin College issued faculty member Lora Burnett an Employee Discipline Form for violating the Employee Expression Policy, after she posted on Twitter that a former Collin College faculty member died of COVID-19. (Ex. A, Nickerson 30(b)(6) Dep. 46:10-14, Ex. 7.) According to the College, Burnett violated the policy because it was not accurate that the professor currently worked at the College. (*Id.* 46:18-25.) Matkin refused Burnett a new contract and testified that in doing so he followed through on his statement to Texas State Representative Jeff Leach that he would "deal with" Burnett for tweeting criticism of Vice President Pence. (Ex. D, Matkin Dep. 103:16-22.) Burnett later sued the College for violating her First Amendment rights, which ended with a Rule 68 judgment against Collin College in favor of Burnett. (Final Judgment, *Burnett v. Collin Cnty. Cmty. Coll. Dist.*, No. 4:21-cv-857 (E.D. Tex. Feb. 7, 2022), ECF No. 14).

The College also ended faculty member Audra Heaslip's employment after the College found she violated the Code of Ethics. (Ex. A, Nickerson 30(b)(6) Dep. 61:7-

25, 62:7-63:2.) The College claims Heaslip violated College policy because she publicly criticized the College's COIVD-19 reopening plan instead of privately raising her concerns with the College. (*Id.* 64:7-10.)

Collin College also ended faculty member Suzanne Jones' employment based on the Code of Ethics. (*Id.* 64:11-21; Ex. D, Matkin Dep. 111:25-112:8.) According to the College, Jones violated College policy when she "went out on her social media account and encouraged community members to send letters, calls, whatever to the district president." (*Id.* 64:7-21.) President Matkin refused Jones a new contract because she solicited "a letter-writing campaign to effect opening the college the day before the college opened for the spring." (Ex. D, Matkin Dep. 106:18-107:19.) Jones sued the College, President Matkin, and another administrator for First Amendment violations. After this Court denied the individual defendants' motion for summary judgment for qualified immunity, the parties settled the case. *Jones v. Matkin*, No. 4:21-CV-00733, 2022 WL 3686532, at *4 (E.D. Tex. Aug. 25, 2022) (Mazzant, J.); Order Granting Stipulation of Dismissal, *Jones v. Matkin*, No 4:21-cv-733 (E.D. Tex. Nov. 28, 2022), ECF No. 43.

On April 22, 2021, Collin College issued a warning and memorandum to faculty member William Geisler for violating the Employee Expression Policy by making a post on social media regarding an individual who was born a male but participated in a female athletic race. (Ex. A, Nickerson 30(b)(6) Dep. 53:11-23.)

**Dr. Phillips Files His Complaint and Defeats a Motion to Dismiss.**

Dr. Phillips filed this lawsuit on March 8, 2022, alleging seven causes of action based on Defendants' unconstitutional policies and unlawful retaliation for his

protected expression. (Dkt. #1, Compl. ¶¶ 160–230). Defendants moved to dismiss Dr. Phillips's prior restraint claim. (Dkt. #23, Defs.' Mot. to Dismiss). The Court denied that Motion to Dismiss. (Dkt. #48, Order Denying Mot. to Dismiss).

## LEGAL ARGUMENT

Dr. Phillips is entitled to summary judgment on causes of action three through seven. Dr. Phillips brings both facial and as-applied claims against Defendants. (Compl. ¶¶ 171-223.) First, Dr. Phillips has standing to pursue his facial and as-applied challenges to the constitutionality of Collin College's policies because he is seeking reinstatement and his nonrenewal for violating those unlawful policies has blemished his record. Second, the undisputed facts establish that the College's policies restrain employee speech and allow its administrators to prohibit public criticism of the College. Third, the undisputed facts establish that the College's policies are overly broad because the College interprets those policies to apply even when employees speak as private citizens on matters of public concern. Fourth, the undisputed facts establish that the College's policies are vague—if its own administrators cannot clearly define what they prohibit, neither can any employee. Finally, the undisputed facts establish that the College's final policymaker, President Matkin, was the moving force behind applying its unconstitutional policies to Dr. Phillips, causing his constitutional injury and the loss of his job.

Courts will grant summary judgment where "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." *Sanders v. Christwood*, 970 F.3d 558, 561 (5th Cir. 2020) (quoting Fed. R. Civ. P. 56(a)). A dispute about a material fact is genuine only when "the

evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Jones*, 2022 WL 3686532, at *4 (citation omitted). "The substantive law identifies which facts are material." *Id.* If the movant can meet this burden, the "nonmovant must present affirmative evidence to defeat a properly supported motion for summary judgment." *Swanson v. City of Plano*, No. 4:19-CV-412, 2020 WL 6799173, at *2 (E.D. Tex. Nov. 19, 2020) (Mazzant, J.).

## I.   Plaintiff Has Standing to Challenge Collin College's Policies.

Dr. Phillips has standing to challenge the Code of Ethics and Employee Expression policies facially and as applied to him because he has "suffered an 'injury in fact,'" there is "a causal connection between the injury and the conduct complained of," and it is likely "the injury will be 'redressed by a favorable decision.'" *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560–61 (1992). The College injured him by depriving him of his right to speak out on matters of public concern and by failing to renew his contract,[3] and public employees like Dr. Phillips additionally have standing to seek injunctive relief when seeking reinstatement or termination has blemished their record. *See Dorris v. City of McKinney*, 214 F. Supp. 3d 552, 559 (E.D. Tex. 2016) (Mazzant, J.) (finding a terminated firefighter had standing to seek injunctive relief because he sought reinstatement); *see also Buchanan v. Alexander*, 284 F. Supp. 3d 792, 827 (M.D. La. 2018) (finding a terminated professor had standing to seek injunctive relief because blemished employment record could impact ability to get

---

[3] (Ex. H, Streater Dep. 19:18-20, Ex. 2.; Ex. G, Barnes-Tilley Dep. 83:6-19; Ex. E, Barnes-Tilley 30(b)(6) Dep. 52:23-53:2, Ex. 7; Ex. D, Matkin Dep. 231:22-232:12, Ex. 48).

future employment) *rev'd in part on other grounds*, 919 F.3d 847 (5th Cir. 2019).  And by enforcing the Code of Ethics and Employee Expression Policy against Dr. Phillips, the College caused his constitutional injury (Ex. D, Matkin Dep. 233:12-234:7). The Court can redress that injury by declaring the two policies unconstitutional, restraining their enforcement, reinstating Dr. Phillips to his position, and making clear to the public his employment did not end due to any deficiency on his part.

## II.   Dr. Phillips Is Entitled to Summary Judgment on his Fifth and Sixth Causes of Action Because the Challenged Policies Are Unconstitutional Prior Restraints.

Policies that broadly restrain public employees from speaking on matters of public concern, including criticism of their government employer, are unconstitutional prior restraints on expression. *See Liverman v. City of Petersburg*, 844 F.3d 400, 408 (4th Cir. 2016). Thus, the Court should grant Dr. Phillips summary judgment on his prior restraint claim because there is no genuine dispute that: (1) Collin College maintained a policy that broadly restrained employees from speaking on matters of public concern as private citizens, and (2) the rights of employees to engage in protected speech and their potential audience to receive their speech outweighs Collin College's interest in regulating that speech. *See Smith v. Acevedo*, No. A-09-CA-620-SS, 2010 WL 11512363, at * 5 (W.D. Tex. Sept. 20, 2010) (citing *United States v. Nat'l Treasury Emps. Union* (*NTEU*), 513 U.S. 454, 468 (1995))

As noted above, Defendants moved to dismiss Dr. Phillips's prior restraint claim arguing that their "policies and directives do not amount to a prior restraint on speech because they do not expressly forbid certain speech or require prior approval

to speak." *Phillips v. Collin Cmty. Coll. Dist.*, No. 4:22-CV-184, 2022 WL 4477698, at *4 (E.D. Tex. Sept. 26, 2022). In contrast, Dr. Phillips asserted that "the policies and directives put forward and enforced by Defendants were meant to, and did, chill potential speech before it happened." *Id.* The Court agreed with Dr. Phillips and denied that Motion to Dismiss, explaining Defendants' argument "does not comport with well-established caselaw on the matter." *Id.* Dr. Phillips now has the evidence to prove his allegations.

Courts across the country have granted plaintiffs' motions for summary judgment based on similar policies that restrain employees' First Amendment rights. *See O'Laughlin v. Palm Beach County*, 30 F.4th 1045, 1054–55 (11th Cir. 2022) (granting plaintiff summary judgment where policy prohibited firefighters from posting "content that could be reasonably interpreted as having an adverse effect upon Fire Rescue morale, discipline, operations, the safety of staff, or perception of the public"); *see also Acevedo*, 2010 WL 11512363, at *5 (granting summary judgment for plaintiff where policy forbade officers from "criticiz[ing] or ridicul[ing] the Department, its policies, or employees by speech"); *see also Brady v. Tamburini*, 518 F. Supp. 3d 570, 581 (D.R.I. 2021) (granting plaintiff's motion for summary judgment where policy required police officers to get permission from the department before speaking publicly about "police related matters").

*Liverman* is particularly instructive. There, the Fourth Circuit granted summary judgment finding that a police department's policy unconstitutionally restrained employee speech. 844 F.3d at 404. The policy barred officers from posting

anything "that would tend to discredit or reflect unfavorably upon the [Department] or any other City of Petersburg Department or its employees." *Id.* The Fourth Circuit found the policy to be a "virtual blanket prohibition on all speech critical of the government employer" with "astonishing breadth" that "squashes speech on matters of public import at the very outset." *Id.* at 407–08. And the Court rejected the government's justification based on mere speculation that employee comments "discrediting" the police department might lead to division or rancor. *Id.* at 408. Like the policy in *Liverman*, the College's Code of Ethics and Employee Expression Policy are "virtual blanket prohibitions" on speech that lack any justification, thus failing First Amendment scrutiny.

### a. Collin College's Code of Ethics restrain employees' speech.

The undisputed facts establish that the Code of Ethics is an unconstitutional prior restraint because it restricts employee speech on matters of public concern for no legitimate reason. Collin College's Code of Ethics restrains employees from criticizing the College by requiring employees "observe the stated policies and procedures of the College District, reserving the right to seek revision in a judicious and appropriate manner" and "act in public affairs in such a manner as to bring credit to the College District." (Ex. C, Barnes-Tilley 30(b)(6) Dep. Ex. 3.) And there is no dispute that the College has used the Code to restrain public criticism by employees.

For example, according to Dean Streater, the Code of Ethics require employees to first bring *any concern* about the College to their supervisor or a standing committee. (Ex. H, Streater Dep. 22:8-23:15.) The College used the Code of Ethics to discipline Dr. Phillips for a Twitter post about the College's masking policy even

though the College agrees it was a matter of public concern. (Ex. E, Barnes-Tilley 30(b)(6) Dep. 62:7-10.) Associate Dean O'Quin also cited Phillips's interview with the *Washington Post* and Facebook posts about COVID in 2020 as examples of Dr. Phillips "not bringing questions about a directive, about COVID protocols, about things related to college policy and procedure and directives that he disagreed with." (Ex. H, Streater Dep. 67:17-68:14.)[4] Nor did the College's enforcement of the Code of Ethics against faculty critics start and end with Dr. Phillips—it also used the Code of Ethics to get rid of Audra Heaslip and Suzanne Jones for criticizing the College's response to COVID.[5]

Like the unconstitutional employment policies in *Liverman* that prohibited police officers from posting anything that "would tend to discredit or reflect unfavorably upon the [Department]," Collin College's Code of Ethics requires employees "bring credit to the College District" or not speak at all—both of which compel faculty to forego their First Amendment rights. *Liverman*, 844 F.3d at 404; (Ex. E, Barnes-Tilley 30(b)(6) Dep. Ex. 3.) Indeed, the College interprets the Code of Ethics to mean that "we don't want to do things that discredit the college …." (Ex. A, Nickerson 30(b)(6) Dep. 21:24-22:4.) Moreover, the Code also similarly restrains

---

[4] The College admits that both the removal of Confederate monuments and COVID are matters of public concern. (Ex. J, Collin College Answer to Req. for Admis. Nos. 2, 10)

[5] "A facial challenge is not limited to the facts of a plaintiff's particular case; in the First Amendment context, a restriction on speech is deemed facially unconstitutional if it 'punishes a substantial amount of protected free speech, judged in relation to the statute's plainly legitimate sweep.'" *Brady*, 518 F. Supp. 3d at 581 (internal quotation omitted).

employees from publicly discussing any issue related to the College without first seeking "revision in a judicious and appropriate manner" with the College, much like the unconstitutional policy in *Brady*, 518 F. Supp. 3d at 581.

Collin College employees have a strong interest in voicing concerns about the College, and the public likewise has a strong interest in hearing their opinions. As the Court recognized in denying summary judgment in Suzanne Jones's case, "Supreme Court precedent 'recognize[s] that speech by public employees on subject matter related to their employment holds special value precisely because those employees gain knowledge of matters of public concern through their employment.'" *Jones*, 2022 WL 3686532 at *6 (quoting *Lane v. Franks*, 573 U.S. 228, 240 (2014)).

The College has not articulated a purpose for the Code aside from "keeping the college fresh and on the forefront" and that "all employees of the college should comply with the Professional Code of Ethics … ." (Ex. D, Matkin Dep. 30:22-31:3; Ex. E, Barnes-Tilley 30(b)(6) Dep. 27:14-18.) Meanwhile, President Matkin admits he is "not aware of major disruptions that Michael has caused at the college." (Ex. D, Matkin Dep. 216:24-25.) There is simply no evidence that the Code alleviates any legitimate harm to the College, dooming the constitutionality of this broad restraint on employee speech. *See NTEU*, 513 U.S. at 468 ("When the government defends a regulation on speech as a means to redress past harms or prevent anticipated harms, . . . it must 'demonstrate that the recited harms are real, not merely conjectural, and that the regulation will in fact alleviate these harms in a direct and material way.'") (quoting *Turner Broad. Sys., Inc. v. Fed. Commc'n Comm'n*, 512 U.S. 622, 664 (1994)).

24

### b. Collin College's employee expression policy restrains employees' speech.

The undisputed facts show the Employee Expression Policy is also an unconstitutional prior restraint. Collin College's Employee Expression Policy restrains employee speech on matters of public concern because it requires "faculty members who have differences of opinion with existing or proposed policies or procedures will express these views through the standing committee structure of the College District or their supervising administrators." (Ex. D, Matkin Dep. Ex. 5.) The policy also restrains employee speech on matters of public concern by requiring employees to "strive for accuracy, *exercise appropriate restraint*, exhibit tolerance for differing opinions, and indicate clearly that they are not an official spokesperson for the College District." (*Id.*) (emphasis added.)

Collin College used the Employee Expression Policy to punish Dr. Phillips for speaking out on matters of public concern, including when he published his open letter calling for the removal of Confederate monuments in August 2017 and when he openly criticized the College's views on discussing masks in August 2022. (Ex. C, Barnes-Tilley 30(b)(6) Dep. 75:7-13, Ex. 10; Ex. K, Barnes-Tilley Answer to Pl.'s Interrog. No. 7; Ex. J, Collin College Answer to Req. for Admis. Nos. 2, 10.) In the same way, Collin College enforced the Employee Expression Policy against faculty members Lora Burnett and William Geisler for their off-duty social media posts on matters of public concern.[6] (Ex. A, Nickerson 30(b)(6) Dep. 46:10-14, Ex. 7; Ex. A,

---

[6] Burnett was punished for posting about a former Collin College professor who died of COVID, and Geisler was punished for posting about a transgender athlete on

Nickerson 30(b)(6) Dep. 53:11-23.) The Employee Expression Policy demands faculty restrain their speech and bring *any* complaints about the College's policies or procedures to them before disclosing them publicly, just like the unconstitutional policy in *Brady* muzzled police officers from speaking publicly about "police related matters[.]" 518 F. Supp. 3d at 581–82.

As explained above, Collin College employees and the public have a strong interest in speaking out and hearing about issues at Collin College, and it is practically impossible for the public to get reliable information when employees must run everything by administrators who prefer to avoid public criticism.  The College also cannot justify forcing faculty to channel criticism and complaints about matters of public concern through the administration. Indeed, the College testified that the only purpose of the Employee Expression Policy is to make it clear that faculty members are entitled to academic freedom, but "with that freedom comes certain responsibilities." (Ex. A, Nickerson 30(b)(6) Dep. 37:23-38:6.) Once again, the College's hypothetical concerns about allowing faculty to publicly speak out about the College's policies would not pass constitutional muster in a police department and cannot survive summary judgment. *See Liverman*, 844 F.3d at 408–09 (finding "the speculative ills targeted by the social networking policy are not sufficient to justify such sweeping restrictions on officers' freedom to debate matters of public concern"); *see also Brady*, 518 F. Supp. 3d at 583 (finding "defendants have not shown how

---

social media. (Ex. A, Nickerson 30(b)(6) Dep. 46:10-14, Ex. 7; Ex. A, Nickerson 30(b)(6) Dep. 53:11-23.)

curtailing all speech related to the police department detracts from their goals of maintaining accuracy, control, confidentiality, and efficiency in the conduct of officers") (emphasis removed).

If courts have routinely held similar policies unconstitutional for police officers, where the government employer has latitude to restrict speech to preserve things like camaraderie, then surely the Code of Ethics and Employee Expression Policy are unconstitutional "in the academic setting where dissent is expected." *Smith v. Coll. of the Mainland*, 63 F. Supp. 3d 712, 718–19 (S.D. Tex. 2014) (denying defendant-college's motion for summary judgment on a professor's First Amendment claims).

### III.   Dr. Phillips Is Entitled to Summary Judgment on his Fourth and Sixth Causes of Action Because the Challenged Policies Are Overbroad.

Policies that forbid public employee criticizing their government employer on matters of public concern are unconstitutionally overbroad. *O'Laughlin,* 30 F.4th at 1054. Under that rule, the Court should grant Dr. Phillips summary judgment on his overbreadth claim because there is no genuine dispute of material fact that the Code of Ethics and Employee Expression Policy prohibit a substantial amount of protected speech considering their respective purposes. *Asgerisson v. Abbott*, 696 F.3d 454, 464 (5th Cir. 2012) (quoting *Vill. of Hoffman Estates v. The Flipside, Hoffman Estates, Inc.*, 455 U.S. 489, 494 (1982)). The "government's legitimate purpose to validly control or prevent some expressive conduct cannot be accomplished by means which sweep unnecessarily broadly" beyond that into protected speech. *Bode v. Kenner City,* 303 F. Supp. 3d 484, 505–06 (E.D. La. 2018) (quoting *Hobbs v. Thompson*, 448 F.2d 456, 459–60 (5th Cir. 1971) ("Facial overbreadth scrutiny emphasizes the need to

eliminate an overbroad law's deterrent impact on constitutionally protected expressive activity.")).

### a. Collin College's code of ethics is overbroad because it punishes a slew of faculty speech on matters of public concern.

Collin College's Code of Ethics is overbroad because it has been used to discipline Dr. Phillips and other faculty members for sharing opinions about matters of public concern, including the College's handling of COVID publicly, without any legitimate reason for doing so. (Ex. E, Barnes-Tilley 30(b)(6) Dep. 52:23-53:2, Ex. 7; Ex. A, Nickerson 30(b)(6) Dep. 46:10-14, Ex. 7, 53:11-23.) As the College succinctly stated regarding its interpretation of the Code of Ethics, "[w]e don't want to do things that's going to embarrass the college." (Ex. A, Nickerson 30(b)(6) Dep. 22:8-9.)

The College's policies are strikingly similar to other policies broadly prohibiting negative public statements by firefighters and police officers that courts have held unconstitutional. For example, in *O'Laughlin,* the Eleventh Circuit granted summary judgment for the plaintiff who challenged a policy that prohibited firefighters from posting "content that could be reasonably interpreted as having an adverse effect upon Fire Rescue morale, discipline, operations, the safety of staff, or perception of the public." 30 F.4th at 1054. Likewise, in *Liverman*, the district court granted summary judgment on the plaintiff's challenge of a policy that prohibited police officers from posting anything "that would tend to discredit or reflect unfavorably upon the [Department] or any other City of Petersburg Department or

its employees"; 844 F.3d at 404;[7] *see also Bode*, 303 F. Supp. 3d at 503, 507 (granting summary judgment and enjoining a policy that prohibited municipal employees from engaging in undefined "political activity" for municipal candidates).

The College has even *less* justification for its sweeping Code of Ethics. Unlike the fire and police departments in the above cases and as noted earlier, Collin College cannot claim the need for any sort of quasi-military obedience from professors like Dr. Phillips to succeed in the academic realm. In fact, robust discussion and debate is a hallmark of the academic enterprise. *See, e.g.*, *Bauer v. Sampson*, 261 F.3d 775, 785 (9th Cir. 2001) ("anyone who has spent time on college campuses knows that the vigorous exchange of ideas and resulting tension between an administration and its faculty is as much a part of college life as homecoming and final exams.") Because the College's need for the policy cannot justify the amount of speech restricted, the Code is overly broad.

### b. Collin College's employee expression policy is overbroad because it also prohibits speech on matters of public concern.

Collin College's Employee Expression Policy also reaches a broad amount of protected speech by requiring employees always "exercise appropriate restraint" when speaking and bringing complaints about the College to the College before

---

[7] Dr. Phillips recognizes that the *O'Laughlin* and *Liverman* courts combined the prior restraint analysis under *NTEU* with the traditional overbreadth doctrine. *O'Laughlin*, 30 F.4th at 1054; *Liverman*, 844 F.3d at 409. But the Fifth Circuit has neither adopted nor rejected this approach. In short, the *NTEU* test is distinct from the traditional overbreadth test because *NTEU* considers the First Amendment rights of the potential audience of the speech. Courts within the Fifth Circuit continue to analyze the claims separately. *Bode*, 303 F. Supp. 3d at 505 (analyzing overbreadth claim in employment context without reference to *NTEU*).

sharing their concerns publicly. (Ex. D, Matkin Dep. Ex. 5.) Collin College wielded this policy against Dr. Phillips and other faculty members to punish their speech on matters of public concern, like COVID, without a legitimate justification for doing so. (Ex. E, Barnes-Tilley 30(b)(6) Dep. 75:7-13, Ex. 10; Ex. K, Barnes-Tilley Answer to Pl.'s Interrog. No. 7.) Just like with the Code of Ethics, the Employee Expression Policy is strikingly similar to the policies struck down in *O'Laughlin* and *Liverman.* Moreover, there is no dispute that the sweep of this policy goes far beyond any justification for its necessity, similar to the unconstitutionally overbroad policy prohibiting "political activity" in *Bode,* 303 F. Supp. 3d at 503. For those reasons, the Employee Expression Policy is also overly broad.

**IV.    Dr. Phillips Is Entitled to Summary Judgment on his Third and Sixth Cause of Action Because the Challenged Policies are Unconstitutionally Vague.**

The Court should grant Dr. Phillips summary judgment on his vagueness claim because there is no genuine dispute of material fact that the Code of Ethics and Employee Expression Policy "(1) reach[] a substantial amount of constitutionally protected conduct; and (2) 'fail[] to provide people of ordinary intelligence a reasonable opportunity to understand what conduct it prohibits' or 'authorizes or even encourages arbitrary and discriminatory enforcement.'" *Bode,* 303 F. Supp. 3d at 503 n. 181 (quoting *Fairchild v. Liberty Indep. Sch. Dist.*, 597 F.3d 747, 761 (5th Cir. 2010)). Policies containing ambiguous terms that cannot be interpreted clearly even by those charged with enforcing them are void for vagueness under the Fourteenth Amendment. *Id.* at 503, 507 (granting plaintiff summary judgment on vagueness grounds where policy prohibited municipal employees from engaging in

undefined "political activity" for municipal candidates). When a vague regulation "abut[s] upon sensitive areas of basic First Amendment freedoms, it operates to inhibit the exercise of [those] freedoms" and must be invalidated. *Grayned v. City of Rockford*, 408 U.S. 104, 109 (1972) (citation omitted).

### a.  No reasonable employee could understand what speech is "disrespectful."

The Code of Ethics contains vague and undefined terms that allow administrators to arbitrarily enforce its provisions. A policy like the Code of Ethics is unconstitutionally vague where it fails to define the key terms that can be used to punish employees for protected speech. *See Bode*, 303 F. Supp. 3d at 505 (finding policy prohibiting employees from engaging in "political speech" failed to define its key terms); (Ex. E, Barnes-Tilley 30(b)(6) Dep. 27:8-16, Ex. 3.) When testifying at its deposition, the College could muster only that "dignity" is "treating others with respect," which it claimed is "just honoring an individual," whatever that means. (*Id.* 67:16-20.) Meanwhile, Dr. Phillips's supervisor, Associate Dean O'Quin, admitted she doesn't "think there's a clear-cut definition that [she] would have given to [her] faculty for dignity and respect." (Ex. I, O'Quin Dep. 13:11-20.)

The vagueness of the College's policies is illustrated by a lack of consistency in interpretation by Associate Dean O'Quin and President Matkin. Consider that the College's "Core Values" also require employees behave with dignity and respect. In fact, Associate Dean O'Quin issued Dr. Phillips a disciplinary form for violating the College's Core Values of dignity and respect—but not the Code of Ethics—because she believed his lecture about the history of pandemics "created an environment

31

where students did not feel respected in class." (Ex. I, O'Quin Dep. Ex. 17.) Yet President Matkin stated it is impossible for an employee to violate the "dignity" and "respect" provisions of the Code of Ethics without also violating the Core Values. In short, these cross-policy ambiguities show why O'Quin, and any other Collin College employee, cannot understand the College's policy. (Ex. D, Matkin Dep. 69:1-5; Ex. I, O'Quin Dep. Ex. 17.)

### b. Collin College's employee expression policy doesn't define "Appropriate Restraint."

Similarly, the Employee Expression Policy fails to define what it means for faculty members to exercise "appropriate restraint" when speaking as a private citizen. (Ex. D, Matkin Dep. 52:3-11, Ex. 5.) Even President Matkin admitted "[t]here may be different interpretations" of what it means. (*Id.* 59:3-11.) And while he does not think the policy is vague, he further admitted he "could see that someone else might." (Ex. D, Matkin Dep. 59:17-19.) Above all, these "different interpretations" give President Matkin and other administrators a vast amount of discretion to punish Dr. Phillips and other faculty who speak out on important public issues. (Ex. E, Barnes-Tilley 30(b)(6) Dep. 75:7-13, Ex. 10; Ex. K, Barnes-Tilley Answer to Pl.'s Interrog. No. 7; Ex. A, Nickerson 30(b)(6) Dep. 46:10-14, Ex. 7, 53:11-23.) That is the hallmark of an unconstitutionally vague speech restriction. *See City of Chicago v. Morales*, 527 U.S. 41, 63 (1999).

**V.    Dr. Phillips Is Entitled to Summary Judgment on his Seventh Cause of Action Because Collin College's Unconstitutional Policies Were the Moving Force Behind President Matkin's Decision to Terminate Him.**

This Court should grant summary judgment on Plaintiff's seventh cause of action because the College's unconstitutional policies were the moving force behind the decision of President Matkin, the policy maker in the area of faculty employment, not to give him a new contract. To recover under § 1983 against a municipality, a plaintiff must "show that (1) an official policy (2) promulgated by the municipal policymaker (3) was the moving force behind the violation of a constitutional right." *Peterson v. City of Fort Worth*, 588 F.3d 838, 847 (5th Cir. 2009); *Monell v. Dept. of Social Servs.*, 436 U.S. 658, 690 (1978). Here, there is no dispute that the Code of Ethics and the Employee Expression Policy are official Collin College's policies, adopted by the College's Board of Trustees. (Ex. E, Barnes-Tilley 30(b)(6) Dep. 43:5-6.)

There is also no dispute that those policies were the moving force behind Dr. Phillips's termination. "A policy may be shown to be the 'moving force' behind a constitutional injury by providing evidence that: (i) the 'policy itself was unconstitutional'; or (ii) it was adopted with 'deliberate indifference to the known or obvious fact that such constitutional violations would result.'" *Doe v. Beaumont Indep. Sch. Dist.*, No. 1:21-CV-00132, 2022 WL 2783047, at *15 (E.D. Tex. July 14, 2022) (quoting *Webb v. Town of Saint Joseph*, 925 F.3d 209, 221 (5th Cir. 2019)). When a policy is facially unconstitutional, that is enough to create an entitlement to relief under § 1983," and "it is [then] unnecessary to demonstrate deliberate indifference." *Id.* (citing *James v. Harris Cnty.*, 577 F.3d 612, 617 (5th Cir. 2009). As Dr. Phillips

has shown, the Code of Ethics is unconstitutional. And President Matkin relied on it to end Dr. Phillips's employment.

The Board has delegated President Matkin the authority to make the final policy decision for faculty employment. (Ex. D, Matkin Dep. 86:16-87:9, Ex. 13; Ex. E, Barnes-Tilley 30(b)(6) Dep. 16:5-14.); *see also Mattix v. Hightower*, No. CIV.A.3-96-CV-0015-R, 1998 WL 246671, at *13 (N.D. Tex. May 3, 1998) (finding that city manager was final policymaker for employment decisions where city council policy "reserve[ed] all employment decision-making and policy-making solely to" the manager). In exercising this authority over Dr. Phillips's employment decision, President Matkin cited Dr. Phillips's violations of the Code of Ethics as the basis for his decision. (Ex. D, Matkin Dep. 234:4-235:5, Ex. 48.) President Matkin specifically explained that "[i]n not allowing our college supervisors or structures to address concerns … Dr. Phillips has not sought revision of those disagreements or concerns of procedures in a judicious and appropriate manner as expressly required by [the Code of Ethics]." (*Id.* Ex. 48.)

Because President Matkin relied on the unconstitutional Code of Ethics as the moving force behind his decision to not renew Dr. Phillips for a new contact and exercised his power as policy maker in the area of employing faculty, this Court should grant summary judgment on Plaintiff's Seventh Cause of Action.

## <u>CONCLUSION</u>

Professors do not lose their ability to speak about public issues when they work for a public college. The College violated the First Amendment when it ended Dr. Phillips's employment because he dared to share his views outside of the College's

approved channels. This Court should grant summary judgment in Dr. Phillips's favor on Counts Three, Four, Five, Six, and Seven.

Dated: April 11, 2023

Respectfully Submitted,

*/s/ Greg H. Greubel*
GREG HAROLD GREUBEL*
PA Bar No. 321130; NJ Bar No.
171622015; CA Bar. No. 343028
JOSHUA T. BLEISCH*
IN Bar No. 35859-53
  FOUNDATION FOR INDIVIDUAL RIGHTS
  AND EXPRESSION
510 Walnut Street; Suite 1250
Philadelphia, PA 19106
Tel: (215) 717-3473
greg.greubel@thefire.org
josh.bleisch@thefire.org

*Admitted *Pro Hac Vice*

JT MORRIS
TX Bar No. 24094444
FOUNDATION FOR INDIVIDUAL RIGHTS
  AND EXPRESSION
700 Pennsylvania Ave. SE, Suite 340
Washington, DC 20003
  jt.morris@thefire.org

ROBERT W. SCHMIDT
TX Bar No. 17775429
CREWS LAW FIRM, P.C.
701 Brazos Street; Suite 900
Austin, TX 78701
Tel: (512) 346-7077, Ext. 103
schmidt@crewsfirm.com

*Counsel for Plaintiff Joseph Michael Phillips*

## CERTIFICATE OF SERVICE

Plaintiff's counsel confirms that a true and correct copy of the foregoing was served via the Court's electronic filing system on this day, April 11, 2023. Notice of this filing will be sent by operation of the Court's electronic filing system to all parties indicated below and parties may access this filing through the Court's electronic filing system.

Charles Joseph Crawford
ABERNATHY ROEDER BOYD & HULLETT,
   PC
1700 Redbud Blvd., Ste 300
McKinney, TX 75069
Tel: (214) 544-4000
ccrawford@abernathy-law.com

Richard Mercer Abernathy
ABERNATHY ROEDER BOYD & HULLETT,
   PC
1700 Redbud Blvd., Ste 300
McKinney, TX 75069
Tel: (214) 544-4040
rabernathy@abernathy-law.com

Lucas Christopher Henry
ABERNATHY ROEDER BOYD & HULLETT,
   PC
1700 Redbud Blvd., Ste 300
McKinney, TX 75069
Tel: (214) 544-4040
lhenry@abernathy-law.com

*Counsel for Defendants Collin Community College District, H. Neil Matkin, Abe Johnson, Mary Barnes-Tilley, Kristen Streater, and Chaelle O'Quin*

Robert Jacob Davis
MATTHEWS SHIELS KNOTT EDEN DAVIS
   & BEANLAND LLP - DALLAS
8131 LBJ Freeway, Ste. 700
Dallas, TX 75251
Tel: (972) 234-3400
bdavis@mssattorneys.com

Joseph Bailey McShane, IV
MATTHEWS SHIELS KNOTT EDEN DAVIS
   & BEANLAND LLP - DALLAS
8131 LBJ Freeway, Ste. 700
Dallas, TX 75251
Tel: (972) 234-3400
bmcshane@mssattorneys.com

*Counsel for Defendant Board of Trustees of Collin Community College District*

Dated: April 11, 2023

/s/ Greg H. Greubel
Greg H. Greubel