*Phillips v. Collin Cnty. Cmty. Coll. Dist., et al.*

# Exhibit A:
# Deposition of 30(b)(6) Designee
# Floyd Nickerson

```
 1              IN THE UNITED STATES DISTRICT COURT
              FOR THE EASTERN DISTRICT OF TEXAS
 2                    SHERMAN DIVISION

 3   JOSEPH MICHAEL PHILLIPS,      )
                                   )
 4              Plaintiff,         )
                                   ) Civil Action
 5   VS.                           ) No. 4:22-cv-184-ALM
                                   )
 6   COLLIN COUNTY COMMUNITY       )
     COLLEGE DISTRICT, et al.,     )
 7                                 )
                Defendants.        )

 8

 9         ------------------------------------
        ORAL AND VIDEOTAPED RULE 30(b)(6) DEPOSITION OF
10          COLLIN COUNTY COMMUNITY COLLEGE DISTRICT
                     FLOYD NICKERSON
11                   FEBRUARY 9, 2023
                     VIA REALTIME
12         ------------------------------------

13

14

15         ORAL AND VIDEOTAPED REALTIME DEPOSITION OF FLOYD

16   NICKERSON, produced as a witness at the instance of the

17   Plaintiff, and duly sworn, was taken in the above-styled

18   and numbered cause on February 9, 2023, from 2:53 p.m.

19   to 5:42 p.m., before Christy Cortopassi, CSR in and for

20   the State of Texas, reported by machine shorthand, at

21   the law offices of Abernathy Roeder Boyd & Hullett, PC,

22   1700 N. Redbud Boulevard, Suite 300, McKinney, Texas

23   75069, pursuant to the Federal Rules of Civil Procedure

24   and the provisions stated on the record or attached

25   hereto.
```



Floyd Nickerson

February 09, 2023
Page 2

```
 1                    A P P E A R A N C E S

 2

 3   FOR THE PLAINTIFF:

 4        Mr. Greg H. Greubel
          Mr. Joshua T. Bleisch
 5        FOUNDATION FOR INDIVIDUAL RIGHTS AND EXPRESSION
          510 Walnut Street
 6        Suite 1250
          Philadelphia, Pennsylvania 19106
 7        215.717.3473
          greg.greubel@thefire.org
 8        josh.bleisch@thefire.org

 9

10   FOR THE DEFENDANT COLLIN COUNTY COMMUNITY COLLEGE
     DISTRICT:

11        Mr. Charles Joseph Crawford
          Mr. Joseph Bailey McShane
12        ABERNATHY ROEDER BOYD & HULLETT, PC
          1700 Redbud Boulevard
13        Suite 300
          McKinney, Texas 75069
14        214.544.4000
          ccrawford@abernathy-law.com
15

16   FOR THE DEFENDANT BOARD OF TRUSTEES:

17        Mr. Robert J. Davis
          MATTHEWS SHIELS KNOTT EDEN & DAVIS & BEANLAND, LLP
18        8131 LBJ Freeway
          Suite 700
19        Dallas, Texas 75251
          972.234.3400
20        bdavis@mssattorneys.com

21

22   ALSO PRESENT:
23        Ms. Monica Velazquez,
          General Counsel, Collin College
24
          Terry VanDerHeyden - Videographer
25
```



1                          INDEX
                                                    PAGE
2   Appearances........................................  2

3   FLOYD NICKERSON

4       EXAMINATION BY MR. GREUBEL.....................  4

5   Changes and Signature.............................. 89
    Reporter's Certification........................... 91
6
                          EXHIBITS
7
    NO.           DESCRIPTION                          PAGE
8

    Exhibit 1     Email & depo notice.....................  7
9   Exhibit 2     Code of Professional Ethics............. 13
    Exhibit 3     DH Local Employee Standards of Conduct.. 31
10  Exhibit 4     Collin's responses to interrogatories... 32
    Exhibit 5     Collin's supplemental responses to
11                interrogatories......................... 34
    Exhibit 6     DGC Legal Employee Rights & Privileges.. 36
12  Exhibit 7     Employee Discipline Form................ 45
    Exhibit 8     CT Local Intellectual Property.......... 56
13  Exhibit 9     Review - Hannah Arend's Ethics.......... 58
    Exhibit 10    Complaint for Civil Rights Violations... 59
14  Exhibit 11    Plaintiff's Complaint................... 59
    Exhibit 12    AFA 2/2/22 letter....................... 74
15  Exhibit 13    American Historical 2/7/22 letter....... 76
    Exhibit 14    East Texas Historical Association....... 76
16  Exhibit 15    Change.org article...................... 77
    Exhibit 16    Pen America 100 article................. 78
17  Exhibit 17    AAUP 3/2/21 letter...................... 78
    Exhibit 18    LOYOLA 4/14/22 letter................... 78
18  Exhibit 19    AAUP 3/22/21 letter..................... 78
    Exhibit 20    AAUP 4/16/21 letter..................... 79
19  Exhibit 21    AAUP 5/13/21 letter..................... 80
    Exhibit 22    Collin College 5/18/21 letter........... 80
20  Exhibit 23    AAUP 3/28/22 letter..................... 80
    Exhibit 24    Collin College 5/3/22 letter............ 81
21  Exhibit 25    AAUP 6/30/22 letter..................... 81
    Exhibit 26    Collin College 7/8/22 letter............ 81
22  Exhibit 27    DD Local, Personnel Positions........... 87

23
                Please be advised that an UNCERTIFIED ROUGH
24  DRAFT version of this transcript exists.  If you are in
    possession of said rough draft, please replace it
25  immediately with this CERTIFIED FINAL TRANSCRIPT.



```
 1                    P R O C E E D I N G S
 2                 THE VIDEOGRAPHER:  Good afternoon.  We are
 3    now on record.  This begins the deposition of Floyd
 4    Nickerson, the corporate rep for Collin College.
 5    Today's date is February 9th, 2023.  The time is
 6    2:53 p.m.  The court reporter has already recorded all
 7    present at the deposition.
 8                 Will you please swear in the witness.
 9                    FLOYD NICKERSON,
10    having been first duly sworn, testified as follows:
11                       EXAMINATION
12    BY MR. GREUBEL:
13         Q.  Good afternoon.
14         A.  Good afternoon.
15         Q.  Before we start asking some questions about the
16    case, I just want to get through some initial questions.
17                 So can you please state your name and
18    address for the record?
19         A.  Floyd Nickerson, 5593 Beacon Hill Drive,
20    Frisco, Texas 75036.
21         Q.  Have you ever been deposed before?
22         A.  Yes, I have.
23         Q.  And when was that?
24         A.  Oh, gosh, that would have been probably 2021,
25    I'm going to guess but I'm not sure.
```



 1  trainings.
 2       Q.   And what's her name?
 3       A.   Shelley Sheldon.
 4       Q.   Any other employees?
 5       A.   That would be the only ones that I visited
 6  with.
 7       Q.   And the last one is Topic Number 30?
 8       A.   That's correct.
 9       Q.   And what did you do to prepare for that topic?
10       A.   I talked with our manager of employee relations
11  and got some -- just some history there to know what the
12  retention is and how we do retain those documents.
13       Q.   Okay.  And what's the name of that employee?
14       A.   Tonya Jacobson.
15       Q.   All right.  Are you comfortable testifying on
16  behalf of the college for the topics we just discussed?
17       A.   Yes, I am.
18       Q.   And you understand that the answers you are
19  giving today are for the college and they are not in
20  your personal capacity?
21       A.   Yes, I am.  Yes.
22       Q.   All right.  We will start with the enforcement
23  application of Collin College's Faculty Code of Ethics.
24                (Exhibit 2 marked.)
25       Q.   (BY MR. GREUBEL)  I have just handed you a



Floyd Nickerson                                    February 09, 2023
                                                          Page 15

1              If an employee -- well, let me do this

2      differently.

3              If the college believes that an employee

4      has violated the code of ethics, who interprets the code

5      of ethics on behalf of the college?

6          A.  Well, if we have an issue that comes up where

7      there's a question of whether someone has violated a

8      policy we're going to rely upon the immediate supervisor

9      to start.  They enforce our policies.

10             We're going to rely on that immediate

11     supervisor to enforce it with the attention or help of

12     others.  It might involve the human resources

13     department, and we could get our legal department

14     involved.  But we have a number of individuals looking

15     at what's the right steps to take.

16         Q.  And do these Code of Professional Ethics apply

17     to all employees of the college?

18         A.  They do apply to all employees of the college.

19     As you can see from this document, it talks about

20     professional educators and we do consider all employees

21     to be professional educators because we do all interact

22     with and support students.

23         Q.  Does the college have any definitions for terms

24     like dignity and respect which are listed in the first

25     bullet point here?



1    Q.   Okay.  Is the name Collin College trademarked?

2    A.   I believe the -- I don't know that the name is.

3  I believe the trademark may be, the design.

4    Q.   Yeah.

5    A.   One or the other is.

6    Q.   Got you.  I want to draw your attention to

7  paragraph nine.  It says, The professional educators --

8  let me know -- go ahead and read it.

9    A.   Uh-huh.

10    Q.   Let me know when you are ready to be asked some

11  questions about it.

12    A.   Yes, I'm ready.

13    Q.   And you referred to this primarily as being

14  the -- when I was mentioning in paragraph four.  Now

15  does paragraph nine prohibit employees from being

16  publicly critical of the college?

17    A.   No.  It does not prohibit employees from being

18  critical.  Employees have the right to -- of -- to free

19  speech.  But we do want them to make sure that they make

20  it very clear they're not speaking as a spokesperson of

21  the college.

22         I think what paragraph nine is saying, it

23  talks about bringing credit to the college.  And you can

24  almost flip that and say we don't want to do things that

25  discredit the college.  I think we have to be very



1  careful.  And as we see in some of our other policies we

2  do state that what an employee does in public, it's

3  viewed by the public and as -- and it could reflect on

4  the college, it could reflect on the individual, it

5  could reflect on the profession of what they do.

6              And what they do, and when I say "they" I'm

7  referring to the faculty.  It's so important.  You want

8  that to bring credit.  We don't want to do things that's

9  going to embarrass the college.  And some actions can do

10  that.

11             So -- and that's why we also make it a

12  point to say we want our faculty, we want our staff to

13  focus around what's in the first part of that sentence,

14  supporting the goals and the ideals of the college.

15             It's important that we have people pulling

16  in that right direction where we're all focused on

17  students.

18   Q.  Would an employee being associated with a

19  controversial political issue be something that could

20  violate paragraph nine?

21   A.  No.  Employees have the right to talk on

22  controversial topics.  And again, that's where we stress

23  you make it very clearly known that those are your

24  personal views that you are expressing.  And that they

25  don't -- that you are not talking as a -- you are not



```
 1   careful.  And as we see in some of our other policies we
 2   do state that what an employee does in public, it's
 3   viewed by the public and as -- and it could reflect on
 4   the college, it could reflect on the individual, it
 5   could reflect on the profession of what they do.
 6             And what they do, and when I say "they" I'm
 7   referring to the faculty.  It's so important.  You want
 8   that to bring credit.  We don't want to do things that's
 9   going to embarrass the college.  And some actions can do
10   that.
11             So -- and that's why we also make it a
12   point to say we want our faculty, we want our staff to
13   focus around what's in the first part of that sentence,
14   supporting the goals and the ideals of the college.
15             It's important that we have people pulling
16   in that right direction where we're all focused on
17   students.
18        Q.  Would an employee being associated with a
19   controversial political issue be something that could
20   violate paragraph nine?
21        A.  No.  Employees have the right to talk on
22   controversial topics.  And again, that's where we stress
23   you make it very clearly known that those are your
24   personal views that you are expressing.  And that they
25   don't -- that you are not talking as a -- you are not
```



 1  Amendment allows -- I'm sorry.  Let me ask it a

 2  different way.

 3              Does Collin College believe that faculty

 4  members saying something that's not true and accurate as

 5  determined by that employee's immediate supervisor is

 6  not protected by the First Amendment?

 7              MR. CRAWFORD:  Objection; form.

 8      A.  I would ask you to repeat your question and we

 9  can talk about it.

10      Q.  (BY MR. GREUBEL)  Sure.  So if a faculty member

11  shares information publicly about the college that is

12  not true and accurate according to their supervisor, is

13  that faculty member's speech no longer protected by the

14  First Amendment?

15              MR. CRAWFORD:  Objection; form.

16      A.  I cannot say that it is -- uh -- no, the First

17  Amendment offers that individual the opportunity to

18  speak.  But as a college we would still hope that that

19  speech or we would expect that speech to still be within

20  the parameters of our policies.

21              We would still expect that that -- the

22  speech would bring credit to the college.  We would

23  still except that that speech is going to be true and

24  accurate.

25              And it's not just the supervisor, immediate



 1      Q.  (BY MR. GREUBEL)  Okay.  You have got in front
 2  of you Exhibit 5 which is DGC Legal, is that fair?
 3      A.  Local.
 4      Q.  Exhibit 5, DGC Local.
 5      A.  DGC Local.
 6      Q.  Okay.  And Exhibit 6 is DGC --
 7      A.  DGC Legal.
 8      Q.  Okay.
 9          MR. CRAWFORD:  And when you say Exhibit 5
10  we are referring to Matkin --
11          MR. GREUBEL:  Matkin 5.
12          MR. CRAWFORD:  -- Matkin Deposition
13  Exhibit 5.
14          MR. GREUBEL:  Yes.  Yes.  Matkin Deposition
15  5.
16          MR. CRAWFORD:  Nickerson Deposition
17  Exhibit 6.
18          MR. GREUBEL:  Yes.  Thank you very much.
19      Q.  (BY MR. GREUBEL)  So Matkin Deposition
20  Exhibit 5 is the Local policy.  Has that policy in front
21  of you been approved by the Board?
22      A.  Yes, it has.
23      Q.  Can -- what's the purpose of that policy?
24      A.  This is the employee expression and use of
25  college facilities Board policy.  It's -- talks



1   primarily or the first portion of the policy talks about

2   academic freedom and ensuring that faculty members

3   are -- it makes it clear that they're entitled to that

4   academic freedom.

5              It also goes into -- with that freedom

6   comes certain responsibilities.  And then it goes into

7   just different uses of our college facilities and how to

8   go about.

9        Q.  And what does academic --

10       A.  That's --

11       Q.  I'm so sorry.

12       A.  No, you are good.

13       Q.  What does academic freedom mean to the college?

14       A.  It means that our faculty members enjoy the,

15  as it says, The constitutional freedom guaranteed to

16  all citizens.

17              They have the right to -- in the classroom,

18  to teach within their area of knowledge and background

19  and to teach and to challenge students and to often talk

20  about difficult subjects.  But it gives our faculty

21  members that freedom to truly challenge our students.

22       Q.  Are students sometimes made uncomfortable by

23  controversial topics?

24       A.  I have never been in a classroom but I would

25  imagine that they could be.  But I have never been in a



Floyd Nickerson                                    February 09, 2023
                                                          Page 46

1          A.   Okay.

2          Q.   Nickerson 7.

3          A.   Uh-huh.

4          Q.   Go ahead and take a look at that and let me

5    know when you are ready to talk about it.

6          A.   Okay.

7          Q.   Have you ever seen that before?

8          A.   I have.

9          Q.   And what is it?

10         A.   This is an Employee Discipline Form for

11   Professor Lora Burnett, a Level 1 warning.

12         Q.   And can you tell me what policy Lora Burnett

13   violated?

14         A.   Looks -- the college policy DGC Local.

15         Q.   And that's the Employee Free Expression policy?

16         A.   That's the expression policy, yes.

17         Q.   And how did she violate that policy?

18         A.   She posted information that was not accurate

19   regarding the college.  Of course, in this particular

20   case the issue was posting a -- an obituary of an

21   individual who had passed away, stating that the college

22   had -- another Collin College professor had died.

23              This individual was not a Collin College

24   professor.  So she posted very inaccurate information

25   and that did not bring credit to the college.



1    the college, that another of your faculty members had

2    died of COVID.  And it just wasn't accurate.  That was

3    not bringing credit to the college.

4        Q.  And I want to go back to Policy DGC Local.  It

5    says that -- after strive for accuracy, that faculty and

6    support staff also have to exercise appropriate

7    restraint.  Can you tell me what that means?

8        A.  I think what we are saying when we talk about

9    exercising appropriate restraint, you know, we expect

10   our faculty to -- and all employees, not just faculty,

11   all employees to exercise restraint in how they talk to

12   others.

13           If there's someone that has a different

14   opinion than you do, you know, the thought is you don't

15   bully them, you don't harass them, you still treat

16   everyone with dignity and respect and appropriate

17   restraint helps to accomplish that.

18       Q.  Does this policy require faculty to exercise

19   appropriate restraint even when they're not working for

20   the college, to be more specific, when they're off duty?

21       A.  We would hope that they would.  But, no, this

22   policy does not say that in this sentence.

23       Q.  So if an employee is -- I know it doesn't say

24   that but it also doesn't say that you have to be

25   completely accurate on your Facebook posts or your



1  Twitter posts.

2      A.  To strive.

3      Q.  It says to strive for accuracy and -- but

4  that's been interpreted by the college to mean at times

5  something slightly different.  So I'm trying to figure

6  out what exactly exercise appropriate restraint means in

7  practice.  So does exercise appropriate restraint, could

8  that be applied to a faculty member's social media post?

9          MR. CRAWFORD:  Objection; form.

10     A.  If it is their personal account, a personal

11  social media account, we don't get involved with their

12  personal social media account as a college.

13     Q.  (BY MR. GREUBEL)  That's not true.  Because of

14  the document you just looked at with Lora Burnett's

15  Twitter post?

16     A.  Well, when we hear of something that comes to

17  us or however it comes to us, we will address that

18  because it does impact the college.  But as a rule we do

19  not go out and look at their social media accounts and

20  try to dig up information to harm an individual.

21          And when we talk here about exercising

22  appropriate restraint, you know, we're talking largely

23  about when a faculty member or a staff employee is

24  speaking, we do hope that they use good judgment in

25  their speech.



```
 1                  THE VIDEOGRAPHER:  We are off record at
 2   4:13 p.m.
 3                  (Break taken from 4:13 p.m. to 4:27 p.m.)
 4                  THE VIDEOGRAPHER:  We are back on record at
 5   4:27 p.m.
 6       Q.  (BY MR. GREUBEL)  I want to hand you back
 7   what's been marked as Nickerson 5.  Take a look at that
 8   again and let me know when you are ready to talk about
 9   it.
10       A.  Okay.  I'm familiar with it.
11       Q.  Okay.  Now this says that William Geisler was
12   given a warning followed by a memorandum on April 22,
13   2021, clarifying the requirements of Policy DGC Local.
14           Do you know what occurred, what he did to
15   prompt receiving the warning followed by a memorandum?
16       A.  Yes.  In this particular one Mr. Geisler had --
17   well, we received emails from folks outside of the
18   college regarding complaining about a statement that he
19   had made regarding an individual who he claimed was not
20   a female and participated in a race.
21           And he had claimed this individual was born
22   a male which was not correct.  And he, you know, there
23   was things that tied it back to the college.
24           We received the complaint about it.  In
25   concern he did try to address it, to apologies for his
```



1  nonrenewed or part of the discussion about her

2  nonrenewal.

3      Q.  And what was the specific things that she was

4  doing to go outside of Collin College's approved

5  structures for bringing concerns about issues related to

6  reopening during COVID-19?

7      A.  Yeah.  Well, first, she had some concerns that

8  the college should not reopen.  She pushed back on the

9  plan to reopen and try to bring the college back to some

10  version of a normal operation as the restart plan was

11  set up to do.  She had her own thoughts of -- we ought

12  to -- how we ought to approach allowing, you know, fewer

13  classes being in person.

14          And she just -- she had -- she didn't agree

15  with the restart plan.  And she pushed back on

16  restarting the college as the Board has approved -- had

17  approved and the restart -- or the restart task force

18  was working toward even though she was part of the task

19  force.

20      Q.  And what policy of Collin College did that

21  violate?

22      A.  It violated DGC in that she had opportunities

23  to work with inside the college to make sure her

24  criticisms, her concerns were voiced and she did not

25  choose to do that.



```
 1        Q.   She chose to go outside the college?
 2        A.   Yes.   That was one of the violations that was
 3   there.
 4        Q.   And you already --
 5        A.   She did not work collaboratively with -- and
 6   within the structure that we had in place as a college.
 7        Q.   And I think you just said that's DGC?
 8        A.   I believe it was in DGC, yes, one of the
 9   responsibilities of faculty member -- of employees.
10        Q.   Are you sure that's not DH Exhibit, the code of
11   ethics?
12        A.   I can look real quick.
13        Q.   Yeah.   If you don't mind, yes.
14        A.   Okay.
15        Q.   Here's --
16        A.   Yes.
17        Q.   Let me hand you -- you are looking at -- oh --
18        A.   I'm looking at Local.
19        Q.   Yeah, yeah, yeah.   Here's DH Exhibit.
20        A.   And what I'm referring to is on page three,
21   number five.   It says, Faculty members will recognize
22   their responsibility to adhere to the policies and
23   procedures of the institution.   Therefore, faculty
24   members who have differences of opinions with existing
25   or proposed policies and procedures will express these
```



1   views through the standing permitted structures of the

2   college district or their supervising administrators.

3       Q.  And if an employee isn't satisfied with the

4   response from Collin College when they go through those

5   procedures and choose to go outside and voice their

6   criticisms of the college publicly, is that a violation

7   of DGC Local?

8       A.  Again, we are going to look at those on a

9   case-by-case basis.  If there is something there

10  that is -- or if the employee has not made it clear that

11  they're expressing personal opinions, if they're

12  accurate or not accurate in their -- what they are

13  putting out there, we're going to just look at those on

14  a case-by-case basis to make a determination as to what

15  the right approach to take is.

16      Q.  And what was the determination that was made as

17  to Audra Heaslip?

18      A.  Audra Heaslip went outside, she had the

19  opportunity to work with her supervisor to voice those

20  criticisms or her concerns.  I was in the room when

21  Audra was told that she would be non-renewed.  Or not

22  in -- well, I was in the room, Audra was on the

23  telephone, it was a Zoom call.

24              And the campus Provost that talked with her

25  had even specifically gone so far as to say I'm ready to



1  sit down and talk with you about your concerns and she

2  chose -- or did not do so.  Not that she chose not to

3  so -- but she did not.  Did not take advantage of that.

4  She had not talked to her immediate supervisor, to my

5  knowledge about it.

6            So she had opportunities to work within the

7  system -- within the college and she did not do so.  And

8  that's the expectations that we should work within the

9  structures that are set up within the college when we

10 have issues with policies and procedures of the college.

11     Q.  How about Suzanne Jones, what were the basis

12 for her nonrenewal?

13     A.  I think in Suzanne's case it was somewhat

14 similar that she just did not work collaboratively

15 within the college.  She -- again, once we had restart

16 plans in place, the Board had approved a plan to reopen

17 the college and she -- one thing she did was she went

18 out on her social media account and encouraged community

19 members to send letters, calls, whatever to the district

20 president.  And that's not working collaboratively

21 within the structures of the college.

22     Q.  It sounds like the college's response to

23 COVID-19 was really stressful.  But you were there,

24 right?

25     A.  I was.







DEPOSITION EXHIBIT
7
Nickerson

## EMPLOYEE DISCIPLINE FORM

**COLLIN COLLEGE**

| Employee Information | | | |
|---|---|---|---|
| **Employee Name:** | Lora Burnett | **CWID:** | 110776350 |
| **Job Title:** | Professor of History | **Department:** | Academic Affairs |
| **Full-time or Part-time:** | Full Time | **Exempt / Non-Exempt:** | Exempt |
| **Immediate Supervisor:** | Daphne Babcock | **Date:** | 1-19-2021 |

| Performance Status | | |
|---|---|---|
| ☒ Level 1 Warning | ☐ Level 2 Warning | ☐ Recommendation for Suspension |

| Details |
|---|

**List the employee's primary job responsibilities or behaviors that require attention and describe the specific improvement that is needed. (Include facts about events, dates, people, documents, etc.)**

1. Job Performance/Behavior Deficiency:

This is a Level 1 warning issued to address your conduct in publicly posting information that is not accurate. Collin College Board Policy DGC(LOCAL) requires faculty and staff to strive for accuracy when speaking or writing as private citizens.

On January 13, 2021, the college learned that you posted the obituary of Mr. Ralph Gregory Hendrickson on Twitter. While the obituary stated that Mr. Hendrickson "worked" for various colleges, including Collin College, the obituary did not indicate that he was, in fact, a current professor at the college or that he died as a result of COVID. Your statement accompanying the posting of the obituary was: "Another @collincollege professor has died of COVID." Your statement identified Mr. Hendrickson as a Collin College professor. That part of your statement is not accurate. Had you first verified the accuracy of the information, you would have learned that Mr. Hendrickson is not a Collin College professor and, in fact, has not taught at the college for several years. Mr. Hendrickson is a former employee of the college and not a Collin College professor.

*Specific Results Required for Acceptable Improvement:*

Now that you have the accurate information, you are asked not to identify Mr. Hendrickson as a Collin College professor. In order to avoid a violation of DGC(LOCAL), you are also instructed to verify objective facts included in your publicly posted statements.

Date for Improvement to be completed:

As soon as possible.

*Changes to template verbiage must be approved by HR.*

Supervisor Initials: _____
Employee Initials: _____
HRC Initials: _____

February 2020
Page **1** of 3

**2.** Job Performance/Behavior Deficiency:

*Specific Results Required for Acceptable Improvement:*

Date for Improvement to be completed:

| Supervisor Support |
|---|
| **List the support to be provided by supervisor (e.g. training, equipment, observation, procedures, coaching):** |
| If there is a need to verify any college-related information or specific college-related questions that I can help address for you, please contact me. |

*The Employee Discipline Form as provided above has been reviewed and approved by a member of human resources.*

**HR Liaison Reviewed and Approved:** _Malind Lewis_   **Date:** _01/19/21_

*Changes to template verbiage must be approved by HR.*

*Supervisor Initials:* _____
*Employee Initials:* _____
*HRC Initials:* _____

*Failure to show improvement in your job performance or behavior by stated deadlines and/or any future violations of the same or similar nature will subject you to further disciplinary action, up to and including termination of employment.*

| Acknowledgement of Receipt of Performance Documentation | | |
|---|---|---|
| **Immediate Supervisor:** | _Daphne Bapugh_ | Date: 1-19-21 |
| **Next Level Supervisor:** | _Mary McPete_ | Date: 1.19.21 |
| **Employee:** | | Date: |

*Your signature acknowledges discussion of the issues and receipt of the document. It does not indicate agreement with the document. You may add comments in the box below or submit them later by memo or e-mail.*

| Employee Comments |
|---|
| |

*Changes to template verbiage must be approved by HR.*

Supervisor Initials: _____
Employee Initials: _____
HRC Initials: _____

```
 1              IN THE UNITED STATES DISTRICT COURT
             FOR THE EASTERN DISTRICT OF TEXAS
 2                      SHERMAN DIVISION

 3   JOSEPH MICHAEL PHILLIPS,          )
                                       )
 4                  Plaintiff,         )
                                       ) Civil Action
 5   VS.                               ) No.  4:22-cv-184-ALM
                                       )
 6   COLLIN COUNTY COMMUNITY           )
     COLLEGE DISTRICT, et al.,         )
 7                                     )
                    Defendants.        )
 8

 9                 REPORTER'S CERTIFICATION
                DEPOSITION OF FLOYD NICKERSON
10                   FEBRUARY 9, 2023

11       I, Christy Cortopassi, Certified Shorthand Reporter

12   in and for the State of Texas, hereby certify to the

13   following:

14       That the witness, FLOYD NICKERSON, was duly sworn

15   by the officer and that the transcript of the oral

16   deposition is a true record of the testimony given by

17   the witness;

18       That the deposition transcript was submitted on

19   _____3-1-23_____ to the witness or to the attorney

20   for the witness for examination, signature and return to

21   me by _____3-31-23_____;

22       That the amount of time used by each party at the

23   deposition is as follows:

24   Mr. Greg H. Greubel.............02:26
     Mr. Charles Joseph Crawford.....00:00
25   Mr. Robert J. Davis.............00:00
```



1       I further certify that pursuant to FRCP No

2   30(f)(1) that the signature of the deponent:

3       __X__ was requested by the deponent or a party

4   before the completion of the deposition and that the

5   signature is to be returned within 30 days from date of

6   receipt of the transcript   If returned, the attached

7   Changes and Signature Page contains any changes and the

8   reasons therefor,

9       _____ was not requested by the deponent or a party

10  before the completion of the deposition

11      I further certify that I am neither counsel for,

12  related to, nor employed by any of the parties or

13  attorneys in the action in which this proceeding was

14  taken, and further that I am not financially or

15  otherwise interested in the outcome of the action

16      Certified to by me this __1st__ of _March_ ,

17  2023.

18

19

20  _____
    Christy Cortopassi, Texas CSR 6222

21  Expiration Date  10/31/2024

22  Firm Registration No  633
    Magna Legal Services

23  866 624 6221
    www MagnaLS com

24

25



Floyd Nickerson                                      February 09, 2023
                                                     Page 90

1        I, FLOYD NICKERSON, have read the foregoing

2   deposition and hereby affix my signature that same is

3   true and correct, except as noted above

4

5

6

7                    _____
                     FLOYD NICKERSON

8

9

10

11  _____ No changes made   ___✓___ Amendment sheet(s) attached

12

13  JOSEPH MICHAEL PHILLIPS

14

15  Vs.

16

17  COLLIN COUNTY COMMUNITY COLLEGE DISTRICT, et al.

18

19

20  JOB NO.  916093

21

22

23

24

25



1 | CHANGES AND SIGNATURE

2 | WITNESS: FLOYD NICKERSON

3 | DATE: FEBRUARY 9, 2023

4 |

5 | PAGE LINE        CHANGE              REASON

6 | 6      17-18     Childers to Childress    Misspelling

7 |

8 | 33     11-17     I had verified the document    Accuracy as corrected in line 15

9 |

10 | 34    12        DH MDGC to DGC          Missspelling

11 |

12 |

13 |

14 |

15 |

16 |

17 |

18 |

19 |

20 |

21 |

22 |

23 |

24 |

25 |



Floyd Nickerson                                          February 09, 2023
                                                                  Page 2

```
 1                      A P P E A R A N C E S

 2

 3   FOR THE PLAINTIFF:

 4        Mr. Greg H. Greubel
          Mr. Joshua T. Bleisch
 5        FOUNDATION FOR INDIVIDUAL RIGHTS AND EXPRESSION
          510 Walnut Street
 6        Suite 1250
          Philadelphia, Pennsylvania 19106
 7        215.717.3473
          greg.greubel@thefire org
 8        josh.bleisch@thefire.org

 9

10   FOR THE DEFENDANT COLLIN COUNTY COMMUNITY COLLEGE
     DISTRICT:

11        Mr  Charles Joseph Crawford
          Mr  Joseph Bailey McShane
12        ABERNATHY ROEDER BOYD & HULLETT, PC
          1700 Redbud Boulevard
13        Suite 300
          McKinney, Texas 75069
14        214.544.4000
          ccrawford@abernathy-law.com
15

16   FOR THE DEFENDANT BOARD OF TRUSTEES:

17        Mr. Robert J. Davis
          MATTHEWS SHIELS KNOTT EDEN & DAVIS & BEANLAND, LLP
18        8131 LBJ Freeway
          Suite 700
19        Dallas, Texas 75251
          972.234.3400
20        bdavis@mssattorneys.com

21

22
     ALSO PRESENT:
23        Ms. Monica Velazquez,
          General Counsel, Collin College
24
          Terry VanDerHeyden — Videographer
25
```





**KIM TINDALL & ASSOCIATES**

RE: Floyd Nickerson                                                      April 3, 2023

Dear Client:

We are forwarding these documents to you as the custodial attorney in this matter. This transcript is being handled pursuant to the Federal Rules of Civil Procedure and we have copied all parties on the Changes and Signature page(s) with the attached Certificate of Deposition submitted by the deponent to our office.

The items marked refer to the attached documents.

____✓____ The Changes and Signature page(s) was returned to our office within the specified time limit; therefore, we are forwarding the original deposition transcript(s) and the Changes and Signature page(s) with the attached Certificate of Deposition to you as the custodial attorney in this matter for safekeeping. All parties will be copied on the Changes and Signature page(s).

_____ The deponent returned the Changes and Signature page(s) within the specified time limit, however, the Changes and Signature page(s) was inadvertently returned without the original transcript. All parties have been copied.

_____ The Changes and Signature page(s) was not returned to our office within the specified time limit; therefore, we are forwarding the original deposition transcript to you as the custodial attorney in this matter.

_____ The Changes and Signature page(s) was returned to our office unexecuted. We are forwarding the original deposition transcript to you as the custodial attorney in this matter.

_____ The deponent returned the Changes and Signature page(s) enclosed after the specified time limit. All parties have been copied as a courtesy.

_____ This is to notify you that the examination and signature was not requested by the deponent and/or a party before the completion of the deposition; therefore, signature is waived pursuant to the Federal Rules of Civil Procedures. All parties have been copied via e-mail.

_____ A copy of the Changes and Signature page(s) was previously returned within the specified time limit. We are now in receipt of the Original Deposition Transcript and/or Changes and Signature page(s); therefore, we are returning it to you as the Custodial attorney in this matter for safekeeping.

_____ Amended.

Should you have any questions or concerns, please feel free to contact our office.

Sincerely,
KTA Certs Department
Certs@KTandA.COM
Nancy Renfroe – Department Manager