*Phillips v. Collin Cnty. Cmty. Coll. Dist., et al.*

# Exhibit E:
# Deposition of 30(b)(6) Designee
# Mary Barnes-Tilley

```
 1            IN THE UNITED STATES DISTRICT COURT
              FOR THE EASTERN DISTRICT OF TEXAS
 2                     SHERMAN DIVISION

 3   JOSEPH MICHAEL PHILLIPS,       )
                                    )
 4              Plaintiff,          )
                                    ) Civil Action
 5   VS.                            ) No. 4:22-cv-184-ALM
                                    )
 6   COLLIN COUNTY COMMUNITY        )
     COLLEGE DISTRICT, et al.,      )
 7              Defendants.         )
                                    )
 8

 9            ------------------------------------
           ORAL AND VIDEOTAPED RULE 30(b)(6) DEPOSITION OF
10           COLLIN COUNTY COMMUNITY COLLEGE DISTRICT
                      MARY BARNES-TILLEY
11                    FEBRUARY 9, 2023
                       VIA REALTIME
12            ------------------------------------

13

14

15        ORAL AND VIDEOTAPED REALTIME DEPOSITION OF MARY

16   BARNES-TILLEY, produced as a witness at the instance of

17   the Plaintiff, and duly sworn, was taken in the

18   above-styled and numbered cause on February 9, 2023,

19   from 9:03 a.m. to 2:01 p.m., before Christy Cortopassi,

20   CSR in and for the State of Texas, reported by machine

21   shorthand, at the law offices of Abernathy Roeder Boyd &

22   Hullett, PC, 1700 N. Redbud Boulevard, Suite 300,

23   McKinney, Texas 75069, pursuant to the Federal Rules of

24   Civil Procedure and the provisions stated on the record

25   or attached hereto.
```



```
 1                    A P P E A R A N C E S

 2

 3   FOR THE PLAINTIFF:

 4        Mr. Greg H. Greubel
          Mr. Joshua T. Bleisch
 5        FOUNDATION FOR INDIVIDUAL RIGHTS AND EXPRESSION
          510 Walnut Street
 6        Suite 1250
          Philadelphia, Pennsylvania 19106
 7        215.717.3473
          greg.greubel@thefire.org
 8        josh.bleisch@thefire.org

 9

     FOR THE DEFENDANT COLLIN COUNTY COMMUNITY COLLEGE
10   DISTRICT:

11        Mr. Charles Joseph Crawford
          Mr. Joseph Bailey McShane
12        ABERNATHY ROEDER BOYD & HULLETT, PC
          1700 Redbud Boulevard
13        Suite 300
          McKinney, Texas 75069
14        214.544.4000
          ccrawford@abernathy-law.com

15

16   FOR THE DEFENDANT BOARD OF TRUSTEES:

17        Mr. Robert J. Davis
          MATTHEWS SHIELS KNOTT EDEN & DAVIS & BEANLAND, LLP
18        8131 LBJ Freeway
          Suite 700
19        Dallas, Texas 75251
          972.234.3400
20        bdavis@mssattorneys.com

21

22   ALSO PRESENT:
          Ms. Monica Velazquez,
23        General Counsel, Collin College

24        Terry VanDerHeyden - Videographer

25
```



1              MR. McSHANE:  Bailey McShane for the Board

2    of Trustees.

3              THE VIDEOGRAPHER:  And will the reporter

4    please swear in the witness.

5                    MARY BARNES-TILLEY,

6    having been first duly sworn, testified as follows:

7                        EXAMINATION

8    BY MR. GRUEBEL:

9        Q.  Good morning, ma'am.  My name is Greg Greubel.

10   I am the -- as I said, I represent Michael Phillips in

11   this matter.  I have asked to depose the witness on

12   behalf of the college and you have been designated as

13   one of the individuals to testify on behalf of the

14   college.  I'm going to be asking you some questions

15   today.  We can just get a couple -- a few of these

16   things out of the way.

17             Can you state your name and address for the

18   record?

19       A.  It's Mary Barnes-Tilley.  My address is 3608

20   Delta Drive, McKinney, Texas 75071.

21       Q.  And have you ever been deposed before?

22       A.  Yes.

23       Q.  And when was that?

24       A.  I don't have the specific date but it was last

25   fall, but I don't have a specific date.



```
 1        Q.  Congratulations.

 2             (Exhibit 1 marked.)

 3        Q.  (BY MR. GREUBEL)  I'm going to hand you what's

 4   been marked as Exhibit 1.  Take a look at it and let me

 5   know when you're ready for me to ask you questions.

 6        A.  Okay.

 7        Q.  Are you ready?

 8        A.  Yes.

 9        Q.  Have you ever seen this before?

10        A.  Yes.

11        Q.  And do you understand that you have been

12   designated by the college to give testimony on some of

13   these topics?

14        A.  Yes.

15        Q.  Can you turn to the fourth page?  Oh, I'm

16   sorry.  Yeah, the fourth page, page number four.

17        A.  Page four.

18             MR. CRAWFORD:  The fourth of the deposition

19   notice.

20        Q.  (BY MR. GREUBEL)  Yeah.

21        A.  Okay.  Make sure I'm on the right page.

22        Q.  Yeah.

23        A.  Thank you.

24        Q.  The little four at the bottom there.

25        A.  Okay.
```



1   Dr. Phillips' contract for reasons that had nothing to
2   do with his alleged protected speech.  Those decisions
3   to nonrenew would have been made individually by those
4   that signed the contract renewal form.
5                Ultimately the college president, through
6   our board policies, is the only one that has the right
7   to employ a faculty member.  But the actions taken would
8   have been -- the decisions on the nonrenewal would have
9   been individual to the person who was signing that
10  contract form.
11      Q.  But the college -- Mr. President, Neil Matkin,
12  made the final decision?
13      A.  According to board policy, he is the only one
14  that has that ability to employ faculty members.
15      Q.  And he, in fact, used that authority in this
16  case?
17      A.  He signs the contract form to determine whether
18  he approves of a contract.
19      Q.  And when he signs that form he is exercising
20  the authority of the policy that you just referenced?
21      A.  Yes.
22      Q.  Take a look at the second -- oh, wait.  Yes,
23  the second affirmative defense.  Tell me when you are
24  ready to talk about that.
25      A.  Ready.



1  part.

2        Q.  I'm sorry.  I'll try to quit doing that.

3        A.  Okay.  That's okay.

4        Q.  I was -- I said that I'm going to ask you

5  questions now about the enforcement and application of

6  Collin College's policy on bringing complaints through

7  proper channels.  And I have just handed you an exhibit

8  that is marked as Exhibit 3.  And take your time reading

9  it and let me know when you are ready to talk about it.

10       A.  All right.  I'm ready to talk about it.

11       Q.  What is this?

12       A.  This is Board Policy DH Exhibit which is our

13  Code of Professional Ethics.

14       Q.  And what purpose does this document further for

15  the college?

16       A.  It's part of Board Policy DH Local.  All

17  employees of the college should comply with the

18  Professional Code of Ethics, DH Exhibit.

19       Q.  And is this the policy that requires faculty

20  members to bring complaints through proper channels?

21       A.  We don't have a specific policy that uses the

22  word "proper channels."  This Code of Professional

23  Ethics does have the language that refers to bringing

24  concerns through appropriate measures.

25       Q.  And can you tell me more about what the college



1    part.

2          Q.   I'm sorry.  I'll try to quit doing that.

3          A.   Okay.  That's okay.

4          Q.   I was -- I said that I'm going to ask you

5    questions now about the enforcement and application of

6    Collin College's policy on bringing complaints through

7    proper channels.  And I have just handed you an exhibit

8    that is marked as Exhibit 3.  And take your time reading

9    it and let me know when you are ready to talk about it.

10         A.   All right.  I'm ready to talk about it.

11         Q.   What is this?

12         A.   This is Board Policy DH Exhibit which is our

13   Code of Professional Ethics.

14         Q.   And what purpose does this document further for

15   the college?

16         A.   It's part of Board Policy DH Local.  All

17   employees of the college should comply with the

18   Professional Code of Ethics, DH Exhibit.

19         Q.   And is this the policy that requires faculty

20   members to bring complaints through proper channels?

21         A.   We don't have a specific policy that uses the

22   word "proper channels."  This Code of Professional

23   Ethics does have the language that refers to bringing

24   concerns through appropriate measures.

25         Q.   And can you tell me more about what the college



1    Q.  There would be -- would it be a violation of

2  this policy if they did not seek the college's

3  assistance to revise those issues in a judicious and

4  appropriate manner?

5    A.  According to the Board Policy DH Local the

6  employees are to abide by the Code of Professional

7  Ethics and violating that could result in disciplinary

8  action.

9    Q.  So if an employee has a concern about the

10 college and they tell their friend about it, instead of

11 bringing it to the college's attention, would that be a

12 violation of DH exhibit?

13    A.  So if an employee told their friend about

14 it would that be a -- I'm sorry.  I may ask you to

15 repeat that.

16    Q.  Sure.  So you gave an example of a dirty

17 bathroom.  Let's say the employee takes a photo of this

18 dirty bathroom, and the, sends it to all their friends

19 that they have on the faculty and say bad things about

20 the cleanliness of Collin College without seeking the

21 help of the facilities management team, would that be a

22 violation of DH Exhibit?

23    A.  If they're sending a photo to their friends and

24 talking about it, we would not be aware of that.

25    Q.  What if you became aware of it?



 1  disciplinary action.

 2      Q.   What if the employee posted those photos of the

 3  dirty bathroom on Facebook and the college became aware

 4  of it, would that violate policy DH Exhibit?

 5      A.   If the employee is posting -- if the employee

 6  is posting information publicly on Facebook, then just

 7  like the other situation, we would have to review the

 8  information that is presented to make the determination

 9  if we think that the employee should have used proper

10  channels to address their concerns.

11              The -- when the information is shared

12  publicly the college is in a position where they're

13  having to respond to that if they get inquiries related.

14      Q.   So the college believes that it can use

15  information that's shared publicly to enforce the code

16  of ethics and seek to have employees bring that to the

17  college first?

18      A.   I'm going to ask you to repeat that.

19      Q.   That was a very complicated question.  I'm

20  sorry.

21              Does the college believe that it can use

22  information that faculty members share publicly to

23  punish them for violating policy DH Exhibit?

24      A.   When the information presented publicly is

25  misinformation, for example, and it causes disruption in



1        A.   Okay.

2        Q.   And I forgot to ask one question about the

3   previous exhibit, Exhibit 3.  Was that policy approved

4   by the board?

5        A.   All board policy is set by the Board of

6   Trustees.

7        Q.   And the one that's been marked as Exhibit 3 is

8   one that has been approved by the board?

9        A.   Yes.  That is an official board policy.

10       Q.   Okay.  I wanted to direct your attention to the

11   7th and 8th interrogatory answers of the individual

12   defendant Mary Barnes-Tilley.  When you have had a

13   moment to read those, please let me know and I can ask

14   you some questions about it.

15       A.   I want to make sure I'm on the right page.

16   Tell me which page it is.

17       Q.   Yeah.  It's the page five.  So if you look at

18   the bottom right-hand corner there's page numbers, page

19   five.

20       A.   Okay.

21       Q.   And I am going to be asking you only about

22   Interrogatory 7 and Interrogatory 8.

23       A.   Okay.

24       Q.   Is the individual Defendant Barnes-Tilley's

25   interpretation of policy DH Exhibit accurate according



1 example, wanting to take some type of action on behalf

2 of the college they may ask a question about a board

3 policy related.  And I'm speaking in very general terms

4 right now.

5            But we had a set of board policies.  So,

6 again, if someone is unclear if that's something they

7 could do, is it in our board policy, is there any

8 guidance in our board policy, then they would ask

9 questions and we would find the employee that can most

10 appropriately respond to those questions.

11     Q.  So would you say if the employee isn't sure

12 whether or not the conduct that they want to engage in

13 is permissible or impermissible based on what Collin

14 College's policies -- that that's when they would have

15 to ask clarifying questions?

16     A.  If there is something that -- if there is an

17 action that an employee would want to take and they are

18 concerned that if this -- is this something that is

19 something that we're allowed to do as employees of the

20 college, is there any board policy related, they could

21 ask those questions and then we could seek clarification

22 based on our board policy.

23     Q.  Look at Exhibit 7.

24     A.  Yes.

25     Q.  Can you tell me what that is?



Mary Barnes-Tilley

February 09, 2023
Page 53

1      A.   That is an Employee Discipline Form issued to
2  Dr. Phillips on August 27th of 2021.
3      Q.   And is the college familiar with this form and
4  prepared to testify about it?
5      A.   Yes.
6      Q.   Can you tell me about what occurred here?
7  What's the -- let me ask you first a question.
8            It says Employee Discipline Form.
9      A.   Uh-huh.
10      Q.   But the college doesn't like the term
11  "punishment."  Would you say that discipline and
12  punishment are synonyms?
13      A.   As I stated before, when the college
14  disciplines we specifically provide support because the
15  reason that we discipline is to help someone improve
16  their performance.
17      Q.   So the expectation of the college is when they
18  issue an Employee Discipline Form that if what they gave
19  coaching on doesn't occur again, that the employee has
20  reformed their behavior and should continue to work at
21  the college?
22      A.   No.  Not necessarily.  Because there could be
23  other things an employee is engaging in, other actions.
24  So I can't answer whether an employee could remain
25  employed at the college based on one incident.



1      Q.   But if the employee did reform their behavior

2    to the coaching that they received as a result of an

3    Employee Discipline Form, wouldn't that be a successful

4    outcome according to the college?

5      A.   We would like to see as part of the coaching

6    and discipline process that someone -- an employee not

7    repeat the behavior.  That's what the discipline or

8    coaching and discipline process is for.  It's to help

9    them improve that performance.

10      Q.   And if they don't repeat the behavior that they

11    were coached on that is a success according to the

12    college?

13      A.   That -- if they don't repeat the behavior, that

14    would mean that in that particular behavior they have

15    met the requirements of the particular Employee

16    Discipline Form and what is outlined as the deficiency

17    and the expected outcomes.

18      Q.   What was Michael Phillips' deficiency on this

19    August 27th Employee Discipline Form?

20      A.   So in this case Dr. Phillips ignored requests

21    by supervisors, and as stated, constitutes

22    insubordination.  And additionally, the college -- or

23    excuse me.  The conduct violates the professional code

24    of ethics.

25               And listed there are two.  The professional



1  educator should work to enhance cooperation and

2  collegiality among students, faculty, and administrators

3  and personnel.

4                  And then number 11, the professional

5  educator shall observe the stated policies and

6  procedures of the college district preserving the right

7  to seek revision in a judicious and appropriate manner.

8      Q.  Well, what did Michael Phillips do to violate

9  those two provisions of the policy DH Exhibit?

10     A.  Dr. Phillips shared publicly a PowerPoint slide

11 from his Associate Dean on his public social media

12 questioning the content of the slide.

13     Q.  Do you recall what the content of the slide

14 was?

15     A.  Yes.  It was information that stated -- the

16 college was in the middle of managing the Governor's

17 executive order on a no mask mandate.  And so the

18 Associate Dean was sharing in her fall faculty meeting

19 information about putting anything in writing that would

20 mandate masks.  And specifically putting it in your

21 syllabus.

22                 And at the time the college was navigating

23 what the fine would be for violating the executive

24 order.  And so she was conveying the information to the

25 faculty to not put anything in writing in the syllabus



1   a student.  Anybody can read what's posted.

2        Q.  I'm going to ask you a yes-or-no question.  Was

3   the COVID-19 pandemic a matter of public concern; yes or

4   no?

5        A.  I would say yes.

6        Q.  Was masking -- whether it -- pardon me.

7             Was whether or not Collin College was going

8   to mandate masking in 2021 a matter of public concern;

9   yes or no?

10       A.  I would say yes.

11            MR. GREUBEL:  Can we take a break?

12            MR. CRAWFORD:  Great.  Sure.

13            THE VIDEOGRAPHER:  We are off the record at

14  10:46 a.m.

15            (Break taken from 10:46 a.m. to 11:07 a.m.)

16            THE VIDEOGRAPHER:  We are back on record at

17  11:07 a.m.

18            (Exhibit 8 marked.)

19       Q.  (BY MR. GREUBEL)  All right.  We are now going

20  to be moving on to Topic 15 which is the

21  Collin College -- the tracking of Michael Phillips'

22  social media.  I'm going to hand you what's been marked

23  as Exhibit 8.  Quite a few pages in there but let me

24  know when you are familiar with it and ready to talk

25  about it.



1              MS. VELAZQUEZ:   Do you have an extra copy?

2              MR. BLEISCH:   Yeah.

3         A.   Okay.  I'm ready.

4         Q.   (BY MR. GREUBEL)  Do you recognize this

5    document?

6         A.   Yes.

7         Q.   What are these?

8         A.   This was a document outlining the discussions

9    that I had in my role as Dean with Dr. Phillips in June

10   of 2020.

11        Q.   And why did you in your role as Dean have this

12   meeting with Michael Phillips in June of 2020?

13        A.   I was -- it was a conversation with

14   Dr. Phillips to address information that was shared on

15   his public social media and to have a conversation to

16   address any concerns because of the information that he

17   was sharing.

18        Q.   And was the college aware of this meeting in

19   June of 2020?

20        A.   In my role as Dean I did inform my supervisor

21   of this meeting.

22        Q.   And who was your supervisor?

23        A.   Dr. Abe Johnson, who was campus Provost at the

24   time of the meeting.

25        Q.   So is it fair to say that when



Mary Barnes-Tilley

February 09, 2023
Page 64

1   Dr. Barnes-Tilley had this meeting that that was

2   approved by Collin College?

3        A.   Yes.   That's fair to say.

4        Q.   I'm drawing your attention to the second page

5   of this.   There's little numbers on the bottom

6   right-hand corners and I'll be referring to those

7   because there's quite a few exhibits here.   So it's

8   Barnes-Tilley 1033.

9             Now, was the concern that these posts

10  lacked dignity and respect, which is the second bullet

11  point there?

12       A.   That was some of the concern.

13       Q.   What were the other concerns?

14       A.   That Dr. Phillips had not come to the Associate

15  Dean, Dr. Streater or myself as a Dean with questions.

16       Q.   And I want to go down now to 1035 because I am

17  trying to ask questions about how the college came to be

18  aware of these Facebook posts.   How did the college

19  track Michael Phillips' social media account in or

20  around June of 2020?

21       A.   The college did not track Dr. Phillips' social

22  media account.

23       Q.   How did the college capture these screenshots

24  of Michael Phillips' social media account?

25       A.   Dr. Phillips' social media account was public



1   and at the time other employees read the information and
2   shared, and because it was public anyone could read his
3   post.
4        Q.  And do you know who captured these screenshots
5   that are -- and I'm going to say Barnes-Tilley 1035 down
6   to Barnes-Tilley 1055 are all screenshots of Michael
7   Phillips' social media accounts or emails transmitting
8   those posts.
9        A.  What was the question?
10       Q.  I was just making that clear for the record so
11  that when I'm asking you how the college came in
12  possession of these, how that occurred.  Who captured
13  these screenshots that are --
14       A.  I captured those screenshots.
15       Q.  You being Mary Barnes-Tilley?
16       A.  Mary Barnes-Tilley, yes.
17       Q.  Did the college direct Mary Barnes-Tilley to
18  capture these screenshots?
19       A.  No.
20       Q.  Were these captured as a part of your role
21  as the -- what was your title at the time?
22       A.  Dean of Academic Affairs.
23       Q.  Okay.  Did you capture these screenshots as a
24  part of your role as the Dean of Academic Affairs?
25       A.  Can you ask that question again?



1       A.  Ask the question again, if I --

2       Q.  No, that's fine.

3       A.  I --

4       Q.  I wasn't sure if you were done.

5       A.  Yes.

6       Q.  I didn't want to interrupt you.

7           Okay.  So in Barnes-Tilley 1033 it says

8  that I would advise you not to use your public Facebook

9  page to criticize your employer and that that's not

10 following the core values.

11          What core values of Collin College are

12 referenced on page 1033?

13      A.  Those were my notes as I went into the meeting.

14 At the time I was referencing, as I recall from the

15 meeting, the core values of dignity and respect.

16      Q.  What does dignity mean to the college?

17      A.  I would say that dignity is treating others --

18 treating others with respect.

19      Q.  And what does respect mean to the college?

20      A.  I think that means just honoring an individual.

21      Q.  So criticizing an individual wasn't respectful?

22      A.  Can you repeat that?

23      Q.  Sure.  Certainly.  Is criticizing an individual

24 not respectful?

25      A.  I think that would depend on what type of



 1  screenshots of his social media page?

 2      A.  Yes.

 3      Q.  You wouldn't call that monitoring?

 4      A.  No.

 5      Q.  Why not?

 6      A.  Well, I would -- I captured information that I

 7  felt it was appropriate to address because the college

 8  was navigating a crisis situation.  And I subsequently

 9  addressed it with Dr. Phillips in the June meeting.

10      Q.  Let me hand you what's going to be marked as

11  Exhibit 9.

12              (Exhibit 9 marked.)

13      Q.  (BY MR. GREUBEL)  Let me know when you have had

14  a chance to look at it.

15      A.  Okay.

16      Q.  What are the documents here that have been

17  labeled as Exhibit 9?

18      A.  These are screen captures of Dr. Phillips, some

19  of his Twitter posts.

20      Q.  Okay.  It looks like these are from August 16th

21  of 2021?

22      A.  Yes.

23      Q.  And who captured these?

24      A.  I did, Dr. Barnes-Tilley.

25      Q.  And did you do that as a part of your role as



1  discipline for misinformation.  The college disciplined

2  by not following appropriate channels to address

3  concerns.

4         Q.  With regard to Exhibit 7?

5         A.  Yes.

6         Q.  Has a college ever punished an employee for --

7  actually, I'm sorry.  That's outside of what I'm doing

8  right now.

9              I want to talk now about disciplinary and

10 remedial actions that were issued to Michael Phillips

11 during his time at Collin College.

12        A.  That goes with this.

13             (Exhibit 10 marked.)

14        Q.  (BY MR. GREUBEL)  I'm handing you what's been

15 marked as Exhibit 10.  Please review it and let me know

16 when you are ready to talk about it.

17        A.  Okay.

18        Q.  I'm going to refer to the Bates numbers on the

19 bottom right-hand corner again.  So 2143.  This is an

20 email from an employee named Brenda Kihl to Mary McRae.

21 Who are those individuals?

22        A.  Mary McRae at the time of this email was the

23 campus Vice President Provost of Plano.  Brenda Kihl was

24 the Executive Vice President.

25        Q.  And this says that Mary is instructing Brenda



1      Q.   What -- tell me about that.

2      A.   The -- those that were referenced had

3  associated themselves with the college when they were

4  speaking out about Confederate statues.

5      Q.   And what policy of Collin College did that

6  violate?

7      A.   So as stated in the memorandum, while Collin

8  College respects and values the constitutional right of

9  its employees to engage in free speech on matters of

10 public concern where policy DGC Local employees must

11 make clear that their views that they express are their

12 own and avoid actions that may inadvertently create an

13 impression they are speaking on behalf of the college.

14     Q.   And what did these individuals do to

15 inadvertently create the impression that they were

16 speaking on behalf of the college?

17          MR. CRAWFORD:   Objection; form.

18     A.   Can you repeat the question?

19          MR. GREUBEL:   Do you mind repeating it?

20          (Requested portion was read.)

21          MR. CRAWFORD:   Objection; form.

22     A.   I don't know what each individual did that's

23 listed.

24     Q.   (BY MR. GREUBEL)   What did Michael Phillips do?

25     A.   Dr. Phillips associated himself with the



1   college, also solicited signatures from his Collin email

2   address on a petition.

3        Q.  And what policies of Collin College did those

4   two actions violate?

5        A.  So DGC Local, paragraph two, page 2145, states

6   that when a faculty member -- excuse me.  When faculty

7   and staff -- excuse me.  When faculty and support staff

8   speak or write as private citizens, they are reminded

9   that their actions will be judged by the public.

10              So DGC Local would be one.  CR Local.

11       Q.  And what portion of CR Local?

12       A.  Okay.  So CR Local, can you -- I'm sorry.  Can

13   you repeat the question again?

14       Q.  Sure.  What -- yeah, what portion of CR Local

15   did Dr. Phillips' actions violate?

16       A.  So paragraph two, page 2148.  Collin College

17   District technological information resources are

18   provided to allow faculty, staff and students to pursue

19   the central educational mission of the district to

20   engage to the extent that they promote that mission

21   either directly in teaching or research or indirectly in

22   supporting the offices, the main college district

23   operation.  Incidental personal use that does not

24   otherwise violate this policy or have adverse effects on

25   the college, resources are permitted.  Technological and



1   Dr. Phillips about it, which is the normal practice of

2   Collin College to resolve complaints by a student

3   against a faculty member?

4                   MR. CRAWFORD:  Objection; form.

5       A.  Yes.  Somebody asked the student not to,

6   according to the statement I was asked not to.

7                   (Exhibit 16 marked.)

8       Q.  (BY MR. GREUBEL)  And I had the AD Local which

9   is Exhibit 16.  What portion of AD Local did

10  Dr. Phillips violate according to the September 29th,

11  2021, Employee Discipline Form?

12      A.  The AD Local, the Collin College Core Value of

13  Dignity and Respect.

14      Q.  Aren't those also listed as part of the code of

15  ethics?

16      A.  I would have to review the code of ethics.

17      Q.  I think that's Exhibit 1.  Oh, no, 2.  No.

18                  MR. CRAWFORD:  3.

19      Q.  (BY MR. GREUBEL)  Exhibit 3.  Exhibit 1.

20      A.  Yes.

21      Q.  So he violated the dignity and respect

22  provision of AD Local but not the dignity and respect

23  provision of code of ethics?

24      A.  Dr. O'Quin selected this particular board

25  policy as a violation.  It lists our core values of



1   dignity and respect and that's the one that she cited.

2        Q.  Now I want to ask you about the deliberation

3   over the decision to terminate Michael Phillips.  Did

4   Michael Phillips ever cause a disruption at Collin

5   College?

6        A.  I would need you to define disruption.

7        Q.  Was Collin College ever unable to open because

8   of something Michael Phillips did or said?

9        A.  Can you clarify open?

10       Q.  Have classes.  Did the college ever have to

11   cancel classes because of something Michael Phillips did

12   or said?

13       A.  No.

14       Q.  Did the college ever have to retain extra

15   security because of anything Michael Phillips did or

16   said?

17       A.  Not that I'm aware of.

18       Q.  Did the college ever lose money in any regard

19   whether it be from personal donations or taxpayer

20   dollars because of something Michael Phillips did or

21   said?

22       A.  I don't know.

23       Q.  What's your best guess?

24       A.  I don't know.

25       Q.  Can you think of anything that might have



1  caused the college to lose money over something Michael
2  Phillips did or said?
3       A.  I don't know.
4       Q.  Why did the college not approve Dr. Phillips
5  for a new three-year contract?
6            (Reporter clarification.)
7       A.  So the process started in August of 2019 and as
8  part of that process Dr. Phillips was up for a contract
9  extension at the time.  And his Associate Dean Chaelle
10 O'Quin and his Dean Dr. Streater both did not recommend
11 him for a contract extension which means Dr. Phillips
12 would have applied for a multiyear contract and go
13 through that process.
14           As part of that process individually each
15 person on the approval form would have their reasons for
16 not recommending Dr. Phillips for a multiyear contract.
17 So that would be the Dean, the Council on Excellence,
18 the Provost, Dr. Abe Johnson, and then Dr. Matkin.
19           And each of them would have their
20 individual reasons for making their recommendation.
21      Q.  (BY MR. GREUBEL)  And who did they make a
22 recommendation to?
23      A.  As part of the process the Dean would be the
24 first.  They would make their individual recommendation.
25 Then the Council on Excellence reviews the -- would



1  review Dr. Phillips' or did review Dr. Phillips' packet,

2  would make their recommendation.

3           Then that information is submitted to the

4  campus Provost to make their recommendation.  And that

5  is then submitted to Dr. Abe Johnson for his and then on

6  to Dr. Matkin.  So it follows a process and each

7  individual person provides their reasons for their

8  recommendation.

9       Q.  And then who ultimately makes the final

10 decision about whether or not to approve faculty members

11 for new contracts?

12      A.  The college President, according to the Board

13 Policy DD Local, is the one who makes decisions on

14 employment of faculty.

15           (Exhibit 19 marked.)

16      Q.  (BY MR. GREUBEL)  I'm going to hand you what's

17 marked as Exhibit 19.  Let me know when you're ready to

18 talk about it.

19      A.  Okay.

20      Q.  What is that document that I just handed you

21 that's marked as --

22      A.  This is a recommendation for a faculty

23 multiyear contract and attached justifications.

24      Q.  And there's different sections here.  A, B, C,

25 D, E -- does the fact that someone has signed their name



```
 1   August 17th, 2021, and September 29th, 2021?

 2        A.   Yes.  Those are the discipline forms.

 3        Q.   Now I want to direct your attention to the next

 4   box which is Section B.  It appears this is a Council on

 5   Excellence; is that right?

 6        A.   Yes.

 7        Q.   It's a great name.  And what does it mean when

 8   the Council on Excellence recommends a faculty member

 9   for a new contract?

10        A.   So as part of our procedure the Council on

11   Excellence reviews four areas on a faculty member, their

12   teaching, and professional development and their college

13   service and their student support.  Those are the only

14   areas where they evaluate a faculty member and then they

15   make their recommendation based on the information.

16        Q.   And does the document Bates labeled Collin

17   College 1793 to 1794, appears to be on Collin College

18   letterhead, to Mary Barnes-Tilley from Dr. Wise

19   represent the Council on Excellence's recommendation to

20   approve Dr. Phillips for a new contract?

21        A.   This is -- yes.  This is their justification

22   for their recommendation.

23        Q.   And why did the college not follow the Council

24   on Excellence's recommendation to recommend Dr. Phillips

25   for a new three-year contract?
```



1     Q.  But if the employee did reform their behavior
2  to the coaching that they received as a result of an
3  Employee Discipline Form, wouldn't that be a successful
4  outcome according to the college?
5     A.  We would like to see as part of the coaching
6  and discipline process that someone -- an employee not
7  repeat the behavior.  That's what the discipline or
8  coaching and discipline process is for.  It's to help
9  them improve that performance.
10     Q.  And if they don't repeat the behavior that they
11  were coached on that is a success according to the
12  college?
13     A.  That -- if they don't repeat the behavior, that
14  would mean that in that particular behavior they have
15  met the requirements of the particular Employee
16  Discipline Form and what is outlined as the deficiency
17  and the expected outcomes.
18     Q.  What was Michael Phillips' deficiency on this
19  August 27th Employee Discipline Form?
20     A.  So in this case Dr. Phillips ignored requests
21  by supervisors, and as stated, constitutes
22  insubordination.  And additionally, the college -- or
23  excuse me.  The conduct violates the professional code
24  of ethics.
25             And listed there are two.  The professional



Collin College
043500

EMPLOYEE STANDARDS OF CONDUCT



DH
(EXHIBIT)

## Code of Professional Ethics

Since all College District employees interface with or serve students, the College District holds all of its employees to the ethical standards of professional educators as expressed in the Texas Community College Teachers Association Code of Professional Ethics (PDF)[1] set forth in large part below:

1.  The Professional Educator shall treat all persons with dignity and respect; discriminating against no one on any basis protected by law.

2.  The Professional Educator shall strive to help each student realize his or her full potential as a learner and as a human being.

3.  The Professional Educator shall by example and action encourage and defend the unfettered pursuit of truth by both colleagues[1] and students supporting the free exchange of ideas, observing the highest standards of academic honesty and integrity, and seeking always an attitude of scholarly objectivity and tolerance of other viewpoints.

4.  The Professional Educator shall work to enhance cooperation and collegiality among students, faculty, administrators, and other personnel.

5.  The Professional Educator shall recognize and preserve the confidential nature of professional relationships, neither disclosing nor encouraging the disclosure of information or rumor, which might damage or embarrass or violate the privacy of any other person.

6.  The Professional Educator shall maintain competence through continued professional development, shall demonstrate that competence through consistently adequate preparation and performance, and shall seek to enhance that competence by accepting and ap-propriating constructive criticism and evaluation.

7.  The Professional Educator shall make the most judicious and effective use of the College District's time and resources.

8.  The Professional Educator shall fulfill the employment agreement both in spirit and in fact, shall give reasonable notice upon resignation, and shall neither accept tasks for which he or she is not qualified nor assign tasks to unqualified persons.

9.  The Professional Educator shall support the goals and ideals of the College District and shall act in public affairs in such a manner as to bring credit to the College District.

10. The Professional Educator shall not engage in unlawful harassment or sexual harassment of students or colleagues and shall adhere to the College District's policies on unlawful harassment and other conduct.

_____

[1] The term "colleague" refers to all persons employed by or who contracts with the College District.

DATE ISSUED: 7/14/2020                                                                    1 of 2
LDU 2020.03
DH(EXHIBIT)-X

Collin College
043500

EMPLOYEE STANDARDS OF CONDUCT                                    DH
                                                            (EXHIBIT)

11.  The Professional Educator shall observe the stated policies and procedures of the College District, reserving the right to seek revision in a judicious and appropriate manner.

12.  The Professional Educator shall participate in the governance of the College District by accepting a fair share of committee and institutional responsibilities.

13.  The Professional Educator shall support the right of all colleagues to academic freedom and due process and defend and assist a professional colleague accused of wrongdoing, incompetence, or other serious offense so long as the colleague's innocence may reasonably be maintained.

14.  The Professional Educator shall not support a colleague whose persistently unethical conduct or professional incompetence has been demonstrated through due process.

15.  The Professional Educator shall accept all rights and responsibilities of citizenship, always avoiding use of the privileges of his or her public position for private or partisan advantage.

_____

[1] Texas Community College Teachers Association Code of Professional Ethics (PDF): http://www.tccta.org/wp-content/uploads/2016/01/TCCTA-Ethics.pdf



**COLLIN COLLEGE**

# EMPLOYEE DISCIPLINE FORM

**DEPOSITION EXHIBIT**
7
Tilley

| Employee Information | | | |
|---|---|---|---|
| **Employee Name:** | Michael Phillips | **CWID:** | 110793529 |
| **Job Title:** | Professor | **Department:** | History |
| **Full-time or Part-time:** | Full-time | **Exempt / Non-Exempt:** | Exempt |
| **Immediate Supervisor:** | Dr. Chaelle O'Quin | **Date:** | 8/27/2021 |

| Performance Status | | |
|---|---|---|
| ☒ Level 1 Warning | ☐ Level 2 Warning | ☐ Recommendation for Suspension |

## Details

List the employee's primary job responsibilities or behaviors that require attention and describe the specific improvement that is needed. (Include facts about events, dates, people, documents, etc.)

1. Job Performance/Behavior Deficiency:

Performance/Behavior Deficiency – On August 11, 2021, Dr. Michael Phillips posted a copy of a PowerPoint slide from his Division Meeting with his Associate Dean on his public social media, questioning the message on the slide. The Associate Dean confirmed that the PowerPoint slide was used in her presentation in the Division meeting, but shown without context. We have previously coached Dr. Phillips about using all internal communication channels (for instance, Associate Dean, Dean, Faculty Council, etc.) with his questions and/or concerns with the College, including formal coaching in July 2019, informal coaching in June 2020, and verbal and email announcements in Division meetings in August 2021. He did not come to anyone to discuss his concerns after the August 11th meeting. Regardless of the questions or workplace concerns, the reason for this disciplinary warning is his continued conduct in not bringing up his concerns in an appropriate manner.

This continued conduct of ignoring requests by supervisors constitutes insubordination as defined by Board policy DMAA (Local). Additionally, this conduct also violates Collin College's Code of Professional Ethics, as stated in Board Policy DH (Exhibit), specifically items listed below:

- #4: "The Professional Educator shall work to enhance cooperation and collegiality among students, faculty, administrators, and other personnel" and
- #11, "The Professional Educator shall observe the stated policies and procedures of the College District, reserving the right to seek revision in a judicious and appropriate manner."

Specific Results Required for Acceptable Improvement:

Dr. Phillips is expected to follow Collin College's policies and procedures.

1. In the event the expectations of communicating with supervisors, as set out in this level 1 and previously discussed with Dr. Phillips, are not clear, Dr. Phillips should schedule a call with Associate Dean Dr. Chaelle O'Quin as soon as possible.
2. If there are future questions, concerns, or differences of opinion, Dr. Phillips should use internal communication channels, including Associate Dean, Dean, Provost, or otherwise as directed.

Date for Improvement to be completed: immediately and on-going

Changes to template verbiage must be approved by HR.

Supervisor Initials: _____
Employee Initials: _____
HRC Initials: _____

COLLIN COLLEGE 002374

**Supervisor Support**

List the support to be provided by supervisor (e.g. training, equipment, observation, procedures, coaching):

Associate Dean Dr. Chaelle O'Quin will be available to meet with Dr. Phillips (in person, via email, or via Zoom) on a regular basis throughout the fall semester pursuant to Dr. Phillips' schedule. As needed, Dean Dr. Kristen Streater will also be available to address any questions or concerns.

The Employee Discipline Form as provided above has been reviewed and approved by a member of human resources.
HR Liaison Reviewed and Approved: _____ Date: 8/27/21

Failure to show improvement in your job performance or behavior by stated deadlines and/or any future violations of the same or similar nature will subject you to further disciplinary action, up to and including termination of employment.

**Acknowledgement of Receipt of Performance Documentation**

Immediate Supervisor: _____ Date: 8/27/21
Next Level Supervisor: _____ Date: 8/27/21
Employee: _____ Date: 8/27/21

Your signature acknowledges discussion of the issues and receipt of the document. It does not indicate agreement with the document. You may add comments in the box below or submit them later by memo or e-mail.

**Employee Comments**

I disagree with this interpretation of policy and believe it contradicts board policy that guarantees faculty free speech and the right of faculty to speak publically on matters of public concerns

*Changes to template verbiage must be approved by HR.*

Supervisor Initials:
Employee Initials:
HRC Initials:

February 2020
Page 2 of 2

COLLIN COLLEGE 002375

E



DEPOSITION
EXHIBIT
PENGAD 800-631-6989
8
7/1/24

**Discussion with Michael Phillips**

**June 19, 2020**

**MBT comments made:**

Information shared that you were discussing Collin on FB and shared posts

Disappointed

<u>Public</u> FB page so I read the posts

### Mid-May on FB, comments

- TFW "That feeling when your employer is basically saying the loss of your life is an acceptable calculated risk"
- "it looks like we're opening in the fall...masks recommended...no discussion of capping classes"
- To Pickens comment about "He" basically threw sanitation on us..."it was insulting as was the complete disinterest in faculty input. Shared governance is a requirement of SACS. I see none of it"
- "I've contacted three board members already and I'm contacting a lawyer and I don't care is that's public knowledge."
- Encouraging doctor's notes

### May 24th on FB, comments

- Talking about meeting a friend about a book..."with my employer apparently willing to put my life at risk this fall, that was a needed boost"

### Early June on FB comments

- Explained a dream about being on campus and said "what I know is mostly going to happen in the fall" (chaos, policies and procedures pushed up chain and them being furious, unorganized)

### What we have done

- Matkin sends regular updates
- Met weekly or more often as Deans with Toni Jenkins from March-May
- Deans communicated to ADs who communicated to faculty
  - Kristen sent 32 emails during that time to faculty
- Regular meetings with COTW including faculty and staff council representative that were there to represent and share feedback from respective groups
- Regular meetings to discuss all guidelines and compliance: CDC, federal and state govt, local, etc.
- Health and safety of faculty, staff and students always a priority.

1

**Concerns**

- Disappointed
- Actions do not follow core values. Lack of dignity and respect for Kristen or me or the institution
- Ignoring all communication from the institution and Kristen/me
- Sharing information on FB that is not accurate
- Not coming to Kristen or myself with questions
- Not using our processes and procedures to share concerns...faculty council (shared governance)
- Over the past year
    - Student organization going to board meetings
    - You attending to support
    - Not encouraging students to use SGA and you not using Faculty council to share concerns
    - Events need to be apolitical but you get right up to making it political with your comments
- Message gets lost when you are constantly challenging everything

**Questions**

- Are you unhappy here?
    - Perceptions of your actions make me question; always challenging college
- Why are you still here if you are constantly challenging all we do as an institution?

**Next steps**

- I would advise you to use the internal processes and procedures for sharing concerns, faculty council
- Come to Kristen or me for questions
- I would advise not to use your public FB page to criticize your employer.
    - This is not following our core values
    - Caution you to share things that are not accurate.

2

**Phillips comments from 6-19-20 meeting:**

- ○ He is getting feedback from faculty because they like to share concerns with him. He indicated he told him to also go to Faculty Council with issues.
- ○ He admitted his differences over the years with Dr. Matkin but he never had concerns with MBT/Streater. He also said he does email Dr. Matkin (copies us) when he wants to share concerns.
- ○ He said he has serious concerns about those with health issues and the handling of this by the college and decisions they have made with COVID. He shared all the information on FB because of those concerns.

**MBT response:**

- ○ Faculty always entitled to their opinion and they can share their opinions. All concerns are valid but should follow internal processes and procedures for sharing those concerns (Faculty council).
- ○ Emphasized that faculty are valued at Collin and as such, given options to share issues/concerns through Faculty Council (shared governance).
- ○ MBT restated all the communication that has been sent regarding the COVID situation by Streater and MBT as well as communication by the College and Dr. Matkin.
- ○ MBT cautioned Phillips about stating things on FB that were not true (I.e. lack of communication by the college).

3

BARNES-TILLEY_001034

AT&T 🛜   4:26 PM   16% ⬜



**‹  Michael Phillips   🔍**

**Michael Phillips**                    •••
Yesterday at 9:56 PM  ↩

I am hoping all of my faculty colleagues will consider doing this. If you are immunocompromised, or live with someone or care for someone who is immunocompromised, and your college is saying that you will be expected to return to the campus in the fall, then I would urge you to ask your doctor to write a letter and explain why you should be allowed to work entirely from home.

I asked my doctor to do this and, in part, this is what he wrote on my behalf:

"The above patient/employee is under my care at XXXXX. Due to their underlying chronic medical conditions they are considered a high risk individual should they contract COVID-19. For this reason, I recommend for the patient to continue to work from home /virtually at this time due to the ongoing COVID-19 pandemic. We will

     

11

BARNES-TILLEY_001035

AT&T 📶    4:26 PM    16% ⬖

‹ **Michael Phillips**   🔍

recommend for the patient to continue to
work from home /virtually at this time due to
the ongoing COVID-19 pandemic. We will
continue to regularly reevaluate their ability to
return to work in an office setting as time
progresses.

If you have any questions regarding this
matter, please feel free to contact my office."

Consider that as a template for your doctor. I
will forward this today to my dean and
associate dean and request to be allowed to
teach exclusively online if the college goes
forward with its plans to open this fall. Should
the college say no, then the request, and the
failure to provide reasonable
accommodations, will be on the record
should any further action be necessary.

We all need a job. However, we don't need to
die or get sick and suffer permanent physical
injury to earn a paycheck.



Sent from my iPhone

12

BARNES-TILLEY_001036

**Mary Barnes-Tilley**

| | |
|---|---|
| **From:** | Mary Elizabeth Barnes-Tilley <marybarnestilley@yahoo.com> |
| **Sent:** | Friday, June 19, 2020 11:04 AM |
| **To:** | Mary Barnes-Tilley |

CAUTION: This email originated from outside of the organization. Do not click links or open attachments unless you validate the sender and know the content is safe.



**‹ Michael Phillips**   🔍

**Michael Phillips**   ···
Wednesday, at 9:57 AM · 🌐

And we're the institution that gathers some of the largest crowds of people daily in the county and we're reopening in the fall.



DFW.CBSLOCAL.COM
**Health Officials Report 32 New COVID-19 Cases In Collin County**

⊙ 5

👍 Like      💬 Comment      ↗ Share

**Michael Phillips**   ···
Wednesday, at 9:22 AM · 🌐



Sent from my iPhone

1

**Mary Barnes-Tilley**

| | |
|---|---|
| **From:** | Mary Elizabeth Barnes-Tilley <marybarnestilley@yahoo.com> |
| **Sent:** | Friday, June 19, 2020 11:02 AM |
| **To:** | Mary Barnes-Tilley |
| **Subject:** | Phillips May 18 |

CAUTION: This email originated from outside of the organization. Do not click links or open attachments unless you validate the sender and know the content is safe.

AT&T 🛜         **7:00 PM**         86% 🔋

 **Michael Phillips**
⟨      Friday, at 3:03 PM 🌐      ...

TFW when your employer is basically saying the loss of your life is an acceptable calculated risk.

🖒 Like         💬 Comment         ↩ Share

⋯😵🤭 26

**1 share**

 **Debbie Linsley Liles**
It is not. Period.

3d   Like   Reply 💙²

 **Michael Phillips**
**Debbie Linsley Liles** it looks like we're opening in the fall. Masks will be recommended but not required. There has been no discussion of capping class sizes to allow

 Write a comment...          

    

1

BARNES-TILLEY_001038

 Michael's Post   ...

 Michael Phillips
**Debbie Linsley Liles** it looks like we're opening in the fall. Masks will be recommended but not required. There has been no discussion of capping class sizes to allow any degree of social distancing and the administration has not explained his our custodial staff will maintain adequately sanitation of the vast amount of surfaces or how their health will be protected other than to assure us it will be done.

3d   Like   Reply         

 John Richard Lundberg
**Michael Phillips** TCC hasn't

 Write a comment    

  

2

BARNES-TILLEY_001039

<     Michael's Post     ...

**John Richard Lundberg**
**Michael Phillips** TCC hasn't
made a call yet. I don't know
if we're going the way of
DCCD or y'all at this point.

3c   Like   Reply     ●ı

**Debbie Linsley Liles**
The whole A&M system is at
the mercy of the governor.
We have an option to say
why we would not like to be
on campus to teach and they
are supposed to make
arrangements. Your
institution should do the
same. I will not die for my
teaching job.

3c   Like   Reply     ●?

**TJ Pickens**

 Write a comment.  

    

3

BARNES-TILLEY_001040

<     Michael's Post    ...



**TJ Pickens**
**Michael Phillips** He basically threw sanitation on to us. I don't see any possible way to social distance. I mean, how does that work between classes or in the classroom. The comment about termination was heartless. Someone shouldn't have to choose between their job and their health.

3d  Like  Reply     2



**Michael Phillips**
**TJ Pickens** it was insulting as was the complete disinterest in faculty input. Shared governance is a requirement of SACS. I see none of it

 Write a comment  

    

4

BARNES-TILLEY_001041

 **Michael's Post**   ...

 **Michael Phillips**
**TJ Pickens** it was insulting
as was the complete
disinterest in faculty input.
Shared governance is a
requirement of SACS. I see
none of it.

3d   Like   Reply         2

**TJ Pickens**
**Michael Phillips** Well it's
easy for him and the higher
ups to believe it's safe. They
house up in the Ivory Tower
that is CHEC and the rest of
us are on the front lines. I'm
not even as concerned for
myself as I am for students.
Every year we see how flu
burns through the college. I
don't even want to imagine

 Write a comment . .      

     

5

BARNES-TILLEY_001042

<     Michael's Post     ...

Every year we see how flu
burns through the college. I
don't even want to imagine
flu and covid at the same
time. If my predictions are
right it won't be pretty. I get
the desire to return to
business as usual but this
isn't how to do it.

5c   Like   Reply     2

**Michael Phillips**
It will be real statement if a
college with a heavily-
promoted nursing program
becomes a Covid-19 hot
spot. I've contacted three
board members already and
I'm contacting a lawyer
Monday and I don't care if
that's public knowledge.
This is a public institution

 Write a comment  

    

6

BARNES-TILLEY_001043

<      Michael's Post     •••

 **Michael Phillips** ·
It will be real statement if a
college with a heavily-
promoted nursing program
becomes a Covid-19 hot
spot. I've contacted three
board members already and
I'm contacting a lawyer
Monday and I don't care if
that's public knowledge.
This is a public institution
funded by tax dollars. Even
if we ignore the morality of
this apparent move, which
hopefully will change, this
could carry heavy financial
liability.

3d   Like   Reply     4

 **Byrd Williams**
**Michael Phillips** For all
practical purposes, they did

 Write a comment ...     

   

7

 ‹   Michael's Post   •••

Byrd Williams
**Michael Phillips** For all practical purposes, they did away with your 6 year contracts. You have no job security anymore. They are relying on the fact that there are plenty of out of work teachers that will step into your place, probably for substantially less income. Using an unfortunate situation to lower the fixed cost of doing business is a corporate mind set, not an academic one where the quality of the product directly affects the future and well being of it's customers (stud... See More

3d   Like   Reply   

 Write a comment .   

    

8

BARNES-TILLEY_001045

<     Michael's Post     ...

customers (students). For example, a school that pays starting faculty in the $50,000 range, but pays an ever expanding upper administration between $150,000 and $900,000 (if you include bonuses, etc) could care less about the health and well being of its faculty. To them we are all the same: an expendable cost of doing business. When did academia become a member of the predatory capitalist club? When we gave up faculty senates and lost our voice, is when.

3d   Like   Reply  5

 **Byrd Williams**
Bravo to you Michael

  Write a comment. 

         

9

BARNES-TILLEY_001046



**Michael Phillips**
Friday at 3:07 PM · 

**Byrd Williams**
Bravo to you **Michael Phillips**

3d  Like  Reply

Write a room.

**Darryl Sullivan**
It always was, nothing has changed. It's just a bit more apparent now.

3d  Like  Reply

**Brick Mcfall**
They believe that 1 to 2 million lives is an acceptable loss. South Korea has reported 285 deaths from Covid-19; America has 82,000.

3d  Like  Reply

Write a comment.

10

BARNES-TILLEY_001047

**Mary Barnes-Tilley**

| | |
|---|---|
| From: | Mary Elizabeth Barnes-Tilley <marybarnestilley@yahoo.com> |
| Sent: | Friday, June 19, 2020 10:59 AM |
| To: | Mary Barnes-Tilley |
| Subject: | Phillips |

CAUTION: This email originated from outside of the organization. Do not click links or open attachments unless you validate the sender and know the content is safe.



## ‹ **Michael Phillips**   Q

**Michael Phillips**   ...
Wednesday at 9:22 AM

I had my first explicit pandemic dream and it was straight forward. I was at my campus but it was also a shopping mall. (Our campus was designed by an architect who also designed an area mall.) In the common areas students were walking shoulder-to-shoulder. No one was wearing a mask. Students were talking and laughing up close completely oblivious to risk. I kept bumping into people. I was taking pictures of all the scenes of our policies getting boosted and sending them up the chain-of-command which only made them furious. A doctor I invited to participate in a panel on gun violence I helped organize early this spring Wass in my classroom and he was exasperated because everything was so disorganized and his presentation was cancelled at the last movement. At one point I sat down overwhelmed and a couple of students I had taught chuckled, tried to give me pocket change, and said, "So you're begging for money now?" I wish something

    

1

BARNES-TILLEY_001048



AT&T LTE          6:35 PM          64%

‹ **Michael Phillips**    Q

risk. I kept bumping into people. I was taking
pictures of all the scenes of our policies
getting boosted and sending them up the
chain-of-command which only made them
furious. A doctor I invited to participate in a
panel on gun violence I helped organize early
this spring Wass in my classroom and he was
exasperated because everything was so
disorganized and his presentation was
cancelled at the last movement. At one point I
sat down overwhelmed and a couple of
students I had taught chuckled, tried to give
me pocket change, and said, "So you're
begging for money now?" I wish something
weirder or fun or even conventionally
nightmare-scary happened. This dream is so
obvious it sounds fake. But that was it: what I
know is mostly going to happen in the fall.

🙂👍 10                        4 Comments

👍 Like        💬 Comment        ↪ Share

**Michael Phillips**                    ...
Wednesday, at 4:17 AM · 🌐

🏠  🗐  👥  🗐  🔔  ☰

2

BARNES-TILLEY_001049



AT&T LTE          6:37 PM          64% ⬛

< **Michael Phillips**   🔍

**Michael Phillips**                    ....
May, 24 at 3:47 PM · 🌐

Two things have left higher education
vulnerable to the pandemic: one is the neo-
liberal/conservative collaboration on reducing
state contributions to public institutions.  The
other is reconceptualizing college and
university presidents as CEO/CFO types who
really don't understand the scholarly mission
of the institutions they run and aren't even all
that talented with the financial end either.

Apparently college presidents are deciding
that there will be a significant drop in
enrollment if they plan on going all or mostly
online this fall.  They haven't calculated what
the financial impact will be if they open
prematurely, there are massive outbreaks on
campuses, and the public sees colleges and
universities as dangerous viral breeding
grounds, giant Carnival cruise lines without
gambling and overpriced drinks with tiny
umbrellas sticking out of them

            

3

BARNES-TILLEY_001050



AT&T LTF                6:37 PM              63% ▥

‹ **Michael Phillips**   🔍


**Michael Phillips**                          ...
May, 24 at 1:17 PM · 🌐

Nice experience. A Facebook friend asked if
he could have a couple of copies of "White
Metropolis" and we arranged a Corona-safe
exchange. We had a brief chat a safe distance
away and promised we'd talk at length one
day when it's safe. With my employer
apparently willing to put my life at risk this
fall, that was a needed boost. I felt pretty
powerless today but it is encouraging to know
some people still want to read my book.

👍❤️ 40                           8 Comments

   Like     Comment    Share


**Michael Phillips**                          ...
May, 24 at 12:44 PM · 🌐

## I am not a confident person
## but I play one in real life.

👍❤️😮 11                         2 Comments



               

4

BARNES-TILLEY_001051

AT&T LTE      6:40 PM      63%



**Michael Phillips**
May 20 at 8:12 PM

BREAKING NEWS: Colleges and universities prepare to open for the fall.



 Like      Comment      Share

 9

**Philip Levy**
That is what we are saying--but

Write a comment...

  

5

BARNES-TILLEY_001052

‹ Michael's Post ...

 **Philip Levy**
That is what we are saying--but I think it is about optics. It is easier to say yes now and jump to no later, than to dampen enrollments with a no now.

 Like  Reply

 **Michael Phillips**
**Philip Levy** I am not sure that's true in our college system. Our president said masks were only ten percent effective and basically said we don't have to worry much about surfaces. He didn't share where his data came from.

 Like  Reply  

 **Philip Levy**

 Write a comment   

  

6



Michael's Post                    ...

**Philip Levy**
**Michael Phillips** ugh

Like   Reply

**Michael Phillips**
**Philip Levy** we apparently
are only going to encourage
masks and faculty will be
expected to clean their own
offices. They haven't
specified where the cleaning
equipment came from.

Like   Reply

**Philip Levy**
it is all PR at this point
though. If there is a
resurgence in the summer all
bets are off.

Like   Reply



Write a comment.



7

BARNES-TILLEY_001054

 Michael's Post   ...

 Michael Phillips
**Philip Levy** I hope you are
right. I am gloomy about our
prospects here. Re-opening
is a sign of Trump fealty and
that carries great weight in
the county where I work.

Like   Reply

 Philip Levy
it is. But a lot of schools are
facing the reality that
enrollments will plummet if
they go online. One good
side effect of the CV19 is
that online ed has been
unmasked as total crap and
now everyone knows it and
no one can play otherwise
any longer. Schools that
commit to an online fall are
going to suffer quite a bit. So

 Write a comment    

    

Sent from my iPhone

8

BARNES-TILLEY_001055

## Mary McRae

**From:** Brenda Kihl
**Sent:** Tuesday, August 22, 2017 4:29 PM
**To:** Mary McRae
**Subject:** Communication on Use of College Name and Resources
**Attachments:** Memo_Use of College Name and Resources.doc



Mary,

Attached is language to use in notifying faculty about the appropriate use of Collin College's name and resources.  The text has been approved by an attorney.  Please schedule a time where you and the respective dean have a conversation with the faculty who have used Collin College's name or email publically to communicate their personal opinions on a matter of public concern.  I have the language in a memo format, but the deans can also follow up with the faculty member with the text in an email.  What is most important is the faculty's acknowledgement of the conversation.  That can be signing the memo or just responding that they received the email with the information.

Below are the faculty who have identified themselves as a Collin employee or use their Collin.edu email address.
Michael Phillips
Lisa Roy-Davis
Keith Volanto
Chad Pearson

Byrd Williams
Elaine Zweig

Also, share the information with the Deans and Associate Deans on campus so they have the same information for reference.
Please let me know if you have questions.
Brenda

**Brenda Kihl, Ph.D.**
**Executive Vice President**
**Collin College**
**972-758-3809**
**bkihl@collin.edu**



# Memorandum

August 22, 2017

To:
From: Dean _____

Re: Use of College Name and Resources

Dr. McRae and I met with you today to provide you with guidance regarding the College's expectations relating to use of College resources and use of the College's name during personal endeavors. While Collin College respects and values the constitutional right of its employees to engage in free speech on matters of public concern (see board policy DGC(Local)), employees must make clear that the views they express are their own, and they must avoid actions that may inadvertently create the impression that they are speaking on behalf of the College. Accordingly, when communicating with others on matters of personal interest, you are expected to refrain from using the College's name in a manner that suggests the College is affiliated with the communication. When necessary to avoid confusion, you should affirmatively explain that your statements are personal in nature and that you are not speaking as a representative of your employer.

Similarly, you should refrain from using your College email addresses and accounts in a manner that suggest that a communication has been written in your official capacity or with the College's approval. Additionally, under Board Policies DG(Legal) and CR(Local), all employees have the responsibility to use college resources to support the central educational mission of the College. While incidental, personal use of college resources is permitted, such use may not have an adverse impact on College resources. Due to this potential adverse impact, you should refrain from using a College email address as a point of contact on on-going matters of personal business. You are encouraged to use a personal email account for such endeavors.

If additional information or clarification is needed, you are encouraged to schedule a meeting with me by August 31, 2017.

**Collin County Community College District**
Spring Creek Campus
2800 E. Spring Creek Parkway
Plano, Texas 75074
P | 972.881.5790  www.collin.edu
CCCCD does not discriminate on the basis of race, color, religion, sex, gender, national origin, disability or veteran status.

COLLIN COLLEGE 002144

Collin County Community College
043500

EMPLOYEE RIGHTS AND PRIVILEGES                                      DGC
ACADEMIC FREEDOM AND RESPONSIBILITIES                         (LOCAL)

ACADEMIC FREEDOM      All faculty members (full-time and associate) shall be entitled to
                      academic freedom and bear a concomitant dedication to academic
                      responsibility.  (The faculty subscribes to the principles expressed
                      in the Statement of Academic Freedom and Responsibility adopted
                      February 19, 1982, by the Texas Junior College Teachers' Associa-
                      tion, the text of which is appended to and made an integral part of
                      this document.)  [See STATEMENT OF PURPOSE below]

                      All faculty members enjoy the constitutional freedoms guaranteed
                      to all citizens by the United States' Constitution and the Constitu-
                      tion of the State of Texas.  In the classroom, teaching faculty mem-
                      bers have the freedom to discuss any controversial matter and to
                      voice opinions within areas of their professional competence.  At
                      the same time, they have an obligation to acquaint students with
                      other scholarly opinions on the subject.  Outside the classroom,
                      faculty members are free from institutional censorship or discipline
                      for exercising their rights as private citizens to express themselves
                      freely on matters of public concern, to associate with persons or
                      groups as they so choose and to participate in political or other
                      kinds of activities.  When faculty and support staff speak or write as
                      private citizens, however, they must bear in mind that their actions
                      will inevitably be judged by the public and reflect upon their profes-
                      sion and institution.  Thus, faculty and support staff shall strive for
                      accuracy, exercise appropriate restraint, exhibit tolerance for differ-
                      ing opinions, and indicate clearly that they are not an official spo-
                      kesperson for the College District.

                      The College District accepts the responsibility to foster and to en-
                      courage faculty and support staff to exercise their freedoms and to
                      protect against acts which deny freedom of speech and the related
                      freedoms to be heard, to study, to teach, to administer and to pur-
                      sue scholarly activity.

                      Faculty members acknowledge their responsibility to maintain pro-
                      fessional competence in their fields of specialization and to be
                      committed to effective teaching and student service.

STATEMENT OF          The Board believes that it is essential that the faculty have freedom
PURPOSE ON            in teaching, research, and publication.  Faculty members shall be
ACADEMIC FREEDOM      free from the fear that others might threaten their professional ca-
AND RESPONSIBILITY    reers because of differences of opinion regarding such scholarly
                      matters.  To this end, the College District has adopted the following
                      statement of purpose on academic freedom and responsibility.

                      The College District, like all other institutions of higher education,
                      serves the common good, which depends upon uninhibited search
                      for truth and its open expression.  The points enumerated below
                      constitute its position on academic freedom:

DATE ISSUED: 8/9/2007                                              1 of 3
LDU 2007.01
DGC(LOCAL)-X

COLLIN COLLEGE 002145

Collin County Community College
043500

EMPLOYEE RIGHTS AND PRIVILEGES                                      DGC
ACADEMIC FREEDOM AND RESPONSIBILITIES                          (LOCAL)

1.  Faculty members are appointed to impart to their students and to their communities the truth as they see it in their respective disciplines. The teacher's right to teach preserves the student's right to learn.

2.  The mastery of a subject makes a faculty member a qualified authority in that discipline and competent to choose how to present its information and conclusions to students. The following are among the freedoms and responsibilities that should reside primarily with the faculty, with the advice and consent of the appropriate dean of instruction: planning and revising curricula, selecting textbooks and readings, selecting classroom films and other teaching materials, choosing instructional methodologies, assigning grades, and maintaining classroom discipline.

3.  Faculty members are citizens, and, therefore, possess the rights of citizens to speak freely outside the classroom on matters of public concern and to participate in lawful political activities.

4.  Prior restraint or sanctions shall not be imposed upon faculty members in the exercise of their rights as citizens or duties as teachers. Nor shall faculty members fear reprisals for exercising their civic rights and academic freedom.

5.  Faculty members have a right to expect the Board and the College District's administrators to uphold vigorously the principles of academic freedom and to protect the faculty from harassment, censorship, or interference from outside groups and individuals.

The academic freedom of the College District faculty members shall be accompanied by equally compelling obligations and responsibilities to their profession, their students, the College District, and their community. Faculty members shall defend the rights of academic freedom while accepting willingly the responsibilities enumerated below:

1.  Faculty members shall be judicious in the introduction of material in the classroom without forfeiting the instructional benefits of controversy.

2.  Faculty members are entitled to all rights and privileges of academic freedom in the classroom while discussing the subjects they teach. No faculty member, however, shall attempt to force on his or her students a personal viewpoint intolerant of the rights of others to hold or express diverse opinions. Faculty members shall not act in a manner that is perceived

DATE ISSUED: 8/9/2007                                               2 of 3
LDU 2007.01
DGC(LOCAL)-X

COLLIN COLLEGE 002146

Collin County Community College
043500

EMPLOYEE RIGHTS AND PRIVILEGES                                    DGC
ACADEMIC FREEDOM AND RESPONSIBILITIES                        (LOCAL)

as being abusive, either physically or verbally, by his or her students.

3. Faculty members shall recognize their responsibility to maintain competence in their disciplines through continued professional development and to demonstrate that competence through consistently adequate preparation and performance.

4. Faculty members shall recognize that the public will judge their institution and their profession by their public conduct. Therefore, faculty members shall always make clear that the views they express are their own and shall avoid creating the impression that they speak or act on behalf of the College District or of their profession.

5. Faculty members shall recognize their responsibility to adhere to the policies and procedures of the institution. Therefore, faculty members who have differences of opinion with existing or proposed policy or procedures shall express these views through the standing committee structure of the College District or their supervising administrators.

COLLIN COLLEGE 002147

Collin County Community College
043500

TECHNOLOGY RESOURCES                                    CR
                                                    (LOCAL)

DEFINITION

Technological and information resources are defined to include electronic data and records; software; networking tools; remote access devices; electronically recorded voice, video, and multimedia communications; and other electronic devices used primarily for the transmission, storage, or utilization of electronically communicated information.

USE OF COLLEGE DISTRICT TECHNOLOGICAL AND INFORMATION RESOURCES

College District technological and information resources are provided to allow faculty, staff, and students to pursue the central educational mission of the College District and are to be used to the extent that they promote that mission either directly in teaching and research or indirectly in supporting the offices that maintain College District operations.  Incidental personal use that does not otherwise violate this policy or have an adverse effect on College District resources shall be permitted.  Technological and information resources shall be accessed and used in an ethical manner consistent with the institution's Core Values, which include a passion for learning, service and involvement, creativity and innovation, academic excellence, dignity and respect, and integrity.  All users of technological and information resources are to adhere to legal and professional standards, to support the mission, and to act in the best interests of the College District.

All users of technological and information resources are responsible for the protection of College District assets to which they are assigned and for not compromising the accuracy, integrity, and confidentiality of the information to which they have access.  Resources are not to be abused or employed in such a way as to interfere with, or cause harm or damage to, another person, institution, or company within or outside the College District.  While the College District encourages the exploration of educational and scholarly interests through the use of its technological resources, respect for the rights and privacy of others shall be observed.  Those who are authorized to access confidential files shall respect the privacy rights of others and use data only for legitimate academic or administrative purposes.

All users of College District technology resources shall comply with the following policies, procedures, and security controls.

ACCESS

Many of the technological and information resources of the College District may be accessed by all employees and students of the College District and by the public as well.  However, access to some resources is restricted.  The appropriate administrators shall determine and authorize the appropriate degree of access.

Users shall implement best practices in taking precautions to prevent the unauthorized use of their access codes.  In choosing access codes, users shall avoid the use of common words, proper

DATE ISSUED: 1/22/2015                                          1 of 9
LDU 2015.01
CR(LOCAL)-X

COLLIN COLLEGE 002148

Collin County Community College
043500

TECHNOLOGY RESOURCES

CR
(LOCAL)

names, readily associated nicknames or initials, and any other let-ter or number sequences that might easily be guessed.  Users shall be held accountable for their own actions performed under their access codes and shall be subject to appropriate disciplinary action if violations occur from the actions of other individuals as a result of user negligence in protecting the codes.  Users are re-sponsible for changing access codes on a regular basis.  If an ac-cess code becomes compromised, users shall change it immedi-ately upon becoming aware that said code has been compromised.

Users shall not attempt to access, search, or copy technological and information resources without the proper authorization.  No one shall use another individual's account without permission, and active sessions shall not be left unattended.  Providing or using false or misleading information in order to gain access to techno-logical and information resources shall be prohibited.  Users shall not test or attempt to compromise internal controls, even for pur-poses of systems improvement.  Such actions require the advance, written approval of the authorized administrator or must be includ-ed among the security evaluation responsibilities of one's position.  Violations shall be reported to the chief information systems officer in the office of information technology.

PROTECTING CONFIDENTIALITY

Unless disclosure is a normal requirement of a user's position and has been so authorized, no user shall disclose:

1.   Confidential information that is protected by the Family Edu-cational Rights and Privacy Act (FERPA);

2.   Personnel records; or

3.   Other materials commonly recognized or considered as sensi-tive or confidential.

All users with access to confidential data shall safeguard the accu-racy, integrity, and confidentiality of that data by taking precautions and performing office procedures necessary to ensure that no un-authorized disclosure of confidential data occurs.  Such precau-tions and procedures include, but are not limited to, securing stor-age of data backups, protecting sensitive data with access codes, and only storing sensitive materials on the College District's net-work, including College District-approved or College District-contracted external sites such as publisher websites for a course being offered by the College District.

Information regarding the confidentiality of student educational records may be found in the student handbook or by contacting the registrar.

DATE ISSUED: 1/22/2015
LDU 2015.01
CR(LOCAL)-X

2 of 9

COLLIN COLLEGE 002149

Collin County Community College
043500

TECHNOLOGY RESOURCES                                                      CR
                                                                      (LOCAL)

PRIVACY                For purposes of this policy, privacy is defined as the right of an in-
                       dividual or an organization to create, maintain, send, and receive
                       electronic data, software, and communications files that are safe
                       from examination and disclosure by unauthorized parties. The Col-
                       lege District recognizes that individuals have a substantial interest
                       in and reasonable expectation of privacy. Accordingly, the College
                       District respects the privacy rights of all users of the College Dis-
                       trict's technology resources.

                       The College District shall not monitor users' private electronic data,
                       software, and communications files as a routine matter. Users
                       should note that some electronic files are copied to backups and
                       stored for indefinite periods in centralized locations. In such in-
                       stances, user deletion of an electronic file, such as an e-mail mes-
                       sage, may not delete a previously archived copy of that file.

                       It is a violation of College District policy for any member of the Col-
                       lege District community to access College District databases to en-
                       gage in electronic "snooping," or to use College District technologi-
                       cal resources for the purpose of satisfying idle curiosity about the
                       affairs of others, with no substantial business purpose for obtaining
                       access to such files.

                       The College District reserves the right to access and to disclose
                       the contents of an individual's electronic data, software, and com-
                       munications files; however, the College District will do so after ob-
                       taining the proper approvals only when a legitimate need exists
                       and the urgency of the need is sufficiently strong to offset the Col-
                       lege District's commitment to honor the individual's privacy. Such
                       grounds include, but are not limited to:

                       1.    Maintaining system integrity, for example, tracking viruses;

                       2.    Protecting system security;

                       3.    Investigating indications of impropriety;

                       4.    Protecting the College District's property rights; and

                       5.    Meeting legal obligations, for example, subpoenas and open
                             records requests.

COPYRIGHT ISSUES       Copyright is a form of protection the law provides to the authors of
                       "original works of authorship" for their intellectual works that are
                       "fixed in any tangible medium of expression," both published and
                       unpublished (Title 17, United States Code). It is illegal to violate
                       any of the rights provided by the law to the owner of a copyright.
                       The College District respects the ownership of intellectual material
                       governed by copyright laws. All users of the College District tech-
                       nology resources shall not knowingly fail to comply with the copy-

DATE ISSUED: 1/22/2015                                                     3 of 9
LDU 2015.01
CR(LOCAL)-X

COLLIN COLLEGE 002150

Collin County Community College
043500

TECHNOLOGY RESOURCES                                                    CR
                                                                   (LOCAL)

right laws and the provisions of the licensing agreements that apply
to software; printed and electronic materials, including documenta-
tion, graphics, photographs, multimedia, including musical works,
video productions, sound recordings, and dramatic works; and all
other technological resources licensed or purchased by the Col-
lege District or accessible over network resources provided by the
College District.  The user shall be responsible for reviewing indi-
vidual author, publisher, patent holder, and manufacturer agree-
ments for software, programs, and applications loaded by the user
onto College District hardware, equipment, and web resources.

In compliance with the requirements of the Digital Millennium
Copyright Act of 1998 (DMCA), any user of the College District's
technology resources who violates the digital copyright laws for the
first time shall be reminded of the laws, and the software or licens-
ing violations shall be removed.  A second violation shall result in
removing the software or licensing violations, retraining of the user
in copyright procedures, and taking appropriate disciplinary action.
A third violation shall require the College District to remove the us-
er's network and Internet access and take further disciplinary ac-
tion, which may include termination from College District employ-
ment or student status.  In addition, any violation of digital copyright
laws by a student or by a College District employee that results in
demonstrable harm to the College District's network or disruption of
classroom activities shall be addressed as a formal disciplinary
matter.

All technological resources developed by the College District em-
ployees, students, and contractors for use by the College District or
as part of their normal employment activities are considered "works
for hire."  As such, the College District is considered the "author"
and owner of these resources.  Information regarding intellectual
property rights may be found in the faculty and staff handbook.

[See CT]

DMCA DESIGNATED          Title II of the DMCA enables Internet service providers (ISPs), such
AGENT                    as the College District, to limit liability for monetary damages relat-
                         ed to copyright infringing activities of their users.  Provisions within
                         the legislation further protect educational institutions and limit liabil-
                         ity for monetary damages caused by copyright infringing activities
                         of their users.  In order to comply with Title II of the DMCA, the Col-
                         lege District designates the following individual as the DMCA des-
                         ignated agent to receive notices and claims from copyright owners
                         about infringements:

                         Name:        David Hoyt

                         Position:    Chief Information Systems Officer

DATE ISSUED: 1/22/2015                                                4 of 9
LDU 2015.01
CR(LOCAL)-X

COLLIN COLLEGE 002151

Collin County Community College
043500

TECHNOLOGY RESOURCES                                                CR
                                                                 (LOCAL)

|  |  |
|---|---|
| Address: | 3452 Spur 339, McKinney, TX 75069 |
| Telephone: | (972) 599-3133 |
| E-mail: | dhoyt@collin.edu |

Additionally, the College District shall maintain a prominent link on the information technology page of the College District website that provides access to this policy and a link to report DMCA notices or claims to the DMCA-designated agent.

VIRUSES

It is the responsibility of the user, to the best of his or her knowledge and ability, to ensure that any imported or exported executable code or data are free of any destructive code, such as a virus. To this end, best practices regarding safety precautions shall be taken by the user. The office of information technology shall be consulted for questions related to such precautions or information and protective software.

BACKUPS

It is the responsibility of the appropriate administrator or network administrator to ensure that appropriate procedures and resources are in place to backup data on a regular basis. Backups are to be stored in a location that is physically secure to protect the confidentiality of the data. It is the responsibility of the individual user to perform any actions necessary to comply with these procedures.

PHYSICAL SECURITY

Each user shall be responsible for the physical security of the technological and information resources to which he or she has been assigned (e.g., desktop computer, laptop computer, pager, cell phone, bar code, scanner, and the like). Administrators shall help to ensure physical security by instituting procedures for the use of locked doors and/or for the use of security devices made available by the College District for the protection of equipment. To avoid loss by fire or theft, backups of important data shall not be stored in the same location as the originals. Certain electronic information shall only be stored on the College District's network, including College District-approved and College District-contracted external sites such as publisher websites for a course offered by the College District. This electronic information includes:

1.    Confidential information that is protected by FERPA;

2.    Personnel records; and

3.    Other materials commonly recognized or considered as sensitive or confidential.

Adequate power regulators and surge suppressors shall be used.

COLLEGE DISTRICT PROPERTY

Technology and information resources that are the property of the College District shall not be copied, altered, manipulated, trans-

DATE ISSUED: 1/22/2015                                              5 of 9
LDU 2015.01
CR(LOCAL)-X

COLLIN COLLEGE 002152

Collin County Community College
043500

TECHNOLOGY RESOURCES

CR
(LOCAL)

ferred, retained, or removed from campus without written authori-
zation from the appropriate administrator. The location of each
physical resource shall be entered in the College District's capital
equipment inventory system and updated as necessary.

PERSONAL USE OF
COLLEGE DISTRICT
TECHNOLOGICAL
RESOURCES

Authorization for the personal use of College District technological
resources by employees shall be determined on an individual basis
by, and at the discretion of, the appropriate administrator. The use
of the College District's technological resources, including the net-
work, for a revenue-generating activity that benefits an individual
employee shall be strictly prohibited. Personal telephones and da-
ta connections in student housing are considered to be part of the
private residence. Student use of these and other College District
technological resources that intrudes on general College District
use or that uses significant resources is prohibited.

MISUSE OF
TECHNOLOGICAL AND
INFORMATION
RESOURCES

The use of College District technological and information resources
and the resources themselves shall not be abused in any way.
Users shall not attempt to alter the restrictions associated with their
accounts or to attempt to breach internal or external security sys-
tems. Moreover, users shall not impersonate other individuals or
misrepresent themselves in any way when using College District
technological resources.

Users of network resources are prohibited from engaging in any
activity that is proscribed by federal and/or state law. In addition,
the network shall not be used for criminal purposes such as post-
ing another individual's credit card numbers or personal access
codes. External networks, for example, NEXUS, the Internet, and
bulletin boards shall also be used in an ethical, responsible, and
courteous manner, and all users shall adhere to the policies of the-
se services.

College District technological and information resources shall not
be used in a manner that is invasive or that diminishes their effi-
ciency. One example of such use involves the broadcast function.
Although current technology enables users to broadcast messages
to all members of the College District community simultaneously,
the use of this technology is restricted to official College District
activities. Any nonwork-related broadcasts of general interest to
the College District community, such as birth and wedding an-
nouncements, shall be posted to the College District's general in-
formation e-mail folder. Notices involving monetary transactions or
those that are inappropriate or illegal shall not be posted using Col-
lege District technological or information resources as defined in
this policy.

DATE ISSUED: 1/22/2015
LDU 2015.01
CR(LOCAL)-X

6 of 9

COLLIN COLLEGE 002153

Collin County Community College
043500

TECHNOLOGY RESOURCES

CR
(LOCAL)

INAPPROPRIATE
MATERIAL

Users are to comply with the College District's Core Values and exercise caution and good judgment in accessing material using College District network resources.  Material that includes language and actions that would constitute a hate crime (such as language that is racist or anti-Semitic, and the like), fighting language, or visual material that creates a hostile working environment shall be accessed only for legitimate academic and administrative purposes.  This material shall be not be accessed in an environment and in a manner that will negatively affect third parties (including printing such information on public printers or forwarding it to others without their consent).

Communications from users of College District technology resources shall reflect civility and the College District's Core Values, which include a passion for learning, service and involvement, creativity and innovation, academic excellence, dignity and respect, and integrity.  Therefore, the use of College District technological resources for creating or sending nuisance, harassing, or pornographic materials or messages is prohibited.  For the purpose of applying the College District's disciplinary policy, the determination of what is pornographic or what constitutes a hate crime, fighting words, or visual material that creates a hostile working environment is within the sole discretion of the College District.

REPORTING
VIOLATIONS

Violations of this policy, including any violations of the DMCA, shall be reported to the appropriate supervisor, director, dean, DMCA-designated agent, or other responsible person.  DMCA notices or claims of infringements shall be immediately sent to the DMCA-designated agent listed in this policy.

Depending on the nature of the violation, the appropriate administrator may include the responsible vice president, chief information systems officer, human resources officer, or internal auditor.

Alleged violations shall be investigated and, if substantiated, addressed in accordance with appropriate College District disciplinary processes for students and employees.

The College District shall consider the intent, effect, and seriousness of the incident in levying sanctions for violations of this policy.  Any person who engages in any kind of computer or systems misuse as described in this policy may be subject to disciplinary action, including the loss of computer privileges, suspension, and/or termination from the College District, and appropriate criminal prosecution, if warranted, under the applicable state and/or federal laws.  Whenever the College District deems it appropriate, restitution may be sought for any financial losses sustained by the College District or by others as a direct result of the misuse.

DATE ISSUED: 1/22/2015
LDU 2015.01
CR(LOCAL)-X

7 of 9

COLLIN COLLEGE 002154

Collin County Community College
043500

TECHNOLOGY RESOURCES

CR
(LOCAL)

| | |
|---|---|
| HEOA / DIGITAL COPYRIGHT COMPLIANCE | The Higher Education Opportunity Act of 2008 (HEOA) addresses, in part, unauthorized file-sharing, including, but not limited to, music, streaming, video, images, and other electronic data, using College District networks. To deter unauthorized file sharing on the its networks, the College District shall: |

1. Disclose annually to all users information that explains unauthorized distribution, including file-sharing, of copyrighted materials may subject the individual to civil and criminal liabilities; an explanation of federal copyright law, including a summary of penalties for related violations; and the College District's policies and procedures regarding unauthorized file-sharing, including disciplinary actions that may be taken against students who engage in unauthorized distribution or illegal downloading using the College District's information technology systems.

2. Follow a plan to effectively combat unauthorized distribution using a variety of technology-based deterrents.

3. Offer and provide access to alternatives to illegal file-sharing and downloading.

| | |
|---|---|
| COPYRIGHT COMPLIANCE ANNUAL DISCLOSURE | The College District shall require each user of its technology resources to annually read the copyright disclosure [see CR(EXHIBIT)] and submit an online affirmation that he or she has reviewed the disclosure and is aware of and familiar with the College District's policies and procedures regarding illegal distribution of copyrighted materials.

Additionally, during orientation activities, the College District shall provide all students a copy of the copyright disclosure [see CR(EXHIBIT)] and information regarding the legalities associated with peer-to-peer file sharing. |

| | |
|---|---|
| PLAN TO COMBAT UNAUTHORIZED DISTRIBUTION | The College District shall use a variety of capabilities and products from commercial vendors in order to: |

1. Perform bandwidth shaping;

2. Conduct traffic monitoring to identify the largest bandwidth users; and

3. Reduce or block illegal file-sharing.

The College District shall investigate and respond to all submitted complaints of violations of the DMCA according to the reporting procedures noted above.

DATE ISSUED: 1/22/2015
LDU 2015.01
CR(LOCAL)-X

8 of 9

COLLIN COLLEGE 002155

Collin County Community College
043500

TECHNOLOGY RESOURCES

CR
(LOCAL)

ALTERNATIVES TO
ILLEGAL FILE-
SHARING AND
DOWNLOADING

The College District encourages all users of its technology re-
sources to utilize free or commercial services that provide the user
with a legal way to copy and use various types of digital content
and ensures the use of electronic media is in compliance with fed-
eral copyright law.

EDUCAUSE, an information technology consortium in higher edu-
cation, maintains a website of links to legal sources of online con-
tent at the following web address:
http://www.educause.edu/legalcontent.

COLLIN COLLEGE 002156

Collin County Community College
043500

EMPLOYEE RIGHTS AND PRIVILEGES                                    DG
                                                               (LEGAL)

| | |
|---|---|
| EMPLOYEE FREE SPEECH | College district employees do not shed their constitutional rights to freedom of speech or expression at the schoolhouse gate. |
| | However, neither an employee nor anyone else has an absolute constitutional right to use all parts of a school building or its immediate environs for unlimited expressive purposes.  When a public employee makes statements pursuant to his or her official duties, the employee is not speaking as a citizen for First Amendment purposes, and the Constitution does not insulate the communications from employer discipline. |
| | *Garcetti v. Ceballos*, 547 U.S. 410 (2006); *Tinker v. Des Moines Indep. Cmty. Sch. Dist.*, 393 U.S. 503 (1969)  [See also GF] |
| WHISTLEBLOWER PROTECTION | A state or local governmental entity, including a college district, may not suspend or terminate the employment of, or take other adverse personnel action against, a public employee who in good faith reports a violation of law by the employing governmental entity or another public employee to an appropriate law enforcement authority. |
| | A report is made to an appropriate law enforcement authority if the authority is a part of a state or local governmental entity or the federal government that the employee in good faith believes is authorized to: |

1.    Regulate under or enforce the law alleged to be violated in the report; or

2.    Investigate or prosecute a violation of criminal law.

*Gov't Code 554.002*

A supervisor who in violation of Government Code Chapter 554 suspends or terminates the employment of a public employee or takes an adverse personnel action against the employee is liable for a civil penalty not to exceed $15,000.  *Gov't Code 554.008*

| | |
|---|---|
| DEFINITIONS | "Public employee" means an employee or appointed officer other than an independent contractor who is paid to perform services for a state or local governmental entity.  *Gov't Code 554.001(4)* |
| | "Law" means a state or federal statute, an ordinance of a local governmental entity, or a rule adopted under a statute or ordinance.  *Gov't Code 554.001(1)* |
| | A "good faith belief that a violation of the law occurred" means that: |

1.    The employee believed that the conduct reported was a violation of law; and

COLLIN COLLEGE 002157

Collin County Community College
043500

EMPLOYEE RIGHTS AND PRIVILEGES

DG
(LEGAL)

2.   The employee's belief was reasonable in light of the employ-
ee's training and experience.

*Wichita County v. Hart*, 917 S.W.2d 779 (Tex. 1996)

A "good faith belief that an entity is an appropriate law enforcement authority" means:

1.   The employee believed the governmental entity was author-
ized to:

   a.   Regulate under or enforce the law alleged to be violated in the report, or

   b.   Investigate or prosecute a violation of criminal law; and

2.   The employee's belief was reasonable in light of the employ-
ee's training and experience.

*Tex. Dept. of Trans. v. Needham*, 82 S.W.3d 314 (Tex. 2002)

WHISTLEBLOWER
COMPLAINTS

A public employee whose employment is suspended or terminated or who is subjected to an adverse personnel action in violation of Government Code 554.002 is entitled to sue for injunctive relief, actual damages, court costs, and reasonable attorney fees, as well as other relief specified in Government Code 554.003. A public employee whose employment is suspended or terminated in viola-
tion of Government Code Chapter 554 is entitled to reinstatement to the employee's former position or an equivalent position, com-
pensation for wages lost during the period of suspension or termi-
nation, and reinstatement of fringe benefits and seniority rights lost because of the suspension or termination. *Gov't Code 554.003*

INITIATE
GRIEVANCE

A public employee must initiate action under the grievance or ap-
peal procedures of the employing state or local governmental entity relating to suspension or termination of employment or adverse personnel action before suing under Chapter 554.

The employee must invoke the applicable grievance or appeal pro-
cedures not later than the 90th day after the date on which the al-
leged violation of Chapter 554 occurred or was discovered by the employee through reasonable diligence.

*Gov't Code 554.006(a)–(b)*

LEGAL ACTION

If a final decision is not rendered before the 61st day after the date procedures are initiated under Government Code 554.006(a), the employee may elect to:

1.   Exhaust the applicable procedures, in which event the em-
ployee must sue not later than the 30th day after the date

DATE ISSUED: 5/1/2017
UPDATE 32
DG(LEGAL)-LJC

2 of 5

COLLIN COLLEGE 002158

Collin County Community College
043500

EMPLOYEE RIGHTS AND PRIVILEGES

DG
(LEGAL)

those procedures are exhausted to obtain relief under Government Code Chapter 554; or

2.  Terminate procedures, in which event the employee must sue within time remaining under Government Code 554.005 to obtain relief under Government Code Chapter 554.

*Gov't Code 554.006(c)–(d)*

**BURDEN OF PROOF**

A public employee who sues under Chapter 554 has the burden of proof, except that if the suspension or termination of, or adverse personnel action against, a public employee occurs not later than the 90th day after the date on which the employee reports a violation of law, the suspension, termination, or adverse personnel action is presumed, subject to rebuttal, to be because the employee made the report. *Gov't Code 554.004(a)*

**AFFIRMATIVE DEFENSE**

It is an affirmative defense to a suit under Chapter 554 that the employing state or local governmental entity would have taken the action against the employee that forms the basis of the suit based solely on information, observation, or evidence that is not related to the fact that the employee made a report protected under Chapter 554 of a violation of law. *Gov't Code 554.004(b)*

**NOTICE OF RIGHTS**

A state or local governmental entity shall inform its employees of their rights under Chapter 554 by posting a sign in a prominent location in the workplace. The attorney general shall prescribe the design and content of the sign. *Gov't Code 554.009*

**RIGHT TO EXPRESS BREAST MILK**

**DISCRIMINATION PROHIBITED**

An employee of a public employer, including a college district employee, is entitled to express breast milk at the employee's workplace. A public employer may not suspend or terminate the employment of, or otherwise discriminate against, an employee because the employee has asserted the employee's rights under Government Code Chapter 619. *Gov't Code 619.002, .005*

**POLICY**

A public employer shall develop a written policy on the expression of breast milk by employees under Government Code Chapter 619. The policy developed must state that the public employer shall:

1.  Support the practice of expressing breast milk; and

2.  Make reasonable accommodations for the needs of employees who express breast milk.

*Gov't Code 619.003*

**EMPLOYER RESPONSIBILITIES**

A public employer shall:

DATE ISSUED: 5/1/2017
UPDATE 32
DG(LEGAL)-LJC

3 of 5

COLLIN COLLEGE 002159

Collin County Community College
043500

EMPLOYEE RIGHTS AND PRIVILEGES

DG
(LEGAL)

1. Provide a reasonable amount of break time for an employee to express breast milk each time the employee has need to express the milk; and

2. Provide a place, other than a multiple user bathroom, that is shielded from view and free from intrusion from other employees and the public where the employee can express breast milk.

*Gov't Code 619.004*

**BREAKS FOR NURSING MOTHERS**

An employer shall provide a nonexempt employee a reasonable break to express breast milk, each time the employee needs to express breast milk for her nursing child, for one year after the child's birth. An employer shall provide a place, other than a bathroom, that is shielded from view and free from intrusion from coworkers and the public, which may be used by an employee to express breast milk.

An employer is not required to compensate the employee receiving reasonable break time for any work time spent for such purpose.

An employer that employs fewer than 50 employees is not subject to these requirements if the requirements would impose an undue hardship by causing the employer significant difficulty or expense when considered in relation to the size, financial resources, nature, or structure of the employer's business.

*29 U.S.C. 207(r)*

**PROHIBITIONS**

A state officer or employee, including a college district employee, may not use official authority or influence or permit the use of a program administered by the state agency of which the person is an officer or employee to interfere with or affect the result of an election or nomination of a candidate or to achieve any other political purpose. A state employee may not coerce, attempt to coerce, command, restrict, attempt to restrict, or prevent the payment, loan, or contribution of anything of value to a person or political organization for a political purpose. *Gov't Code 556.004(c)–(d)*

**NOTICE BY ELECTRONIC MEDIA**

If a state law requires an institution of higher education, including a college district, to provide written notification to its officers or employees of any requirement, right, duty, or responsibility provided by state law, the institution may provide the notification by use of electronic media.

An institution of higher education may adopt rules and guidelines to ensure that notification provided by electronic media is effective and that any required notification is provided to officers and employees who do not have access to electronic media.

*Education Code 51.965*

COLLIN COLLEGE 002160

Collin County Community College
043500

EMPLOYEE RIGHTS AND PRIVILEGES                                    DG
                                                              (LEGAL)

PROTECTION OF NURSES

A person, including a college district, may not suspend, terminate, or otherwise discipline, discriminate against, or retaliate against a nurse who refuses to engage in an act or omission as provided by Occupations Code 301.352(a-1) or a person who advises a nurse of the nurse's rights under Occupations Code 301.352. *Occupations Code 301.352(a)*

A nurse may refuse to engage in an act or omission relating to patient care that would constitute grounds for reporting the nurse to the Board of Nurse Examiners under Occupations Code Chapter 301, Subchapter I; that constitutes a minor incident, as defined at Occupations Code Section 301.419; or that violates Occupations Code Chapter 301 or a rule of the Board of Nurse Examiners if the nurse notifies the person at the time of the refusal that the reason for refusing is that the act or omission constitutes grounds for reporting the nurse to the Board of Nurse Examiners or is a violation of Occupations Code Chapter 301 or a rule of the Board of Nurse Examiners. *Occupations Code 301.352(a-1)*

IMMUNITY FOR SHELTER WORKERS

A service member of the Texas military forces ordered into service of this state by proper authority is not personally liable in the person's private capacity for any act performed or for any contract or other obligation entered into or undertaken in an official capacity in good faith and without intent to defraud in connection with the administration, management, or conduct of the department in business, programs, or other related affairs, under the limited waiver of governmental immunity provided by the Texas Tort Claims Act (Civil Practice and Remedies Code Chapter 101). *Gov't Code 437.222*

An officer or employee of a state or local agency, including a college district, is considered for purposes of Government Code 437.222 to be a member of the Texas military forces ordered into active service of the state by proper authority and is considered to be discharging a duty in that capacity if the person is performing an activity related to sheltering or housing individuals in connection with the evacuation of an area stricken or threatened by disaster. *Gov't Code 418.006*

**Note:**   For information regarding when the carry of weapons is permitted on campus, see CHF.



**COLLIN COLLEGE** | Academic Leadership By Design

8/25/17

Michael— I will Double Down on working to stop the w/the SSSDC. College

Many times journalists just put little Down

* I understand

COLLIN COLLEGE 002162



COLLIN COLLEGE

Academic
Leadership
By Design

LISA RD —
Told them OK — I understand
she was
a Dallas even my husband
a citizen told me I
shouldn't have
done

Elaine — Never gave
permiss —
Didn't even read
article M Phillips
send

COLLIN COLLEGE 002163



Elaine did not give
permission - was
askus by Michul
but never gave
permission to prine-
never read
sticle

COLLIN COLLEGE 002164



Academic Leadership By Design / COLLIN COLLEGE logo

Keith — ok, couldn't — res —

Where is policy — understand

Byrd — lastes 5 min. However, everything he said he is working w/AC on how to use his ...

Darrow min. However,
everything he said he is
else — working w/AC
Kinse On how to use
Confusing his ...
But ok

COLLIN COLLEGE 002465



DEPOSITION
EXHIBIT

19

Tilley



## COLLIN COLLEGE

### RECOMMENDATION for FACULTY MULTI-YEAR CONTRACT (MYC)

| Faculty Name *last/first/initial* | | Phillips/Joseph/M |
|---|---|---|
| **CWID** | 110793529 | **Email** | mphillips@collin.edu |

---

**Section A**

I have reviewed the multi-year contract application packet for the above-referenced faculty member.

Based on the review, I ☐ do recommend or ☒ do not recommend the above-referenced faculty member for a multi-year contract.
I have reviewed and discussed my recommendation with the faculty member.
*Justifications/Comments Attached:* ☒ *Yes* ☐ *No*  see attached

| *Kristen L Streater* | 10/12/21 |
|---|---|
| Academic/Workforce Dean Signature | Date |

---

**Section B**

The Council on Excellence committee has reviewed the multi-year contract application packet for the above-referenced faculty member.

Based on the review, the COE ☒ does recommend or ☐ does not recommend the above-referenced faculty member for a multi-year contract.
*Justifications/Comments Attached:* ☒ *Yes* ☐ *No*  please see attached letter

| | 11-20-2021 |
|---|---|
| Council on Excellence Chair Signature | Date |

---

**Section C**

Based on the review, I ☐ do recommend or ☒ do not recommend the above-referenced faculty member for a multi-year contract.

I ☐ do recommend or ☒ do not recommend the above-referenced faculty member for a one-year contract in lieu of a MYC.

| *Mary Barnes-Tilley* | 12/14/21 |
|---|---|
| Campus Provost Signature | Date |

---

**Section D**

Based on the review, I ☐ do recommend or ☒ do not recommend the above-referenced faculty member for a multi-year contract.

I ☐ do recommend or ☒ do not recommend the above-referenced faculty member for a one-year contract in lieu of a MYC.

| | 1-10-22 |
|---|---|
| Senior VP of Campus Operations Signature | Date |

---

**Section E**

Based on the review, I ☒ do approve or ☒ do not approve the above-referenced faculty member for a multi-year contract.

I ☐ do approve or ☒ do not approve the above-referenced faculty member for a one-year contract in lieu of a MYC.

| | 1-28-2022 |
|---|---|
| District President Signature | Date |

To be presented in personnel report to Board of Trustees at its meeting on the following date: March 22, 2022

*20210915 revised mw*

F:\Campus Operations\HR\Forms\Faculty Contract Recommendation Forms\Template_COE_MYC_master.docx

COLLIN COLLEGE 001791

Recommendation for Faculty Multi-Year Contract – Joseph Michael Phillips (110793529)

While Dr. Phillips is active in his discipline, in professional development, and in service at the college, I have reservations about his professionalism that prevent me from recommending him for a Multi-Year Contract. Over the last two years, in spite of coaching efforts and multiple discussions, Dr. Phillips has repeatedly failed to use internal communication channels to address questions and concerns he has had about the College's directives, policies, or procedures. In addition, student evaluations and complaints related to their perception of bias by Dr. Phillips in the classroom are concerning enough to give me pause in my recommendation. Both of these issues were addressed in two separate Discipline 1 forms in August and September, and these issues were the basis of my initial non-recommendation for a Contract Extension for Dr. Phillips. Associate Dean Dr. Chaelle O'Quin will be working with Dr. Phillips on these issues in a Performance Improvement Plan this fall, 2021 semester. However, there has not been enough time for Dr. Phillips to demonstrate enough of a commitment to change to enable me to recommend him for a Multi-Year Contract.

COLLIN COLLEGE 001792





To:   Dr. Mary Barnes-Tilley, Plano Campus Provost
From: Dr. Mary Weis, Council on Excellence Chair
Date: November 20, 2021
RE:   Council on Excellence Multi-Year Contract Review of Joseph Michael Phillips, Professor of History

After a thorough review and discussion of the multi-year contract packet submitted by Michael Phillips, Professor of History, the Council on Excellence voted to RECOMMEND this faculty member for a multi-year contract. Based on the review of the materials included in this faculty member's packet, the Council saw this professor as exhibiting the qualities of an excellent faculty member.

The Council finds that Professor Phillips has consistent, positive teaching evaluations – both by students and as evidenced by the feedback from his Associate Deans. Due to the lack of materials provided in the multi-year contract packet, there has not been opportunity to sufficiently address concerns in the area of teaching reported in the recent level one warning given on September 29, 2021. Although some students complained that they felt berated or shamed regarding Professor Phillips' comments about those who were not wearing masks during the first day of classes, Professor Phillips presented a thoughtful and thorough response regarding the relevance of discussing the use of masks in the historical study of epidemics and pandemics and the need to establish ties to these events early in the class discussions on the history of medicine. The Council was unable to evaluate the specifics of the student complaints, however, as these documents were not provided in the MYC packet. The Council was unable to review the Fall 2019 coaching and Summer 2020 informal coaching forms mentioned on the contract extension signature page as these were not included in the MYC packet. The written rationale for decisions made by the supervisors regarding these documents dealt with professionalism issues about which the Council did not have enough detail to make conclusions. In the level one warning given Fall 2021, the Associate Dean expressed concern about Professor Phillips not following college directives and communicating accurate information in social media and underscored the requirement to use appropriate avenues and processes. The Council was unable to evaluate this assertion, however, as additional information was not provided in the MYC packet. Despite these concerns, the Associate Dean's evaluation in both the 2019-2020 and 2020-2021 annual appraisals indicate that Professor Phillips meets expectations in the areas of teaching, professional development, college service, and student support. Comments by the Associate Dean included that "student comments reflect their enjoyment of Dr. Phillips' classes and his teaching of history in a way that goes beyond the traditional narrative," and that "he is courteous and professional in his interactions with his students, and they have commented on his respectfulness."

The Council noted that in the evaluations, students stated that Professor Phillips is knowledgeable, passionate, enthusiastic, and "gives informative lectures that would stick with me" because he "made history relatable." Another student wrote that "this teacher went the extra 500 miles to provide that information, make it human, make it real, and most importantly make it engaging!" There were a few comments from some students in all semesters that Professor Phillips promotes his political ideologies and biases and that they censored their work and writing. However, the primary student concerns focused on the need for more activities and assignments along with more group work and having a list of scheduled due dates. The majority of students in all semesters found that a thorough and truthful discussion of history showed honesty and a deep understanding about the real history and humanity reflective of those times. Professor Phillips, students said, "widened their perspective" and one said that even though they were not a fan of history he "ignited my interest" and another commented that Professor Phillips was the "best history teaching I have ever had."

[continued on back]

**COLLIN COLLEGE 001793**

In Professor Phillips' faculty review of student evaluations in the 2019-2020 self-appraisal the Council found that Professor Philips noted a student comment that "I never felt stupid asking a question about something I didn't know..." and that "we learn about history to have a better future, and his is one of the only history teachers I've had that actually teaches history with that in mind." In 2020-2021, Professor Philips used the self-appraisal section for faculty review of student evaluations to address student concerns for the semester. Professor Phillips uses college email rather than Canvas. He responded in detail and in a timely manner to students. Professor Phillips has increased the writing requirements in his classes to help students develop better skills at expressing thoughts and ideas on complex topics. Professor Phillips did address the student perceived bias and he covers such material as a basis for the relevance of current historical events.

Based on the information given in the MYC packet, the Council on Excellence came to the consensus that Professor Joseph Michael Philips DOES MEET the standard of Excellence expected from a Collin College Faculty member in the areas of teaching, professional development, college service and student support and recommends that this faculty member be awarded a multi-year contract.

COLLIN COLLEGE 001794

```
 1              IN THE UNITED STATES DISTRICT COURT
              FOR THE EASTERN DISTRICT OF TEXAS
 2                      SHERMAN DIVISION

 3   JOSEPH MICHAEL PHILLIPS,        )
                                     )
 4                Plaintiff,         )
                                     )  Civil Action
 5   VS.                             )  No. 4:22-cv-184-ALM
                                     )
 6   COLLIN COUNTY COMMUNITY         )
     COLLEGE DISTRICT, et al.,       )
 7                                   )
                  Defendants.        )
 8

 9                  REPORTER'S CERTIFICATION
              DEPOSITION OF MARY BARNES-TILLEY
10                   FEBRUARY 9, 2023

11       I, Christy Cortopassi, Certified Shorthand Reporter

12   in and for the State of Texas, hereby certify to the

13   following:

14       That the witness, MARY BARNES-TILLEY, was duly

15   sworn by the officer and that the transcript of the oral

16   deposition is a true record of the testimony given by

17   the witness;

18       That the deposition transcript was submitted on

19   _____3-1-23_____ to the witness or to the attorney

20   for the witness for examination, signature and return to

21   me by _____3-31-23_____;

22       That the amount of time used by each party at the

23   deposition is as follows:

24   Mr. Greg H. Greubel.............04:08
     Mr. Charles Joseph Crawford.....00:00
25   Mr. Robert J. Davis.............00:00
```



1    I further certify that pursuant to FRCP No

2  30(f)(1) that the signature of the deponent:

3    __X__ was requested by the deponent or a party

4  before the completion of the deposition and that the

5  signature is to be returned within 30 days from date of

6  receipt of the transcript.  If returned, the attached

7  Changes and Signature Page contains any changes and the

8  reasons therefor;

9    _____ was not requested by the deponent or a party

10  before the completion of the deposition.

11    I further certify that I am neither counsel for,

12  related to, nor employed by any of the parties or

13  attorneys in the action in which this proceeding was

14  taken, and further that I am not financially or

15  otherwise interested in the outcome of the action.

16    Certified to by me this _1st_ of _March_ ,

17  2023.

18

19

20  _____

21  Christy Cortopassi, Texas CSR 6222
    Expiration Date: 10/31/2024

22  Firm Registration No. 633
    Magna Legal Services

23  866.624.6221
    www.MagnaLS.com

24

25



1      I, MARY BARNES-TILLEY, have read the foregoing

2  deposition and hereby affix my signature that same is

3  true and correct, except as noted above.

4

5

6

7                    _MARY BARNES-TILLEY (signature)_
                    MARY BARNES-TILLEY

8

9

10

11  _____ No changes made    X  Amendment sheet(s) attached

12

13  JOSEPH MICHAEL PHILLIPS

14

15  Vs.

16

17  COLLIN COUNTY COMMUNITY COLLEGE DISTRICT, et al

18

19

20  JOB NO.  916093

21

22

23

24

25



Mary Barnes-Tilley

Changes and Signature

WITNESS  Mary Barnes-Tilley
DATE  February 9, 2023

| Page | Line | Change | Reason |
|---|---|---|---|
| 8 | 11 | Change "Collin College" to "Blinn College" | accuracy |
| 10 | 17 | Change "one to two hours" to "three to four hours" | clarification |
| 11 | 11 | Change "one to two hours" to "three to four hours" | clarification |
| 11 | 20 | change "two to three hours" to "five to six hours" | clarification |
| 17 | 23 | Add sentence "The discovery is currently ongoing " | clartification |
| 28 | 20 | replace "counsel" with "council" | spelling correction and correct throughout document |
| 53 | 15 | Add "bring attention to the to the performance deficiency and" after the word "to" | clarification |
| 61 | 7 | remove "internally" | clarification |
| 68 | 22 | replace "employee" with "employer" | clarificaiton |
| 71 | 8 | remove "as Dean" | clarification on role at the college during that time period |
| 87 | 2 | correct spelling of Marisel to Marisela | spelling correction and correct throughout document |
| 89 | 20 | remove "the college" and replace with "Marisela Smith" | clarification |
| 90 | 22 | replace "October" with "August" | accuracy |
| 97 | 13 | after "complaint" add "and one student complaint filed prior to the investigation" | clarificaiton |
| 111 | 7 | replace "2019" with "2021" | accuracy |
| 112 | 7 | after "person" add "and the Council on Excellence" | clarification |
| 117 | 21 | after "would document" add "the results of the performance improvement plan" | accuracy |
| 129 | 2 | after "all" add "media" | clarification |
|  |  |  |  |
|  |  |  |  |
|  |  |  |  |
|  |  |  |  |
|  |  |  |  |
|  |  |  |  |

```
 1                    A P P E A R A N C E S

 2

 3   FOR THE PLAINTIFF:

 4        Mr. Greg H. Greubel
          Mr. Joshua T  Bleisch
 5        FOUNDATION FOR INDIVIDUAL RIGHTS AND EXPRESSION
          510 Walnut Street
 6        Suite 1250
          Philadelphia, Pennsylvania 19106
 7        215.717.3473
          greg.greubel@thefire.org
 8        josh.bleisch@thefire.org

 9
     FOR THE DEFENDANT COLLIN COUNTY COMMUNITY COLLEGE
10   DISTRICT:

11        Mr. Charles Joseph Crawford
          Mr. Joseph Bailey McShane
12        ABERNATHY ROEDER BOYD & HULLETT, PC
          1700 Redbud Boulevard
13        Suite 300
          McKinney, Texas 75069
14        214 544.4000
          ccrawford@abernathy-law.com
15

16   FOR THE DEFENDANT BOARD OF TRUSTEES:

17        Mr. Robert J. Davis
          MATTHEWS SHIELS KNOTT EDEN & DAVIS & BEANLAND, LLP
18        8131 LBJ Freeway
          Suite 700
19        Dallas, Texas 75251
          972.234.3400
20        bdavis@mssattorneys.com

21

22   ALSO PRESENT:
          Ms. Monica Velazquez,
23        General Counsel, Collin College

24        Terry VanDerHeyden - Videographer

25
```





## KIM TINDALL & ASSOCIATES

RE: Mary Barnes-Tilley                                                                                 April 3, 2023

Dear Client:

We are forwarding these documents to you as the custodial attorney in this matter. This transcript is being handled pursuant to the Federal Rules of Civil Procedure and we have copied all parties on the Changes and Signature page(s) with the attached Certificate of Deposition submitted by the deponent to our office.

The items marked refer to the attached documents.

_____ ✓ The Changes and Signature page(s) was returned to our office within the specified time limit; therefore, we are forwarding the original deposition transcript(s) and the Changes and Signature page(s) with the attached Certificate of Deposition to you as the custodial attorney in this matter for safekeeping. All parties will be copied on the Changes and Signature page(s).

_____ The deponent returned the Changes and Signature page(s) within the specified time limit, however, the Changes and Signature page(s} was inadvertently returned without the original transcript. All parties have been copied.

_____ The Changes and Signature page(s) was not returned to our office within the specified time limit; therefore, we are forwarding the original deposition transcript to you as the custodial attorney in this matter.

_____ The Changes and Signature page(s} was returned to our office unexecuted. We are forwarding the original deposition transcript to you as the custodial attorney in this matter.

_____ The deponent returned the Changes and Signature page(s) enclosed after the specified time limit. All parties have been copied as a courtesy.

_____ This is to notify you that the examination and signature was not requested by the deponent and/or a party before the completion of the deposition; therefore, signature is waived pursuant to the Federal Rules of Civil Procedures. All parties have been copied via e-mail.

_____ A copy of the Changes and Signature page(s} was previously returned within the specified time limit. We are now in receipt of the Original Deposition Transcript and/or Changes and Signature page(s); therefore, we are returning it to you as the Custodial attorney in this matter for safekeeping.

_____ Amended.

Should you have any questions or concerns, please feel free to contact our office.

Sincerely,
KTA Certs Department
Certs@KTandA.COM
Nancy Renfroe – Department Manager

Kim Tindall & Associates, LLC
16414 San Pedro Avenue, Suite 900, San Antonio, Texas 78232
Phone: 866.672.7880 Fax: 210.697.3408