*Phillips v. Collin Cnty. Cmty. Coll. Dist., et al.*

# Exhibit H:
# Deposition of Kristen Streater

Kristen Streater, PH.D.                              February 15, 2023

1          THE UNITED STATES DISTRICT COURT

2         FOR THE EASTERN DISTRICT OF TEXAS

3                SHERMAN DIVISION

4
JOSEPH MICHAEL PHILLIPS,        )
5                               )
                Plaintiff,      )
6                               )
VS                              ) CIVIL ACTION NO.
7                               ) 4:22-cv-184-ALM
COLLIN COUNTY COMMUNITY         )
8  COLLEGE DISTRICT, et al.,    )
                                )
9                Defendants.     )

10  ************************************************
                VIDEOTAPED DEPOSITION OF
11               KRISTEN STREATER, PH.D.
                 FEBRUARY 15, 2023
12  ************************************************

13        VIDEOTAPED DEPOSITION OF KRISTEN STREATER,

14  PH.D. produced as a witness at the instance of

15  the Plaintiff, and duly sworn, was taken in the

16  above-styled and numbered cause on the 15th of

17  February, 2023, from 2:57 to 6:47, before Susan

18  S. Klinger, RMR-CRR, CSR in and for the State

19  of Texas, reported by stenographic method, at

20  Abernathy Roeder Boyd & Hullett, PC, 1700 N.

21  Redbud Boulevard, Suite 300, McKinney, Texas

22  pursuant to the Federal Rules of Civil

23  Procedure and the provisions stated on the

24  record or attached hereto.

25  Job No. 916122



```
 1              A P P E A R A N C E S

 2

 3   Attorneys or the Plaintiff(s):

 4         Greg Harold Greubel, Esquire

 5         Joshua T. Bleisch, Esquire

 6         FOUNDATION FOR INDIVIDUAL RIGHTS AND

 7         EXPRESSION

 8         510 Walnut Street, Suite 1250

 9         Philadelphia, Pennsylvania  19106

10         Greg.greubel@thefire.org

11         Josh.bleisch@thefire.org

12

13

14   Attorneys for the Defendants except the Board

15   of Trustees:

16         Charles Joseph Crawford, Esquire

17         ABERNATHY ROEDER BOYD & HULLETT, PC

18         1700 Redbud Boulevard, Suite 300

19         McKinney, Texas  75069

20         Ccrawford@abernathy-law.com

21

22

23

24

25
```



```
1              P R O C E E D I N G S
2              VIDEOGRAPHER:  Good afternoon, we
3         are now on record.  This begins videotape
4         number 1 in the deposition of Kristen
5         Streater in the matter of Joseph Michael
6         Phillips versus Collin County Community
7         College District, et al.
8              Today's date is February 15th, 2023
9         and the time is 2:57.
10             Will the court reporter please swear
11        in the witness.
12             KRISTEN STREATER, PH.D.,
13   having been first duly sworn testified as
14   follows:
15                  EXAMINATION
16   BY MR. BLEISCH:
17        Q.    Good afternoon.
18        A.    Hi.
19        Q.    My name is Josh Bleisch.  I will be
20   taking your deposition today.  Before we get
21   started on the questions about this case, I
22   have a few introductory points and questions I
23   would like to ask you.
24        A.    Okay.
25        Q.    Would you please state your name and
```



```
 1   yourself.  Give me -- you know, where did you

 2   go to college?

 3        A.    I went and got my bachelor's degree

 4   in history from Austin College.  I got my

 5   master's degree in history from Louisiana Tech

 6   University, and I got my Ph.D. in history from

 7   the University of Kentucky.

 8        Q.    When did you earn that Ph.D.?

 9        A.    The fall of 2001.

10        Q.    Do you have any other relevant

11   training to your current role?

12        A.    Do I have -- could you -- I don't

13   understand do I have relevant training.

14   I've -- I have been an associate dean and am

15   now a dean, so those are my administrative

16   trainings.

17        Q.    Sure.  Okay.  Yeah, well, let's --

18   let's talk about that.

19             What is your -- you said your

20   current role is dean?

21        A.    I'm currently Dean of Academic

22   Affairs --

23        Q.    Okay.

24        A.    -- at the Plano campus.

25        Q.    How long have you held that role?
```


MAGNA
LEGAL SERVICES

Kristen Streater, PH.D.                    February 15, 2023
                                                    Page 10

1        A.    I started in that role January the
2   1st of 2021.
3        Q.    Who is your supervisor in that role?
4        A.    My supervisor is Dr. Mary
5   Barnes-Tilley, who is provost of the Plano
6   campus.
7        Q.    What position did you have before
8   you were dean?
9        A.    Before I was dean, I was associate
10  dean and I supervised history, government and
11  psychology.
12       Q.    How long did you have that role?
13       A.    I began that role in July of 2018
14  and served until I was appointed or was
15  promoted to the dean position.
16       Q.    What was your role before that?
17       A.    I was a full-time faculty member at
18  the Plano campus in the history department.
19       Q.    How long did you have that role?
20       A.    That role I was hired in the fall of
21  2015.
22       Q.    What was your job before that?
23       A.    I had served as an adjunct faculty
24  member in the history department for Collin
25  College beginning in the fall of 2006, I



1      Q.    Do you remember anything else about

2   when you first met Dr. Phillips?

3      A.    Only that he was a full-time faculty

4   member of the history department at the Plano

5   campus.

6      Q.    What was your impression of him at

7   that time?

8      A.    I don't recall, he was a colleague.

9      Q.    Did you have a professional

10  relationship?

11     A.    With Dr. Phillips, only as a

12  colleague in the history department.

13     Q.    When did Dr. Phillips first come

14  under your umbrella as a -- as a manager?

15     A.    When I became an associate dean in

16  July of 2018.

17     Q.    What was your relationship with

18  Dr. Phillips like at that time?

19     A.    I would have considered it positive,

20  collegial.

21     Q.    Did Dr. Phillips cause you any

22  issues at that time?

23     A.    When I was first hired?

24     Q.    Yes.

25     A.    In July of 2018, no.



Kristen Streater, PH.D.                                    February 15, 2023
                                                                  Page 18

```
 1         Q.    Did you know that Dr. Phillips was
 2   not speaking to the reporter about the El Paso
 3   shooting?
 4              MR. CRAWFORD:  Objection, form.
 5         A.    Would you repeat the question?
 6         Q.    Did you know that Dr. Phillips was
 7   not speaking to the reporter about the El Paso
 8   shooting?
 9         A.    When he conducted the interview, I
10   was not present at the interview, so no.
11         Q.    Is the issue of race relations in
12   the Dallas/Fort Worth area a matter of public
13   concern?
14              MR. CRAWFORD:  Objection, form.
15         A.    Would you repeat the question?
16         Q.    Is race relations in the Dallas/Fort
17   Worth area a matter of public concern?
18              MR. CRAWFORD:  Objection, form.
19         A.    Today?
20         Q.    Yes.
21         A.    Yes.
22         Q.    Was it a matter of public concern in
23   2019?
24              MR. CRAWFORD:  Objection, form.
25         A.    Yes.
```



1      Q.    Did you have any issues with

2    Dr. Phillips prior to issuing him this employee

3    coaching form?

4      A.    Not to my knowledge, no.  Not to my

5    recollection, no.

6      Q.    Did you know that Dr. Phillips told

7    the Post reporter that he was not speaking as a

8    professor of the college?

9      A.    When I first approached Dr. Phillips

10   asking about this, he stated that to me.

11     Q.    Did you believe him?

12     A.    Yes.

13     Q.    Did you know that he asked not to be

14   identified as a professor at the college?

15     A.    That is what he stated to me.

16     Q.    Did you believe him about that, too?

17     A.    Yes.

18     Q.    But you decided to go forward with

19   the coaching form?

20     A.    Yes.

21     Q.    Did he violate any policy other than

22   the Dr. Matkin directive when he gave this

23   interview?

24     A.    Not to my knowledge.

25     Q.    Now handing you what I've marked as



Kristen Streater, PH.D.                                    February 15, 2023
                                                                  Page 22

 1        A.    This is my response, my first -- to
 2   the first set of interrogatories.
 3        Q.    I will give you an opportunity to
 4   read through it if you like, but I will let you
 5   know I'm only going to be asking you about
 6   Interrogatory Number 7.
 7        A.    (Reviewing document.)  Okay.
 8        Q.    What does it mean to seek revision
 9   in a judicious and appropriate manner?
10        A.    To do something in a judicious
11   manner means that you are trying to -- you are
12   not reacting immediately.  You are responding
13   in a thoughtful way.  An appropriate manner
14   would be to seek revision through the processes
15   and procedures within the college.
16        Q.    Could you explain that a little bit
17   more for me?
18        A.    The processes and procedures within
19   the college?
20        Q.    Just putting it all together to, you
21   know, seek revision in that appropriate manner?
22        A.    To seek revision in an appropriate
23   manner is to -- according to board policy, I
24   think it is DGC local, states that if you -- if
25   a faculty staff have a concern or disagreement



1    or something with a policy or procedure, that

2    they are to follow -- they are to either ask

3    their supervisor or they are to follow the

4    standing committee structure to seek revision

5    to seek -- to raise the concerns and to see if

6    it can be changed.

7         Q.     Are employees expected to go through

8    those processes for any concern they have?

9         A.     That would be appropriate, yes.

10        Q.     Even if their concern is about a

11   matter of public concern?

12        A.     If that matter of public concern --

13   yes.

14        Q.     So that was a yes?

15        A.     Yes.

16        Q.     What happens if they failed to use

17   those processes that you mentioned and instead

18   bring their concerns elsewhere?

19        A.     What happens if they bring their

20   concerns elsewhere?  They are within their

21   rights to do so.  They are within their rights

22   to do so.

23        Q.     Can the college discipline them for

24   it?

25        A.     If -- faculty have the right to



Kristen Streater, PH.D.                         February 15, 2023
                                                         Page 30

1   if they're Dr. Barnes-Tilley's notes?

2        A.     They're Dr. Barnes-Tilley's notes.

3        Q.     Were you a part of this meeting?

4        A.     Yes.

5        Q.     What was the meeting about?

6        A.     The meeting was about

7   Dr. Barnes-Tilley and my concerns about

8   Facebook posts that Dr. Phillips had been

9   posting related to the college's response to --

10  to COVID.

11       Q.     What were your concerns?

12       A.     That some of the information that

13  was on the post was not accurate and

14  particularly concerning was the first comment

15  here, that feeling when your employer is

16  basically saying the loss of your life is an

17  acceptable calculated risk.  That bothered us,

18  because it suggests that the college did not

19  care about individual lives.

20       Q.     You thought it made the college look

21  bad?

22              MR. CRAWFORD:  Objection, form.

23       A.     I thought that it suggested that the

24  college did not care about individual lives.

25       Q.     How did you see these Facebook



```
 1        Q.    Yes.

 2        A.    Yes.

 3        Q.    More than three times a month?

 4        A.    At times, yes.

 5        Q.    Was Dr. Barnes-Tilley also visiting

 6   his social media pages?

 7        A.    I don't know.

 8        Q.    Did you talk to Dr. Barnes-Tilley

 9   about Dr. Phillips' social media?

10        A.    Yes.

11        Q.    What did you guys talk about?

12        A.    Our frustration that he was raising

13   these concerns in a public way but not bringing

14   them to us so that we could help get his

15   questions answered, help him alleviate his

16   frustration, provide him with other additional

17   information to help ease what he was worried

18   about.

19        Q.    Were you frustrated by any of the

20   things that he was saying?

21        A.    Yes.

22        Q.    What about that frustrated you?

23        A.    Again, that he was not -- if he had

24   these concerns, I was frustrated that he didn't

25   bring them to me as his associate dean if --
```



1    your attention?

2         A.    I don't recall.

3         Q.    Was it Dr. O'Quin?

4         A.    I honestly do not recall.

5         Q.    Do you know if Dr. Barnes-Tilley

6    brought it to your attention in this

7    conversation on August 12th, whether it was the

8    first time it was brought to your attention or

9    not?

10        A.    I'm sorry, can you repeat the

11   question?

12        Q.    Yes.  On this conversation with

13   Dr. Barnes-Tilley on August 12th, do you know

14   if she brought this post to your attention

15   during that conversation?

16        A.    I would have to believe so.

17        Q.    What is meant here by "formal

18   coaching" in 2019?

19        A.    I'm sorry, on the discipline form?

20        Q.    On the discipline form, yes?

21        A.    That refers to the coaching form

22   related to the Washington Post.

23        Q.    And what was meant by "informal

24   coaching" in 2020?

25        A.    That refers to the Zoom conversation



1    that Dr. Barnes-Tilley and I had with

2    Dr. Phillips.

3         Q.     What role did these previous

4    incidents play in your's and Dr. O'Quin's

5    decision to issue the discipline form here?

6         A.     They demonstrated a pattern of

7    behavior.

8         Q.     What kind of behavior?

9         A.     That Dr. Phillips did not

10   question -- did not bring questions about a

11   directive, about COVID protocols, about things

12   related to college policy and procedure and

13   directives that he disagreed with.  He didn't

14   ever ask for clarification.  He didn't ever ask

15   for additional information.  He didn't ever ask

16   any questions about it, and so this is to

17   outline that pattern of behavior.

18        Q.     And the problem was that he took

19   those elsewhere?

20             MR. CRAWFORD:  Objection, form.

21        A.     The problem was that he did not

22   bring those concerns to us.

23             MR. BLEISCH:  Should we take a short

24        break?

25             MR. CRAWFORD:  Sure.



1    recommend him for the multiyear contract?

2        A.    May I read the -- (Reviewing

3    document.)

4              So your question was why did I not

5    recommend him for a multiyear contract?

6        Q.    Yes.

7        A.    As I've stated in the explanation,

8    there was a pattern of behavior on the part of

9    Dr. Phillips that made me pause about his level

10   of professionalism.  And by that I mean he

11   continued to, despite repeated asks, despite

12   multiple efforts to get him to bring things to

13   our attention, to bring them to me, instead of

14   -- so that I could help him.

15             Instead, come to me, I'm the one

16   that knows him the longest.  I'm the one that

17   was a colleague and -- and was his associate

18   dean and -- and now his dean.  And I didn't

19   understand why it is he didn't come to me for

20   that.  And it was despite repeated asks,

21   despite repeated offerings, despite repeated --

22   he didn't trust me, and -- or give me the

23   opportunity directly to help him.  And that

24   pattern of behavior led me to the non-renewal

25   of a multiyear contract.



Kristen Streater, PH.D.                          February 15, 2023
                                                 Page 96

```
 1        A.    It is the timeline in the process
 2   that I've been given.  I don't -- it is a
 3   challenge.
 4        Q.    Did you feel hurt by Dr. Phillips'
 5   willingness to take his concerns to social
 6   media versus to you?
 7        A.    I was disappointed.
 8        Q.    And that disappointment is what led
 9   you to not recommend him for renewal?
10        A.    No, I didn't recommend him for
11   renewal because of the pattern of behavior.
12        Q.    Did it matter to you that the
13   concerns that he shared publicly were about
14   matters of public concern?
15             MR. CRAWFORD:  Objection, form.
16        A.    I'm sorry, repeat the question?
17             MR. BLEISCH:  Can you read it back?
18                 (Record read.)
19             MR. CRAWFORD:  Objection, form.
20        A.    Did it matter to me that they were
21   matters of public concern, no.
22             MR. BLEISCH:  Can we take a break?
23             MR. CRAWFORD:  Sure.
24             VIDEOGRAPHER:  We're off record at
25        6:39.
```



Kristen Streater, PH.D.                                    February 15, 2023
                                                                Page 97

```
 1                 (Recess, 6:39 to 6:46 p.m.)
 2                 VIDEOGRAPHER:  We're back on record
 3          at 6:46 p.m.
 4          Q.    Was the pattern of Dr. Phillips
 5   taking his concerns elsewhere that you were
 6   discussing earlier in reference to his posting
 7   on social media?
 8          A.    Yes.
 9          Q.    Do you plan to testify at trial in
10   this case?
11          A.    I don't -- I don't know.  That is at
12   the -- my attorneys.
13          Q.    If called will your testimony then
14   be the same as it is today?
15          A.    Yes.
16                 MR. BLEISCH:  I'm done.
17                 MR. CRAWFORD:  We will reserve our
18          questions, request the ability to read and
19          sign.
20                 MR. McSHANE:  Same for the Board.
21                 VIDEOGRAPHER:  We're off record at
22          6:47 p.m.
23                 (Deposition concluded at 6:47 p.m.)
24
25
```





**From:** Michael Phillips
**Sent:** Monday, September 9, 2019 1:40 PM
**To:** Kristen L. Streater
**Subject:** Re: Form
**Attachments:** Coaching_Form Michael Phillips Fall 2019 (Michael Phillips).docx


Kristen,

Here's the form with my response.  Thank you.

Michael

**From:** Kristen L. Streater <kstreater@collin.edu>
**Sent:** Monday, September 9, 2019 12:49 PM
**To:** Michael Phillips <mphillips@collin.edu>
**Subject:** Form

Attached

Dr. Kristen L. Streater
Associate Dean, Academic Affairs – HIST, GOVT, PSYC
Collin College - Plano Campus J112
2800 E. Spring Creek Parkway
Plano, TX 75074
972-881-5142

1



**COLLIN COLLEGE**

## EMPLOYEE COACHING FORM

| Employee Information | | | |
|---|---|---|---|
| **Employee Name:** | Joseph Michael Phillips | **CWID:** | 110793529 |
| **Immediate Supervisor:** | Kristen Streater | **Department:** | History |
| **Full-time or Part-time:** | Full-time | **Date:** | 9/3/19 |

### Performance Feedback

☒ Constructive Feedback

### Details

*Constructive Feedback: Be specific, describing the job responsibilities or behavior that needs to change and how the employee needs to change to meet expectations. (Note:  Employee Coaching is not considered a level of formal discipline. However, an employee's failure to meet and sustain acceptable performance or behavior may result in formal disciplinary action in the future.)*

Following the El Paso shooting on August 3, 2019, Collin College President Dr. Neil Matkin issued a directive to the college community on August 4, 2019, which read in part, "Please refer all press inquiries you may receive to Marisela Cadena-Smith at MCSmith@collin.edu or by phone to the president's office (972-758-3800)."

On August 10, 2019, the Washington Post published an article in which Professor Michael Phillips was cited.  This went against the directive by Dr. Matkin.

On August 14, 2019, Associate Dean Kristen Streater talked with Professor Phillips about the Washington Post article, and he admitted to talking with the Post for the article.  Although he tried to make it clear to the Post that he was only doing so as a subject expert, and not as a Collin College employee, Associate Dean Streater stated that despite his intentions, the Post was probably going to note that Professor Phillips was a member of the Collin faculty (which they did), and that this violated the President's directive.

Expectations moving forward are to follow the President's directives when approached by the media.

---

*Immediate Supervisor's Signature:*                                         *Date:*

### Acknowledgement of Receipt of Feedback

*Employee Comments:*
I noted to Dr. Kristen Streater that when I spoke to the Washington Post reporter I was called not as a member of the Collin College faculty but as an acknowledged expert on race relations in the Dallas-Fort Worth area.  I believed that I followed Dr. Matkin's instructions because I did not speak to the Post about the shooter himself or the shooting but about the D-FW area's history of racism. I was asked about racist fliers at the campus and my comments were the same Dr. Matkin made at All-College Day – that the fliers were removed so quickly almost no one knew about them.  I also noted that the college was a diverse, tolerant place.  I did not believe the interview violated policy as I understood it at the time.

---

*Employee Signature:*                                         *Date:*

I:\HR\HR Forms\Employee Relations

COLLIN COLLEGE 000929
Spring 2012

EXHIBIT 3
WIT: _Streater_
DATE: _2-15-23_
S. Klinger, RMR-CRR

**From:** Kristen L. Streater
**Sent:** Wednesday, August 14, 2019 3:57 PM
**To:** Mary Barnes-Tilley
**Subject:** FW: Follow up to our discussion

Just received.

Dr. Kristen L. Streater
Interim Associate Dean, Academic Affairs – HIST, GOVT, PSYC
Collin College - Plano Campus J112
2800 E. Spring Creek Parkway
Plano, TX 75074
972-881-5142

**From:** Michael Phillips
**Sent:** Wednesday, August 14, 2019 3:52 PM
**To:** Kristen L. Streater <kstreater@collin.edu>
**Subject:** Re: Follow up to our discussion

Kristen,

Thank you and I appreciated our conversation.  I just wanted to I want to clarify a few things from my perspective.

The Washington Post reporter contacted me via email. On the phone, she made clear that she was aware of my scholarship on race in Dallas.  She said she wanted to talk to me about the broader Dallas-Fort Worth historical context of the event, not about the alleged shooter, his time at Collin College, nor the shooting in El Paso itself.  I did not discuss any of those topics with her.  I asked the reporter to not identify me as a member of the Collin faculty, but as an author and a scholar on race relations.  She did not comply with my request.

My interpretation of the email sent by Dr. Matkin was that we were not supposed to talk about the shooting itself or the student. I did not interpret that to mean that I could not respond to questions pertaining to my area of expertise.  I did not believe that my comments were in violation of that directive but I now understand that this view is not shared by the administration and I will according to my understanding based on today's conversation.

Upon reflection, however, I am concerned that the response to the Washington Post story has a chilling effect on the faculty's free speech and is anomalous at institutions of higher learning. My concerns aside, I will follow the directive I have been given.  Thank you again for your courtesy. I appreciate the job you have done as an associate dean and I am glad that this appointment has been made permanent.

Michael

1

**From:** Kristen L. Streater <kstreater@collin.edu>
**Sent:** Wednesday, August 14, 2019 1:30 PM
**To:** Michael Phillips <mphillips@collin.edu>
**Subject:** Follow up to our discussion

Michael,

Just a quick follow up to our conversation earlier.  Going forward, if any member of the media contacts you about an event or incident related to the college, you are to direct them to contact the Collin College Public Relations Office and the President's Office.  Regarding the current incident, you should have followed President Matkin's email directive (email from President Matkin dated 8/4/19 at 4:44pm).

I will be briefing Dr. Barnes-Tilley about our conversation this afternoon.

Please let me know if you have any questions.

Thanks,

Dr. Kristen L. Streater
Interim Associate Dean, Academic Affairs – HIST, GOVT, PSYC
Collin College - Plano Campus J112
2800 E. Spring Creek Parkway
Plano, TX 75074
972-881-5142

COLLIN COLLEGE 000802

Kristen Streater, PH.D.                                    February 15, 2023
                                                              Page 100

```
 1          THE UNITED STATES DISTRICT COURT

 2         FOR THE EASTERN DISTRICT OF TEXAS

 3               SHERMAN DIVISION

 4
    JOSEPH MICHAEL PHILLIPS,        )
 5                                  )
                  Plaintiff,        )
 6                                  )
    VS                              ) CIVIL ACTION NO.
 7                                  ) 4:22-cv-184-ALM
    COLLIN COUNTY COMMUNITY         )
 8  COLLEGE DISTRICT, et al.,       )
                                    )
 9                Defendants.       )

10

11          REPORTER'S CERTIFICATION

12      DEPOSITION OF KRISTEN STREATER, PH.D.

13            February 15, 2023

14

15      I, Susan S. Klinger, Certified Shorthand

16  Reporter in and for the State of Texas, hereby

17  certify to the following:

18      That the witness, KRISTEN STREATER, PH.D.,

19  was duly sworn by the officer and that the

20  transcript of the oral deposition is a true

21  record of the testimony given by the witness;

22      That the deposition transcript was

23  submitted on _____2-28_____, 2023 to the

24  witness or to the attorney for the witness for

25  examination, signature and return to me by
```



1    _____ 3-31 _____ , 2023;

2         That the amount of time used by each party

3    at the deposition is as follows:

4         Mr. Bleisch:  3:12

5         That pursuant to information given to the

6    deposition officer at the time said testimony

7    was taken, the following includes counsel for

8    all parties of record:

9         Mr. Bleisch, Attorney for Plaintiff(s)

10        Mr. Crawford, Attorney for Defendant(s)

11        Mr. J. Bailey McShane, IV, Attorney for

12             Defendants

13        I further certify that I am neither

14   counsel for, related to, nor employed by any of

15   the parties or attorneys in the action in which

16   this proceeding was taken, and further that I

17   am not financially or otherwise interested in

18   the outcome of the action.

19        Certified to by me this 26th day of

20   February, 2023.

21

22   _____

23   Susan S. Klinger,
     Texas CSR No. 6531
     Expiration Date:  10/31/23

24

25



Kristen Streater, PH D

1      I, KRISTEN STREATER, PH D , have read the

2  foregoing deposition and hereby affix my

3  signature that same is true and correct, except

4  as noted above

5

6

7

8

9                        _Kristen Streater_

10           KRISTEN STREATER, PH D

11

12  THE STATE OF _TEXAS_)

13  COUNTY OF _COLLIN_ )

14      Subscribed and sworn to before me by the

15  said witness, KRISTEN STREATER, PH D ,

16

17      Given under my hand and seal of office

18  this _30th_ day of _MARCH_ , 20 _23_

19               _Kim Whitlock_

20      Notary Public in and for the
        State of_ TEXAS _

21  My commission expires _9/24/24_

22

23

24

25

KIM WHITLOCK
Notary Public State of Texas
Comm Expires 09 24 2024
Notary ID 132695840



Kristen Streater, PH D                                    February 15, 2023
                                                                  Page 98

CHANGES AND SIGNATURE

PAGE LINE        CHANGE                REASON FOR CHANGE

Page 86, Line 6, add "or Contract Extension form" for clarification

Page 90, Line 25, change "workdays" to "the Workday system" as correction
                                                and clarification



```
 1              A P P E A R A N C E S

 2

 3   Attorneys or the Plaintiff(s):

 4        Greg Harold Greubel, Esquire

 5        Joshua T. Bleisch, Esquire

 6        FOUNDATION FOR INDIVIDUAL RIGHTS AND

 7        EXPRESSION

 8        510 Walnut Street, Suite 1250

 9        Philadelphia, Pennsylvania  19106

10        Greg.greubel@thefire.org

11        Josh.bleisch@thefire.org

12

13

14   Attorneys for the Defendants except the Board

15   of Trustees:

16        Charles Joseph Crawford, Esquire

17        ABERNATHY ROEDER BOYD & HULLETT, PC

18        1700 Redbud Boulevard, Suite 300

19        McKinney, Texas  75069

20        Ccrawford@abernathy-law.com

21

22

23

24

25
```



```
 1    Attorneys for the Board of Trustees.

 2         J. Bailey McShane, Esquire

 3         MATTHEWS, SHIELS, KNOTT, EDEN, DAVIS &

 4         BEANLAND, L L.P.

 5         8131 LBJ Freeway, Suite 700

 6         Dallas, Texas  75251

 7         Bmcshane@mssattorneys.com

 8

 9

10    Also Present:

11         Joseph Michael Phillips

12         Monica Velazquez, Esquire – Collin College

13         Terry Vanderheyden, videographer

14

15

16

17

18

19

20

21

22

23

24

25
```





# KIM TINDALL & ASSOCIATES

RE: Kristen Streater                                                April 3, 2023

Dear Client:

We are forwarding these documents to you as the custodial attorney in this matter. This transcript is being handled pursuant to the Federal Rules of Civil Procedure and we have copied all parties on the Changes and Signature page(s) with the attached Certificate of Deposition submitted by the deponent to our office.

The items marked refer to the attached documents.

_____ The Changes and Signature page(s) was returned to our office within the specified time limit; therefore, we are forwarding the original deposition transcript(s) and the Changes and Signature page(s) with the attached Certificate of Deposition to you as the custodial attorney in this matter for safekeeping. All parties will be copied on the Changes and Signature page(s).

_____ The deponent returned the Changes and Signature page(s) within the specified time limit, however, the Changes and Signature page(s} was inadvertently returned without the original transcript. All parties have been copied.

_____ The Changes and Signature page(s) was not returned to our office within the specified time limit; therefore, we are forwarding the original deposition transcript to you as the custodial attorney in this matter.

_____ The Changes and Signature page(s} was returned to our office unexecuted. We are forwarding the original deposition transcript to you as the custodial attorney in this matter.

_____ The deponent returned the Changes and Signature page(s) enclosed after the specified time limit. All parties have been copied as a courtesy.

_____ This is to notify you that the examination and signature was not requested by the deponent and/or a party before the completion of the deposition; therefore, signature is waived pursuant to the Federal Rules of Civil Procedures. All parties have been copied via e-mail.

_____ A copy of the Changes and Signature page(s} was previously returned within the specified time limit. We are now in receipt of the Original Deposition Transcript and/or Changes and Signature page(s); therefore, we are returning it to you as the Custodial attorney in this matter for safekeeping.

_____ Amended.

Should you have any questions or concerns, please feel free to contact our office.

Sincerely,
KTA Certs Department
Certs@KTandA.COM
Nancy Renfroe – Department Manager

Kim Tindall & Associates, LLC
16414 San Pedro Avenue, Suite 900, San Antonio, Texas 78232
Phone: 866.672.7880 Fax: 210.697.3408