*Phillips v. Collin Cnty. Cmty. Coll. Dist., et al.*

# Exhibit I:
# Deposition of Chaelle O'Quin

```
 1              THE UNITED STATES DISTRICT COURT
              FOR THE EASTERN DISTRICT OF TEXAS
 2                    SHERMAN DIVISION

 3   JOSEPH MICHAEL PHILLIPS,     )
                                  )
 4               Plaintiff,       )
                                  )
 5   VS.                          ) Civil Action
                                  ) No. 4:22-cv-184-ALM
 6   COLLIN COUNTY COMMUNITY      )
     COLLEGE DISTRICT, et al.,    )
 7               Defendants.      )

 8

 9        ----------------------------------

10        ORAL AND VIDEOTAPED DEPOSITION OF

11             CHAELLE O'QUIN

12           FEBRUARY 14, 2023

13        ----------------------------------

14

15

16        ORAL AND VIDEOTAPED DEPOSITION OF CHAELLE O'QUIN,

17   produced as a witness at the instance of the Plaintiff,

18   and duly sworn, was taken in the above-styled and

19   numbered cause on February 14, 2023, from 1:54 p.m. to

20   5:47 p.m., before Christy Cortopassi, CSR in and for the

21   State of Texas, reported by machine shorthand, at the

22   law offices of Abernathy Roeder Boyd Hullett, 1700 N.

23   Redbud Boulevard, Suite 300, McKinney, Texas 75069,

24   pursuant to the Federal Rules of Civil Procedure and the

25   provisions stated on the record or attached hereto.
```



```
 1                    A P P E A R A N C E S

 2

 3    FOR THE PLAINTIFF:

 4        Mr. Joshua T. Bleisch
          Mr. Greg H. Greubel
 5        FOUNDATION FOR INDIVIDUAL RIGHTS AND EXPRESSION
          510 Walnut Street
 6        Suite 1250
          Philadelphia, Pennsylvania 19106
 7        215.717.3473
          josh.bleisch@thefire.org
 8        greg.greubel@thefire.org

 9

10    FOR THE DEFENDANT COLLIN COUNTY COMMUNITY COLLEGE
      DISTRICT:

11        Mr. Charles Joseph Crawford
          ABERNATHY ROEDER BOYD & HULLETT, PC
12        1700 Redbud Boulevard
          Suite 300
13        McKinney, Texas 75069
          214.544.4000
14        ccrawford@abernathy-law.com

15
      FOR THE DEFENDANT BOARD OF TRUSTEES:
16
          Mr. Joseph Bailey McShane
17        MATTHEWS SHIELS KNOTT EDEN DAVIS & BEANLAND, LLP
          8131 LBJ Freeway
18        Suite 700
          Dallas, Texas 75251
19        972.234.3400
          bdavis@mssattorneys.com
20

21    ALSO PRESENT:
          Ms. Monica Velazquez,
22        General Counsel, Collin College

23        Terry VanDerHeyden - Videographer

24

25
```



```
 1              P R O C E E D I N G S
 2              THE VIDEOGRAPHER:  Good afternoon.
 3  We are now on record.  This begins videotape Number 1 in
 4  the deposition of Chaelle O'Quin in the matter of Joseph
 5  Michael Phillips versus Collin County Community College
 6  District, et al.
 7              Today's date is February 14th, 2023, and
 8  the time is 1:54 p.m.
 9              Would the reporter please swear in the
10  witness.
11                      CHAELLE O'QUIN,
12  having been first duly sworn, testified as follows:
13                      EXAMINATION
14  BY MR. BLEISCH:
15     Q.  Good afternoon.  My name is Josh Bleisch and
16  I'll be taking your deposition today.  Before we get
17  started in the questions about the case, I have got a
18  few introductory questions for you.
19              So first, will you please state your name
20  and address for the record?
21     A.  Chaelle O'Quin, 4008 Moorcroft Road, Frisco,
22  Texas 75036.
23     Q.  Thank you.
24     A.  Uh-huh.
25     Q.  Have you ever been deposed before?
```



Chaelle O'Quin                                    February 14, 2023
                                                         Page 7

1        Q.  Okay.  Lots of schooling.

2        A.  Yes.

3        Q.  Where -- which schools did you go to for -- I

4   assume you earned multiple degrees?

5        A.  Yes, sir.

6        Q.  Okay.  What degrees did you earn when you

7   attended those schools?

8        A.  A Batchelor of Arts in Criminal Justice from

9   Dallas Baptist University, a Master of Science in

10  Parapsychology from Coppell University, and a Doctorate

11  of Education from American College of Education.

12       Q.  Thank you.  So what is your current role,

13  current job?

14       A.  Current job, I'm Associate Dean of Academic

15  Affairs in Workforce Development at Collin College.

16       Q.  When did you begin that position?

17       A.  March 15th, 2021.

18       Q.  And what was your job before that?

19       A.  I was a faculty member.  Taught on an education

20  learning framework.

21       Q.  You were a faculty member at Collin College?

22       A.  At Dallas College.

23       Q.  At Dallas College.  And how long were you

24  there?

25       A.  17 years total.



1      Q.   Okay.  And what years was that?  17 years total

2  up until 2021?

3      A.   2004 to 2021.

4      Q.   Okay.  And were you a full-time faculty member,

5  adjuncts?

6      A.   Full-time faculty.

7      Q.   And what is your supervisor's name right now at

8  Collin College?

9      A.   Dr. Kristen Streater.

10     Q.   So is your -- in your role as dean, what are

11 your basic job duties?

12     A.   To supervise both full-time and part-time

13 faculty.

14     Q.   What does that look like?

15     A.   Actually, it looks like -- I spend time with

16 them molding their careers and helping them to teach in

17 their professional way, to make sure the student

18 learning outcomes are met.  That helps the college reach

19 its goals.  So as a supervisor, I make sure that they

20 have met their goals so they set goals every year.  We

21 do that together.  And to help build their college

22 service and in most cases, just the supervisory of

23 hiring and training and walking with them, coaching, in

24 most cases.

25     Q.   So most of your job involves management of the



1  it moves to another what we call progress discipline.

2  So that can go to discipline one, discipline two,

3  through termination.

4       Q.  When did you first hear the name Michael

5  Phillips?

6       A.  I can't recall the first time I heard it.  And

7  I'm assuming you are -- in your reference to this

8  Michael Phillips or...

9       Q.  This Michael Phillips, yes.

10      A.  I would say maybe when going through just the

11  roster of my faculty members, it would be the first time

12  I would have heard the name.

13      Q.  So I would like to just switch gears for a

14  little bit if you don't mind.

15               (Exhibit 1 marked.)

16      Q.  (BY MR. BLEISCH)  I'm handing you what I have

17  marked as Exhibit 1.

18      A.  Okay.

19      Q.  Take some time to look at that and let me know

20  when you are ready to talk about it.

21      A.  Okay.

22      Q.  What are these?

23      A.  The professional ethics standards by which the

24  college holds its employees.

25      Q.  Okay.  What purpose does it serve?



Chaelle O'Quin                                    February 14, 2023
                                                          Page 13

1   would think respect is in itself is showing

2   consideration and compassion and care.

3        Q.  How do your -- the employees who you supervise,

4   how do they know what you think dignity or respect

5   means?

6        A.  Your question -- could you ask that one more

7   time?

8        Q.  Yeah.  How do the employees who you supervise

9   know what your definitions for dignity and respect are?

10       A.  I don't say that -- I don't -- can't say that I

11  have defined it to them.  I think the word "dignity"

12  just in the course of a definition in itself that it

13  speaks on its own.  I don't think there's a clear-cut

14  definition that I would have given to my faculty for

15  dignity and respect.

16            I think that basic dignity is showing

17  consideration for other people.  I would expect that we

18  would know what that means and if I see that there's a

19  person who may not be showing dignity, that's when we

20  have a conversation and we clarify that.

21       Q.  But you have not had a meeting with your

22  employees to let them know on the outset what those

23  might mean?

24       A.  No, I have not.

25       Q.  I would like to direct your attention to Number



1       A.  Could you ask that another way, please?

2       Q.  Yes.  Does this policy -- I'm sorry.  Let

3   me ask that a different way, even than the way I

4   was going to.

5               What must faculty members do before they

6   want to speak out about some public issue if they want

7   to stay in line with this policy as it -- as shown here?

8       A.  I would think they would -- and basically on

9   this policy that they should strive for accuracy.  So

10  make sure what they're saying is factual and resist the

11  urge to -- just to put fact -- opinions out there that

12  are not factual, to have some level of tolerance and to

13  expect that there will be those who disagree, and to

14  give them an opportunity to exercise their right to free

15  speech as well.

16      Q.  What happens if a faculty member says something

17  that's not true?

18      A.  Then they have violated this policy.

19      Q.  And then what happens?

20      A.  Well, I would imagine that if it's untrue, that

21  there would be some level of conversation.  But

22  sometimes you -- it depends on how untrue it is or if it

23  is left up to a person's -- I would say their

24  interpretation.

25      Q.  Who determines whether something a faculty



1  this employee discipline form.

2      A.  So I became aware that a copy of my PowerPoint

3  slide had been posted on social media.  And I spoke with

4  Dr. Streater about it.  And she indicated that there had

5  been some level of informal coaching before.  And then

6  she suggested that I look into the matter and speak with

7  him, with Dr. Phillips about it.

8      Q.  How were you made aware of the social media

9  post?

10     A.  Dr. Streater asked me had I seen it.

11     Q.  Okay.  So Dr. Streater brought the post to you?

12     A.  She showed it to me, yes.  And she asked me

13  where did I get the information -- well, what she

14  actually asked me, did I post -- did I use the

15  PowerPoint the night before.  And was I aware that this

16  posting had been on social media from the night before.

17     Q.  Do you know how Dr. Streater became aware of

18  the social media post?

19     A.  I do not.

20     Q.  Did she show you any other social media posts

21  of Dr. Phillips?

22     A.  No, she didn't.

23     Q.  You mentioned formal coaching in July 2019.

24  What is that?

25     A.  I believe that's the document you asked me



 1   about earlier but I don't -- I wasn't there then so I

 2   don't know.

 3        Q.  Correct.  Yeah.  And I believe earlier when I

 4   showed you that, you testified that you hadn't seen that

 5   until two months ago?

 6        A.  That's correct.

 7        Q.  So what led you to bringing that back up in

 8   this employee discipline form?

 9        A.  Because Dr. Streater mentioned it.  And then it

10   shows a pattern and a trend.  And generally when we

11   construct discipline forms we have to go back into the

12   history and mention that if we have had an issue with it

13   before and what we have done about it before then.

14             And that's usually -- it starts with

15   coaching.  So we have to -- we are taught to mention or

16   at least review the coaching.

17        Q.  Did Dr. Streater assist you in preparing this

18   form?

19        A.  She didn't assist me with it.  I took it to her

20   and I discussed it with her before we delivered it.

21        Q.  What was that -- what did you talk about in

22   that discussion?

23        A.  Basically just what I saw was the behavior, the

24   deficiency.  And then what some of the things were that

25   I felt like he could do to be a better employee.



```
1   bottom right corner, I think we're on page 358.
2         A.  Okay.
3         Q.  So what is that on page 358?
4         A.  That's the copy of one of the slides I
5   presented to the faculty.
6         Q.  And what else is on the page?
7         A.  Where it says, Note what we were told.
8         Q.  And is it a social media post?
9         A.  It is a social media post from, I guess,
10  Twitter.
11        Q.  Is this the social media post that was the
12  subject of this employee discipline form which I believe
13  we have marked as Exhibit 12?
14        A.  Yes, it is.
15        Q.  Yes?
16        A.  Yes, sir.
17        Q.  Will you read what Dr. Phillips said in that
18  Tweet?
19        A.  Note what we were told about discussing masks
20  and COVID with students at my college today.
21        Q.  Do you think that's disinformation?
22        A.  I don't think it's completely accurate.
23        Q.  How so?
24        A.  It infers that we were -- what we were told
25  about discussing it as well, but we were saying this
```



1   bottom right corner, I think we're on page 358.

2       A.  Okay.

3       Q.  So what is that on page 358?

4       A.  That's the copy of one of the slides I

5   presented to the faculty.

6       Q.  And what else is on the page?

7       A.  Where it says, Note what we were told.

8       Q.  And is it a social media post?

9       A.  It is a social media post from, I guess,

10  Twitter.

11      Q.  Is this the social media post that was the

12  subject of this employee discipline form which I believe

13  we have marked as Exhibit 12?

14      A.  Yes, it is.

15      Q.  Yes?

16      A.  Yes, sir.

17      Q.  Will you read what Dr. Phillips said in that

18  Tweet?

19      A.  Note what we were told about discussing masks

20  and COVID with students at my college today.

21      Q.  Do you think that's disinformation?

22      A.  I don't think it's completely accurate.

23      Q.  How so?

24      A.  It infers that we were -- what we were told

25  about discussing it as well, but we were saying this



1    needs to be removed from the syllabus.  This was a

2    guideline for the syllabus.  This implies that we were

3    told not to discuss masks.

4          Q.  Is that what it says?

5          A.  I said that's what it implied.

6          Q.  But is that what it says?

7          A.  Note what we were told about discussing masks

8    and COVID with students.

9          Q.  And what does the slide say?

10         A.  It -- I can't read it from here because it's a

11   little bit blurred.  It says to be sure to read the

12   restart page with the COVID procedures.  We cannot have

13   any written language.  I really am not able to read this

14   and I don't remember what it says.

15         Q.  Okay.  You don't -- do you remember what was on

16   the slide that you presented that day?

17         A.  Yes.  Basically not to -- to -- these are the

18   guidelines for the syllabus.  So there were three or

19   four slides prior to that that talked about what the

20   syllabus should have and this was just the third part of

21   what should go in the syllabus.

22         Q.  So is it inaccurate to share verbatim what you

23   presented to faculty?

24         A.  You say is it inaccurate to share verbatim?

25         Q.  Uh-huh.



```
1              I was blindsided by that.  I had no idea
2      that it was a big issue until that day.  So, yes, I felt
3      like it was done maybe not to me but it happened to me,
4      so yes.
5          Q.  Did he tag you in his social media post?
6          A.  Not that I'm aware of.
7          Q.  Did he mention you by name in his social media
8      post?
9          A.  He did not.
10         Q.  Is there anything in the picture that he sent,
11     shared, or in the post itself that mentions you?
12         A.  To a degree, it links back to me because he
13     does have friends who are in his social media network
14     who know that I was the one who posted that.  So
15     indirectly, yes, it did.
16         Q.  But did the post itself say anything about you?
17         A.  Not directly, no.
18         Q.  I'm speaking more generally right now.  But in
19     the normal course of business at Collin College if you
20     have an issue with the way another employee has treated
21     you, how are you expected to proceed or what recourse do
22     you have or how do you -- and how do you go about that?
23         A.  You go to that person.  You have a conversation
24     with them.  And you explain to them how what they did
25     made you feel and give them an opportunity to either
```



Chaelle O'Quin

1    A.  I can't say that it does.

2              (Exhibit 17 marked.)

3    Q.  (BY MR. BLEISCH)  Okay.  I am handing you now

4  what I have marked as Exhibit 17.  What is this document

5  that I have just handed you?

6    A.  It's a Level 1 Warning to Dr. Phillips.

7    Q.  How are you involved in the creation of this

8  Level 1 Warning employee discipline form?

9    A.  I completed it and states the facts of the

10  policy and the results that were necessary for

11  compliance.

12    Q.  Did you speak with Dr. Phillips before you

13  created this form?

14    A.  Yes, I did.

15    Q.  Were you aware that his comments came during a

16  class lecture?

17    A.  Yes.

18    Q.  Are his comments during the class lecture

19  protected by Academic Freedom?

20    A.  I would say, yes.

21    Q.  So how did it come to be then that this comment

22  made during a class lecture became the subject of a

23  discipline from the college?

24    A.  His comments during a lecture are one thing.

25  But also when we read the policy about showing dignity



1  and respect.  The students -- one student complained

2  that she felt really singled out and berated.

3       Q.  Do you often discipline faculty when one

4  student complains?

5                 MR. CRAWFORD:  Objection; form.

6       A.  Not often.

7       Q.  (BY MR. BLEISCH)  Have you ever done it before?

8       A.  No.

9       Q.  But you would agree that faculty are -- have

10  the freedom to discuss controversial issues in class,

11  right?

12       A.  They do have that freedom.

13       Q.  Even if that makes students uncomfortable?

14       A.  Uncomfortable, yes, but not to berate them.

15  That those are -- that's different.

16       Q.  What does it mean to berate somebody?

17       A.  To make a person feel bad, to bully them, to

18  shame them, to single them out.  I don't think that that

19  is model behavior.

20       Q.  Did -- so you got one written complaint?

21       A.  One written complaint but also other complaints

22  as well.

23       Q.  When did those other complaints come?

24       A.  In -- during my investigation of the facts

25  surrounding this, surrounding the one complaint.



1      Q.  So you got one complaint and then you went out
2  and spoke to other students?
3      A.  Yes.  I wanted to verify that that actually
4  happened in class.
5      Q.  And only after you started speaking to other
6  students you got the other complaints?
7      A.  During -- while I was talking with them, yes.
8      Q.  I would like to go back to your responses to
9  the interrogatories.  I don't remember which exhibit
10  that's going to have --
11                  MR. McSHANE:  To the interrogatories?
12                  MR. BLEISCH:  Yes.
13                  MR. McSHANE:  10.
14                  MR. BLEISCH:  Thank you.
15      Q.  (BY MR. BLEISCH)  So after the responses there
16  are a few produced documents including Bates Number
17  O'Quin 4.
18      A.  Okay.
19      Q.  I'll give you a moment to read through that and
20  let me know when you are ready to discuss.
21      A.  Okay.
22      Q.  Okay.  So under the entry for August 24th
23  you -- and this is you that wrote this time line; is
24  that right?
25      A.  That's correct.



1       Q.   Okay.  So under the entry for August 24th you

2    wrote that the student asked you about their options of

3    either speaking with Dr. Phillips, ignoring the

4    statements, or dropping the class all together.  What

5    was that conversation like --

6       A.   Well, when the student first came in she

7    mentioned that she had a situation and she said I need

8    to know what to do.  And she wanted to know should I

9    drop the course based on what was said in my classroom.

10                  And so I asked her to go on and tell me

11   what was said.  And so she went on to say that

12   Dr. Phillips made some statements in the class that she

13   was uncomfortable with.  And that she felt like if she

14   stayed in the class it would present a problem because

15   she sits on the front row and she does not wear a mask.

16                  And he had such passion about those who did

17   not, she didn't know if she should drop the class or

18   stay in it or even go and, you know, say anything to him

19   about it.

20      Q.   Did you suggest that she not speak to

21   Dr. Phillips?

22      A.   At that particular moment, yes, for that time

23   period until we could get a handle on what was going on.

24   So she wanted to know should she go back to class the

25   next day, should she say anything.  And I asked her not



1      A.   Yes, I do see that.

2      Q.   Was that you that told her?

3      A.   Right.  I didn't ask her not to.  She asked

4  should she go and talk to him about it and I told her

5  not yet.

6      Q.   Do you know if somebody else might have asked

7  her not to discuss her concerns with Dr. Phillips?

8      A.   I don't know.  I doubt it.  I don't know who

9  she spoke with.

10      Q.   Do you know if she spoke with any other

11  administrators?

12      A.   I believe she mentioned that she had gone to

13  the dean of students and they directed her to come to

14  me.

15      Q.   How much time did you spend dealing with this

16  complaint?

17      A.   I can't say.  It was -- I would say a lot of

18  time but I don't know.  Are you talking hours, days,

19  minutes, I don't --

20      Q.   How many hours?

21      A.   I would have to say several.  I mean, I have to

22  write it up and, you know, make phone calls.  So I don't

23  usually take a poll of how much time I spend.  But, you

24  know, not per day, not every day.  But I did spend some

25  time to make sure the facts were straight, talking to



1      Q.  But it didn't sway you away from issuing this

2  discipline form?

3      A.  It did not.  We talked about the importance of

4  making sure that if he's going to discuss issues that

5  are passionate to him that he give students the

6  opportunity to disagree.  And that was the main emphasis

7  of that particular conversation.

8              So he was telling me why he said what he

9  said and we had a discussion about how to let students

10  feel heard as well.

11      Q.  Was that a good discussion?

12      A.  I would say it was a decent collegial

13  discussion.

14      Q.  Was he amendable to your suggestions?

15      A.  He was.  We talked, you know, there were

16  certain things he did mention, that he has put some

17  things in place in the classroom where he gives them an

18  opportunity to judge him.  Or what they say and to

19  disagree for a grade.

20              And we did talk about how with him being

21  the -- in the position of power in the classroom, though

22  they have the opportunity to do it for a grade, they're

23  still not going to feel free.  They don't have the

24  freedom of speech to -- or they don't feel free that

25  they can say what they need to say back to him in a



1    classroom.
2              So it seems a little one-sided that the
3    instructor has freedom of speech but yet the students
4    feel that it's a limited approach.  So we did talk about
5    ways to get the students to feel heard and not feel
6    bullied.
7        Q.  And so that discussion was a good collegial
8    discussion?  Why go forward with the Level 1 employee
9    discipline form?
10       A.  We had a discussion that the discipline form is
11   meant to help the employee to stay on task and to get
12   back to where we as a college would like for them to be.
13   So though you have a discussion and you hear the
14   person's side and they hear your side, there still needs
15   to be some -- something put in place to make sure that
16   everybody agrees.
17             And that we wanted to make sure that
18   Dr. Phillips understood what is expected of him and
19   that's the process of -- a disciplinary action is not
20   meant to punish but to help the person get back on
21   track.  That's why it doesn't last forever.
22             (Exhibit 19 marked.)
23       Q.  (BY MR. BLEISCH)  I'm now handing you what I
24   have marked as Exhibit 19.
25       A.  Okay.



DEPOSITION
EXHIBIT
12
O'Quin



**COLLIN COLLEGE**

# EMPLOYEE DISCIPLINE FORM

| Employee Information | | | |
|---|---|---|---|
| **Employee Name:** | Michael Phillips | **CWID:** | 110793529 |
| **Job Title:** | Professor | **Department:** | History |
| **Full-time or Part-time:** | Full-time | **Exempt / Non-Exempt:** | Exempt |
| **Immediate Supervisor:** | Dr. Chaelle O'Quin | **Date:** | 8/27/2021 |

| Performance Status | | |
|---|---|---|
| ☑ Level 1 Warning | ☐ Level 2 Warning | ☐ Recommendation for Suspension |

**Details**

List the employee's primary job responsibilities or behaviors that require attention and describe the specific improvement that is needed. (Include facts about events, dates, people, documents, etc.)

1. Job Performance/Behavior Deficiency:

Performance/Behavior Deficiency – On August 11, 2021, Dr. Michael Phillips posted a copy of a PowerPoint slide from his Division Meeting with his Associate Dean on his public social media, questioning the message on the slide. The Associate Dean confirmed that the PowerPoint slide was used in her presentation in the Division meeting, but shown without context. We have previously coached Dr. Phillips about using all internal communication channels (for instance, Associate Dean, Dean, Faculty Council, etc.) with his questions and/or concerns with the College, including formal coaching in July 2019, informal coaching in June 2020, and verbal and email announcements in Division meetings in August 2021. He did not come to anyone to discuss his concerns after the August 11th meeting. Regardless of the questions or workplace concerns, the reason for this disciplinary warning is his continued conduct in not bringing up his concerns in an appropriate manner.

This continued conduct of ignoring requests by supervisors constitutes insubordination as defined by Board policy DMAA (Local). Additionally, this conduct also violates Collin College's Code of Professional Ethics, as stated in Board Policy DH (Exhibit), specifically items listed below:

- #4: "The Professional Educator shall work to enhance cooperation and collegiality among students, faculty, administrators, and other personnel" and
- #11, "The Professional Educator shall observe the stated policies and procedures of the College District, reserving the right to seek revision in a judicious and appropriate manner."

Specific Results Required for Acceptable Improvement:

Dr. Phillips is expected to follow Collin College's policies and procedures.

1. In the event the expectations of communicating with supervisors, as set out in this level 1 and previously discussed with Dr. Phillips, are not clear, Dr. Phillips should schedule a call with Associate Dean Dr. Chaelle O'Quin as soon as possible.
2. If there are future questions, concerns, or differences of opinion, Dr. Phillips should use internal communication channels, including Associate Dean, Dean, Provost, or otherwise as directed.

Date for Improvement to be completed: immediately and on-going

Changes to template verbiage must be approved by HR.

Supervisor Initials: _____
Employee Initials: _____
HRC Initials: _____

February 2020
Page 1 of 2

COLLIN COLLEGE 002374

## Supervisor Support

List the support to be provided by supervisor (e.g. training, equipment, observation, procedures, coaching):

Associate Dean Dr. Chaelle O'Quin will be available to meet with Dr. Phillips (in person, via email, or via Zoom) on a regular basis throughout the fall semester pursuant to Dr. Phillips' schedule. As needed, Dean Dr. Kristen Streater will also be available to address any questions or concerns.

The Employee Discipline Form as provided above has been reviewed and approved by a member of human resources.

HR Liaison Reviewed and Approved: _____   Date: 8/27/21

Failure to show improvement in your job performance or behavior by stated deadlines and/or any future violations of the same or similar nature will subject you to further disciplinary action, up to and including termination of employment.

## Acknowledgement of Receipt of Performance Documentation

| | | |
|---|---|---|
| Immediate Supervisor: | _____ | Date: 8/27/21 |
| Next Level Supervisor: | Kristen Streater | Date: 8/27/21 |
| Employee: | _____ | Date: 8/27/21 |

Your signature acknowledges discussion of the issues and receipt of the document. It does not indicate agreement with the document. You may add comments in the box below or submit them later by memo or e-mail.

## Employee Comments

I disagree with this interpretation of policy and
believe it contradicts board policy that guarantees
faculty free speech and the right of faculty to
speak publically on matters of public concerns

Changes to template verbiage must be approved by HR.

Supervisor Initials: ____
Employee Initials: ____
HRC Initials: ____

COLLIN COLLEGE 002375

**DEPOSITION EXHIBIT**

PENGAD 800-631-6989

/3

| | |
|---|---|
| **From:** | Mary Barnes-Tilley |
| **To:** | Mary Barnes-Tilley |
| **Date:** | Monday, August 16, 2021 9:31:51 AM |
| **Attachments:** | IMG_9513.PNG |
| | IMG_9514.PNG |
| | IMG_9515.PNG |
| | IMG_9518.PNG |
| | IMG_9519.PNG |
| | IMG_9520.PNG |
| | IMG_9521.PNG |
| | IMG_9522.PNG |
| | IMG_9523.PNG |
| | IMG_9524.PNG |
| | IMG_9525.PNG |
| | IMG_9526.PNG |
| | IMG_9527.PNG |
| | IMG_9531.PNG |
| | IMG_9532.PNG |
| | IMG_9533.PNG |
| | IMG_9534.PNG |

CAUTION: This email originated from outside of the organization. Do not click links or open attachments unless you validate the sender and know the content is safe.



**Tweets**   **Tweets & replies**   **Media**



**(((drphillips2001)))** @... · 1h ···
This story mentions that
Dallas College will now require
masks this fall.  Meanwhile,
next door, Collin College has
banned professors from even
recommending students wear
masks.  One of these
approaches is more
responsible than the other.



texastribune.org
Live COVID-19 updates:

← **Thread**



**(((drphillips2001)))**   ···
@drphillips2001

This is the way an institution of higher education should respond to the delta variant. Colleges should teach their students the most effective ways to mitigate health risks and counter deadly misinformation.  To do otherwise is to abandon moral duty.



Dallas College ● @dall   2h

Tweet your reply

⌂   Q   🔔   ✉



BARNES-TILLEY_000334



**Thread**

@drphillips2001

Monday we were told that the dean of nursing at our college died from Covid. Yesterday, we were told that a student died.  Yet, we have been ordered to not recommend that students wear masks. That's unconstitutional, @TheFIREorg says.



University of Iowa issues — then quickly rescinds...

Tweet your reply



BARNES-TILLEY_000335



— then quickly rescinds...
thefire.org

11:28 AM · 8/13/21 · Twitter Web App

**10** Retweets **1** Quote Tweet **18** Likes

(((drphillips2001))) @... · 1h ···
Replying to @drphillips2001

From the post: "In July, Gov. Greg Abbott issued an executive order prohibiting most government entities in the state from requiring an individual to wear a face covering."

♡ 1    ↻    ♡ 3    ↑

(((drphillips2001))) @ ... · 1h ···

Tweet your reply

BARNES-TILLEY_000336

.ıl AT&T LTE                    1:04 PM                    96% 🔋

←            **Tweet**



**(((drphillips2001)))**    ···
@drphillips2001

# Something my college won't let me do.

🌑 **Dr. Guy McHendry** @a... · 23h

Here is my first pass for syllabus language regarding COVID-19 in case it is helpful to anyone.

<u>Show this thread</u>

COVID-19 & Our Classroom

We are still in a state of emergency. It is important to begin from that premise because the pandemic will fundamentally shape what the semester looks like, how we inhabit the class, and how we relate to each other and the course material. As I write this syllabus the COVID-19 crisis is worsening. We are a community and are thus dependent on, and affected by, the actions, precautions, and protections each of us takes to mitigate the spread of COVID-19. My home includes both my 2-year-old daughter who is too young to be vaccinated and my 80-year-old immunocompromised father who is currently undergoing treatment for metastatic prostate cancer. COVID-19 poses a real risk to them. Our classroom provides a direct link between you and them. As such, I ask that you take reasonable efforts to protect yourselves, our campus, and our broader community from the spread of COVID-19.

As the pandemic continues, I want to share with thoughts about our collective experiences.
- Some of our lives may be relatively unaffected by the pandemic while others have experienced profound tragedies—we cannot make assumptions about others' experience with the virus.

Tweet your reply

            

BARNES-TILLEY_000337

.ıll AT&T  LTE                    1:04 PM                    96%

case it is helpful to anyone.

Show this thread

COVID-19 & Our Classroom

We are still in a state of emergency. It is important to begin from that premise because the pandemic will fundamentally shape what the semester looks like, how we inhabit the class, and how we relate to each other and the course material. As I write this syllabus the COVID-19 crisis is worsening. We are a community and are thus dependent on, and affected by, the actions, precautions, and protections each of us takes to mitigate the spread of COVID-19. My home includes both my 2-year-old daughter who is too young to be vaccinated and my 80-year-old immunocompromised father who is currently undergoing treatment for metastatic prostate cancer. COVID-19 poses a real risk to them. Our classroom provides a direct link between you and them. As such, I ask that you take reasonable efforts to protect yourselves, our campus, and our broader community from the spread of COVID-19.

As the pandemic continues, I want to share with thoughts about our collective experiences:
- Some of our lives may be relatively unaffected by the pandemic while others have experienced profound tragedies—we cannot make assumptions about others' experience with the virus.
- We ought to be more compassionate with each other and with ourselves—now, perhaps more than ever, is the time to give the gift of grace freely and lovingly.
- Together, we will make this semester as safe, thoughtful, rigorous, and insightful as we can—this applies both to our intellectual efforts and adherence to COVID-19 safety protocols.

All students are expected to follow the guidance provided by the University with regard to COVID-19 precautions, masks, and vaccinations.

On Symptoms

If you are sick, particularly with any symptoms of COVID-19, do not come to class. I will work with you to make sure you have the opportunity to learn the material you missed because of an illness.

On Masks

As the Delta Variant of Covid-19 spreads and the reality of breakthrough cases becomes clear, I cannot help but think of those in my family who are unvaccinated or immunocompromised. Until we have a better sense of if, and how, vaccinated individuals can carry or be infected by the Delta Variant I plan to wear my mask in class. I invite you do to do the same.

On Zoom

COM 174 is designated as a face-to-face class and will be held in that format unless the University makes changes to course modalities. Students are not able to attend class via Zoom. If you will miss an extended amount of time because of illness please contact me to discuss options.

3:46 AM · 8/14/21 · Twitter for iPhone

Tweet your reply

     Q     🔔     ✉️

BARNES-TILLEY_000338



## Tweets    Tweets & replies    Media

**(((drphillips2001)))** · 16h    ···
Perhaps some local colleges should take a similar step and show some courage, integrity, and treat their community with dignity and respect.

>  **KXAN News** ✔ ...  · 16h
>
> Austin Community College has already voted to adopt the mask mandate.
>
> trib.al/81NJYLD

♡    ↻ 1    ♡ 7    ⬆

**(((drphillips2001)))** · 16h
This is good news.  The s[...]
Supreme Court is far, far, far

BARNES-TILLEY_000339

← **Tweet**

 **(((drphillips2001)))**
@drphillips2001                                    ...

Some smart, talented, brave people here. From the left are my former College colleagues philosopher Carl Hasler, historian Joan Jenkins, and photographer Byrd Williams. It's a shame when talent is chased away.



Tweet your reply

.ıl AT&T  LTE      1:06 PM      96%

←      **Tweet**

Byrd Williams. It's a shame
when talent is chased away.



7:20 PM · 8/13/21 · Twitter for
iPhone

**2** Retweets **13** Likes

Tweet your reply



**Tweets**    Tweets & replies    Media

 **(((drphillips2001)))** · 18h  ...
A story about the latest person in the Collin College family to die from Covid-19.



keranews.org
Collin College Dean Of
Nursing Dies From COVID-...

💬        ⟲ 1        ♡ 4        ↑

 **(((drphillips2001)))** · 19h  ...
This is certainly the @am
model college presidents love.



.ıl AT&T  LTE          1:06 PM          96% 🔋

← **Tweet**



**(((drphillips2001)))**          ⋯
@drphillips2001

A story about the latest person in the Collin College family to die from Covid-19.



keranews.org
Collin College Dean Of Nursing
Dies From COVID-19 Complicati...

Tweet your reply

      Q          🔔          ✉

BARNES-TILLEY_000343

AT&T LTE    1:06 PM    96%

A story about the latest person in the Collin College family to die from Covid-19.



keranews.org
Collin College Dean Of Nursing Dies From COVID-19 Complicati...

6:29 PM · 8/13/21 · Twitter Web App

**1** Retweet  **4** Likes

Tweet your reply

    Q    🔔    ✉

BARNES-TILLEY_000344



← **Tweet**

**(((drphillips2001)))**  ⋯
@drphillips2001

By the way, speaking out against a rule that could literally kill people is not "politicizing" an issue. The ban on mask mandates by @GregAbbott_TX politicized the numerous tragedies of Covid with deadly consequences.

6:58 AM · 8/16/21 · Twitter for iPhone

Tweet your reply

   Q   🔔   ✉

BARNES-TILLEY_000345



**(((drphillips2001)))**
@drphillips2001

...

There's a gag rule on even mentioning masks to students at my college, either in a syllabus or in person. The college confuses urging life-saving behavior with mandating it. A terrible executive order has been made worse.



Tweet your reply

   Q   🔔   ✉

BARNES-TILLEY_000346



dallasobserver.com
Amid Backlash over Collin
College's Mask Policy, COVID Kil...

6:19 AM · 8/16/21 · Twitter for
iPhone

**18** Retweets **3** Quote Tweets

**27** Likes

(((drphillips2001))) @... · 3h ···
Replying to @drphillips2001
@bzeeble @bjgarcia27
@garrettgravley @LDBurnett
@Sesjones @SnowyValerie
@gwcaudra @lorenisimar
@bestoneTX

Tweet your reply

BARNES-TILLEY_000347

@gwcaudra @lorenisimar
@bestoneTX

○      ⟲      ♡ 2      ↥

**Dr. Suzanne Jones** @... · 2h ···
Replying to @drphillips2001

It's time for administrators &
the board to stand up for
faculty who feel like they can't
voice concerns about public
health and safety due to the
professor purge last Spring.

○      ⟲ 1      ♡ 5      ↥

**(((drphillips2001)))** @... · 2h ···
Replying to @drphillips2001

@AriasStacy @StaceyDonald1

○      ⟲      ♡ 1      ↥

Tweet your reply

◎      Q      ⌂      ✉

Sent from my iPhone

BARNES-TILLEY_000348

| From: | Mary Barnes-Tilley |
| To: | Mary Barnes-Tilley |
| Date: | Monday, August 16, 2021 9:28:36 AM |
| Attachments: | IMG_9474.PNG |
| | IMG_9475.PNG |
| | IMG_9476.PNG |
| | IMG_9477.PNG |
| | IMG_9478.PNG |
| | IMG_9479.PNG |
| | IMG_9480.PNG |
| | IMG_9481.PNG |
| | IMG_9482.PNG |
| | IMG_9486.PNG |
| | IMG_9487.PNG |
| | IMG_9488.PNG |

CAUTION: This email originated from outside of the organization. Do not click links or open attachments unless you validate the sender and know the content is safe.

.ıl AT&T  LTE          4:38 PM          76% 🔋

‹          **Thread**

 (((drphillips2001)))          ···
@drphillips2001

@GregAbbott_TX, of course, has banned mask and vaccine mandates by government entities. I found out today that our college will not even allow faculty to encourage mask wearing and vaccination in our syllabi. This is madness.

3:31 PM · 8/11/21 · Twitter Web App

Tweet your reply

          Q          ⌂          ✉

.ıl AT&T LTE     4:38 PM     76% ■

**(((drphillips2001)))** · 59m    ...
Replying to @drphillips2001
@simcarttweets @bzeeble

◯ 1    ⟲    ♡    ⬆

**(((drphillips2001)))** · 39m    ...
That's what college is about.
Suppressing knowledge or
even common sense.

◯    ⟲    ♡ 1    ⬆

**HawkeyeInDallas** @... · 40m ...
Replying to @drphillips2001
and @GregAbbott_TX

College professors can't
encourage masks!?!!?

◯ 1    ⟲    ♡ 1    ⬆

**(((drphillips2001)))** · 40m    ...
We were literally told to not

Tweet your reply

⌂     Q     ⌂     ✉

BARNES-TILLEY_000350



.ıl AT&T LTE                4:38 PM                76% ■

**(((drphillips2001)))** · 40m    ⋯
We were literally told to not even mention masks in our syllabus.

◯ 1      ⇄      ♡      ⬆

**HawkeyeInDallas** @... · 36m   ⋯
Wth?  I know some k-12 districts are saying this but didn't expect it at the college level.  I'm super thankful my kid has received 2 emails from profs and both said masks are mandatory in their classes and one went so far as to say "if I could I would require vax".

◯      ⇄      ♡      ⬆

**Kat** @Kathleendlg · 35m    ⋯
Replying to @drphillips2001

Tweet your reply

⌂        Q        ◻        ✉

BARNES-TILLEY_000351

.ıl AT&T LTE      4:39 PM      76% 🔋

‹        **Tweet**



**(((drphillips2001)))**     ⋯
@drphillips2001

A message I am conveying to all in my office this year.



Tweet your reply

            

BARNES-TILLEY_000352

‹                                **Thread**

  (((drphillips2001)))                ...
           @drphillips2001

1) So we were told that our
All-College Day event on
Friday is going to be virtual
because the Covid-19 Delta
variant is raging across
Texas.  Minutes ago, we were
just told that we will have to
watch the live stream of the
event on-campus.

5:31 PM · 8/10/21 · Twitter Web App

Tweet your reply

                        

BARNES-TILLEY_000353

••| AT&T  LTE                4:40 PM                76% ■

 **(((drphillips2001))))** · 23h        ···
Replying to @drphillips2001

2) All faculty and staff will have 45 minutes to enter the campus and only two entrances will be open, meaning that social distancing will be compromised, thus defeating the whole purpose of doing the event virtually.

♡ 1        �moved       ♡ 4        

 **(((drphillips2001))))** · 23h        ···
3) The message conveyed by the administration is that they don't trust faculty to meet the basic requirements of their job and attend required meetings. This is an assault on the "dignity and respect" of the

Tweet your reply

⌂        Q        ⌕        ✉

BARNES-TILLEY_000354



 **(((drphillips2001)))** · 23h    ···
3) The message conveyed by the administration is that they don't trust faculty to meet the basic requirements of their job and attend required meetings. This is an assault on the "dignity and respect" of the faculty.

♡ 1      ⇄      ♡ 8      ↑

 **(((drphillips2001)))** · 23h    ···
4) All the mandatory meetings this week could be held virtually with no disruption to students.  No rationale has been provided as to why we are being required to meet in person and/or on campus during what is obviously going

Tweet your reply



**(((drphillips2001)))** · 23h   ···
4) All the mandatory meetings
this week could be held
virtually with no disruption to
students.  No rationale has
been provided as to why we
are being required to meet in
person and/or on campus
during what is obviously going
to be another major wave of a
deadly pandemic.

♡ 1        ⇅        ♡ 3        ⬆

**(((drphillips2001)))** · 23h   ···
@simcarttweets @bzeeble
@TaliRichman @Sesjones
@gwcaudra @LDBurnett

♡        ⇅        ♡        ⬆

**Dr. Bryan Edward Sto...** · 21h   ···

Tweet your reply

⬠        Q        ⬠        ✉

BARNES-TILLEY_000356



@simcarttweets @bzeeble
@TaliRichman @Sesjones
@gwcaudra @LDBurnett

**Dr. Bryan Edward Sto...** · 21h ···
Replying to @drphillips2001
This is bonkers, and the
presumption that faculty will
cheat unless you force them is
plain insulting.

**McClain Watson** @M... · 23h ···
Replying to @drphillips2001
😶😶😶😶😶😶😶😶😶😶😶
😶😶😶😶😶

Tweet your reply

BARNES-TILLEY_000357



BARNES-TILLEY_000358



BARNES-TILLEY_000359



Sent from my iPhone

BARNES-TILLEY_000360



DEPOSITION
EXHIBIT
17



**COLLIN COLLEGE**

### EMPLOYEE DISCIPLINE FORM

| Employee Information | | | |
|---|---|---|---|
| **Employee Name:** | Dr. Michael Phillips | **CWID:** | 110793529 |
| **Job Title:** | History Faculty | **Department:** | Academic Affairs |
| **Full-time or Part-time:** | Full-time | **Exempt / Non-Exempt:** | Exempt |
| **Immediate Supervisor:** | Chaelle O'Quin | **Date:** | September 29, 2021 |

| Performance Status | | |
|---|---|---|
| ☒ Level 1 Warning | ☐ Level 2 Warning | ☐ Recommendation for Suspension |

| Details |
|---|

**List the employee's primary job responsibilities or behaviors that require attention and describe the specific improvement that is needed. (Include facts about events, dates, people, documents, etc.)**

Concerns were raised about Dr. Phillip's treatment of students in some of his classes on the first day. Students reported feeling berated for not wearing masks based on the way he conducted himself that day.

### Relevant Facts

1. On August 24, Associate Dean O'Quin learned that some of Dr. Phillips' students were upset and confused about Collin's mask policy based on what they reported Dr. Phillips said in class. Students also complained of comments Dr. Phillips made of those who identify as Conservative. The students reported that they felt targeted by the statements Dr. Phillips made on the first day of class.

2. Dr. O'Quin investigated these concerns and students confirmed the statements were made. One student indicated Dr. Phillips mentioned that students should be wearing masks and made a comment about those who chose not to wear them. That comment made the students feel degraded, embarrassed, singled out, bullied, and shamed by his conduct on the first day of class. One student reported that they contemplated dropping the class. Additionally, students reported that Dr. Phillips made a statement about Conservatives being racists which made them uncomfortable. Based on what has been reported, it is clear that several students felt targeted on the first day of class.

### Relevant Policy:

This conduct by Dr. Phillips violates Collin's Core Values, particularly dignity and respect, as defined by Board policy AD (Local). Further, this conduct created an environment where students did not feel respected in class.

### Specific Results Required for Acceptable Improvement:

The expectation is that Dr. Phillips will ensure that students are provided an avenue /opportunity to feel respected.

*Changes to template verbiage must be approved by HR.*

Supervisor Initials: *CO*
Employee Initials: _____
HRC Initials: *jdl*

COLLIN COLLEGE 002383

**Supervisor Support**

**List the support to be provided by supervisor (e.g. training, equipment, observation, procedures, coaching):**

- Associate Dean O'Quin addressed some of these concerns in Dr. Phillips' Annual Performance Appraisal on July 28, 2021.
- Associate Dean O'Quin also attempted to address these student complaints from the first day of class on August 27, 2021 and September 17, 2021, and the last meeting ended abruptly.
- Associate Dean O'Quin will be available to meet with Dr. Phillips at intervals throughout the semester via email, scheduled appointments, and/ or classroom visits to address concerns or to discuss matters about which Dr. Phillips has concerns or issues where he needs clarification.

*The Employee Discipline Form as provided above has been reviewed and approved by a member of human resources.* **HR Liaison Reviewed and Approved: __Jaslyn Lue_____** Date: _09/29/21_____

*Failure to show improvement in your job performance or behavior by stated deadlines and/or any future violations of the same or similar nature will subject you to further disciplinary action, up to and including termination of employment.*

**Acknowledgment of Receipt of Performance Documentation**

| | | |
|---|---|---|
| **Immediate Supervisor:** | *Michelle O* | Date: 9/29/21 |
| **Next Level Supervisor:** | *Kristen L Streeter* | Date: 9/29/2021 |
| **Employee:** | | Date: |

*Your signature acknowledges discussion of the issues and receipt of the document. It does not indicate agreement with the document. You may add comments in the box below or submit them later by memo or email.*

**Employee Comments**

*Changes to template verbiage must be approved by HR.*

Supervisor Initials: *CO*
Employee Initials: _____
HRC Initials: *jdl*

```
 1                 THE UNITED STATES DISTRICT COURT
                 FOR THE EASTERN DISTRICT OF TEXAS
 2                       SHERMAN DIVISION

 3     JOSEPH MICHAEL PHILLIPS,        )
                                       )
 4                   Plaintiff,        )
                                       ) Civil Action
 5     VS.                             ) No. 4:22-cv-184-ALM
                                       )
 6     COLLIN COUNTY COMMUNITY         )
       COLLEGE DISTRICT, et al.,       )
 7                                     )
                     Defendants.       )
 8

 9                    REPORTER'S CERTIFICATION
                  DEPOSITION OF CHAELLE O'QUIN
10                     FEBRUARY 14, 2023

11         I, Christy Cortopassi, Certified Shorthand Reporter

12     in and for the State of Texas, hereby certify to the

13     following:

14         That the witness, CHAELLE O'QUIN, was duly sworn by

15     the officer and that the transcript of the oral

16     deposition is a true record of the testimony given by

17     the witness;

18         That the deposition transcript was submitted on

19     _____3-10-23_____ to the witness or to the attorney

20     for the witness for examination, signature and return to

21     me by _____4-10-23_____;

22         That the amount of time used by each party at the

23     deposition is as follows:

24     Mr. Joshua T. Bleisch...........03:27
       Mr. Charles Joseph Crawford.....00:00
25     Mr. Joseph Bailey McShane.......00:00
```



Chaelle O'Quin

February 14, 2023
Page 107

1       I further certify that pursuant to FRCP No.

2   30(f)(i) that the signature of the deponent:

3       __X__ was requested by the deponent or a party

4   before the completion of the deposition and that the

5   signature is to be returned within 30 days from date of

6   receipt of the transcript.  If returned, the attached

7   Changes and Signature Page contains any changes and the

8   reasons therefor;

9       _____ was not requested by the deponent or a party

10  before the completion of the deposition.

11      I further certify that I am neither counsel for,

12  related to, nor employed by any of the parties or

13  attorneys in the action in which this proceeding was

14  taken, and further that I am not financially or

15  otherwise interested in the outcome of the action.

16      Certified to by me this ___10th___ of ___March___,

17  2023.

18

19

20  _____

21  Christy Cortopassi, Texas CSR 6222
    Expiration Date: 10/31/2024

22  Firm Registration No. 633
    Magna Legal Services

23  866.624.6221
    www.MagnaLS.com

24

25



Chaelle O'Quin                                    February 14, 2023
                                                          Page 2

```
 1                    A P P E A R A N C E S

 2

 3     FOR THE PLAINTIFF:

 4          Mr. Joshua T. Bleisch
            Mr. Greg H  Greubel
 5          FOUNDATION FOR INDIVIDUAL RIGHTS AND EXPRESSION
            510 Walnut Street
 6          Suite 1250
            Philadelphia, Pennsylvania 19106
 7          215.717 3473
            josh.bleisch@thefire org
 8          greg.greubel@thefire org

 9
       FOR THE DEFENDANT COLLIN COUNTY COMMUNITY COLLEGE
10     DISTRICT:

11          Mr. Charles Joseph Crawford
            ABERNATHY ROEDER BOYD & HULLETT, PC
12          1700 Redbud Boulevard
            Suite 300
13          McKinney, Texas 75069
            214.544 4000
14          ccrawford@abernathy-law.com

15
       FOR THE DEFENDANT BOARD OF TRUSTEES:
16
            Mr  Joseph Bailey McShane
17          MATTHEWS SHIELS KNOTT EDEN DAVIS & BEANLAND, LLP
            8131 LBJ Freeway
18          Suite 700
            Dallas, Texas 75251
19          972.234.3400
            bdavis@mssattorneys com
20

21     ALSO PRESENT:
            Ms  Monica Velazquez,
22          General Counsel, Collin College

23          Terry VanDerHeyden - Videographer

24

25
```





## KIM TINDALL & ASSOCIATES

RE:   Chaelle O'Quin                                                                April 10, 2023

Dear Client:

We are forwarding these documents to you as the custodial attorney in this matter. This transcript is being handled pursuant to the Federal Rules of Civil Procedure and we have copied all parties on the Changes and Signature page(s) with the attached Certificate of Deposition submitted by the deponent to our office.

The items marked refer to the attached documents.

_____ The Changes and Signature page(s) was returned to our office within the specified time limit; therefore, we are forwarding the original deposition transcript(s) and the Changes and Signature page(s) with the attached Certificate of Deposition to you as the custodial attorney in this matter for safekeeping. All parties will be copied on the Changes and Signature page(s).

_____ The deponent returned the Changes and Signature page(s) within the specified time limit, however, the Changes and Signature page(s} was inadvertently returned without the original transcript. All parties have been copied.

___✓___ The Changes and Signature page(s) was not returned to our office within the specified time limit; therefore, we are forwarding the original deposition transcript to you as the custodial attorney in this matter.

_____ The Changes and Signature page(s} was returned to our office unexecuted. We are forwarding the original deposition transcript to you as the custodial attorney in this matter.

_____ The deponent returned the Changes and Signature page(s) enclosed after the specified time limit. All parties have been copied as a courtesy.

_____ This is to notify you that the examination and signature was not requested by the deponent and/or a party before the completion of the deposition; therefore, signature is waived pursuant to the Federal Rules of Civil Procedures. All parties have been copied via e-mail.

_____ A copy of the Changes and Signature page(s} was previously returned within the specified time limit. We are now in receipt of the Original Deposition Transcript and/or Changes and Signature page(s); therefore, we are returning it to you as the Custodial attorney in this matter for safekeeping.

_____ Amended.

Should you have any questions or concerns, please feel free to contact our office.

Sincerely,
KTA Certs Department
Certs@KTandA.COM
Nancy Renfroe – Department Manager