UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TEXAS
SHERMAN DIVISION

| | | |
|---|---|---|
| JOSEPH MICHAEL PHILLIPS, | § | |
| | § | |
| *Plaintiff,* | § | |
| | § | |
| v. | § | Civil Action No.: 4-22-cv-184 |
| | § | |
| COLLIN COMMUNITY COLLEGE | § | |
| DISTRICT, et al. | § | |
| | § | |
| *Defendants.* | § | |

## DEFENDANTS' MOTION FOR SUMMARY JUDGMENT ON PLAINTIFF'S DECLARATORY JUDGMENT CLAIMS

Defendants Collin County Community College District and the Board of Trustees of Collin County Community College District (collectively, "Collin College" or herein "Defendants") file the following motion for summary judgment on Plaintiff's declaratory judgment claims.

## I.
## INTRODUCTION

1.1     Plaintiff is Joseph Michael Phillips, a former professor at Collin College. Dkt. 1, ¶¶ 15-19. Based on the allegations in his Complaint, Phillips "brings this First Amendment lawsuit because the College and its administrators are violating his constitutional rights by retaliating against him for speaking as a private citizen about public issues." Dkt. 1, ¶ 2. The Complaint asserts the following seven causes of action against Collin College, the College's Board of Trustees, and the individual Defendants in their official and individual capacities: (1) First Amendment Retaliation Under 42 USC § 1983 (against all individual-capacity Defendants) [Dkt. 1, ¶¶ 160-164]; (2) First Amendment Retaliation Under 42 USC § 1983 (against all official-capacity Defendants) [Dkt. 1, ¶¶ 165-170]; (3) Facial Vagueness Challenge to Code of Professional

Ethics (against the College and the Board of Trustees) [Dkt. 1, ¶¶ 171-186]; (4) Facial Overbreadth Challenge to Code of Professional Ethics (against the College and the Board of Trustees) [Dkt. 1, ¶¶ 187-199]; (5) Facial Challenge to Prior Restraints on Faculty Speech (against the College, the Board of Trustees, and President Matkin in his official capacity) [Dkt. 1, ¶¶ 200-214]; (6) As-applied Violation of Plaintiff's First Amendment Rights (against the College and individual-capacity Defendants) [Dkt. 1, ¶¶ 215-223] and (7) *Monell* Claim Under 42 USC § 1983 (against Defendant Collin College) [Dkt. 1, ¶¶ 224-230].

1.2     Based on these seven causes of action, the Complaint seeks the following declaratory relief: (1) a declaratory judgment against all Defendants declaring that Defendants' termination of Phillips violated his constitutional rights; (2) a declaratory judgment against Collin College declaring that its custom or practice of retaliating against faculty for their speech on matters of public concern is unconstitutional; (3) a declaratory judgment against Collin College declaring that the Code of Professional Ethics is unconstitutionally overbroad in violation of the First Amendment; (4) a declaratory judgment against Collin College declaring that the Code of Professional Ethics is unconstitutionally vague in violation of the First Amendment; and (5) a declaratory judgment against Collin College, the Board, and President Matkin declaring that Matkin's alleged policy, as explained in his 2019 email, the challenged portion of the Faculty Expression Policy, and Paragraph 9 of the Code of Professional Ethics are unconstitutional prior restraints on faculty speech. Dkt. 1, Prayer for Relief (A-E).  The Complaint also seeks related injunctive relief (Prayer for Relief (F-J)), actual damages "to compensate Phillips for Defendants' interference with Phillips's rights under the U.S. Constitution" (Prayer for Relief (K)), punitive damages and attorneys' fees (Prayer for Relief (L, M)).

1.3     As further briefed below, Defendants move for summary judgment on the following causes of action asserted in the Complaint: (1) Facial Vagueness Challenge to Code of Professional Ethics [Dkt. 1, ¶¶ 171-186 – Third Cause of Action]; (2) Facial Overbreadth Challenge to Code of Professional Ethics [Dkt. 1, ¶¶ 187-199 – Fourth Cause of Action]; and (3) Facial Challenge to Prior Restraints on Faculty Speech [Dkt. 1, ¶¶ 200-214 – Fifth Cause of Action]. As part of this motion, Defendants also asks for summary judgment on Plaintiff's two requests for unnecessary and redundant declaratory judgments.

1.4     If this motion is granted, the only causes of action and claims for relief that will remain for trial will be: (1) First Amendment Retaliation Under 42 USC § 1983 [Dkt. 1, ¶¶ 160-164 – First Cause of Action]; (2) First Amendment Retaliation Under 42 USC § 1983 [Dkt. 1, ¶¶ 165-170 – Second Cause of Action]; (3) As-applied Violation of Plaintiff's First Amendment Rights [Dkt. 1, ¶¶ 215-223 – Sixth Cause of Action); and (4) *Monell* Claim Under 42 USC § 1983 [Dkt. 1, ¶¶ 224-230 – Seventh Cause of Action]. The only claims for relief that will remain for trial will be for actual damages, punitive damages, and attorneys' fees.

## II.
## ISSUES TO BE DECIDED

2.1     As a matter of law, Plaintiff cannot prevail on his facial vagueness challenge to the College's Code of Professional Ethics.[1]

2.2     As a matter of law, Plaintiff cannot prevail on his facial overbreadth challenge to the College's Code of Professional Ethics.[2]

---

[1] Dkt. 1, ¶¶ 171-186 – Third Cause of Action.

[2] Dkt. 1, ¶¶ 187-199 – Fourth Cause of Action.

2.3     As a matter of law, Plaintiff cannot prevail on his challenge to alleged prior restraints on faculty speech.[3]

2.4     As a matter of law, Plaintiff cannot prevail on his two requests for unnecessary, redundant declaratory judgments.

## III.
## UNDISPUTED MATERIAL FACTS

3.1     Plaintiff challenges by declaratory judgment (1) the College's Code of Professional Ethics (Policy DH (EXHIBIT)), (2) the College's Faculty Expression Policy (Policy DGC (LOCAL)), and (3) an August 4, 2019, email directive issued by District President Neil Matkin. Each is detailed below.

3.2     Policy DH (EXHIBIT), attached as Exhibit 1 hereto, contains Collin College's Code of Professional Ethics for professional educators, which comes, in large part, from the Texas Community College Teachers Association (TCCTA) Code of Professional Ethics.[4] Paragraphs 1 and 9 of the Code of Professional Ethics, which are the subject of Plaintiff's specific facial challenge, read as follows:

> 1.  The Professional Educator shall treat all persons with dignity and respect; discriminating against no one on any basis protected by law.
>
> 9.  The Professional Educator shall support the goals and ideals of the College District and shall act in public affairs in such a manner as to bring credit to the College District.

---

[3] Dkt. 1, ¶¶ 200-214 – Fifth Cause of Action.

[4] TCCTA (Feb. 20, 1997). *Code of Professional Ethics*. Available at: https://www.tccta.org/wp-content/uploads/2016/01/TCCTA-Ethics.pdf.

3.3     Policy DGC (LOCAL), attached as Exhibit 2 hereto, is captioned "Employee Rights and Privileges/Employee Expression and Use of College Facilities." This policy provides, relevant to Plaintiff's facial challenge, that:

> All faculty members (full-time and associate) will be entitled to academic freedom and bear a concomitant dedication to academic responsibility.
> …
>
> All faculty members enjoy the constitutional freedoms guaranteed to all citizens by the United States' Constitution and the Constitution of the State of Texas. … Outside the classroom, faculty members are free from institutional censorship or discipline for exercising their rights as private citizens to express themselves freely on matters of public concern, to associate with persons or groups as they so choose, and to participate in political or other kinds of activities. When faculty and support staff speak or write as private citizens, however, they must bear in mind that their actions will inevitably be judged by the public and reflect upon their profession and institution. Therefore, faculty and support staff will strive for accuracy, exercise appropriate restraint, exhibit tolerance for differing opinions, and indicate clearly that they are not an official spokesperson for the College District.
> …
>
> The points enumerated below constitute its position on academic freedom: … 4. Prior restraint or sanctions will not be imposed upon faculty members in their exercise of their rights as citizens or duties as teachers. …

3.4     On August 3, 2019, a former Collin College student opened fire in a Walmart in El Paso, Texas. It was a mass killing and, as a result, Collin College immediately became part of the F.B.I.'s investigation and was issued a confidential grand jury subpoena. To not compromise the investigation or un-intentionally violate a grand jury subpoena, on August 4, 2019, District President Matkin issued the following email directive, attached as Exhibit 3 hereto:

Friends,

The press has reached out to multiple campus administrators and district personnel regarding the El Paso shooting. At this time, it is believed that the shooter was a college student as late as spring 2019.

I have issued a statement as follows (forgive the size – working from home): [attached]

Please refer all press inquiries you may receive to Marisela Cadena-Smith at mcsmith@collin.edu or by phone to the president's office (972-758-3800). Any law enforcement personnel should be referred to Chief Bill Taylor at wtaylor@collin.edu or by phone to the president's office.

Please keep the El Paso (and also the Ohio) victims and their [families] in your thoughts and prayers.

Thank you all,

Neil

See also Matkin deposition, attached as Exhibit 4 hereto, p. 188.

  3.5 As explained by Dr. Matkin, "[a]ll I was trying to do with my directive was to make sure that the college's PR and law enforcement were aware of the media inquiries that we were receiving. … My intent, again, was to coordinate press contacts and to know who was where doing what with the press relating to this matter since we were under an FBI subpoena. … We asked all employees to coordinate and let us know what press was asking what while we were cooperating with the FBI on a very highly publicized event that involved one of our students doing atrocious and horrible things and that's truly it." Matkin deposition, pp. 192, 194, 200. Notably, because the immediate investigation of the mass shooting has now passed and the shooter has been convicted of federal charges, Dr. Matkin's 3 ½ year old email directive – which applied only to the El Paso shooting and is not a college policy – is no longer in effect. See Streater deposition, attached as Exhibit 5 hereto, pp. 17, 82; Matkin deposition, p. 196; Matkin 4/6/23 email, attached to the

Declaration of H. Neil Matkin which is attached as Exhibit 6 hereto ("The directive is already moot and of this writing, is no longer in effect.").

## IV.
## ARGUMENT

### A.   Summary Judgment Standard

4.1     Summary judgment is proper when there is no genuine dispute of material fact. Fed. R. Civ. P. 56(a); *Celotex Corp. v. Catrett,* 477 U.S. 317, 322 (1986). A defendant who seeks summary judgment on a plaintiff's claim must demonstrate the absence of a genuine dispute of material fact by either (1) submitting summary judgment evidence that negates the existence of a material element of the plaintiff's claim, or (2) showing there is no evidence to support an essential element of the plaintiff's claim. *Celotex*, 477 U.S. at 323-25; *Lavespere v. Niagra Mach. & Tool Works, Inc.,* 910 F.2d 167, 178 (5th Cir. 1990).

4.2     Because Fed. R. Civ. P. 56 requires that there be no "genuine issue of *material* fact" to succeed on a motion for summary judgment, "the mere existence of *some* alleged factual dispute" is insufficient to defeat a motion for summary judgment. *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 247-48 (1986). A fact is "material" when, under the relevant substantive law, its resolution might govern the outcome of the suit. *Id.* at 248. "An issue is 'genuine' if the evidence is sufficient for a reasonable jury to return a verdict for the nonmoving party." *Hamilton v. Segue Software, Inc.,* 232 F.3d 473, 477 (5th Cir. 2000). If, when considering the entire record, no rational jury could find for the nonmoving party, the movant is entitled to summary judgment. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.,* 475 U.S. 574, 587 (1986).

## B.      The Code of Professional Ethics is not Unconstitutionally Vague

4.3      Plaintiff's third cause of action asks for a declaratory judgment (and corresponding injunctive relief) that Paragraph 9 of the Code of Professional Ethics (Policy DH (EXHIBIT)) – which provides that faculty "shall support the goals and ideals[5] of the College District and shall act in public affairs in such a manner as to bring credit to the College District" – is unconstitutionally vague on its face. Dkt. 1, ¶¶ 171-186. Plaintiff also complains about the lack of specific definitions for the words "dignity" or "respect" in Paragraph 1 of the Code of Professional Ethics (Policy DH (EXHIBIT). Dkt. 1, ¶¶ 179-180. Paragraphs 1 and 9 of the Code of Professional Ethics are not, however, facially unconstitutionally vague as a matter of law.

4.4      A vague statute/policy runs afoul of the constitution if it is insufficient to provide notice of what behavior is proscribed, resulting in a chilling effect on constitutionally protected activity. *Reno v. American Civil Liberties Union*, 521 U.S. 844 (1997). The vagueness doctrine is "an outgrowth not of the First Amendment, but of the Due Process Clause of the Fifth Amendment." *United States v. Williams*, 553 U.S. 285, 304 (2008). A statute/policy falls afoul of the due process clause when it fails to provide "fair notice and fair enforcement" in that, *inter alia*, it "fails to provide a person of ordinary intelligence fair notice of what is prohibited, or is so standardless that it authorizes or encourages seriously discriminatory enforcement." *Roark & Hardee LP v. City of Austin*, 522 F.3d 533, 551 (5th Cir. 2008). Thus, "[a] facial challenge for vagueness is appropriate only on an allegation that the law is vague not in the sense that it requires a person to conform his conduct to an imprecise but comprehensible normative standard, but rather in the sense that no standard of conduct is specified at all." *Harris County v. Carmax Auto*

---

[5] According to the Complaint, "[t]wo of the College's 'goals and ideals' as outlined in Paragraph 1 of the Code of Professional Ethics are 'dignity' and 'respect.' … Neither the Code of Professional Ethics nor the Core Values define 'dignity' or 'respect.'" Dkt. 1, ¶¶ 179-180.

*Superstores Inc.*, 177 F.3d 306, 325 (5th Cir. 1999); *Ferguson v. Estelle*, 718 F.2d 730, 735 (5th Cir. 1983). See also *Margaret S. v. Edwards*, 794 F.2d 994, 999 (5th Cir. 1986) ("A state's legislative enactment is void for vagueness under the due process clause of the Fourteenth Amendment if it is 'inherently standardless, enforceable only on the exercise of an unlimited, and hence arbitrary, discretion vested in the state.'") (quoting *Ferguson*, 718 F.2d at 735). Importantly, "perfect clarity and precise guidance have never been required even of regulations that restrict expressive activity." *Minnesota Voters Alliance v. Mansky*, 138 S. Ct. 1876, 1891 (2018).

      4.5    As recently opined by Judge Jordan in dismissing a void-for-vagueness challenge to the University of North Texas' misconduct policy,

> A law must "give the person of ordinary intelligence a reasonable opportunity to know what is prohibited, so that he may act accordingly." *Grayned v. City of Rockford,* 408 U.S. 104, 108, 92 S. Ct. 2294, 33 L. Ed. 2d 222 (1972). The Supreme Court has made clear that there is substantially more room for imprecision in rules with only civil or employment consequences than would be tolerated in a criminal code. See *Arnett,* 416 U.S. at 159; *Vill. of Hoffman Ests. v. Flipside, Hoffman Ests., Inc.,* 455 U.S. 489, 498-99, 102 S. Ct. 1186, 71 L. Ed. 2d 326 (1982). In a civil action, a law is void for vagueness only if it "commands compliance in terms so vague and indefinite as really to be no rule or standard at all" or if it is "substantially incomprehensible." *Ford Motor Co. v. Tex. Dep't of Transp.,* 264 F.3d 493, 507 (5th Cir. 2001) (quotation omitted); see also *Jones v. City of Lubbock,* 727 F.2d 364, 373 (5th Cir. 1984) (same). …
>
> The Misconduct Policy's broad language does not prevent a person of ordinary intelligence from understanding what kind of conduct will result in discipline. Other public-employment policies with similarly general, and often broader, standards have survived void-for-vagueness challenges. In *Arnett*, the Supreme Court held that an employment standard permitting dismissal for "such cause as will promote the efficiency of the service" was not unconstitutionally vague. 416 U.S. at 159-60. In *San Filippo v. Bongiovanni,* the Third Circuit upheld a regulation authorizing dismissal of university professors for "failure to maintain standards of sound scholarship and competent teaching." 961 F.2d 1125, 1137 (3d Cir. 1993)

> (applying *Arnett*). And in *Fowler v. Board of Education of Lincoln County*, the Sixth Circuit rejected a void-for-vagueness challenge to an employment policy prohibiting "conduct unbecoming a teacher." 819 F.2d at 664-66 (6th Cir. 1987) (applying *Arnett*). UNT's Misconduct Policy, while not meticulously delineated, is considerably more definite than these policies. … The Court recognizes that UNT's Misconduct Policy is not a model of clarity. But that is not the constitutional test for vagueness.

*Hiers v. Bd. of Regents of the Univ. of N. Tex. Sys.,* 2022 U.S. Dist. Lexis 43617, * 54-56 (E.D. Tex. 2022).

4.6     Here, the Code of Professional Ethics, including Paragraphs 1 and 9 – even if not a model of specificity – is not "substantially incomprehensible" and is sufficiently clear that an ordinary faculty member would have a reasonable opportunity to know what conduct would put them at risk of discipline. *See cases*, *supra*. The Code of Professional Ethics is not unconstitutionally vague, and the Court should dismiss this facial challenge on summary judgment.

## C.     The Code of Professional Ethics is not Unconstitutionally Overbroad

4.7     Plaintiff's fourth cause of action asks for a declaratory judgment (and corresponding injunctive relief) that Paragraph 9 of the Code of Professional Ethics (Policy DH (EXHIBIT)) is unconstitutionally overly broad on its face. Dkt. 1, ¶¶ 187-199. More specifically, Plaintiff's Complaint complains that Paragraph 9 is facially unconstitutional because "all faculty must limit their expression to that which 'supports[s] the goals and ideals of the College District' and 'bring[s] credit to the College District.'" Id. at ¶ 192. Paragraph 9 of the Code of Professional Ethics, however, is not facially unconstitutionally overbroad as a matter of law.

4.8     The overbreadth doctrine "was designed as a 'departure from traditional rules of standing,' … to enable persons who are themselves unharmed by the defect in a statute nevertheless 'to challenge that statute on the ground that it may conceivably be applied

unconstitutionally to others, in other situations not before the Court.'" *Bd. of Trs. of State Univ. of N.Y. v. Fox*, 492 U.S. 469, 484 (1989) (citations omitted). "Facial challenges to overly broad statutes are allowed not primarily for the benefit of the litigant, but for the benefit of society – to prevent the statute (or policy) from chilling the First Amendment rights of other parties not before the court." *Secretary of State Md. v. Joseph H. Munson Co., Inc.*, 467 U.S. 947, 958 (1984). However, the "overbreadth doctrine is not casually employed." *L.A. Police Dep't v. United Reporting Publ'g Corp.*, 528 U.S. 32, 29 (1999). In fact, the U.S. Supreme Court considers it to be "strong medicine" and applies it "only as a last resort." *Id.* (citations and quotations omitted). As stated by the Fifth Circuit, "where there are a substantial number of situations to which a statute may validly be applied, we eschew reliance on the overbreadth doctrine." *United States v. Wallington*, 889 F.2d 573, 576 (5th Cir. 1989). See also *Hersh v. United States,* 553 F.3d 743, 762 (5th Cir. 2008) ("According to our First Amendment overbreadth doctrine, a statute is facially invalid if it prohibits a substantial amount of protected speech. Such facial challenges can succeed only when this overbreadth is substantial in relation to the statute's legitimate reach. There must be a 'significant imbalance between the protected speech the statute should not punish and the unprotected speech it legitimately reaches.'"). Importantly, "[t]he fact that a court can hypothesize situations in which the statute will impact protected speech is not alone sufficient." *Id.*[6]

    4.9    Judge Jordan's opinion in *Hiers*, which dismissed the plaintiff's overbreadth challenge to the University of North Texas' misconduct policy, is instructive on this issue:

---

[6] The Fifth Circuit in *Hersh* made clear that "[f]acial challenges to the constitutionality of statutes should be granted 'sparingly; and only as a last resort,'" and accordingly, "as-applied challenges are preferred." 553 F.3d at 762. Here, as part of his facial challenge, Plaintiff Phillips also makes an as-applied complaint about Paragraph 9 of the Code of Professional Ethics. See Dkt. 1, ¶¶ 194-95. Per *Hersh*, instead of his facial challenge, the as-applied complaint is the preferred challenge.

The overbreadth doctrine is "strong medicine," *Broadrick,* 413 U.S. at 613, and is "ordinarily more difficult to resolve" than an as-applied challenge because it "requires consideration of many more applications than those immediately before the court," *Bd. of Trs. of State Univ. of N.Y. v. Fox,* 492 U.S. 469, 485, 109 S. Ct. 3028, 106 L. Ed. 2nd 388 (1989). A policy maybe facially invalidated based on the overbreadth doctrine only if "a substantial number of its applications are unconstitutional, judged in relation to the [policy's] plainly legitimate sweep." *Stevens,* 559 U.S. at 473 (quoting *Wash. State Grange v. Wash. State Republican Party,* 552 U.S. 442, 449 n. 6, 128 S. Ct. 1184, 170 L. Ed. 2d 151 (2008)). The litigant challenging the policy must show "a realistic danger that the [policy] itself will significantly compromise recognized First Amendment protections of parties not before the court." *Hersh v. U.S. ex rel. Mukasey,* 553 F.3d 743, 762 (5th Cir. 2008) (cleaned up). Such facial challenges should be granted "sparingly and only as a last resort." *Id.* at 762 (quoting *Broadrick,* 413 U.S. at 613).
…

The Supreme Court's decision in *Arnett v. Kennedy,* 416 U.S. 134, 94 S. Ct. 1633, 40 L. Ed. 2d 15 (1974), is instructive. In *Arnett,* the Supreme Court rejected an overbreadth challenge to a provision of the Lloyd-La Follett Act authorizing the suspension or dismissal of a government employee "for such cause as will promote the efficiency of the service." *Id.* at 158. Although this language could scarcely be broader, the Supreme Court reasoned that greater specificity was not feasible "[b]ecause of the infinite variety of factual situations in which public statements by Government employees might reasonably justify dismissal for 'cause.'" *Id.* at 161. According to the Court, the provision restricted "only that public speech which improperly damages and impairs the reputation and efficiency of the employing agency, and it thus imposes no greater controls on the behavior of federal employees than are necessary for the protection of the Government as an employer." *Id.* at 162.

*Arnett's* reasoning applies here. The Misconduct Policy's definition of "misconduct," when read in context, is aimed to protect the university's "reputation and efficiency." On its face, the definition is not a censorial provision aimed at specific groups or viewpoints. See *Broadrick,* 413 U.S. at 616 (identifying content and viewpoint neutrality as a factor weighing against facial invalidation based on overbreadth.). …

*Hiers,* 2022 U.S. Dist. Lexis 43617 at * 50-53.

4.10     Particularly relevant here, in *Korf v. Ball State University* the Seventh Circuit upheld a professor's termination for the violation of the university's code of ethics that was adopted by the University from the American Association of University Professors (AAUP).[7] In affirming the professor's termination, the Seventh Circuit rejected the professor's overbreadth challenge to the code of ethics, opining:

> University professors occupy an important place in our society and have concomitant ethical obligations. The AAUP Statement on Professional Ethics makes this clear…
>
> As in the case with other laws, codes and regulations governing conduct, it is unreasonable to assume that drafters of the statement on Professional Ethics could and must specifically delineate each and every type of conduct (including deviant conduct) constituting a violation. Nor have we been cited any case reciting that the language of the Constitution requires such precision. "It is not feasible or necessary [ ] to spell out in detail all that conduct which will result in retaliation. The most conscientious of codes that define prohibited conduct of employees include 'catchall' clauses prohibiting employee 'misconduct,' 'immorality,' or 'conduct unbecoming.'" [quoting *Meehan v. Macy*, 329 F.2d 822, 835 (D.C. Cir. 1968)].
>
> …

---

[7] Collin College's Code of Professional Ethics was adopted from the Texas Community College Teachers Association (TCCTA), another professional membership association. The TCCTA Code is used by or incorporated by a significant number of community college systems affecting thousands of employees across the State of Texas, including:

Austin Community College (https://pol.tasb.org/Policy/Download/1145?filename=DH(LOCAL).pdf);
Alamo Colleges (https://www.alamo.edu/siteassets/district/about-us/leadership/board-of-trustees/policies-pdfs/section-d/d.4.10-policy.pdf);
Dallas College (https://pol.tasb.org/Policy/Download/358?filename=DH(LOCAL).pdf);
El Paso Community College (https://pol.tasb.org/Policy/Download/435?filename=DH(LOCAL).pdf);
South Texas College (https://admin.southtexascollege.edu/president/policies/pdf/4000/4001.pdf);
Tarrant Community College (https://pol.tasb.org/Policy/Download/1097?filename=DH(LOCAL).pdf);
Amarillo College (https://www.actx.edu/hr/code-of-ethics);
Blinn College (https://pol.tasb.org/Policy/Download/1204?filename=DH(LOCAL).pdf);

and numerous other institutions who have adopted it through the Texas Association of School Boards (TASB)'s policy service as a model policy DH(LOCAL) or DH(EXHIBIT) including Laredo College, North Central Texas College, Odessa College, Paris Junior College, Temple College, Tyler Junior College, and Wharton County Junior College.

> We agree with his academic peers on the Hearing Committee and the Board of Trustees in their application of this provision of the AAUP Statement of Professional Ethics to Dr. Korf's conduct. They were well-qualified to interpret the AAUP Statement of Professional Ethics as well as to determine what is and is not acceptable faculty conduct within an academic setting.
> …
>
> We have no difficulty whatsoever concluding that Dr. Korf's termination was not "arbitrary" since the reasons for his termination were adequate. The University's interpretation of the AAUP Statement was entirely reasonable and rationally related to the duty of the University to provide a proper academic environment. "A University has a right, and indeed a duty, to take all reasonable and lawful measures to prevent activities which adversely intrude into the teaching process, or which might adversely affect the University's image and reputation. It has a right to expect and demand the highest standards of personal behavior and teaching performance form its teachers and professors. It does not have to settle for less." [quoting *Naragon v. Wharton,* 572 F. Supp. 1117, 1121 (M.D. La. 1983)]

726 F.2d 1222, 1227-29 (7th Cir. 1984). Notably, the Seventh Circuit in *Korf* found that the university's ethics code's requirement that "a professor 'demonstrates **respect** for the student as an individual and adheres to his proper role as intellectual guide and counselor'" was *not* unconstitutionally overbroad.[8] *Id.* at 1228 (emphasis added).

    4.11    Here, the Code of Professional Ethics, may be employed in a substantial number of valid situations in relation to protecting the College's reputation and efficiency, imposes no greater controls on the behavior of state employees than are necessary for the protection of the College as an employer, is not a censorial provision aimed at specific groups or viewpoints, and thus is not constitutionally overbroad. *See cases*, *supra*. Therefore, summary judgment on this facial challenge is warranted.

---

[8] Here, like the professor in *Korf,* Phillips also complains that the word "respect" in the Code of Professional Ethics makes this policy overly broad.

### D.      A lack of specific definitions in the Code of Professional Ethics does not make it Unconstitutionally Overbroad

4.12     Plaintiff also alleges that the lack of specific definitions for the words "dignity" or "respect" makes the Code of Professional Ethics unconstitutional on its face because it purportedly provides no basis for clear and consistent application. Dkt. 1, ¶¶ 179-181.

4.13     A code of professional ethics or conduct, in general, outlines *principles* that address the expected behavior of those who enter a profession, particularly, as in this case, educators. *See generally, Keefe v. Adams*, 840 F.3d 523, 530 (8th Cir. 2016) (upholding student expulsion based on the school's adoption of the Nurses Association Code of Ethics citing "Given the strong state interest in regulating health professions, teaching and enforcing viewpoint-neutral professional codes of ethics are a legitimate part of a professional school's curriculum that do not, at least on their face, run afoul of the First Amendment."). A code of professional ethics cannot pretend to catalogue and include an exhaustive list of precepts governing professional conduct. A code of ethics is also not required to contain definitions to be upheld. A code of ethics is designed to serve as a *structure* for regulating conduct.[9]

4.14     For example, the AAUP Statement on Professional Ethics upheld by the Seventh Circuit in *Korf*, mentions the words "dignity" or "respect" **four** times, without specifically defining those terms.[10]

---

[9] *See generally*, American Bar Association (1983) *Preamble to Model Rules of Professional Conduct* at Paragraph 20. ABA House of Delegates. Available at: https://www.americanbar.org/groups/professional_responsibility/publications/model_rules_of_professional_conduct/.

[10] American Association of University Professors (1966). *Statement on Professional Ethics*. Available at: https://www.aaup.org/report/statement-professional-ethics.

4.15    Several hundred years ago, at the age of 16, George Washington wrote out a copy

of 110 axioms as a school exercise, which eventually became known as *George Washington's*

*Rules of Civility & Decent Behavior in Company and Conversation.*[11] Such *Rules* included:

> 1. Every action done in company ought to be with some sign of ***respect***, to those that are present.
>
> 2. Let thy ceremonies in courtesy be proper to the ***dignity*** of his place with whom thou converses for it is absurd to act the same with a clown and a prince.[12]

Nowhere in the *Rules of Civility & Decent Behavior in Company and Conversation* are the words

"respect" or "dignity" specifically defined.

4.16    Nearly 240 years later, the Dallas Bar Association adopted its Lawyer's Creed in

1987, which opens with the following fundamental axiom:

> 1. I revere the Law, the System, and the Profession, and I pledge that in my private and professional life, and in my dealings with fellow members of the Bar, ***I will uphold the dignity and respect of each*** in my behavior towards others.[13]

Nowhere in the *Lawyer's Creed* are the words "dignity" or "respect" defined.

4.17    The *Code of Conduct for United States Judges*, canons of which this Court has

applied and upheld,[14] provides:

> • **Canon 2(A):** Respect for Law. A judge should ***respect*** and comply with the law and should act at all times in a manner that promotes public confidence in the integrity and impartiality of the judiciary.

---

[11] Washington, George (2011). *George Washington's rules of civility & decent behavior in company and conversation.* Colonial Williamsburg Foundation. OCLC 777568051. It is believed that axions came from a Jesuit manual written in 1595 entitled *Bienseance de la Conversation Entre les Hommes: Communis Vitae Inter Homines Scita Urbanitas.*

[12] *Id.* at Rule No. 1 and Rule No. 42 (emphasis added).

[13] Dallas Bar Association (October 15, 1987). *Lawyers' Creed.* Dallas Bar Association Board of Directors. Available at: https://www.dallasbar.org/?pg=lawyers-creed.

[14] *See generally, Soniat v. Carolyn*, No. 4:17-cv-00572 (E.D. Tex. 2017) (Mazzant, J.).

---

- **Canon 3**: … The judge should perform those duties with ***respect*** for others, and should not engage in behavior that is harassing, abusive, prejudiced, or biased.

- **Canon 3(A)(3)**: A judge should be patient, ***dignified, respectful***, and courteous to litigants, jurors, witnesses, lawyers, and others with whom the judge deals in an official capacity.

- **Canon 3(B)(4):** A judge should practice civility, by being patient, ***dignified, respectful***, and courteous, in dealings with court personnel, including chambers staff.[15]

Nowhere in the *Judicial Code of Conduct* are the words "respect," "respectful," or "dignified" defined.

4.18    The Texas Administrative Code, through which state agencies promulgate rules and Standards of Conduct includes numerous specific rules of conduct that comport with the principles of dignity and respect.[16] Nowhere in such administrative agency rules are the words "dignity" and "respect" defined.[17]

4.19    Indeed, professionals – from judges, to lawyers, to educators, to nurses – are encouraged to abide by such universal principles as treating all individuals with dignity and respect. In courses designed for new educators, classroom educators in Texas are taught to set out

---

[15] Judicial Conference. *Code of Conduct for United States Judges* (March 12, 2019). United States Courts. Available: https://www.uscourts.gov/sites/default/files/code_of_conduct_for_united_states_judges_effective_march_12_2019.pdf.

[16] *See* 1 Tex. Admin. Code §12.31(a)(Texas Ethics Commission Conduct and Decorum); 1 Tex. Admin. Code §155.431 (SOAH Conduct and Decorum); 16 Tex. Admin Code §21.7(a)(1) and §22.3(a)(1) (PUC Standards of Conduct); 13 Tex. Admin. Code §71.11(c) (Texas State Cemetery Committee); 19 Tex. Admin. Code §247.1 (SBEC Code of Ethics provides: "The Texas educator, in maintaining the dignity of the profession, shall respect and obey the law, demonstrate personal integrity, and exemplify honesty and good moral character."), *See* 25 Tex. Admin. Code §448.201(Texas Dept. of State Health Services General Standard).

[17] Notably, the State of Ohio has codified its Code of Ethics for Faculty, which mentions the word "respect" several times, without specific definitions. *See* Ohio Administrative Code, Rule 3357:12-2-4 (Effective March 18, 2015), available at: https://codes.ohio.gov/assets/laws/administrative-code/authenticated/3357/12/2/3357$12-2-04_20150318.pdf.

clear expectations for classroom behavior such as the classroom expectation of treating each other with dignity and respect.[18] Plaintiff's direct supervisor, Dr. Chaelle OQuin, summed these principles up best when she testified:

> Q:  Are these -- are dignity and respect here the same dignity and respect as you understand it in the code of ethics?
>
> A:  Yes, sir. I think the Collin -- the core values use common colloquial terms that -- even with learning, dignity and respect are words that most professionals know the definitions on. So I wouldn't expect that it would be outlined in a very rudimentary way, but yes.
>
> Q:  Most people would have some general understanding of them?
>
> A:  I would think so.
>
> Q:  Do you think people's understandings differ in some ways?
>
> A:  I think if they had to write a definition it would differ but I think in all, globally, dignity and respect mean the same to most people.[19]

4.20    For a professional educator to allege that the Code of Professional Ethics, which is derived from TCCTA and used by several large community colleges in Texas, is unclear because the words "dignity," or "respect" are undefined is disingenuous at best; Plaintiff himself knows the meaning of these words. See, e.g., Phillips deposition, attached hereto as Exhibit 8, pp. 29, 66, 140. Therefore, summary judgment on this facial challenge to the Code of Processional Ethics is warranted.

---

[18] See Region 10, *Positive Behavior Intervention and Supports for Classroom Management: Essential Principles and Beliefs.* Available at: https://www.region10.org/programs/positive-behavior-intervention-and-supports-for-classroom-management/overview/ ("Everyone in a school should be treated with dignity and respect.").

[19] O'Quinn Deposition, page 32, attached as Exhibit 7 hereto.

E.     **The College's Policies are not Unconstitutional Prior Restraints; and the Directive in Dr. Matkin's Email is now Moot and Rescinded**

4.21     Plaintiff's fifth cause of action asks for a declaratory judgment (and corresponding injunctive relief) that the following are unconstitutional prior restraints: (1) Dr. Matkin's August 4, 2019 email, (2) the Faculty Expression Policy (Policy DGC (LOCAL)), and (3) paragraph 9 of the Code of Professional Ethics (Policy DH (EXHIBIT)). Dkt. 1, ¶ 214. Summary judgment in Collin College's favor is proper on this cause of action for the reasons below.

1.     **Law on Prior Restraints**

4.22     "The term 'prior restraint' is used to describe administrative and judicial orders forbidding certain communications when issued in advance of the time that such communications are to occur." *Alexander v. United States,* 509 U.S. 544, 550 (1993); *Gibson v. Tex. Dep't of Ins. – Div. of Workers' Comp.,* 700 F.3d 227, 235 (5th Cir. 2012).[20] Because a prior restraint is intended to suppress speech before it is communicated, a prior restraint "may take the form of orders prohibiting the publication or broadcast of specific information … or systems of administrative preclearance that give public authorities the power to bar the publication or presentation of material." *In re G. & A. Books, Inc.,* 770 F.2d 288, 296 (2d Cir. 1985). However, there is a clear distinction "solidly grounded in our cases, between prior restraints and subsequent punishments." *Alexander*, 509 U.S. at 550; *Gibson*, 700 F.3d at 235; see also *Serafine v. Branaman,* 810 F.3d 354, 370 (5th Cir. 2016) ("Thus, by 'penalizing past speech,' the Act is not a prior restraint on speech."); *Keefe*, 840 F.3d at 531 (holding that college's code of ethics "does not 'prohibit' that speech, or render it unprotected; the university simply imposes an adverse consequence on the

---

[20] Importantly, a prior restraint is "not *per se* unconstitutional." *Chiu v. Plano Indep. Sch. Dist.*, 339 F.3d 273, 280-81 (5th Cir. 2003).

student for exercising his right to speak at the wrong place and time"). Critically, because of this distinction, although there is usually a "heavy presumption" against a prior restraint's constitutional viability,

> [T]he Fifth Circuit has not extended this presumption of invalidity to policies regulating employee speech. See *Moore v. City of Kilgore, Tex.,* 877 F.2d 364, 392 (5th Cir. 1989). The Fifth Circuit explained that when speech policies threaten employees with termination for violating the policy, the policy is not a prior restraints. *Id.* They are not prior restraints, the court reasoned, because they are not as severe as actions, which would directly prohibit speech, like shutting down printing presses, or a speaker being gagged or subject to an injunction. *Id.* The Court described this type of employee speech policy as an "after-the-fact" sanction, not severe enough to receive the suspect treatment given to prior restraints.[21]

*Harris v. Noxubee Cty.,* 350 F. Supp.3d 592, 597 (S.D. Miss. 2018), aff'd, 776 Fed. Appx. 868 (5th Cir. 2019). Here, under the Fifth Circuit precedent of *Moore*, the College's policies, to the extent they regulate employee speech, should not be presumed invalid.

### 2. Dr. Matkin's August 4, 2019 email

4.23    Plaintiff first alleges that Dr. Matkin's August 4, 2019 email – which asks college staff to refer all press inquiries regarding the 2019 El Paso mass shooting to the president's office and all law enforcement inquires to the college's police department chief – should be declared an unconstitutional prior restraint.

4.24    Here, in contrast to a "prior restraint," Dr. Matkin's email does not ***forbid*** Phillips or any other faculty member from talking to the media or requiring prior approval to do so; no words in this email say "don't talk to the media." Rather, the email simply asks faculty to refer

---

[21] "Nor, finally, is the rule a prior restraint. … True, the City did ask its employees to seek permission ***before*** they spoke. But offending employees are penalized after-the-fact, by the loss of their jobs. They are not gagged or subjected to an injunction. Demotion and suspension was the fate suffered by Moore, and the event that precipitated this suit. Kilgore did not stop him from getting his message out. The difference is crucial." *Moore,* 877 F.2d at 392.

any media or law enforcement inquiries about the El Paso shooting to the administration or police chief. This does not forbid faculty from talking or expressing their views; it simply asks for a "head's up" to the college's leaders regarding a sensitive campus issue as well as a high profile and on-going state and federal law enforcement (including the FBI) issue. See, e.g., Matkin deposition, pp. 193, 196-97 ("We were being contacted by numerous press outlets every day and the follow-up to the Crucis El Paso shooting, I simply asked for the PR department or the chief of police to be notified when we were contacted by the press or law enforcement. I gave no directive whatsoever regarding Michael speaking to the press as an expert on race. … There wasn't a restriction for Michael to speak to anybody. We simply asked him to notify the appropriate parties of the college so we knew what was happening. … All he got told to do was please alert and follow the directive that you were given to make sure that the folks that are coordinating the press coverage of the [El Paso shooting] at the college are alerted. He could have easily spoken to anybody he wanted and done a courtesy alert to the PR department and would have been totally fine.").[22] Dr. Matkin's email is not an unconstitutional prior restraint.

---

[22]     Q. Is it your testimony that he violated your directive by speaking to the *Washington Post*?

A. No. My testimony is, he violated my directive by not alerting us that he spoke to the *Washington Post*.

Q. So if he would have done that after the fact, it wouldn't have violated your directive?

A. If he would have notified public relations or the president's office, it would have been in accordance with my specific directive.

Q. Before or after he spoke with them?

A. I don't think it matters. It's a matter of alerting. It would have need to be soon. We were trying to coordinate with all of the different things that were happening.
…
Q. Did it matter if he did that before or after he spoke with them?

MR. CRAWFORD: Objection; form.

A. As long as he would have notified so that the college would have had an understanding of what was going

4.25    Moreover, even if considered a potential prior restraint, this 3 ½ year old email directive is now **_moot_** in light of the fact that the El Paso shooting investigation has now passed and the shooter has been convicted. "The mootness doctrine limits courts to deciding cases in which an actual controversy exists. Mootness is a part of the standing inquiry applicable to all suits in federal court and is jurisdictional." _Kramer v. JP Morgan Chase Bank, N.A._, 574 Fed. Appx. 370, 375 (5th Cir. 2014) (internal citations omitted). Furthermore, it has been rescinded in writing. See Exhibit 6 ("The directive is already moot and of this writing is no longer in effect.").

4.26    "'It is a basic principle of Article III that a justiciable case or controversy must remain extant at all stages of review, not merely at the time the complaint is filed.' 'Generally, any set of circumstances that eliminates actual controversy after the commencement of a lawsuit renders that action moot.'" _Morehouse v. Jackson_, 614 Fed. Appx. 159, 162 (5th Cir. 2015) (internal citations omitted). As the Supreme Court has noted, "it is not enough that a dispute was very much alive when the suit was filed; … [t]he parties must continue to have a personal stake in the outcome of the lawsuit." _Lewis v. Cont'l Bank Corp._, 494 U.S. 472, 477-78 (1990). [23]

4.27    Notably, "[m]ootness turns on the particular forms of relief requested by the parties." _Morehouse_, 614 Fed. Appx. at 163. Here, Plaintiff asks for a declaration and corresponding injunction that Dr. Matkin's August 4, 2019, email violates the First Amendment because it is an unconstitutional prior restraint. Dkt. 1, ¶¶ 207, 214.

---

on around us, I think we would have been fine in either case.

Q. (BY MR. GRUEBEL) So it didn't matter if it was before or after?

A. It wouldn't matter to me.

See Exhibit 4, Matkin deposition, pp. 201-203.

[23] The Supreme Court has described mootness as "the doctrine of standing set in a time frame: the requisite personal interest that must exist at the commencement of the litigation (standing) must continue through its existence (mootness)." _United States Parole Commm'n v. Geraghty_, 445 U.S. 388, 397 (1980).

4.28     Because the August 4, 2019, email only applied to a single situation that has now come and gone, the email is no longer in effect and Plaintiff's facial challenge to this email as a prior restraint has become moot. Dismissal of this facial challenge for lack of subject matter jurisdiction is therefore proper. See, e.g., *Wernsing v. Thompson,* 423 F.3d 732, 744-45 (7th Cir. 2005) (upholding district court's dismissal based on mootness because "[t]he undisputed evidence reveals that Thompson's directive is no longer in force, and this raises the specter of mootness" and "[t]he necessary determination is that there exists some cognizable danger of recurrent violation, something more than the more possibility which serves to keep the case alive").

### 3.     The College's written policy on Academic Freedom, Policy DGC (LOCAL), does not constitute an unlawful prior restraint.

4.29     Plaintiff next alleges that college Policy DGC (LOCAL)[24] – which provides that "faculty and support staff will strive for accuracy, exercise appropriate restraint, exhibit tolerance for differing opinions, and indicate clearly that they are not an official spokesperson for the College District" – should be declared an unconstitutional prior restraint.

4.30     However, an employment policy – based on accepted tenets of academic freedom -- that asks employees to "strive for accuracy," "exhibit tolerance," "exercise appropriate restraint," and "indicate clearly that they are not an official spokesperson" is not an unconstitutional prior restraint as a matter of law. See *Korf,* 726 F.2d at 1227-29. To the contrary, Policy DGC (Local) does not attempt to unconstitutionally forbid or suppress free speech ***before*** it happens. Instead, the academic freedom policy appropriately sets out written standards –

---

[24] Policy DGC(Local) is the College's academic freedom policy, which is derived in part from the AAUP's 1940 *Statement of Principles on Academic Freedom and Tenure,* at Academic Freedom, Paragraph 3. Available at: https://www.aaup.org/report/1940-statement-principles-academic-freedom-and-tenure. As stated in the introductory paragraph, Policy DHC(Local) is also derived in part from the February 19, 1982 policy promulgated by TCCTA (formerly known as the Texas Junior College Teachers' Association).

recognized on a national level by AAUP, and which are and should already be known to and abided by professional educators – accuracy, appropriate restraint, tolerance, and clear delineation that the speaker/author is not a spokesperson for the College.

4.31    "The Supreme Court has established that academic freedom is 'a special concern of the First Amendment, which does not tolerate laws that cast a pall of orthodoxy over the classroom.'" *Buchanan v. Alexander*, 919 F.3d 847,852 (5th Cir. 2019). Accordingly, "classroom discussion is protected activity." *Id.* "However, even this protection has limits: Students, teachers, and professors are not permitted to say anything and everything simply because the words are uttered in the classroom context." *Id.* Collin College, as the institution, holds the right to academic freedom – which in this case, means the right to define what academic freedom means for its faculty based on long-standing tenets widely accepted by professional organizations such as AAUP and TCCTA. *See Kahan v. Slippery Rock Univ. of Pa.*, 50 F. Supp. 3d 667 (W.D. Pa. 2014) (citing *Borden v. Sch. Dist. of the Twp. of East Brunswick*, 523 F.3d 153, 171–72 & n. 14 (3d Cir.2008) ("it is the educational institution that has a right to academic freedom, not the individual teacher")). "Academic freedom thrives not only on the independent and uninhibited exchange of ideas among teachers and students, but also, and somewhat inconsistently, on autonomous decision-making by the academy itself.'" *See Todd v. Southern Methodist University*, No. 05-21-00702-CV, at *9 (Tex. App. – Dallas, Nov. 14, 2022). In this case, Collin College as the academy is owed deference on how best to define parameters of academic freedom. *See Id.* at *9 ("Judges and juries are not generally equipped to second-guess academic judgment…This doctrine of deference to academic decisions reflects the courts' responsibility to safeguard the academic freedom of state and local educational institutions, 'a special concern of the First Amendment,'

and assure those who teach may do so free of the chilling effect of an ever-present risk of being sued...").

4.32    More importantly, the College's academic freedom policy, DGC(LOCAL) itself includes a restriction on the College that squarely addresses any prior restraint concerns:

> 4. Prior restraint or sanctions will not be imposed upon faculty members in the exercise of their rights as citizens or duties as teachers. Nor will faculty members fear reprisals for exercising their civic rights and academic freedom.[25]

In setting out its expectations for the concomitant tenets of academic freedom and academic responsibility, the College has maintained the restriction against using academic freedom in a manner that results in prior restraint of the faculty. Notably, however, Plaintiff fails to specify what precise tenet of DGC(LOCAL) – absent an application challenge – has resulted in an unlawful prior restraint. Accordingly, summary judgment on this claim is also warranted.

### 4.    The College's Code of Professional Ethics, Policy DH (EXHIBIT), does not constitute an unlawful prior restraint.

4.33    Plaintiff finally alleges that college Policy DH (EXHIBIT) – Paragraph 9 of the Code of Professional Ethics, which provides "[t]he Professional Educator shall support the goals and ideals of the College District and shall act in public affairs in such a manner as to bring credit to the College District" – should be declared an unconstitutional prior restraint.

4.34    However, an employment policy that asks professional educators to "support the goals and ideals" of the College as well as "act[ing] in public affairs in such a manner as to bring credit to the college" is not an unconstitutional prior restraint as a matter of law. Unlike a prior

---

[25] Policy DGC(LOCAL), at page 2, Paragraph 4.

restraint, the Code of Professional Ethics does not attempt to unconstitutionally forbid or suppress free speech before it happens. See Argument, *supra*.

**F.      The Declaratory Judgments Requested are, in Part, Unnecessarily Duplicative**

4.35     In addition to the declaratory judgments challenging the facial constitutionality of the College's policies and Dr. Matkin's directive discussed above, Plaintiff's Complaint also asks for the following two declaratory judgments: (1) "[a] declaratory judgment against all Defendants declaring that Defendants' termination of Phillips violated his constitutional rights," and (2) "[a] declaratory judgment against Collin College declaring that its custom or practice of retaliating against faculty for their speech on matters of public concern is unconstitutional." Dkt. 1, Prayer for Relief. However, the Complaint also asserts multiple causes of action under 42 U.S.C. § 1983 seeking, *inter alia,* "[a]n injunction… rescinding the non-renewal of Phillips's contract and mandating they follow the Council on Excellence's recommendation that he receive a new contract" and "[a]n award of monetary damages… in an amount to be determined by the Court and Jury to compensate Phillips for Defendants' interference with Phillips's rights under the U.S. Constitution, their interference with his ability to earn an income, and other damages caused by their unconstitutional actions." *Id.*

4.36     "The Declaratory Judgment Act is designed to afford parties, threatened with liability, but otherwise without a statutory remedy, an early adjudication of an actual controversy." *Collin Cnty., Tex. v. Homeowners Ass'n for Values Essential to Neighborhoods*, 915 F.2d 167, 170 (5th Cir. 1990). The Act, however, does not create a substantive cause of action; instead, it merely "confers a discretion on the courts rather than an absolute right upon the litigant," granting courts "substantial discretion in deciding whether to declare the rights of litigants." *Wilton v. Seven Falls Co.*, 515 U.S. 277, 286 (1995); *Lowe v. Ingalls Shipbuilding, A Div. of Litton Sys., Inc.*, 723 F.2d

1173, 1179 (5th Cir. 1984). See also *Harris Cnty., Tex. v. MERSCORP Inc.*, 791 F.3d 545, 553 (5th Cir. 2015) ("[T]he Declaratory Judgment Act alone does not create a federal cause of action.").

4.37 Importantly, like the situation here, "if a request for declaratory judgment adds nothing to an existing suit, it may be dismissed" and, as a result, "[c]ourts in the Fifth Circuit regularly reject declaratory judgment claims seeking the resolution of issues that will be resolved as part of the claims in the lawsuit." *Am. Equip. Co. v. Turner Bros. Crane & Rigging, LLC*, 2014 U.S. Dist. Lexis 97328, *9-11 (S.D. Tex. 2014) (collecting cases dismissing declaratory claims as "repetitive and unnecessary" and "redundant"); *Le Vel Brands, LLC v. DMS Natural Health, LLC*, 2021 U.S. Dist. Lexis 135095, *4-5 (E.D. Tex. 2021) (Jordan, J.) ("Courts may dismiss as redundant declaratory-judgment claims that seek nothing more than to litigate substantive claims already at issue in a lawsuit."); *Elepreneurs Holdings, LLC v. Benson*, 2021 U.S. Dist. Lexis 213670, *7-8 (E.D. Tex. 2021) (Mazzant, J.) ("Courts in the Fifth Circuit regularly reject declaratory judgment claims seeking resolution of issues that will be resolved as part of the plaintiff's affirmative claims."). See also *Env't Tex. Citizen Lobby, Inc. v. ExxonMobil Corp.*, 824 F.3d 507, 523 (5th Cir. 2016) (citing *Am. Equip. Co.* with approval). As the Honorable Judge Mazzant of this Court has stated, "[t]he reasoning behind the rejection of these declaratory judgments is logical: a declaratory judgment action is redundant when the affirmative claims before the Court would resolve the issues raised by the declaratory judgment." *Benson*, 2021 U.S. Dist. Lexis at *7.

4.38 Here, Plaintiff has a statutory remedy under 42 U.S.C. §1983 for damages and/or injunctive relief for the alleged unconstitutional decision to non-renew his teaching contract; and,

critically, the two requested declaratory judgments[26] are redundant of these statutory remedies. In other words, the constitutionality of Collin College's nonrenewal of Plaintiff's teaching contract will be resolved as part of Plaintiff's §1983 claims for damages and/or injunctive relief – the two additional requested declaratory judgments add nothing to this suit.

4.39    Plaintiff's first, sixth and seventh causes of action will either settle the issues raised in the two requested declaratory judgments or render those issues irrelevant; if these three causes of action are determined in the Defendants' favor, then Plaintiff's two requested declaratory judgments fail as a matter of law.[27] However, if on the other hand, these causes of action are determined in Plaintiff's favor, then his two requested declaratory judgments are simply redundant of his successful causes of action for monetary and/or injunctive relief. In either event, the two requested declaratory judgments serve no useful purpose. Accordingly, the Court should decline to exercise its discretion to entertain Plaintiff's two requested declaratory judgments because they are redundant of the other causes of action alleged in the Complaint and they serve no useful purpose.

## V.
## PRAYER

5.1    For these reasons, the Court should grant summary judgment in Collin College's favor on Plaintiff's declaratory judgment claims and related requests for injunctive relief as requested herein.

---

[26] Again, these two requested declaratory judgments are (1) "[a] declaratory judgment against all Defendants declaring that Defendants' termination of Phillips violated his constitutional rights," and (2) "[a] declaratory judgment against Collin College declaring that its custom or practice of retaliating against faculty for their speech on matters of public concern in unconstitutional." Dkt. 1, Prayer for Relief.

[27] See, e.g., *Smitherman v. Bayview Loan Servicing, LLC*, 727 Fed. Appx. 787, 792 (5th Cir. 2018) ("[B]ecause Smitherman asserted no viable cause of action against Bayview, the district court properly dismissed his requests for declaratory relief.").

Respectfully submitted,

**ABERNATHY, ROEDER, BOYD &
HULLETT, P.C.**

*/s/Charles J. Crawford*
**RICHARD M. ABERNATHY**
State Bar No. 00809500
**CHARLES J. CRAWFORD**
State Bar No. 05018900
1700 Redbud Blvd, Suite 300
McKinney, Texas 75069
Telephone: 214/544-4000
Telecopier: 214/544-4040
rabernathy@abernathy-law.com
ccrawford@abernathy-law.com

**And**

*/s/Robert J. Davis*
**ROBERT J. DAVIS**
State Bar No. 05543500
**MATTHEWS, SHIELS, KNOTT, EDEN,
DAVIS & BEANLAND, L.L.P.**
8131 LBJ Freeway, Suite 700
Dallas, Texas 75251
Telephone: (972) 234-3400
Facsimile: (972) 234-1750
bdavis@mssattorneys.com

**ATTORNEYS FOR DEFENDANTS**

## CERTIFICATE OF SERVICE

I hereby certify that on April 11, 2023, a true and correct copy of Collin College's Motion for Summary Judgment on Plaintiff's Declaratory Judgment Claims was served upon Plaintiff's counsel via the Court's ECF system.

*/s/ Charles J. Crawford*
Charles J. Crawford