# United States District Court
## EASTERN DISTRICT OF TEXAS
## SHERMAN DIVISION

JOSEPH MICHAEL PHILLIPS, §
§
*Plaintiff,* §     Civil Action No.  4:22-cv-184
§     Judge Mazzant
v. §
§
COLLIN COMMUNITY COLLEGE §
DISTRICT, *et al.*, §
§
*Defendant.* §

## MEMORANDUM OPINION AND ORDER

Pending before the Court is Plaintiff Joseph Michael Phillips' Motion for Partial Summary Judgment (Dkt. #58), and Defendants' Motion for Summary Judgment on Plaintiff's Declaratory Judgment Claims (Dkt. #59).  Having considered the motions and the relevant pleadings, the Court finds that Plaintiff's Motion for Partial Summary Judgment (Dkt. #58) should be **DENIED**, and Defendants' Motion for Summary Judgment on Plaintiff's Declaratory Judgment Claims (Dkt. #59) should be **GRANTED in part** and **DENIED in part**.

## BACKGROUND

This case arises out of the nonrenewal of Plaintiff Joseph Michael Phillips' faculty contract and out of a series of statements he made in a newspaper publication, an interview, classroom discussions, and in social media posts while employed as a professor at Collin Community College. On March 8, 2022, Plaintiff filed suit against Collin Community College District ("Collin College"), the Board of Trustees of Collin Community College ("the Board"), and, in their individual and official capacities, H. Neil Matkin, Abe Johnson, Mary Barnes-Tilley, Kristin Streater, and Chaelle O'Quin ("individual Defendants") (collectively, the "Defendants"),

claiming that Defendants violated his rights under the First and Fourteenth Amendments (Dkt. #1). Plaintiff alleges that Defendants retaliated against him for speaking as a private citizen on matters of public concern (Dkt. #1 ¶ 2). Specifically, Plaintiff alleges that Defendants engaged in viewpoint discrimination against him, under Collin College's Employee Expression Policy, Code of Professional Ethics, and an email directive issued by Defendant Matkin, by not renewing his contract because he expressed opinions critical of Collin College (Dkt. #1 ¶ 217). He also alleges that Collin College enforced unlawful prior restraints that prohibited faculty from speaking as private citizens on matters of public concern (*see* Dkt. #1 at pp. 40–42).

In 2007, Plaintiff began working at Collin College as a history professor (Dkt. #58, Exhibit 3 at p. 5). He was employed at Collin College full time until his faculty contract was non-renewed in May 2022 (Dkt. #64, Exhibit 7 at p. 13). Prior to the nonrenewal, Plaintiff's faculty contract had been renewed multiple times over the course of his employment, with the final renewal occurring in August 2019 (Dkt. #58, Exhibit 3, at p. 6; Dkt. #64, Exhibit 7 at p. 13–14). Defendant Matkin, who has served as the President of Collin College since 2015, made the final decision to not renew Plaintiff's faculty contract (Dkt. #58, Exhibit 5 at pp. 5, 27). The Board of Trustees had delegated to Defendant Matkin the final authority to hire and fire faculty members (Dkt. #58, Exhibit 5 at p. 17).

The individual Defendants have served in different roles throughout their time working for Collin College. Defendant Johnson, the prior Campus Provost, is now the Senior Vice President of Campus Operations (Dkt. #58, Exhibit 7 at p. 5). Defendant Barnes-Tilley, the current Campus Provost, directly supervised Plaintiff when she was an Associate Dean of Academic Affairs from July 2017 through June 2018 (Dkt. #58, Exhibit 8 at pp. 5, 6, 8). Defendant Streater, the Dean of

Academic Affairs, directly supervised Plaintiff when she was an Associate Dean of Academic Affairs from July 2018 until January 2021 (Dkt. #58, Exhibit 9 at pp. 5, 7). Defendant O'Quin, Associate Dean of Academic Affairs, supervised Plaintiff during his final year at Collin College (Dkt. #58, Exhibit 10 at pp. 5–7).

Collin Community College maintains various policies that govern the conduct of its faculty members. Among others, these include the Code of Professional Ethics (i.e., Board Policy DH Exhibit) and the Employee Expression Policy (i.e., Board Policy DGC Local). The Code of Professional Ethics, derived in large part from the Texas Community College Teachers Association Code of Professional Ethics, requires faculty to abide by the following ethical standards:

> . . .The Professional Educator shall support the goals and ideals of the College District and shall act in public affairs in such a manner as to bring credit to the College District. . .

> . . .The Professional Educator shall observe the stated policies and procedures of the College District, reserving the right to seek revision in a judicious and appropriate manner. . .

(Dkt. #59, Exhibit 1 at pp. 2–3). The Employee Expression Policy, on the other hand, mandates the following:

> All Faculty members (full-time and associate) will be entitled to academic freedom and bear a concomitant dedication to academic responsibility. . . . All faculty members enjoy the constitutional freedoms guaranteed to all citizens by the United States' Constitution and the Constitution of the State of Texas. . . . Outside the Classroom, faculty members are free from institutional censorship or discipline for exercising their rights as private citizens to express themselves freely on matters of public concern, to associate with persons or groups as they so choose, and to participate in political or other kinds of activities. When faculty and support staff speak or write as private citizens, however, they must bear in mind that their actions will inevitably be judged by the public and reflect upon their profession and institution. *Therefore, faculty and support staff will strive for accuracy, exercise appropriate restraint, exhibit tolerance for differing opinions, and indicate clearly that they are not an official spokesperson for the College District.*

3

*** 

The points enumerated below constitute [the College District's] position on academic freedom:

. . . Prior restraint or sanctions will not be imposed upon faculty members in the exercise of their rights as citizens or duties as teachers . . .

***

The academic freedom of the College District faculty members will be accompanied by equally compelling obligations and responsibilities to their profession, their students, the College District, and their community. Faculty members will defend the rights of academic freedom while accepting willingly the responsibilities enumerated below:

. . . Faculty members will recognize their responsibility to adhere to the policies and procedures of the institution. *Therefore, faculty members who have differences of opinion with existing or proposed policies or procedures will express these views through the standing committee structure of the College District or their supervising administrators.*

(Dkt. #59, Exhibit 2 at pp. 2–4) (emphasis added). Plaintiff asserts that Defendants, applying these policies, disciplined him on five separate occasions for speaking on matters of public concern (Dkt. #58 at p. 15).

On August 4, 2017, the *Dallas Morning News* published Plaintiff's co-written article calling for the removal of all Confederate monuments in the city of Dallas (Dkt. #58, Exhibit 3 at pp. 15, 16, 33). The article indicated that Plaintiff was a history professor at Collin College and listed his official faculty email address (Dkt. #58, Exhibit 3 at p. 34). According to Plaintiff, on August 22, 2017, two Collin College administrators "summoned [him] to a meeting and gave [him] a memorandum explaining that [he] violated Collin College's Employee Expression policy by publishing [the article] in the *Dallas Morning News* calling for the removal of Confederate monuments" (Dkt. #58, Exhibit 4 at p. 3). According to Defendant Barnes-Tilley, Plaintiff violated the Employee Expression Policy (i.e., DGC Local) and a separate policy, titled CR Local, by

4

associating himself with Collin College and by soliciting signatures using his official email address (Dkt. #58, Exhibit 6 at pp. 22–24).[1]

In 2019, the *Washington Post* interviewed Plaintiff about race relations in the Dallas area—his area of expertise—following a then-recent shooting that had occurred at a grocery store in El Paso, Texas (Dkt. #58, Exhibit 4 at p. 3). The shooter was a former Collin College student but was not a student of Plaintiff's (Dkt. #58, Exhibit 4 at p. 3). Prior to Plaintiff's interview, Defendant Matkin had emailed the following directive to faculty members:

> Friends,
>
> The press has reached out to multiple campus administrators and district personnel regarding the El Paso shooting. At this time, it is believed that the shooter was a college student as late as spring 2019.I have issued a statement as follows (forgive the size - working from home): [attached]
>
> Please refer all press inquiries you may receive to Marisela Codena-Smith at mcsmith@collin.edu or by phone to the president's office (972-758-3800). Any law enforcement personnel should be referred to Chief Bill Taylor at wtavlor@collin.edu or by phone to the president's office.
>
> Please keep the El Paso (and also the Ohio) victims and their [families] in your thoughts and prayers.
>
> Thank you all,
>
> Neil

(Dkt. #64, Exhibit 3 at p. 2). The *Washington Post* published an article on August 9, 2019, referring to Plaintiff as "a Collin College professor and historian of race relations in the Dallas-Fort Worth region" (Dkt. #58, Exhibit 4 at p. 3). According to Plaintiff, he had asked the reporter not to mention his affiliation with Collin College (Dkt. #58, Exhibit 4 at p. 3).

---

[1] In response to Plaintiff's requests for admissions, Collin College admitted that the removal of Confederate statues in Dallas is a matter of public concern (Dkt. #58, Exhibit 11 at p. 3).

On September 3, 2019, Defendant Streater, who was then an Associate Dean, issued Plaintiff an employee coaching form for violating the President's directive on media inquiries (Dkt. #58, Exhibit 9 at pp. 7, 20). The form advised him to follow directives in the future (Dkt. #58, Exhibit 9 at p. 20). Defendant Streater testified that she believed Plaintiff when he stated that he had asked the reporter not to be identified as a professor at Collin College (Dkt. #58, Exhibit 9 at p. 9). The email directive is no longer in effect (Dkt. #64, Exhibit 5 at p. 9; Exhibit 6 at p. 3).

In June 2020, Defendant Barnes-Tilley met with Plaintiff to discuss some of his then-recent social media posts about the COVID-19 pandemic (Dkt. #58, Exhibit 6 at pp. 17–21, 35–37). Such posts included, among others, the following on Facebook: (1) "[That feeling when] [] your employer is basically saying the loss of your life is an acceptable calculated risk."; (2) ". . . it looks like we're opening in the fall. Masks will be recommended but not required. There has been no discussion of capping class sizes to allow any degree of social distancing . . ."; and (3) "With my employer apparently willing to put my life at risk this fall . . ." (Dkt. #58, Exhibit 6 at pp. 35–58). She found the posts concerning because she thought they lacked dignity and respect and Plaintiff had not raised the concerns to his leadership (Dkt. #58, Exhibit 6 at p. 18; Exhibit 8 at p. 11).

On August 11, 2021, Plaintiff attended a faculty meeting where Defendant O'Quin, his Associate Dean, gave a presentation on how Collin College would comply with the state governor's executive order prohibiting government entities from mandating masks (Dkt. #58, Exhibit 6 at p. 15; Exhibit 10 at pp. 23, 52). That same day Plaintiff posted a picture of a PowerPoint slide from the presentation on Twitter (Dkt. #58, Exhibit 10 at p. 52). The PowerPoint slide, titled "COVID Guidelines", stated that the faculty could not have any written language requesting, requiring, or recommending masks in their syllabi or anywhere else (*see* Dkt. #58, Exhibit 10 at p. 52). It also

stated that the faculty could not "encourage folks to wear them in person" (*see* Dkt. #58, Exhibit 10 at p. 52). Plaintiff included a caption in his Twitter post stating, "[n]ote what we were told about discussing masks and Covid with students at my [] college today" (Dkt. #58, Exhibit 10 at p. 52).

The next day Defendant O'Quin learned of Plaintiff's Twitter post from Defendant Streater (*see* Dkt. #58, Exhibit 10 at p. 10). Defendant O'Quin felt disrespected by Plaintiff posting the slide without more context, and she thought it misrepresented what she meant (Dkt. #64, Exhibit 10 at p. 8). She felt like the post was a personal attack because it embarrassed her, and that meeting was her first faculty meeting (Dkt. #64, Exhibit 10 at p. 8). On August 27, 2021, Defendant O'Quin issued an employee discipline form to Plaintiff reprimanding him for his "continued conduct in not bringing up his concerns in an appropriate manner" (Dkt. #58, Exhibit 10 at p. 23). The discipline form referenced his previously received coaching on "using all internal communication channels (for instance, Associate Dean, Dean, Faculty Council, etc.) with his questions and/or concerns with the College, including formal coaching in July 2019, informal coaching in June 2020, and verbal and email announcements in Division meetings in August 2021" (Dkt. #58, Exhibit 10 at p. 23). It also stated that "[Plaintiff] did not come to anyone to discuss his concerns after the August 11th meeting" (Dkt. #58, Exhibit 10 at p. 23). As for policy violations, the form indicated the following:

> This continued conduct of ignoring requests by supervisors constitutes insubordination as defined by Board policy DMAA (Local). Additionally, this conduct also violates Collin College's *Code of Professional Ethics, as stated in Board Policy DH (Exhibit)*, specifically items listed below:
>
> . . . 'The Professional Educator shall work to enhance cooperation and collegiality among students, faculty, administrators, and other personnel' . . .

> . . . 'The Professional Educator shall observe the stated policies and procedures of
> the College District, reserving the right to seek revision in a judicious and
> appropriate manner.'

(Dkt. #58, Exhibit 10 at p. 23) (emphasis added).

On August 24, 2021, Defendant O'Quin learned that some of Plaintiff's students were upset and confused about Collin College's mask policy because of statements Plaintiff made during a class lecture (Dkt. #58, Exhibit 10 at pp. 16–22, 55). According to Plaintiff, he gave a lecture that touched on the 1918–1919 influenza pandemic's anti-mask leagues (Dkt. #58, Exhibit 3 at p. 11).[2] After investigating the complaint, on September 29, 2021, Defendant O'Quin issued Plaintiff an employee discipline form addressing the raised concerns (Dkt. #58, Exhibit 10 at pp. 16–22, 55). The employee discipline form indicated that Plaintiff had mentioned in class that "students should be wearing masks" and commented about those who chose not to wear them (Dkt. #58, Exhibit 10 at p. 55). The discipline form further stated that the students felt "degraded, embarrassed, singled out, bullied, and shamed by his conduct on the first day of class" (Dkt. #58, Exhibit 10 at p. 55). As for policies violated, the form concluded that Plaintiff's conduct "violate[d] [Collin College's] Core Values, particularly dignity and respect, as defined by Board policy AD (Local)[] [and] [f]urther, this conduct created an environment where students did not feel respected in class" (Dkt. #58, Exhibit 10 at p. 55).

Prior to the nonrenewal of his employment contract in May 2022, Plaintiff had to apply for a new multiyear contract (*see* Dkt. #58, Exhibit 6 at p. 27). As part of that process, Defendants Streater, Barnes-Tilley, and Johnson—members of Plaintiff's supervisory chain—were given the

---

[2] It is unclear to the Court whether Plaintiff's lecture on the anti-mask leagues was the same lecture in which he made statements that students complained about on the first day of class. *Compare* (Dkt. #58, Exhibit 10 at p. 55) *with* (Dkt. #58, Exhibit 3 at p. 11).

option to either recommend or not recommend Plaintiff for the multiyear contract (Dkt. #58, Exhibit 6 at p. 82). They each elected to not recommend Plaintiff (Dkt. #58, Exhibit 6 at p. 82). On the other hand, the Council on Excellence committee chose to recommend Plaintiff (Dkt. #58, Exhibit 6 at p. 82). Ultimately, Defendant Matkin disapproved Plaintiff for the multiyear contract (Dkt. #58, Exhibit 6 at p. 82). Defendant Matkin documented the reasons for his decision in a memorandum, dated January 26, 2022 (Dkt. #58, Exhibit 5 at p. 50).

On April 11, 2023, Plaintiff filed his Motion for Partial Summary Judgment (Dkt. #58). On May 16, 2023, Defendants filed their response (Dkt. #64). On May 26, 2023, Plaintiff filed his reply (Dkt. #66).

On April 11, 2023, Defendants filed their Motion for Summary Judgment on Plaintiff's Declaratory Judgment Claims (Dkt. #59). On May 16, 2023, Plaintiff filed his response (Dkt. #63). On June 2, 2023, Defendants filed their reply (Dkt. #68).

## LEGAL STANDARD

The purpose of summary judgment is to isolate and dispose of factually unsupported claims or defenses. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323–24 (1986). Summary judgment is proper under Rule 56(a) of the Federal Rules of Civil Procedure "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(a). A dispute about a material fact is genuine when "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby Inc.*, 477 U.S. 242, 248 (1986). Substantive law identifies which facts are material. *Id.* The trial court "must resolve all reasonable doubts in favor of the party opposing the motion for summary judgment." *Casey Enters., Inc. v. Am. Hardware Mut. Ins. Co.*, 655 F.2d 598, 602 (5th Cir. 1981).

The party seeking summary judgment bears the initial burden of informing the court of its motion and identifying "depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for purposes of the motion only), admissions, interrogatory answers, or other materials" that demonstrate the absence of a genuine issue of material fact. Fed. R. Civ. P. 56(c)(1)(A); *Celotex*, 477 U.S. at 323. If the movant bears the burden of proof on a claim or defense for which it is moving for summary judgment, it must come forward with evidence that establishes "beyond peradventure *all* of the essential elements of the claim or defense." *Fontenot v. Upjohn Co.*, 780 F.2d 1190, 1194 (5th Cir. 1986). Where the nonmovant bears the burden of proof, the movant may discharge the burden by showing that there is an absence of evidence to support the nonmovant's case. *Celotex*, 477 U.S. at 325; *Byers v. Dall. Morning News, Inc.*, 209 F.3d 419, 424 (5th Cir. 2000). Once the movant has carried its burden, the nonmovant must "respond to the motion for summary judgment by setting forth particular facts indicating there is a genuine issue for trial." *Byers*, 209 F.3d at 424 (citing *Anderson*, 477 U.S. at 248–49). A nonmovant must present affirmative evidence to defeat a properly supported motion for summary judgment. *Anderson*, 477 U.S. at 257. Mere denials of material facts, unsworn allegations, or arguments and assertions in briefs or legal memoranda will not suffice to carry this burden. Rather, the Court requires "significant probative evidence" from the nonmovant to dismiss a request for summary judgment. *In re Mun. Bond Reporting Antitrust Litig.*, 672 F.2d 436, 440 (5th Cir. 1982) (quoting *Ferguson v. Nat'l Broad. Co.*, 584 F.2d 111, 114 (5th Cir. 1978)). The Court must consider all of the evidence but "refrain from making any credibility determinations or weighing the evidence." *Turner v. Baylor Richardson Med. Ctr.*, 476 F.3d 337, 343 (5th Cir. 2007).

## ANALYSIS

### I.     Plaintiff's Motion for Partial Summary Judgment

The Court will first address the issues raised in Plaintiff's motion, along with the overlapping issues raised in both motions. The Court will then address the remaining issues raised in Defendants' motion.

### A.  Collin College's Policies Are Not Facially Unconstitutional Prior Restraints

Plaintiff argues that he is entitled to summary judgment on his fifth ("Facial Challenge to Prior Restraints on Faculty Speech") and sixth ("As-Applied Violation") causes of action because Collin College's Code of Professional Ethics and the Employee Expression Policy constitute unconstitutional prior restraints (Dkt. #58 at p. 26). Defendants, incorporating the arguments presented in their Motion for Summary Judgment (Dkt. #59 ¶¶ 4.21–4.34), respond that Collin College's policies are not unconstitutional prior restraints as a matter of law. They argue that the policies do "not attempt to unconstitutionally forbid or suppress free speech before it happens" (Dkt. #59 at pp. 23, 26). The Court agrees with Defendants.

Plaintiff's facial challenge to the constitutionality of the policies is a pure question of law. *See Ctr. For Individual Freedom v. Carmouche*, 449 F.3d 655, 662 (5th Cir. 2006) ("[A] facial challenge to the constitutionality of a statute presents a pure question of law . . . ."). For a facial challenge, the Court looks only to the text of the policy in question. *See Freedom Path, Inc. v. IRS*, 913 F.3d 503, 508 (5th Cir. 2019) ("On a facial challenge, however, we do not look beyond the text . . . We agree that '[a] 'facial challenge' to a statute considers only the text of the statute itself, not its application to the particular circumstances of an individual.'"). "Alleging a prior restraint is a facial constitutional challenge." *Harris v. Noxubee Cty.*, 350 F. Supp. 3d 592, 597 (S.D. Miss.

2018) (citing *Serv. Employees Int'l Union v. City of Houston*, 542 F. Supp. 2d 617, 629 (S.D. Tex. 2008), *aff'd in part, rev'd in part and remanded sub nom.*, 595 F.3d 588 (5th Cir. 2010)). "The term 'prior restraint' is used to describe administrative and judicial orders forbidding certain communications when issued in advance of the time that such communications are to occur." *Alexander v. United States*, 509 U.S. 544, 550, 113 S. Ct. 2766, 125 L. Ed. 2d 441 (1993). "A prior restraint on speech prohibits or censors speech before it can take place." *Smith v. Acevedo*, No. A-09-CA-620-SS, 2010 WL 11512363, at *5 (W.D. Tex. Sept. 20, 2010) (citing *Alexander v. United States*, 509 U.S. 544, 553–54 (1993)).

Plaintiff argues that Collin College's Code of Professional Ethics restrains speech by requiring employees to "observe the stated policies and procedures of the College District, reserving the right to seek revision in a judicious and appropriate manner" and "act in public affairs in such a manner as to bring credit to the College District" (Dkt. #58 at p. 28). Though he refers to the policy's language, Plaintiff erroneously concludes that the policy restrains speech. On its face, the policy only requires employees to *act* in a manner that brings credit to Collin College when engaging in public affairs (Dkt. #64, Exhibit 1 at p. 2). Likewise, it requires employees to *observe* Collin College's policies and procedures (Dkt. #64, Exhibit 1 at p. 3). Such language itself does not expressly restrict or prohibit speech. *See Ryan v. Grapevine—Colleyville Indep. Sch. Dist.*, No. 4:21-CV-1075-P, 2023 WL 2481248, at *6 (N.D. Tex. Mar. 13, 2023) (holding the plaintiff's facial viewpoint-discrimination challenge failed because the language of the school district's new policy did not restrict speech). Therefore, Plaintiff's facial prior-restraint challenge to the Code of Professional Ethics fails.

Plaintiff's facial prior-restraint challenge to Collin College's Employee Expression Policy fails for similar reasons. He argues that Collin College's Employee Expression Policy restrains employee speech because it requires the following: (1) "faculty members who have differences of opinion with existing or proposed policies or procedures will express these views through the standing committee structure of the College District or their supervising administrators."; and (2) "faculty and support staff will strive for accuracy, exercise appropriate restraint, exhibit tolerance for differing opinions, and indicate clearly that they are not an official spokesperson for the College District." (Dkt. #58 at p. 31). Neither requirement, however, expressly forbids or suppresses speech before it occurs. They are also significantly dissimilar to the honoraria ban in *United States v. Nat'l Treasury Emples. Union*, 513 U.S. 454 (1995) ("*NTEU*").

In *NTEU*, the honoraria ban prohibited federal employees from accepting compensation for making speeches or writing articles even when the expression had no connection to their official duties. *Id.* at 457. And, as noted by Defendants, it applied to "nearly all employees of the Federal Government . . . ." *See id.* at 459. After determining that the prohibition chilled potential speech before it could happen, the Supreme Court applied a new balancing test in which the government's burden is greater than that in *Pickering*. *NTEU*, 513 U.S. at 468. Collin College's Employee Expression Policy, however, does not implement a prohibition of such a chilling caliber. The policy on its face appears to only suggest that faculty members who disagree with Collin College's current or proposed policies and procedures will raise their concerns through proper channels (*see* Dkt. #59, Exhibit 2 at p. 4). In addition, the policy requires faculty to meet specific goals when they speak or write on matters of public concern as private citizens (*see* Dkt. #59, Exhibit 2 at p. 2). None of the goals, however, outright ban professors from reaping the monetary benefits of their

expression. These policy requirements simply do not rise to the level of "wholesale deterrent[s] to a broad category of expression by a massive number of potential speakers." *See Nat'l Treasury Emples. Union*, 513 U.S. at 467.  Accordingly, the Court finds that the heightened *NTEU* standard does not apply to Plaintiff's facial prior-restraint challenge to the policies. In addition, the Court grants Defendants' request for summary judgment on these grounds.

### B.  Whether The Policies Are Unconstitutional Prior Restraints as Applied

As for Plaintiff's as-applied prior-restraint challenge to Collin College's policies, genuine issues of material fact exist.[3] For example, it is unclear whether the policies, as enforced and interpreted against Plaintiff, required him to bring forward his concerns or differences of opinion or to seek revision in a judicious manner *before* sharing his opposing viewpoints on social media. In other words, it is factually unclear whether the policies were applied against Plaintiff in a fashion that instituted a preclearance mechanism. Furthermore, it is unclear whether, under the policies as applied, Plaintiff was required to obtain permission from Collin College to post publicly on matters of public concern.  These factual issues must be resolved before the Court can determine whether the policies should be analyzed as prior restraints. The Court denies Plaintiff's motion to the extent it requested summary judgment on as-applied unconstitutional prior-restraint grounds. The Court reserves this issue until after the factual questions are resolved.

---

[3] It is not clear to the Court that Plaintiff ever alleged an *as-applied* prior-restraint challenge in his Complaint. Plaintiff appears to only assert a *facial* challenge to the policies in his fifth cause of action (*see* Dkt. #1 ¶¶ 200–214 ("Facial Challenge to Prior Restraints on Faculty Speech")), and he appears to only make a viewpoint discrimination challenge in his sixth cause of action (*see* Dkt. #1 ¶¶ 215–223 ("As-Applied Violation of Plaintiff's First Amendment Rights")). Nevertheless, Defendants represent in the Joint Final Pre-Trial Order (Dkt. #87) that whether the policies are unconstitutional prior restraints as applied are contested issues of law (*see* Dkt. #87 at pp. 20–21).

### C.  Whether Collin College's Policies Are Unconstitutionally Overbroad

Plaintiff moved for summary judgment on the unconstitutionality of two policies based on overbreadth: Collin College's Code of Professional Ethics (Dkt. #58 at p. 34) and Collin College's Employee Expression Policy (Dkt. #58 at p. 35). Concurrently, Defendants moved for summary judgment that Collin College's Code of Professional Ethics is not unconstitutionally overbroad (Dkt. #59 at p. 10).

The Court denies both motions. As noted above, there is still a genuine issue of material fact in the case as to whether Collin College's Code of Professional Ethics and Employee Expression Policy, as applied to Plaintiff, arose to unconstitutional prior restraints (*see supra* Section I B). "[T]he lawfulness of the particular application of the law should ordinarily be decided first." *Serafine v. Branaman*, 810 F.3d 354, 362 (5th Cir. 2016) (quoting *Bd. of Trustees v. Fox*, 492 U.S. 469, 485 (1989)). "Generally, we 'proceed to an overbreadth issue' only if 'it is determined that the statute would be valid as applied.'" *Id.* at 362–63 (quoting *Fox*, 492 U.S. at 484–85). This is because an overbreadth challenge is "strong medicine," and the Court does not need to "provide relief to nonparties when a narrower remedy will fully protect the litigants." *Id.* at 363.

The Court denies Plaintiff's motion on overbreadth (Dkt. #58 at pp. 34–35) and Defendants' motion on overbreadth (Dkt. #59 at p. 10). The Court reserves the issue of overbreadth until after the factual questions are resolved.

### D.  Collin College's Policies Are Not Unconstitutionally Vague

Plaintiff moved for summary judgment on the unconstitutionality of two policies based on vagueness: Collin College's Code of Professional Ethics (Dkt. #58 at p. 37) and Collin College's Employee Expression Policy (Dkt. #58 at p. 38). Concurrently, Defendants moved for summary

judgment that Collin College's Code of Professional Ethics is not unconstitutionally vague (Dkt. #59 at p. 8).

Vagueness challenges can arise either facially or as applied. *E.g.*, *Walker v. Savers*, 658 F. App'x 720, 729–30 (5th Cir. 2016) (recognizing both facial and as applied vagueness challenges). In a facial vagueness challenge, a statute is unconstitutionally vague if it "fails to provide a person of ordinary intelligence fair notice of what is prohibited, or is so standardless that it authorizes or encourages seriously discriminatory enforcement." *United States v. Williams*, 553 U.S. 285, 304 (2008). In an as-applied challenge, the plaintiff must show that the policy or statute is vague as applied to the plaintiff in his circumstances. *See United States v. Gonzalez-Longoria*, 813 F.3d 225, 229 (5th Cir. 2016). Additionally, if a plaintiff brings both a facial and as-applied challenges for vagueness, the Court should address the as-applied challenge first. *See Parker v. Levy*, 417 U.S. 733, 756 (1974) ("One to whose conduct a statute clearly applies may not successfully challenge it for vagueness.").

The Joint Final Pretrial Order specifies that Plaintiff makes both facial and as-applied vagueness challenges to the Code of Professional Ethics (Dkt. #87 at p. 19 ¶ 3 (facial), p. 20 ¶ 3 (as applied)). It also specifies that Plaintiff makes a facial vagueness challenge to the Employee Expression Policy[4] (Dkt. #87 at p. 19 ¶ 6). The Plaintiff, however, only moved for summary judgment on the *facial* vagueness of the Code of Professional Ethics and the Employee Expression Policy. So, the Court will not analyze any potential as-applied vagueness challenge.

---

[4] Even though Defendants objected to the motion for summary judgment on the Employee Expression Policy because the Plaintiff's Complaint only mentioned the Code of Professional Ethics (Dkt. #64 at p. 18 n. 10), Defendants did not object to its inclusion in the Joint Final Pretrial Order, and therefore the Court considers the challenge as part of the case.

### 1.  The Code of Professional Ethics, Facial Vagueness

In his Motion, Plaintiff claims Collin College's Code of Professional Ethics is unconstitutionally vague. Plaintiff notes that the "Code of [Professional] Ethics is unconstitutionally vague where it fails to define the key terms that can be used to punish employees for protected speech" (Dkt. #58 at p. 37). Plaintiff seems to specifically move that the "key terms" "dignity" and "respect," left undefined, lead to arbitrary enforcement (Dkt. #63 at p. 28). In support, Plaintiff cites the fact that Defendant O'Quin issued him a disciplinary form for "violating the College's Core Values of dignity and respect[, ] but not the Code of Ethics," which Plaintiff believes indicates the administrators' lack of understanding of Collin College's policies (Dkt. #58 at pp. 37–38).

In their Cross-Motion, Defendants claim the Code of Professional Ethics is not unconstitutionally vague, citing heavily to *Hiers v. Bd. of Regents of the Univ. of N. Tex. Sys.*, No. 4:20-CV-321-SDJ, 2022 WL 748502 (E.D. Tex. Mar. 11, 2022) for the principle that Collin College's Code of Professional Ethics is not "substantially incomprehensible" despite its lack of defined terms (Dkt. #59 at p. 10). While Defendants concede that the Code of Professional Ethics may not be "a model of specificity," they argue it nonetheless "is sufficiently clear that an ordinary faculty member would have a reasonably opportunity to know what conduct would put them at risk of discipline" (Dkt. #59 at p. 10).

In order to determine whether the terms "dignity" and "respect" are unconstitutionally vague, the Court should give the terms "their ordinary meaning and read [them] in context of the policy as a whole . . . ." *Hiers*, 2022 WL 748502, at *20. After review of the Code of Professional Ethics and review of the terms within that Code, the Court does not find the terms

unconstitutionally vague as a matter of law. The terms "dignity" and "respect" appear in the first bullet of the Code of Professional Ethics that reads: "The Professional Educator shall treat all persons with dignity and respect; discriminating against no one on any basis protected by law" (Dkt. #64, Exhibit 1 at p. 2). Reading "dignity" and "respect" in context, the Code of Professional Ethics puts those of "ordinary intelligence [on] fair notice of what is prohibited." *Williams*, 553 U.S. at 304.

The Court also is not convinced by Plaintiff's argument of "cross-policy ambiguities" (Dkt. #58 at p. 38). In his Motion, Plaintiff notes that Defendant O'Quin issued him a disciplinary form for violating "the College's 'Core Values' [that] require employees behave with dignity and respect" (Dkt. #58 at p. 37). Then he notes that Defendant Matkin "stated it is impossible for an employee to violate the 'dignity' and 'respect' provisions of the Code of [Professional] Ethics without also violating the Core Values" (Dkt. #58 at p. 38). Plaintiff claims these facts demonstrate "cross-policy ambiguities" and indicate that Collin College employees "cannot understand the College's policy" (Dkt. #58 at p. 38). But the Court does not see how enforcement of consistent terms across multiple College policies indicates misunderstanding. Instead, it appears that Defendant O'Quin merely issued a disciplinary form under one College policy (the Core Values), when she could have issued it under two College policies (the Core Values and the Code of Professional Ethics).

The Court therefore denies Plaintiff's motion for summary judgment on the facial vagueness of the Code of Professional Ethics (Dkt. #58 at p. 37) and grants Defendants' motion for summary judgment that Collin College's Code of Professional Ethics is not unconstitutionally vague (Dkt. #59 at p. 8).

### 2.   The Employee Expression Policy, Facial Vagueness

Plaintiff also claims that Defendants' Employee Expression Policy requiring that employees "exercise appropriate restraint" is unconstitutionally vague on its face (Dkt. #58 at p. 38). Plaintiff argues that the Employee Expression Policy fails to provide people of ordinary intelligence a reasonable opportunity to understand what conduct it prohibits where the Policy does not define what it means for a faculty member to exercise appropriate restraint (Dkt. #58 at pp. 36, 38). In support, Plaintiff points to Defendant Matkin's deposition (Dkt. #58 at p. 38). There, Defendant Matkin indicated that "[t]here may be different interpretations" of what "appropriate restraint" might mean, and that, though he does not think the policy is vague, he "could see that someone else might" think so (Dkt. #58 at p. 38).

Though Defendant does not respond to Plaintiff's facial challenge to the Employee Expression Policy's reference to the phrase "exercise appropriate restraint" (*see* Dkt. #59), the Court is not persuaded by Plaintiff's argument. Other similar employment policies containing broad standards have survived facial challenges for vagueness. For example, in *Arnett v. Kennedy*, 416 U.S. 134 (1974), the Supreme Court held that an employment standard permitting dismissal for "such cause as will promote the efficiency of service" was not unconstitutionally vague on its face. 416 U.S. at 164. And in *Hiers*, a sister court explained that while the broad policy language at issue was not "meticulously delineated" or a "model of clarity," it "d[id] not prevent a person of ordinary intelligence from understanding what kind of conduct will result in discipline." 2022 WL 748502, at *20–21.

The same holds true here. "In a civil action, a law is void for vagueness only if it 'commands compliance in terms so vague and indefinite as really to be no rule or standard at all' or if it is

'substantially incomprehensible.'" *Id.* at *20 (citing *Ford Motor Co. v. Tex. Dep't of Transp.*, 264 F.3d 493, 507 (5th Cir. 2001)). An employment policy requiring an employee to "exercise appropriate restraint" is not so vague and indefinite that a reasonable person cannot comprehend what is prohibited conduct. Employers must be able to define appropriate conduct in reasonably broad terms to capture the essence of a model employee. Accordingly, Plaintiffs facial challenge to the Employee Expression Policy fails as a matter of law.

The Court therefore denies Plaintiff's motion for summary judgment on the facial vagueness of the Employee Expression Policy (Dkt. #58 at p. 37).

### E.  Defendant Matkin is Not an Official Policymaker

Plaintiff next argues that he is entitled to summary judgment on his *Monell* claim because Collin College's "unconstitutional policies were the moving force behind the decision of President Matkin, the policy maker in the area of faculty employment, not to give [Plaintiff] a new contract" (Dkt. #58 at p. 39).

"*Monell* claims require three elements: '(1) a policymaker; (2) an official policy; and (3) a violation of constitutional right whose 'moving force' is the policy or custom.'" *Arnone v. Cnty. of Dallas Cnty.*, 29 F.4th 262, 265–66 (5th Cir. 2022) (quoting *Alvarez v. City of Brownsville*, 904 F.3d 382, 389 (5th Cir. 2018)). Policymaker status is a question of law. *See Groden v. City of Dallas*, 826 F.3d 280, 282 (5th Cir. 2016). Whether Defendant Matkin is a policymaker depends on whether the Board of Trustees delegated final policymaking authority to him. *See Bennett v. Tarrant Cnty. Coll. Dist.*, No. 3:22-CV-0289-B, 2023 WL 1805215, at *6 (N.D. Tex. Feb. 7, 2023) ("In Texas, a junior college board of trustees is the final policymaker for the junior college district.").

There is no evidence before the Court that such a delegation ever occurred. The evidence shows that the Board only delegated to Defendant Matkin the final authority to hire and fire faculty members (Dkt. #58, Exhibit 5 at p. 17). However, the "delegation of authority to make final employment decisions, without more, does not show delegation of policymaker status for purposes of § 1983." *Id.* This distinction is well grounded in the Fifth Circuit. *See, e.g., Bolton v. City of Dallas Tex.*, 541 F.3d 545, 548 (5th Cir. 2008) ("Our analysis must also take into account the difference between final decisionmaking authority and final policymaking authority, a distinction this circuit recognized as fundamental . . . ."). It is also not enough that the Board could not review Defendant Matkin's employment decisions. *See id.* at 551 ("[N]either complete discretionary authority nor the unreviewability of such authority automatically results in municipal liability."). Accordingly, the Court concludes that Defendant Matkin is not an official policymaker for *Monell* purposes. The Court denies Plaintiff's motion as to the *Monell* challenge.

## II.     Defendants' Motion for Summary Judgment—Remaining Issues

The Court will now address the remaining issues in Defendants' summary judgment motion that were not resolved above. These issues include whether Plaintiff's facial prior-restraint challenge to Defendant Matkin's 2019 email directive is moot and whether Plaintiff's requested declaratory judgments are unnecessarily duplicative.

### A.  Defendant Matkin's August 4, 2019 Email Directive Was Rescinded

Defendants argue that Plaintiff's facial prior-restraint challenge to Defendant Matkin's email directive, dated August 4, 2019, should be dismissed as moot and for lack of subject matter jurisdiction because the email is no longer in effect (Dkt. #59 at pp. 20–23). Plaintiff did not

respond to the mootness argument (*see* Dkt. #63 at pp. 11–12). The Court agrees with Defendants on this issue.

"Mootness applies when intervening circumstances render the court no longer capable of providing meaningful relief to the plaintiff." *Ctr. for Biological Diversity, Inc. v. BP Am. Prod. Co*, 704 F.3d 413, 425 (5th Cir. 2013). "[A] case challenging a statute, executive order, or local ordinance usually becomes moot if the challenged law has expired or been repealed." *Spell v. Edwards*, 962 F.3d 175, 179 (5th Cir. 2020).

There is no genuine issue of material fact that Defendant Matkin's email directive is no longer in effect (*see* Dkt. #64, Exhibit 5 at p. 9; Exhibit 6 at p. 3). On April 6, 2023, Defendant Matkin declared in writing that the directive was moot. Therefore, the directive has effectively expired, rendering any potential injunctive relief meaningless. There is also no evidence showing that Defendant Matkin will reenact the directive. *See Roberts v. Haragan*, 346 F. Supp. 2d 853, 857 n.5 (N. D. Tex. 2004) ("[B]ecause there is no indication that the University has any intention of reverting to its former policies, the Court determines that Plaintiff's Motion for Summary Judgment on the issue of the facial constitutionality of the prior policy is moot."). Accordingly, the Court dismisses Plaintiff's facial prior-restraint challenge to the email directive as moot.

**B.  Plaintiff's Requested Declaratory Judgments Are Not Unnecessarily Duplicative**

Defendants argue that the Court should grant summary judgment in favor of Defendants regarding Plaintiff's two requested declaratory judgments because they are "redundant of other causes of action alleged in the Complaint and serve no useful purpose" (Dkt. #59 at pp. 26–28). Defendants claim that "'if a request for declaratory judgment adds nothing to an existing suit, it may be dismissed" (Dkt. #59 at p. 27) (citing *Am. Equip. Co. v. Turner Bros. Crane & Rigginis, LLC*,

No. 4:13–CV–2011, 2014 WL 3543720, at *4 (S.D. Tex. July 14, 2014)). Specifically, Defendants claim that the declaratory judgment requests are redundant to Plaintiff's first, sixth, and seventh causes of action (Dkt. #59 at p. 28). "[I]f these three causes of action are determined in the Defendants' favor, then Plaintiff's two requested declaratory judgments fail as a matter of law" (Dkt. #59 at p. 28). "However, if on the other hand, these causes of action are determined in Plaintiff's favor, then his two requested declaratory judgments are simply redundant of his successful causes of action for monetary and/or injunctive relief" (Dkt. #59 at p. 28).

In response, Plaintiff argues that his requested declaratory judgments are not duplicative of his other causes of action (Dkt. #63 at pp. 30–32). Plaintiff notes that the cases Defendants cite deal with breach of contract claims, unlike the claims in this case (Dkt. #63 at pp. 30–31). Rather, Plaintiff cites *Robinson v. Hunt County* to demonstrate that his requests for declaratory judgment are not redundant to his other constitutional causes of action (Dkt. #63 at pp. 31–32) (citing .921 F.3d 440 (5th Cir. 2019)).

A court may not dismiss a request for declaratory judgment for serving no purpose where the requested declaratory judgment is not unnecessarily duplicative of other claims in the same action. *Robinson*, 921 F.3d at 450–51. In *Robinson*, the Fifth Circuit held that a district court improperly dismissed declaratory judgment claims based on alleged violations of the plaintiff's First and Fourteenth Amendment rights as duplicative of her other claims. *Id.* at 450. The plaintiff in *Robinson* filed claims for compensatory damages, injunctive relief, and declaratory judgments based on alleged violations of her First and Fourteenth Amendment rights. *Id.* "A party may pursue both injunctive and declaratory relief, and "'[a] court may grant declaratory relief even though it chooses not to issue an injunction or mandamus.'" *Id.* (quoting *Powell v. McCormack*, 395

U.S. 486, 499 (1969)). Further, "[t]he Declaratory Judgment Act was 'expressly designed to provide a milder alternative to the injunction remedy.'" *Id.* (quoting *Morrow v. Harwell*, 768 F.2d 619, 627 (5th Cir. 1985)). Therefore, the Fifth Circuit held that the requested declaratory judgments were not redundant to the plaintiff's claims for injunctive relief. *Id.* Additionally, the Fifth Circuit found that the plaintiffs' requests for declaratory relief were not duplicative of her claims for compensatory damages." *Id.*

Most of the cases Defendants cite to demonstrate that Plaintiff's requested declaratory judgments are redundant of his other claims are distinguishable cases dealing with breach of contract claims.[5] "In certain breach of contract contexts, district courts have concluded that a declaratory judgment is unnecessary because '[r]esolving the breach of contract claim would resolve any future uncertainty' between the parties." *Id.* However, the constitutional claims at issue in this case are dissimilar from a breach of contract action.

Defendants have not specifically explained how resolving Plaintiff's other claims would render a declaratory judgment superfluous. Defendants have stated that any outcome for Plaintiff's first, sixth, and seventh causes of action will result in the requested declaratory judgments serving no useful purpose (Dkt. #59 at p. 28). However, Defendants have not stated specifically how any such outcome would result in the requested declaratory judgments serving no useful purpose (Dkt. #59 at p. 28). Therefore, the Court elects to follow *Robinson* and does not find that the requested declaratory judgments serve no useful purpose or are unnecessarily duplicative. The Court denies Defendants' motion on the issue of unnecessarily duplicative.

---

[5] Defendant cites to other cases that do not relate to breach of contract actions. However, these cases deal with distinct factual situations compared to this case and the principles of *Robinson* control in this case.

**CONCLUSION**

It is therefore **ORDERED** that Plaintiff Joseph Michael Phillips' Motion for Partial Summary Judgment (Dkt. #58) is hereby **DENIED**, and Defendants' Motion for Summary Judgment on Plaintiff's Declaratory Judgment Claims (Dkt. #59) is hereby **GRANTED in part** and **DENIED in part**. The Court **DISMISSES** the Plaintiff's following claims **WITH PREJUDICE**: (1) facial prior-restraint challenge to Collin College's Code of Professional Ethics; (2) facial prior-restraint challenge to Collin College's Employee Expression Policy; (3) facial vagueness challenge to Collin College's Code of Professional Ethics; and (4) facial vagueness challenge to Collin College's Employee Expression Policy. Furthermore, the Court **DISMISSES** the Plaintiff's facial prior-restraint challenge to Defendant Matkin's 2019 email directive **WITHOUT PREJUDICE**.

IT IS SO ORDERED.