# United States District Court
**EASTERN DISTRICT OF TEXAS**
**SHERMAN DIVISION**

| | | |
|---|---|---|
| JOSEPH MICHAEL PHILLIPS, | § | |
| | § | |
| *Plaintiff,* | § | Civil Action No. 4:22-CV-184 |
| | § | Judge Mazzant |
| v. | § | |
| | § | |
| COLLIN COUNTY COMMUNITY | § | |
| COLLEGE DISTRICT, *et al.*, | § | |
| | § | |
| *Defendants.* | § | |

## FINAL JURY INSTRUCTIONS

**MEMBERS OF THE JURY:**

It is my duty and responsibility to instruct you on the law you are to apply in this case. The law contained in these instructions is the only law you may follow. It is your duty to follow what I instruct you the law is, regardless of any opinion that you might have as to what the law ought to be.

If I have given you the impression during the trial that I favor either party, you must disregard that impression. If I have given you the impression during the trial that I have an opinion about the facts of this case, you must disregard that impression. You are the sole judges of the facts of this case. Other than my instructions to you on the law, you should disregard anything I may have said or done during the trial in arriving at your verdict.

You should consider all of the instructions about the law as a whole and regard each instruction in light of the others, without isolating a particular statement or paragraph.

The testimony of the witnesses and other exhibits introduced by the parties constitute the

1

evidence. The statements of counsel are not evidence; they are only arguments. It is important for you to distinguish between the arguments of counsel and the evidence on which those arguments rest. What the lawyers say or do is not evidence. You may, however, consider their arguments in light of the evidence that has been admitted and determine whether the evidence admitted in this trial supports the arguments. You must determine the facts from all the testimony that you have heard and the other evidence submitted. You are the judges of the facts, but in finding those facts, you must apply the law as I instruct you.

You are required by law to decide the case in a fair, impartial, and unbiased manner, based entirely on the law and on the evidence presented to you in the courtroom. You may not be influenced by passion, prejudice, or sympathy you might have for the plaintiff or the defendants in arriving at your verdict.

## BURDEN OF PROOF

Plaintiff Joseph Michael Phillips has the burden of proving his case by a preponderance of the evidence. To establish by a preponderance of the evidence means to prove something is more likely so than not so. If you find that Plaintiff Joseph Michael Phillips has failed to prove any element of his claim by a preponderance of the evidence, then he may not recover on that claim. If you find that he has proven each element of his claim by a preponderance of the evidence, then he recovers on that claim.

## GOVERNMENT PARTY INVOLVED

Do not let bias, prejudice or sympathy play any part in your deliberations. Government officials and employees, like all other persons, are equal before the law and must be treated like

anyone else in a court of justice.

## EVIDENCE

The evidence you are to consider consists of the testimony of the witnesses, the documents and other exhibits admitted into evidence, including stipulated facts and testimony, and any fair inferences and reasonable conclusions you can draw from the facts and circumstances that have been proven.

Generally speaking, there are two types of evidence. One is direct evidence, such as testimony of an eyewitness. The other is indirect or circumstantial evidence. Circumstantial evidence is evidence that proves a fact from which you can logically conclude another fact exists. As a general rule, the law makes no distinction between direct and circumstantial evidence, but simply requires that you find the facts from a preponderance of all the evidence, both direct and circumstantial.

## STIPULATED FACTS OR TESTIMONY

A "stipulation" is an agreement on the accuracy of facts or testimony. When there is no dispute about certain facts or testimony, the attorneys may agree or "stipulate" to those facts or testimony. You must accept a stipulated fact as evidence and treat that fact as having been proven here in court. Stipulated testimony must be considered in the same way as if that testimony had been received here in court.

The parties have stipulated to the following facts:

1.   Dr. Phillips was a full-time, non-tenured history professor at Collin County Community College District ("Collin College") from 2007 to May 2022.

2.     Dr. Phillips earned a Bachelor's Degree in Journalism from the University of Texas at Arlington, a Master's Degree in History from the University of California, Riverside, and a Ph.D. in History from the University of Texas at Austin.

3.     On April 15, 2019, Phillips signed a three-year contract with Collin College running from August 14, 2019 to the last day of instruction in May 2022.

4.     Dr. Phillips earned $69,167.89 from Collin College in 2021.

5.     Collin College paid $10,727.94 towards Dr. Phillips's health insurance, and Dr. Phillips $3,230.10 towards his health insurance in 2021.

6.     The imputed income of Dr. Phillips's group-term life insurance provided by Collin College was $828.96 in 2021.

7.     Dr. Phillips's contributed $4,770.04 from his compensation at Collin College to his retirement plan in 2021.

8.     Defendant Collin College is an independent political subdivision of the State of Texas, organized under the laws of the State of Texas at Education Code § 130.0011 *et seq.*

9.     Defendant the Board of Trustees of Collin County Community College District is a body corporate that has the exclusive power to manage and govern the College.

10.    The Board of Trustees sets all Collin College policies.

11.    Defendant H. Neil Matkin has served as the President of Collin College since April 6, 2015, and he is responsible for the operations of Collin College.

12.    The Board has delegated the authority to employ administrative personnel, faculty, and other full-time personnel for Board-approved budgeted positions to Defendant

Matkin.

13. Defendant Kristen Streater was an Associate Dean of Academic Affairs/Workforce Programs from October 2019 until December 2020.

14. Defendant Streater directly supervised Dr. Phillips from July 2018 to January 2021.

15. Defendant Chaelle O'Quin succeeded Defendant Streater as an Associate Dean of Academic Affairs/Workforce Programs.

16. Defendant O'Quin supervised Dr. Phillips in his final months at Collin College.

17. Defendant Abe Johnson is the Senior Vice President of College Operations at Collin College.

18. Defendant Johnson previously worked as a Campus Provost at the Plano Campus from 2015 to 2019, and he first met Dr. Phillips in 2018.

19. Defendant Mary Barnes-Tilley is the Campus Provost at the Plano Campus and was previously a Dean from June 2018 to January 2021.

20. Defendant Barnes-Tilley directly supervised Dr. Phillips from July 2017 to June 2018.

21. In Dr. Phillips's final year at Collin College, Associate Dean O'Quin reported to Dean Streater. Dean Streater reported to Provost Barnes-Tilley. And Provost Barnes-Tilley reported to Vice President Johnson, who reported to President Matkin.

22. Collin College maintains policy "DH Local," called "Employee Standards of Conduct." Within the Employee Standards of Conduct, Collin College also maintains "DH Exhibit," called the "Code of Professional Ethics."

23. Collin College maintains policy "DGC Local," titled "Employee Rights and Privileges,

Employee Expression and Use of College Facilities" ("Employee Expression Policy").

24.    In August 2017, Dr. Phillips co-authored an open letter published in the *Dallas Morning News* that called for the removal of Confederate monuments in Dallas.

25.    The letter identified Dr. Phillips as "a history professor at Collin College and the author of 'White Metropolis: Race, Ethnicity, and Religion in Dallas, 1841-2001'" and listed his email address, mphillips@collin.edu.

26.    On August 3, 2019, a former Collin College student, Patrick Crusius, opened fire in a Walmart in El Paso, Texas.

27.    Patrick Crusius was not a student of Dr. Phillips.

28.    On August 6, 2019, Dr. Phillips granted an interview to a *Washington Post* reporter.

29.    The *Washington Post* did not characterize Dr. Phillips as speaking on behalf of Collin College in his interview.

30.    The *Washington Post* article was published on August 9, 2019, and referred to Dr. Phillips as "a Collin College professor and historian of race relations in the Dallas-Fort Worth region."

31.    On September 3, 2019, Defendant Streater issued Dr. Phillips an "Employee Coaching Form" from the College based on the *Washington Post* article and based on a violation of the August 4, 2019 directive.

32.    On August 11, 2021, Defendant O'Quin held a division meeting and presented a PowerPoint slide regarding various topics, including Class Syllabi and COVID Guidelines. That same day, Dr. Phillips posted a photo on his personal Twitter page of

one of Defendant O'Quin's slide with the caption, "Note what we were told about discussing masks and Covid with students at my … college today."

33.   Defendant Streater told Defendant O'Quin about Dr. Phillips's tweet, mentioning the College's past discipline against Dr. Phillips for his speech.

34.   On August 27, 2021, Defendants Streater and O'Quin issued an Employee Discipline Form to Dr. Phillips stating that he violated the Code of Professional Ethics and Employee Expression Policy by sharing the slide on social media and not using internal communication channels as stated on the Form.

35.   The August 27, 2021 discipline form also cited the 2019 coaching form reprimanding Dr. Phillips for giving an interview to the Washington Post and "informal coaching" in 2020 as examples of Dr. Phillips "not bring[ing] questions about a directive, about COVID protocols, about things related to college policy and procedure and directives he disagreed with."

36.   On August 31, 2021, Defendants Streater and O'Quin met with Dr. Phillips to discuss his contract.

37.   In the August 31, 2021 meeting, Defendants Streater and O'Quin notified Dr. Phillips that they were not recommending him for a three-year contract extension.

38.   Defendants Streater and O'Quin notified Dr. Phillips that, under College policy, he could appeal this decision through the grievance process, apply for a new contract, or both.

39.   On December 16, 2021, the College denied Dr. Phillips's grievance.

40.     The Council on Excellence recommended Dr. Phillips be granted a new contract.

41.     On October 27, 2021, Defendant O'Quin placed Dr. Phillips on a "Performance Improvement Plan," as customary for those employees who are not recommended for a contract extension.

42.     On November 3, 2021, as part of Dr. Phillips's "Performance Improvement Plan," Defendant O'Quin observed his class.

43.     After observing Dr. Phillips's class, Defendant O'Quin reported that Dr. Phillips "treated his students with respect" and "presented enthusiastically and seemed passionate and knowledgeable about the topic."

44.     Defendant O'Quin also reported that he has "a good rapport with his students."

45.     Defendants Streater, Barnes-Tilley, and Johnson did not recommend Dr. Phillips for a new multiyear contract.

46.     Defendant Matkin is the one who makes decisions on the employment of faculty.

47.     Defendant Matkin could have overruled the recommendations of O'Quin, Streater, Barnes- Tilley, and Johnson.

48.     On June 6, 2022, the Clements Center for Southwest Studies at Southern Methodist University awarded Dr. Phillips the Bill and Rita Clements Senior Research Fellowship for the 2022-2023 academic year.

49.     Defendant Matkin's August 4, 2019 email to all staff regarding Patrick Crusius is no longer in effect.

50.     Phillips served the complete three-year term of the faculty teaching contract he signed

in 2019.

51.   Collin College does not have a tenure system.

## WITNESSES

You alone are to determine the questions of credibility or truthfulness of the witnesses. In weighing the testimony of the witnesses, you may consider the witness's manner and demeanor on the witness stand, any feelings or interest in the case, or any prejudice or bias about the case, that he or she may have, and the consistency or inconsistency of his or her testimony considered in the light of the circumstances. Has the witness been contradicted by other credible evidence? Has he or she made statements at other times and places contrary to those made here on the witness stand? You must give the testimony of each witness the credibility that you think it deserves.

Even though a witness may be a party to the action and therefore interested in its outcome, the testimony may be accepted if it is not contradicted by direct evidence or by any inference that may be drawn from the evidence, if you believe the testimony.

You are not to decide this case by counting the number of witnesses who have testified on the opposing sides. Witness testimony is weighed; witnesses are not counted. The test is not the relative number of witnesses, but the relative convincing force of the evidence. The testimony of a single witness is sufficient to prove any fact, even if a greater number of witnesses testified to the contrary, if after considering all of the other evidence, you believe that witness.

## IMPEACHMENT BY WITNESSES'S INCONSISTENT STATEMENTS

In determining the weight to give to the testimony of a witness, consider whether there was evidence that at some other time the witness said or did something, or failed to say or do

something, that was different from the testimony given at the trial.

A simple mistake by a witness does not necessarily mean that the witness did not tell the truth as he or she remembers it. People may forget some things or remember other things inaccurately. If a witness made a misstatement, consider whether that misstatement was an intentional falsehood or simply an innocent mistake. The significance of that may depend on whether it has to do with an important fact or with only an unimportant detail.

## NO INFERENCE FROM FILING SUIT

The fact that a person brought a lawsuit and is in court seeking damages creates no inference that the person is entitled to a judgment. Anyone may make a claim and file a lawsuit. The act of making a claim in a lawsuit, by itself, does not in any way tend to establish that claim and is not evidence.

## FIRST AMENDMENT RETALIATION—PUBLIC EMPLOYEES—DEFENDANT MATKIN

Plaintiff Joseph Michael Phillips claims that Defendant H. Neil Matkin retaliated against him by not renewing his contract for exercising his First Amendment rights under the United States Constitution. More specifically, Plaintiff Joseph Michael Phillips claims that Defendant H. Neil Matkin did not renew his contract in retaliation for Plaintiff Joseph Michael Phillips exercising his First Amendment free speech right to speak on at least one of the following matters of public concern:

(1) calling for the removal of Confederate monuments in a letter published in the *Dallas Morning News* in August 2017;

(2) giving an interview to the *Washington Post* in August 2019 about the Walmart mass shooting in El Paso, Texas;

(3) posting about COVID on social media in June 2020;

(4)   posting about Collin College's COVID masking syllabus policy on social media in August 2021, and

(5)   discussing COVID masking in the classroom which led to at least one student complaint in August 2021.

On the other hand, Defendant H. Neil Matkin claims that Plaintiff Joseph Michael Phillips's speech on matters of public concern did not motivate nor was a substantial factor in the decision to not renew Plaintiff Phillips's contract. Further, Defendant Matkin claims that he would have nonrenewed Plaintiff Phillips's contract whether or not Plaintiff Phillips engaged in protected speech. More specifically, Defendant Matkin contends that the nonrenewal was based on reasons independently cited by each of Plaintiff Phillips's supervisors, including himself. Those reasons include disrespecting his supervisors, reservations about his professionalism, not following processes and channels of communication, not working within the college's shared governance system, and bullying/intimidating students.

The First Amendment protects a public employee's right to speak as a citizen addressing matters of public concern.

To recover damages for this alleged constitutional violation, Plaintiff Phillips must prove that it is more likely than not that:

1.   He suffered an adverse employment action;

2.   His speech motivated Defendant H. Neil Matkin's decision to not renew Plaintiff Joseph Michael Phillips's contract; and

3.   The nonrenewal decision caused Plaintiff Joseph Michael Phillips's damages.

As to the first element—whether the employment action was "adverse"—the parties have

11

stipulated (agreed) that the nonrenewal of Plaintiff Phillips's contract was "adverse." You must accept that fact as proved.

As to the second element, to prove at least one instance of Plaintiff Phillips's speech on a matter of public concern motivated Defendant Matkin's nonrenewal decision, Plaintiff Phillips must show the speech was a substantial factor. In other words, Plaintiff Phillips must show that his speech was a motivating factor in Defendant Matkin's decision to not renew Plaintiff Phillips's contract. Plaintiff Phillips need not prove his speech was the only reason Defendant Matkin made the decision.

If you find that Plaintiff Phillips has proved each element of his claim by a preponderance of the evidence, then you must consider whether Defendant Matkin would have reached the same decision in the absence of the protected speech. If you find Defendant Matkin has proved by a preponderance of the evidence that he would have made the decision to not renew Plaintiff Phillips's contract whether or not Plaintiff Phillips engaged in protected speech, then you must return a verdict for Defendant Matkin and against Plaintiff Phillips.

**FIRST AMENDMENT RETALIATION—REMAINING INDIVIDUAL DEFENDANTS**

Plaintiff Phillips claims that Defendants Abe Johnson, Mary Barnes-Tilley, Kristen Streater, and Chaelle O'Quin retaliated against him for exercising his First Amendment rights under the United States Constitution. More specifically, Plaintiff Phillips claims that Defendants Abe Johnson, Mary Barnes-Tilley, Kristen Streater, and Chaelle O'Quin did not recommend Plaintiff Phillips for a new contract in retaliation for Plaintiff Phillips's exercising his First Amendment free speech right to speak on at least one of the following matters of public

12

concern:

    (1)   calling for the removal of Confederate monuments in a letter published in the *Dallas Morning News* in August 2017;

    (2)   giving an interview to the *Washington Post* in August 2019 about the Walmart mass shooting in El Paso, Texas;

    (3)   posting about COVID on social media in June 2020;

    (4)   posting about Collin College's COVID masking syllabus policy on social media in August 2021, and

    (5)   discussing COVID masking in the classroom which led to at least one student complaint in August 2021.

On the other hand, Defendants Barnes-Tilley, Johnson, Streater, and O'Quin claim that Plaintiff Phillips's speech on matters of public concern did not motivate nor was a substantial factor in their decisions to recommend the nonrenewal of Plaintiff Phillips's contract. Further, they claim that they would have recommended the nonrenewal of Plaintiff Phillips's contract whether or not Plaintiff Phillips engaged in protected speech. More specifically, they contend that the nonrenewal was based on reasons independently cited by each of his supervisors. Those reasons include disrespecting his supervisors, reservations about his professionalism, not following processes and channels of communication, not working within the College's shared governance system, and bullying/intimidating students.

The First Amendment protects a public employee's right to speak as a citizen addressing matters of public concern.

To recover damages for this alleged constitutional violation, Plaintiff Phillips must prove that it is more likely than not that:

1.  He suffered an adverse employment action;

2.  His speech motivated the Defendant's decision to not recommend Plaintiff Joseph Michael Phillips for a new contract; and

3.  The decision to not recommend Plaintiff Joseph Michael Philips for a new contract caused Plaintiff Joseph Michael Phillips's damages.

You should conduct this test for each of the above-named Defendants separately.

As to the first element—whether the employment action was "adverse"—the parties have stipulated (agreed) that the nonrenewal of Plaintiff Phillips's contract was "adverse." You must accept that fact as proved.

As to the second element, to prove at least one instance of Plaintiff Phillips's speech on a matter of public concern motivated each Defendant's respective decision, Plaintiff Phillips must show the speech was a substantial factor. In other words, Plaintiff  Phillips must show that his speech was a motivating factor in each Defendant's respective decision to not recommend Plaintiff Philips for a new contract. Plaintiff Phillips need not prove his speech was the only reason each Defendant made his or her respective decision.

As to the third element, Plaintiff Phillips must prove that each Defendant's retaliatory animus was a link in the causal chain leading to the nonrenewal of Plaintiff Phillips's contract. In other words, each Defendant's retaliatory motive must have been a substantial factor in the nonrenewal of Plaintiff Michael Phillips's contract.

If you find that Plaintiff Phillips has proved each element of his claim by a preponderance of the evidence, then you must consider whether each Defendant would have reached the same decision in the absence of the protected speech. If you find that a Defendant has proved by a

preponderance of the evidence that he or she would have made the decision whether or not Plaintiff Phillips engaged in protected speech, then you must return a verdict for that Defendant and against Plaintiff Phillips.

<h2 style="text-align:center">QUALIFIED IMMUNITY</h2>

As to each claim for which Plaintiff Phillips has proved each essential element, you must consider whether the individual Defendant against whom the claim is asserted is entitled to what the law calls "qualified immunity." Qualified immunity bars a defendant's liability even if he violated a plaintiff's constitutional rights. Qualified immunity exists to give government officials breathing room to make reasonable but mistaken judgments about open legal questions. Qualified immunity provides protection from liability for all but the plainly incompetent government officials, or those who knowingly violate the law. It is Plaintiff Phillips's burden to prove by a preponderance of the evidence that qualified immunity does not apply in this case.

Qualified immunity applies if a reasonable official could have believed that his or her decision was lawful in light of clearly established law and the information the individual Defendant possessed. But a Defendant is not entitled to qualified immunity if, at the time of his or her decision, a reasonable official with the same information could not have believed that his or her actions were lawful. Government officials are presumed to know the clearly established constitutional rights of individuals they encounter.

In this case, the clearly established law at the time was that public employees have a First Amendment right to speak about matters of public concern and that individual government officials may not take adverse employment actions in retaliation for the exercise of First Amendment rights.

When a public employee engages in protected speech, it is immaterial that social media serves as the vehicle for such speech. Additionally, an individual defendant who only makes a recommendation may be liable for First Amendment retaliation, even if he or she is not the final decisionmaker, if the individual defendant's retaliatory animus is a link in the causal chain that leads to the plaintiff's nonrenewal.

If, after considering the scope of discretion and responsibility generally given to government officials in performing their duties and after considering all of the circumstances of this case as they would have reasonably appeared to the individual Defendant at the time of his or her decision, you find that Plaintiff Phillips failed to prove that no reasonable official could have believed that the decision was lawful, then the Defendant is entitled to qualified immunity, and your verdict must be for that Defendant on those claims. But if you find that the Defendant violated Plaintiff Phillips's constitutional rights and that the Defendant is not entitled to qualified immunity as to that claim, then your verdict must be for Plaintiff Phillips on that claim.

**GOVERNMENTAL ENTITY LIABILITY**

In addition to his claims against the individual Defendants, Plaintiff Phillips is suing Collin County Community College District ("Collin College"), which is a governmental entity under Texas law. A governmental entity is not liable for the actions of its employees unless the constitutional violation was caused by the governmental entity's policy or custom.

To prevail on his claim against Collin College, Plaintiff Phillips must prove by a preponderance of the evidence that:

1. an official policy or custom existed;

16

2.  a policymaker for Collin College knew or should have known about the policy or custom; and

3.  the policy or custom was the moving force leading to the constitutional violation.

A "policy" can be a policy statement, ordinance, regulation, or decision officially adopted and promulgated by the community college's policymaker. In Texas, the final policymaker of a Texas public community college, like Collin College, is the college's board of trustees.

A "custom" is a persistent, widespread practice of community college officials or employees that, although not formally adopted, is so common and well-settled that it fairly represents community college policy. But to show a custom, Plaintiff Phillips must prove that Collin College's Board of Trustees knew or should have known about the custom. Such a pattern of conduct requires sufficiently numerous prior incidents, as opposed to isolated incidents. Such pattern also requires similarity and specificity pointing to the specific violation in question. To constitute a custom, the actions of community college officials or employees must have occurred for so long or so frequently that the course of conduct warrants attributing knowledge to the college's board of trustees that the conduct is an accepted practice among college officials or employees.

**DAMAGES**

If Plaintiff Phillips has proved his claim against Defendant Collin College, or any individual Defendant by a preponderance of the evidence, you must determine the damages to which Plaintiff Phillips is entitled. You should not interpret the fact that I am giving instructions about Plaintiff Phillips's damages as an indication in any way that I believe that Plaintiff Phillips

should, or should not, win this case. It is your task first to decide whether Defendant Collin College or any individual Defendant is liable. I am instructing you on damages only so that you will have guidance in the event you decide that Defendant Collin College or any individual Defendant is liable and that Plaintiff Phillips is entitled to recover money from Defendant Collin College or any individual Defendant.

## COMPENSATORY DAMAGES

If you find that Defendant Collin College or any individual Defendant is liable to Plaintiff Phillips then you must determine an amount that is fair compensation for all of Plaintiff Phillips's damages. These damages are called compensatory damages. The purpose of compensatory damages is to make Plaintiff Phillips whole—that is, to compensate Plaintiff Phillips for the damage that he has suffered. Compensatory damages are not limited to expenses that Plaintiff Phillips may have incurred because of his injury. If Plaintiff Phillips wins, he is entitled to compensatory damages for the pain and suffering and mental anguish that he has suffered because of Defendant Collin College's or any individual Defendant's wrongful conduct.

You may award compensatory damages only for injuries that Plaintiff Phillips proves were proximately caused by Defendant Collin College's or any individual Defendant's allegedly wrongful conduct. The damages that you award must be fair compensation for all of Plaintiff Phillips's damages, no more and no less. Damages are not allowed as a punishment and cannot be imposed or increased to penalize Defendant Collin College or any individual Defendant. You should not award compensatory damages for speculative injuries, but only for those injuries that Plaintiff Phillips has actually suffered or that Plaintiff Phillips is reasonably likely to suffer in the

18

future.

If you decide to award compensatory damages, you should be guided by dispassionate common sense. Computing damages may be difficult, but you must not let that difficulty lead you to engage in arbitrary guesswork. On the other hand, the law does not require that Plaintiff Phillips prove the amount of his losses with mathematical precision, but only with as much definiteness and accuracy as the circumstances permit.

You must use sound discretion in fixing an award of damages, drawing reasonable inferences where you find them appropriate from the facts and circumstances in evidence.

You should consider the following elements of damages, to the extent you find them proved by a preponderance of the evidence: back pay, front pay, and mental and emotional distress.

## PROXIMATE CAUSE

"Proximate cause" means a cause that was a substantial factor in bringing about an event, and without which cause such event would not have occurred. In order to be a proximate cause, the act or omission complained of must be such that a person using the degree of care required of him would have foreseen that the event, or some similar event, might reasonably result therefrom. There may be more than one proximate cause of an event.

## BACK PAY

To award back pay, if any, you must calculate the value of the wages and benefits that Plaintiff Phillips would have earned from the date of his termination from Collin College through the date of this trial, less any interim earnings and subject to the principles of mitigation

discussed below.

## FRONT PAY

An award of front pay, if any, is to compensate the plaintiff for lost future wages and benefits and is calculated from the date of this trial until Plaintiff Phillips's anticipated retirement at age 68, which is on June 17, 2028. Any front pay award should reflect earnings in mitigation of damages as discussed below.

To determine front pay, if any, you must first determine the length of time for which any Defendant should be reasonably liable. Second, Plaintiff's present salary should be deducted from his previous salary, and the difference multiplied by the relevant length of time. Third, that sum should then be discounted to present value. Further, front pay may be denied or reduced when the employee fails to mitigate damages by seeking other employment as discussed below.

Factors in determining the relevant time period for an award of front pay are as follows: length of the prior employment, permanency of the position held, nature of the work, age and physical condition of the employee, possible consolidation of jobs, other nondiscriminatory factors that could validly affect the possible post-discharge employment relationship.

## EMOTIONAL DISTRESS DAMAGES

To recover compensatory damages for mental and emotional distress, Plaintiff Phillips must prove that he has suffered a specific discernable injury with credible evidence. Hurt feelings, anger and frustration are part of life and are not the types of harm that could support a mental-anguish award. Evidence of mental anguish need not be corroborated by doctors, psychologists, or other witnesses, but Plaintiff Phillips must support his claims with competent evidence of the

nature, extent, and duration of the harm. Damages for mental or emotional distress must be based on the evidence at trial. They may not be based on speculation or sympathy.

## MITIGATION OF DAMAGES

A person who claims damages resulting from the wrongful act of another has a duty under the law to use reasonable diligence to mitigate his damages, that is, to avoid or to minimize those damages.

If you find that any Defendant is liable and that Plaintiff Phillips has suffered damages, Plaintiff Phillips may not recover for any item of damage which he could have avoided through reasonable efforts, such as reasonable efforts to find substantially equivalent employment. If you find that the defendant proved by a preponderance of the evidence the plaintiff unreasonably failed to take advantage of an opportunity to lessen his damages, you should deny him recovery for those damages that he would have avoided had he taken advantage of the opportunity.

You are the sole judge of whether Plaintiff Phillips acted reasonably in avoiding or minimizing his damages. An injured plaintiff may not sit idly by when presented with an opportunity to reduce his damages. However, he is not required to exercise unreasonable efforts or incur unreasonable expenses in mitigating the damages. The defendant has the burden of proving the damages that the plaintiff could have mitigated. In deciding whether to reduce Plaintiff Phillips's damages because of his failure to mitigate, you must weigh all evidence in light of the particular circumstances of the case, using sound discretion in deciding whether the defendant has satisfied the burden of proving that the plaintiff's conduct was not reasonable.

## PUNITIVE DAMAGES

If you find that any individual Defendant is liable for Plaintiff Phillips's injuries, you must award Plaintiff Phillips the compensatory damages that he has proved. You may, in addition, award punitive damages if you find that Defendant H. Neil Matkin acted with malice or with reckless indifference to Phillips's constitutional rights. One acts with malice when one purposefully or knowingly violates another's rights or safety. One acts with reckless indifference to the rights of others when one's conduct, under the circumstances, manifests a complete lack of concern for the rights or safety of another. Plaintiff Phillips has the burden of proving that punitive damages should be awarded by a preponderance of the evidence.

The purpose of punitive damages is to punish and deter, not to compensate. Punitive damages serve to punish a defendant for malicious or reckless conduct and, by doing so, to deter others from engaging in similar conduct in the future. You are not required to award punitive damages. If you do decide to award punitive damages, you must use sound reason in setting the amount. Your award of punitive damages must not reflect bias, prejudice, or sympathy toward any party. It should be presumed that Plaintiff Phillips has been made whole by compensatory damages, so punitive damages should be awarded only if Defendant Matkin's misconduct is so reprehensible as to warrant the imposition of further sanctions to achieve punishment or deterrence.

If you decide to award punitive damages, the following factors should guide you in fixing the proper amount:

1. The reprehensibility of Defendant H. Neil Matkin's conduct, including but not limited to whether there was deceit, cover-up, insult, intended or reckless injury, and

whether Defendant H. Neil Matkin's conduct was motivated by a desire to augment profit;

2. The ratio between the punitive damages you are considering awarding and the amount of harm that was suffered by the victim or with which the victim was threatened;

3. The possible criminal and civil sanctions for comparable conduct.

You may consider the financial resources of Defendant Matkin in fixing the amount of punitive damages.

## DUTY TO DELIBERATE; NOTES

It is now your duty to deliberate and to consult with one another in an effort to reach a verdict. Each of you must decide the case for yourself, but only after an impartial consideration of the evidence with your fellow jurors. During your deliberations, do not hesitate to reexamine your own opinions and change your mind if you are convinced that you were wrong. But do not give up on your honest beliefs because the other jurors think differently, or just to finish the case.

Remember at all times, you are the judges of the facts. You have been allowed to take notes during this trial. Any notes that you took during this trial are only aids to memory. If your memory differs from your notes, you should rely on your memory and not on the notes. The notes are not evidence. If you did not take notes, rely on your independent recollection of the evidence and do not be unduly influenced by the notes of other jurors. Notes are not entitled to greater weight than the recollection or impression of each juror about the testimony.

When you go into the jury room to deliberate, you may take with you a copy of this charge, the exhibits that I have admitted into evidence, and your notes. You must select a jury foreperson to guide you in your deliberations and to speak for you here in the courtroom.

23

Your verdict must be unanimous. After you have reached a unanimous verdict, your jury foreperson must fill out the answers to the written questions on the verdict form and sign and date it. After you have concluded your service and I have discharged the jury, you are not required to talk with anyone about the case.

If you need to communicate with me during your deliberations, the jury foreperson should write the inquiry and give it to the court security officer. After consulting with the attorneys, I will respond either in writing or by meeting with you in the courtroom. Keep in mind, however, that you must never disclose to anyone, not even to me, your numerical division on any question.

You may now proceed to the jury room to begin your deliberations.

 **SIGNED this 13th day of November, 2023.**

AMOS L. MAZZANT
UNITED STATES DISTRICT JUDGE